David A. Senior (# 108759)
McBreen & Senior
1880 Century Park East, Suite 1450
Los Angeles, CA 90067
Phone: (310) 552-5300
Fax: (310) 552-1205
dsenior@mcbreensenior.com

John R. Grele (# 167080)
Law Offices of John R. Grele
703 Market Street, Suite 550
San Francisco, CA 94103
Phone: (415) 348-9300
Fax: (415) 348-0364
jgrele@earthlink.net

Richard P. Steinken
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611-7603
Phone: (312) 923-2938
Fax: (312) 840-7338
rsteinken@jenner.com

Attorneys For Plaintiff MICHAEL ANGELO MORALES

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL ANGELO MORALES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>RODERICK Q. HICKMAN, Secretary of the California Department of Corrections; STEVEN ORNOSKI, Warden, San Quentin State Prison, San Quentin, CA; and DOES 1-50,<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF**<br>**[42 U.S.C. § 1983]**<br><br>**EXECUTION IMMINENT:**<br>**EXPEDITED REVIEW REQUESTED** |

1
COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF

## NATURE OF ACTION

1. This action is brought pursuant to 42 U.S.C. § 1983 for violations and threatened violations of the right of plaintiff to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution. Plaintiff seeks temporary, preliminary, and permanent injunctive relief to prevent the defendants from executing plaintiff by means of lethal injection, as that method of execution is currently used in California. Plaintiff contends that lethal injection, as performed in California, unnecessarily risks infliction of pain and suffering. Plaintiff further contends that the use of pancuronium bromide, a paralytic agent that acts as a chemical veil over the lethal injection process, disguises the pain and suffering to which he will be subjected. Plaintiff additionally contends that defendants, as a result of their failure to use medically approved procedures and properly trained personnel, have inflicted pain and torture on several executed prisoners in the past, making plaintiff certain he will suffer the same fate unless defendants adopt a humane and safe execution protocol.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), § 1343 (civil rights violations), § 2201 (declaratory relief), and § 2202 (further relief). This action arises under the Eighth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1983.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) in that plaintiff is currently incarcerated at San Quentin State Prison ("San Quentin") in San Quentin, California, located in this District. All executions conducted by the State of California ("State") occur at San Quentin. The events giving rise to this complaint have occurred and will occur in this District.

## THE PARTIES

4. Plaintiff Michael Angelo Morales is a United States citizen and a resident of the State. He is currently a death-sentenced prisoner under the supervision of the California Department of Corrections. He is held at San Quentin State Prison, San Quentin, California, 94974.

5. Defendant Roderick Q. Hickman is the Secretary of the California Department of Corrections.

6.  Defendant Steven Ornoski is the Warden of San Quentin State Prison, where the plaintiff is incarcerated and where the plaintiff's execution is scheduled to occur.

7.  Plaintiff is ignorant of the true names of Does 1-50 but alleges that they have or will participate in plaintiff's execution by virtue of their roles in designing, implementing, and/or carrying out the lethal injection process. When plaintiff discovers the Doe Defendants' true identities, he will amend his complaint accordingly.

## GENERAL ALLEGATIONS

8.  On January 6, 2006, the clerk of the Superior Court of Ventura County issued a Notice of Public Session in the case of <u>People v. Morales</u>, No. CR 17960, scheduling a public session on January 31, 2006 for the purpose of the setting of the date of execution of judgment of death of February 21, 2006.

9.  Under California law, death sentences shall be carried out by "administration of a lethal gas or by an intravenous injection of a substance or substances in a lethal quantity sufficient to cause death, by standards established under the direction of the Department of Corrections." Cal. Penal Code § 3604(a). The statute prescribes no specific drugs, dosages, drug combinations, or the manner of intravenous line access to be used in the execution process; nor does the statute prescribe any certification, training, or licensure required of those who participate in the execution process. All of the details of the execution process are to be determined by the Department of Corrections.

10. The Department of Corrections has decided to execute plaintiff by poisoning him with a lethal combination of three chemical substances: sodium pentothal, a short-acting barbiturate; pancuronium bromide, which paralyzes all voluntary muscles; and potassium chloride, an extremely painful chemical which activates the nerve fibers lining the prisoner's veins and interferes with the heart's contractions, causing cardiac arrest.

11. In performing plaintiff's execution by lethal injection, the Department of Corrections will follow the protocol established in San Quentin Operational Procedure No. 770. The protocol by which lethal injection executions are performed under Procedure No. 770 violates constitutional and statutory provisions enacted to prevent cruelty, pain, and torture.

3
COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF
CHICAGO_1355066_6

12. Procedure No. 770 was adopted without any medical research or review to determine that a prisoner would not suffer a painful death. No member of the medical community was involved in its adoption. The procedure was adopted by the former Warden of San Quentin, Daniel Vasquez, after observing two executions in Texas, without any input from or consultation with medical personnel.

13. The absence of standardized procedures for administration of the chemicals, the lack of qualifications of the personnel involved in the process, and the combination of the three particular chemicals used in Procedure No. 770 create a grave and substantial risk that plaintiff will be conscious throughout the execution process and, as a result, will experience an excruciatingly painful and protracted death.

14. Procedure No. 770 lacks medically necessary safeguards, thus increasing the risk that plaintiff will suffer unnecessary pain during the lethal injection process. There is no standardized time to administer each of the three chemicals. The protocol identifies no procedures for ensuring that the anesthetic agent is properly flowing into the prisoner, and it identifies no procedures for ensuring that the prisoner is properly sedated prior to the administration of the lethal chemicals as would be required in any medical or veterinary procedure before the administration of a neuromuscular blocking agent, such as pancuronium bromide, or the administration of a painful potassium chloride overdose.

15. The protocol established in Procedure No. 770 does not establish any minimum qualifications or expertise required of the personnel who perform all of the tasks in the lethal injection process. There are no guidelines upon which these personnel can rely if they are required to exercise their discretion during the process. The protocol has no plan in place if the plaintiff requires medical assistance during the execution.

16. Sodium pentothal, in an ordinary clinical dose, is a very short-acting barbiturate that is usually administered only during the preliminary phase of anesthesia administration. There is a reasonable likelihood that sodium pentothal, if ineffectively delivered (which is particularly likely given the inadequacy of the administration procedures under Procedure No. 770), will not provide a sedative effect for the duration of the execution process. Without adequate sedation, plaintiff will

4

experience excruciating pain as a result of the conscious asphyxiation caused by pancuronium bromide and the painful internal burn and cardiac arrest caused by a potassium chloride overdose.

17. Pancuronium bromide, the second chemical administered in the lethal injection process, paralyzes voluntary muscles, including the diaphragm, but it does not affect consciousness or the perception of pain. Pancuronium bromide, administered by itself as a "lethal dose," would not result in a quick death; instead, it would ultimately cause someone to suffocate to death while still conscious. There is no indication in the Department of Correction's lethal injection protocol, however, that pancuronium bromide is used to cause death. It therefore is completely unnecessary in the lethal injection process and only serves to mask any pain or suffering that the plaintiff may experience.

18. Pancuronium bromide could not lawfully be used alone as the fatal agent because causing death by suffocation violates the Eighth Amendment's prohibition against cruel and unusual punishment.

## COUNT I

### VIOLATION OF RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT PURSUANT TO THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
**(42 U.S.C. § 1983)**

19. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 18.

20. Defendants Roderick Q. Hickman, Steven Ornoski, and Doe Defendants are acting under color of California law in causing to be administered to plaintiff chemicals that will cause unnecessary pain in the execution of a sentence of death, thereby depriving plaintiff of his rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment, in violation of 42 U.S.C. § 1983.

21. The California Department of Corrections Procedure No. 770, which specifies the State's lethal injection protocol, violates plaintiff's rights under the cruel and unusual punishment clause of the Eighth Amendment because (a) the protocol creates the unreasonable and unacceptable risk of

unnecessary physical and psychological pain; (b) the protocol does not comport with contemporary norms and standards of society; and (c) the protocol offends the dignity of the person and society.

22. The Department of Correction's lethal injection protocol requires utilization of three dangerous chemicals but does not ensure that the personnel entrusted with the lethal injection procedure possess the proper and necessary training, experience, or expertise to administer those drugs. Moreover, the protocol fails to specify any timing for the administration of the three separate chemicals, which is an essential requirement for their proper administration.

23. The use of pancuronium bromide as administered under the Department of Correction's lethal injection protocol increases the risk that the use of this chemical, in combination with the initial dose of sodium pentothal, will result in plaintiff being paralyzed but conscious and suffering death from the burning veins and heart failure caused by the administration of the potassium chloride. Moreover, because the Department of Correction's protocol calls for the potassium chloride to be administered in a lethal dose, the use of pancuronium bromide serves no purpose in the execution process. Pancuronium bromide unnecessarily increases the risk that a conscious prisoner will be paralyzed during the injection of an extremely painful drug, yet be entirely unable to inform the attendants of his condition. Without the use of pancuronium bromide, a prisoner would be able to indicate that he was still conscious prior to the administration of potassium chloride. This is particularly crucial because the Department of Correction's protocol indicates that the prisoner will be alone in a room when he is executed, making it impossible to determine whether a prisoner is conscious once he is paralyzed by the pancuronium bromide.

24. The American Veterinary Medical Association (AVMA) states that a combination of a barbiturate and a neuromuscular blocking agent such as pancuronium bromide, a combination similar to that called for by Procedure No. 770, is not an acceptable euthanasia method for animals when used alone.

25. Sodium pentothal, which is an extremely fast-acting but not long-lasting barbiturate in an ordinary clinical dose, is used as the anesthetic agent in the Department of Correction's lethal injection procedure. In veterinary medicine, sodium phenobarbital, a somewhat slower-acting but

6
COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF
CHICAGO_1355066_6

longer-lasting barbiturate, is used for animal euthanasia. The AVMA states that when potassium chloride is used for euthanasia, it is extremely important for the personnel who perform euthanasia to be trained and knowledgeable in anesthetic techniques and competent in assessing the anesthetic depth appropriate for potassium chloride administration, a depth at which animals are in a surgical plane of anesthesia characterized by loss of consciousness, loss of reflex muscle response, and loss of response to noxious stimuli. California law requires non-veterinary personnel who perform animal euthanasia to undergo strict training by a veterinarian and/or a registered veterinary technician who specializes in anesthesia. The Department of Correction's lethal injection protocol under Procedure No. 770 includes no comparable requirement; in fact, it does not require any training of the personnel who use the same drug in executing prisoners.

26. The Department of Correction's lethal injection procedure fails to address the individual prisoner's medical condition and history. Several regularly prescribed drugs at San Quentin interfere with the ability of sodium pentothal to act properly as an anesthetic. Moreover, the lethal injection protocol allows for prisoners to take Valium shortly before the execution, a drug which can also interfere with the sodium pentothal's effectiveness.

27. Procedure No. 770 contains no description of the training, credentials, certifications, experience, or proficiency required of any personnel involved in the administration of the lethal injection procedure, notwithstanding the fact that it is a complex medical procedure requiring a great deal of expertise in order to be performed correctly. For example, Procedure No. 770 does not require at the execution the presence of any personnel who possess sufficient expertise to insert an intravenous line properly, determine if there is a blockage in the intravenous line, or evaluate whether a prisoner is properly sedated before proceeding with the painful parts of the execution process.

28. The absence of such trained personnel greatly increases the risk that a prisoner would not receive the necessary amount of anesthetic prior to being paralyzed by the pancuronium bromide and then experience the painful internal burn of the potassium chloride. Toxicology reports from prisoners executed by other states suggest that some prisoners likely remained conscious during the

1 administration of lethal drugs, which could have occurred because of improper insertion of the
intravenous line, an unrecognized blockage in the line, or various other reasons.

29. Inducing unconsciousness by correctly administering sodium pentothal is indispensable to preventing the wanton infliction of pain when the potassium chloride overdose is administered. Procedure No. 770, however, does not require the preparation of backup syringes of sodium pentothal.

30. The Department of Correction's lethal injection protocol fails to address any reasonably foreseeable complications with any appropriate medical response. Moreover, the protocol includes no safeguards that would protect the prisoner in the event a stay of execution is entered after the lethal injection process has begun. Thus, the protocol fails to provide any protections to prevent a prisoner from being wrongly executed should a reprieve be granted after the process has begun but before death has occurred.

31. At any time before the potassium chloride is administered, the prisoner could be readily resuscitated if trained personnel and routine resuscitation medication and equipment were present at the execution site. Even after the potassium chloride is administered, resuscitation would still be possible, although admittedly it would be more challenging. Any resuscitation, however, would require the close proximity of the necessary equipment, medication, and properly trained personnel. The omission of such personnel and equipment under the protocol set forth in Procedure No. 770 further undermines the constitutionality of the procedure.

32. Although it is possible to conduct executions in a constitutionally compliant manner, the Department of Corrections has chosen not to do so. The Department of Corrections could choose to use different chemicals that pose a low risk of administration error yet do not cause extraordinarily grave consequences to a condemned inmate if not properly administered; instead, it has knowingly or recklessly chosen to use chemicals that pose a high risk of administration error. Moreover, it has not taken precautions to ensure that the personnel who administer the lethal injection chemicals possess the training, experience, and expertise needed to administer those chemicals properly. Thus, while it is possible for the Department of Corrections to choose different lethal injection chemicals and/or

retain qualified personnel to administer its chosen chemicals in order to ensure the constitutionality of its lethal injection procedure, the Department of Corrections has not done so.

**COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF**

33. The use of pancuronium bromide under the protocol established in Procedure No. 770 to paralyze plaintiff greatly increases the risk that a conscious prisoner will be subjected to a painful and protracted death. Moreover, it serves no legitimate penological purpose.

34. Pancuronium bromide does not play a legitimate role in killing the condemned person. The execution protocol provides that potassium chloride kills the condemned. The administration of pancuronium bromide cannot be justified on the grounds that the drug paralyzes the breathing muscles because death by asphyxiation is itself a form of cruel and unusual punishment under the Eighth Amendment.

35. If pancuronium bromide is administered, paralyzing plaintiff during the execution procedure, he will have no alternative "reasonable and effective means of communication" to communicate that he was not properly anaesthetized because he will be dead at the conclusion of the procedure.

36. Enjoining the administration of pancuronium bromide will have no appreciable impact on California correctional institution procedures. If anything, it will simplify the execution process by eliminating one step in the process.

37. The question of whether there exist readily available alternatives to pancuronium bromide is not an issue in this case because paralyzing a condemned inmate in the execution process is not a legitimate penological goal.

38. The Ninth Circuit and this Court have previously held that Defendants and their predecessors, in order to forestall discussion and criticism of California's lethal injection procedure, have implemented restrictions on the execution process in order to prevent witnesses from being aware of complications experienced during the procedure.

39. The Department of Correction's failure to require sufficient training, credentials, certification, experience, or proficiency of the personnel involved in the administration of the lethal injection procedure greatly increases the risk that a conscious prisoner will experience excruciating pain as a

1 result of the conscious suffocation caused by the pancuronium bromide and the painful internal burn and cardiac arrest caused by a potassium chloride overdose. Moreover, it serves no legitimate penological purpose.

40. Allowing personnel who lack sufficient training, credentials, certification, experience, or proficiency to conduct the lethal injection procedure does not play a legitimate role in killing the condemned person. Conscious suffocation, as caused by the administration of pancuronium bromide, violates the Eighth Amendment because death by asphyxiation is itself a form of cruel and unusual punishment. Similarly, conscious internal burning and cardiac arrest, as caused by a potassium chloride overdose, constitute unnecessary physical and psychological pain in violation of the Eighth Amendment.

41. If plaintiff remains conscious during the administration of the pancuronium bromide and potassium chloride, he will have no alternative "reasonable and effective means of communication" to communicate the fact that he was not properly anaesthetized because the pancuronium bromide will paralyze him and he will be dead at the conclusion of the procedure.

42. Enjoining the administration of the lethal injection procedure by personnel who lack sufficient training, credentials, certification, experience, or proficiency will have no appreciable impact on the correctional institution.

43. The question of whether there exist readily available alternatives to requiring personnel who possess sufficient training, credentials, certification, experience, or proficiency to conduct the lethal injection procedure is not an issue in this case because causing a prisoner who has not been properly anaesthetized as a result of administration error to experience excruciating pain from the conscious suffocation caused by pancuronium bromide and the painful internal burn and cardiac arrest caused by a potassium chloride overdose is not a legitimate penological goal.

## EXHAUSTION ALLEGATIONS

44. On January 9, 2006, plaintiff filed an inmate appeal on CDC Form 602 alleging that his execution under the lethal injection protocol of the California Department of Corrections would constitute cruel and unusual punishment. A copy of the Form 602 is attached hereto as Exhibit A.

Plaintiff asked that his appeal be processed as an emergency appeal pursuant to 15 Cal. Code Regs. § 3084.7 on the ground that the State of California shortly intended to seek his execution date. Plaintiff's claim has not yet been ruled upon.

45. Notwithstanding his filing of an appeal on CDC Form 602, Plaintiff is not required to exhaust administrative remedies before bringing this claim because resolution of the grievance seeking modification of Procedure No. 770 is not possible through the appeal process and exhaustion is futile.

46. On November 24, 2004, Donald J. Beardslee, San Quentin Inmate No. C-82702, raised a challenge similar to plaintiff's claim here when he filed two inmate appeals on CDC Form 602 alleging that the Department of Correction's lethal injection procedure violated his rights under the First and Eighth Amendments to the United States Constitution. After being considered on an emergency basis, the appeals were first denied by the Warden and then denied by the Director of the Department of Corrections on Third Level Review. In denying Beardslee's appeal, the Director's Level Appeal Decision stated that Beardslee's "sentence and penalty were established by court in California; therefore relief at the Director's Level of Review cannot be afforded the appellant." Administrative review therefore cannot resolve any of the issues raised in plaintiff's appeal.

47. Moreover, pursuit of administrative review is futile for additional reasons. In subsequent proceedings in Beardslee's case, the Court of Appeals for the Ninth Circuit observed that "by regulation the California Department of Corrections does not permit challenges to anticipated action[s]. 15 Cal. Code Regs. § 3084.3(c)(3)." *Beardslee v. Woodford*, 395 F.3d 1064, 1069 (9th Cir. 2005). Thus, no administrative challenge to the lethal injection protocol is possible here.

48. Plaintiff's challenge to the lethal injection protocol that the Department of Corrections intends to use to execute him is ripe for adjudication now.

## PRAYER FOR RELIEF

WHEREFORE, Michael Angelo Morales prays for:

1. Temporary, preliminary, and permanent injunctive relief to enjoin the defendants, their officers, agents, servants, employees, and all persons acting in concert with them from executing plaintiff by lethal injection using Procedure No. 770;

2. In the event that Procedure No. 770 is not enjoined in its entirety as violating the Eighth and Fourteenth Amendments, temporary, preliminary, and permanent injunctive relief to enjoin defendants, their officers, agents, servants, employees, and all persons acting in concert with them from administering pancuronium bromide during the execution process;

3. In the event that Procedure No. 770 is not enjoined in its entirety as violating the Eighth and Fourteenth Amendments, temporary, preliminary, and permanent injunctive relief to enjoin defendants, their officers, agents, servants, employees, and all persons acting in concert with them from allowing personnel who lack sufficient training, credentials, certification, experience, or proficiency to conduct the lethal injection procedure;

4. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1983 and the laws of the United States;

5. Costs of suit; and

6. Any such other relief as the Court deems just and proper.

MICHAEL ANGELO MORALES

By: _____
      One of his attorneys

Dated: January 11, 2006

David A. Senior (# 108759)
McBreen & Senior
1880 Century Park East, Suite 1450
Los Angeles, CA 90067
Phone: (310) 552-5300
Fax: (310) 552-1205
dsenior@mcbreensenior.com

COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF
CHICAGO_1355066_6

John R. Grele (# 167080)
Law Offices of John R. Grele
703 Market Street, Suite 550
San Francisco, CA 94103
Phone: (415) 348-9300
Fax: (415) 348-0364
jgrele@earthlink.net

Richard P. Steinken
Benjamin J. Bradford
Janice H. Lam
Stephanie L. Reinhart
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611-7603
Phone: (312) 923-2938
Fax: (312) 840-7338
rsteinken@jenner.com

Ginger D. Anders
Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington DC 20005-3823
Phone: (202) 639-6000
Fax: (202) 639-6066
ganders@jenner.com

COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF

CHICAGO_1355066_6

# **VERIFICATION**

I, David A. Senior, hereby declare:

1.  I am a member of the State Bar of California and admitted to practice before all courts of this state, as well as this Court, the U.S. Court of Appeals for the Ninth Circuit, and the U.S. Supreme Court. I am appointed counsel for Plaintiff Michael Angelo Morales in this matter. I have personal knowledge of the matters set forth in this complaint, except as otherwise indicated, and I could and would competently testify to them if called upon to do so.

2.  Mr. Morales is in custody and restrained of his liberty in a county other than where my office is situated. Additionally, many of the facts alleged herein are more within my knowledge. Therefore, I make this verification on his behalf.

3.  I have reviewed the foregoing complaint. I verify that all of the alleged facts that are not otherwise supported by citations to the record or declarations to the attached petitions are true and correct to my own knowledge, except as to any matters stated in it on information and belief, which I am informed and believe are true and correct.

4.  I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on January 11, 2006 in Los Angeles, California.

By: _____
      David A. Senior

Subscribed and sworn to before me
this _____ day of _____.

_____

14
COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF
CHICAGO_1355066_6