David A. Senior (# 108759)
McBreen & Senior
1880 Century Park East, Suite 1450
Los Angeles, CA 90067
Phone: (310) 552-5300
Fax: (310) 552-1205
dsenior@mcbreensenior.com

John R. Grele (# 167080)
Law Offices of John R. Grele
703 Market Street, Suite 550
San Francisco, CA 94103
Phone: (415) 348-9300
Fax: (415) 348-0364
jgrele@earthlink.net

Richard P. Steinken
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611-7603
Phone: (312) 923-2938
Fax: (312) 840-7338
rsteinken@jenner.com

Attorneys For Plaintiff MICHAEL ANGELO MORALES

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL ANGELO MORALES,<br><br>Plaintiff,<br><br>v.<br><br>RODERICK Q. HICKMAN, Secretary of the California Department of Corrections; STEVEN ORNOSKI, Warden, San Quentin State Prison, San Quentin, CA; and DOES 1-50,<br><br>Defendants. | Case No. C 06 0219 (MCC)<br><br>**DEATH PENALTY CASE<br>MOTION FOR EXPEDITED DISCOVERY AND TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Date: January 20, 2006<br>Time: 9am<br>Courtroom: 7 |

## I. NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that as soon as this motion can be set for hearing on an emergency basis, plaintiff will move this court for the following orders:

Pursuant to Fed.R.Civ.P. 26(d), plaintiff moves for an order permitting discovery to go forward without compliance with the procedures and timelines set out in Fed.R.Civ.P. 26(f). Plaintiff asks this court to 1) allow discovery to proceed immediately; 2) require the parties to serve discovery requests personally, by fax, or by electronic mail; 3) require the parties to serve objections to discovery requests in person, by fax, or by electronic mail within one day of being served; 4) require the party serving objections to be available for a meet and confer session on the day following the service of objections even if objections are served on a Friday or the day before a holiday, and 5) establish a briefing schedule for motions to compel pursuant to which all papers would be served in person, by fax, or by electronic mail, and by which the opposition and reply papers would each be filed and served one day after filing and service of, respectively, the moving and opposition papers. Pursuant to Fed.R.Civ.P. 37 and Local Rule 37, plaintiff also moves for an order compelling production of documents related to California's lethal injection procedure, which documents shall be described below.

In light of plaintiff's impending execution, plaintiff asks this Court to set a briefing schedule that will allow this motion to be heard on January 20, 2006. Establishing expedited discovery procedures for this litigation now is necessary so that, should this court deny plaintiff's motion for a preliminary injunction, plaintiff will have sufficient time to conduct discovery in order to develop support for a motion for summary judgment and/or a stay of execution.

2

Expedited Motion to Compel Production of Documents

## II. MEMORANDUM OF POINTS AND AUTHORITIES

### A. Procedural Background

Plaintiff is confined in San Quentin State Prison under sentence of death. On January 6, 2006, the clerk of the Superior Court of Ventura issued a Notice of Public Session scheduling a public session on January 18, 2006 for the purpose of the setting of the date of execution of judgment of death of February 21, 2006. On January 12, 2006, the Superior Court of Ventura issued an Order continuing the Notice of Public Session to January 31, 2006

Plaintiff is concurrently filing a complaint under 42 U.S.C. § 1983 challenging California's lethal injection procedure. Plaintiff alleges that the administration of the drugs that constitute California's lethal injection procedure (to the extent it has been made public) creates an unacceptable risk that plaintiff will experience a level of pain and suffering during his execution that offends the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff will be filing a motion for a temporary restraining order and preliminary and permanent injunctive relief to halt the execution while his claims can be litigated.

### B. Good Cause Exists to Allow Discovery to Proceed Immediately

Fed.R.Civ.P. 26(d) provides as a general rule that no discovery shall take place before the parties have met and conferred as required by Fed.R.Civ.P. 26(f). Both Rule 26(d) and Rule 26(f) permit this Court to relieve the parties from the procedures otherwise required by Rule 26(f). This Court should do so here.

The negotiated give and take contemplated by Rule 26(f) has little application to this case. Rule 26(f) provides in pertinent part:

> "Except in categories of proceedings exempted from initial disclosure under Rule 26(a)(1)(E), or when otherwise ordered, the parties must, as soon as practicable, and in any event at least 21 days before a scheduling conference is held or a scheduling order is due under Rule 16(b), confer to consider the nature and bases of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures contemplated by Rule 26(a)(1), and to develop a proposed discovery plan[.]"

No scheduling conference is currently set. Rule 16(b) contemplates that such conferences will be set approximately 90 days after the appearance of a defendant. Obviously, this schedule is unworkable in this case. Even if plaintiff could convince defendants to meet and confer immediately, the conference would be an idle act. In Beardslee v. Woodford, 395 F.3d at 1075-76, the Ninth Circuit noted that the State "tendered only minimal evidence in response to Beardslee's claims" and inexplicably declined to produce significant portions of Procedure No. 770 in response to discovery requests similar to those tendered to defendants here. In the present case, the Office of the California Attorney General and the Office of the District Attorney for San Joaquin County have already stated in letters to counsel for plaintiff that they will not provide any documents requested by plaintiff without a court order mandating such production. Thus, there is no point in meeting at this point to frame a discovery plan.

Allowing discovery to proceed immediately under the requested expedited procedures balances the interests of both sides. Plaintiff has an interest in developing meritorious constitutional claims that can be litigated as fully as possible before it is too late. Defendants have an interest in litigating this matter as quickly as possible so that, if a preliminary injunction is issued but defendants ultimately prevail, a new execution date can be set sooner rather than later.

Because good cause exists, this Court should order that discovery may proceed.

C. Defendants Should be Compelled to Produce Documents

1. Procedural History

On January 5, 2006, at approximately 2:00 p.m. (PST), counsel for plaintiff delivered a letter seeking production of documents necessary for a full and fair adjudication of the claims arising in connection with plaintiff's imminent execution to Mr. James Willett, the District Attorney for San Joaquin County, and to Mr. Keith Borjon, the Supervising Deputy Attorney General assigned to this case. A copy of that letter is attached hereto as Exhibit A. Later, on January 5, 2006, counsel for plaintiff called Messrs. Willett and Borjon to inquire if a response to the letter would be forthcoming. Mr. Borjon promised a response on January 6.

On January 6, 2006, Senior Assistant Attorney General Dane R. Gillette responded to plaintiff's request by letter, which stated "Absent a court order we will not provide any of the documents requested in your letter. That said, and without conceding the existence of any item or waiving any objections to their disclosure, I have attached a complete copy of the redacted version of San Quentin Operational Procedure No. 770." On January 10, 2006, Chuck Schulz, the Supervising Deputy District Attorney for San Joaquin County responded to plaintiff's request with a letter that stated "Absent a court order, the San Joaquin County District Attorney's office will not provide any of the documents requested in your letter dated January 5, 2006."

2. <u>Documents to be Produced</u>

Plaintiff sought production of the following documents:

- A complete copy of the current version of San Quentin Operational Procedure No. 770. On January 6, 2006, defendants provided plaintiffs with what they termed "a complete copy of the redacted version" of Operational Procedure No. 770, showing a revision date of June 13, 2003.
- Complete copies of all previous versions of the Operational Procedure No. 770.
- All documents relating to the creation or provenance of Operational Procedure No. 770.
- All documents relating to any research, investigations, or tests related to the creation of Operational Procedure No. 770.
- All documents relating to the administration of lethal injection which describes any revisions or changes in the process from its inception to the present.
- All documents relating to any changes in factors used by the California Department of Corrections to take into consideration the weight, age, and/or physical condition of the inmate in administering the dosage of chemicals, and the relation between the timing of the lethal injection and the time and quantity of food last ingested by the inmate.
- Complete copies of any other publications or writings governing California's lethal injection procedure.

5
Expedited Motion to Compel Production of Documents

- All documents relating to the decision to implement lethal injection in California as it is currently practiced.
- A complete copy of the "Execution Security Plan," referred to on p. 2 of the June 13, 2003 revision of Procedure No. 770.
- All documents relating to "staff assignments on the execution detail," referred to on p. 12 of the June 13, 2003 revision of Procedure No. 770.
- All documents relating to the readiness, operational, and equipment checks performed at various intervals preceding the execution, as stated in the June 13, 2003 revision of Procedure No. 770.
- All documents relating to the proper control of the necessary chemicals, referred to on p. 12 of the June 13, 2003 revision of Procedure No. 770.
- All documents relating to obtaining the lethal injection chemicals, referred to on p. 17 of the June 13, 2003 revision of Procedure No. 770.
- All documents relating to the Execution Team who will execute plaintiff, including but not limited to the identities of the team members and the Lieutenant in Charge of the Chamber; the role that each member is to play in plaintiff's execution; the training that each member has received for his or her intended role; each member's employment history, including discipline and complaints; any medical training the members have received at any time; any history of drug use; any criminal records, whether or not resulting in conviction; and any background checks performed on the team members.
- All documents relating to each one of the following tasks in the execution process of Mr. Morales, including but not limited to any descriptions or procedures for the task; the identities of persons in charge of the task; the training that each person has received for his or her intended role; each person's employment history, including discipline and complaints; any medical training that they have received at any time; any history of drug use; any criminal records, whether or not resulting in conviction; and any background checks done on the team members:

Expedited Motion to Compel Production of Documents

- Pre-execution examination of plaintiff's physical health, including assessment of plaintiff's venous integrity and ability to achieve peripheral IV access;
- Drug mixing;
- Syringe preparation;
- IV line set-up;
- Patency of catheters/IV lines;
- Inmate removal from cell and strap down;
- Catheter insertion;
- Drug administration;
- Assessment of plane anesthesia;
- EKG monitoring;
- Pronouncement of death.

- All documents relating to "the administration of the lethal injection," referred to on p. 19 of the June 13, 2003 revision of Procedure No. 770.
- All documents relating to the State Physician and staff physician, referred to on p. 19 of the June 13, 2003 revision of Procedure No. 770, including but not limited to their identities, employment history, medical training, any history of drug use, criminal history, disciplinary history, history of malpractice or complaints wherever registered, and any background checks performed on them.
- All documents relating to the procedures to be used to monitor plaintiff's heart as referred to on p. 19 of the June 13, 2003 revision of Procedure No. 770.
- All documents relating to the mixing of the drugs and the preparation of the syringes of sodium pentothal, pancuronium bromide, and potassium chloride to be used in the execution process.
- All documents relating to the decision not to prepare a backup syringe of sodium pentothal but to prepare syringes of pancuronium bromide and potassium chloride, as referred to on pp. 26-27 of the June 13, 2003 revision of Procedure No. 770.

- All documents relating to procedures to be used to revive plaintiff in the event a stay or reprieve is issued after the execution process has begun but before it is complete.
- All documents relating to what constitutes proper storage of all chemicals and equipment, as referred to on p. 30 of the June 13, 2003 revision of Procedure No. 770.
- All documents relating to the "injection team," as referred to on p. 32 of the June 13, 2003 revision of Procedure No. 770, including but not limited to the qualifications required to serve on the injection team; identities of the team members; employment history, including discipline and complaints; medical training; any history of drug use; criminal history, whether or not resulting in conviction; and background checks performed on the team members.
- All documents relating to the person or persons in the pharmacy who will issue the "necessary agents" to a member of the lethal injection team, as referred to on p. 32 of the June 13, 2003 revision of Procedure No. 770, including but not limited to their identities, employment history, medical training, any history of drug use, criminal history, disciplinary history, history of malpractice or complaints wherever registered, and any background checks performed on them.
- All documents relating to the procedure for rolling back the lip of the diaphragm on the "Y" injection site, as referred to on p. 36 of the June 13, 2003 revision of Procedure No. 770.
- All documents relating to the decision to administer a saline solution between the pancuronium bromide and the potassium chloride, as detailed on the CDC web site.
- All documents relating to the decision to prepare the syringe of sodium pentothal last, as referred to on p. 37 of the June 13, 2003 revision of Procedure No. 770.
- All documents relating to the method by which it is determined when the execution will proceed so that the syringe of sodium pentothal can be prepared, as referred to on p. 37 of the June 13, 2003 revision of Procedure No. 770.
- All documents relating to the decision to use a single syringe of five grams of diluted sodium pentothal as opposed to a continuous flow.

Expedited Motion to Compel Production of Documents

- All documents relating to what constitutes a "person qualified, trained or otherwise authorized by law" to insert the angiocath, as referred to on p. 39 of the June 13, 2003 revision of Procedure No. 770.
- All documents relating to what constitutes a usable vein, as referred to on p. 39 of the June 13, 2003 revision of Procedure No. 770, and the timing and determination of whether or not plaintiff possesses usable veins.
- All documents relating to procedures to be used to execute plaintiff in the event a usable vein cannot be found.
- All documents relating to the method by which it will be determined that a malfunction or blockage in the first line exists, as referred to on p. 32 of the June 13, 2003 revision of Procedure No. 770.
- All documents relating to how, in the event of a malfunction or blockage in the first line during the administration of the sodium pentothal, it will be determined that plaintiff has achieved a sufficient level of unconsciousness to allow the execution to proceed.
- All documents relating to how, if plaintiff has not been rendered unconscious by the sodium pentothal, he will be able to communicate that fact to the injection team, execution team, or assembled witnesses in light of the administration of the paralytic agent pancuronium bromide.
- All execution logs of all prisoners executed by lethal injection.
- All documents relating to the conduct of prior executions in California by lethal injection, including but not limited to autopsy reports, photographs, diagrams, toxicology reports, and videotapes and audiotapes of the executions.
- All documents relating to blood tests performed for previous executions in California by lethal injection, including but not limited to toxicology reports measuring the presence of the execution chemicals in the bloodstream.
- All documents relating to blood tests performed on other inmates executed in California by lethal injection, including but not limited to toxicology reports measuring the presence of the execution chemicals in the bloodstream.

- All correspondence by the California Department of Corrections regarding the use of lethal injection.
- All documents relating to the assessment of the competency of the lethal injection teams assigned to plaintiff's execution and to previous executions carried out in California.

In plaintiff's January 5, 2006 letter to counsel for defendants, plaintiff offered to enter into any appropriate protective order to protect any confidentiality concerns raised by defendants to ensure plaintiff's access to the documents requested. Nonetheless, defendants have refused to provide any of the documents requested in the absence of a court order, although a complete copy of the redacted version of Procedure No. 770 was provided.

Plaintiff is entitled to discovery of all matter relevant to the subject matter of the action. (Fed.R.Civ.P. 26(b).) The subject matter of the action is clear. As Procedure No. 770 sets out, plaintiff will be put to death by the serial administration of three chemicals: sodium thiopental,[1] pancuronium bromide, and potassium chloride. Sodium thiopental is administered first and renders the inmate unconscious. Potassium chloride, the final drug administered in the sequence, interferes with the heart's contractions, causing cardiac arrest and death. The second drug, pancuronium bromide, is a neurotoxin that completely paralyzes plaintiff's voluntary muscles and breathing.[2]

Defendants cannot seriously dispute that if plaintiff is not properly anesthetized by the administration of sodium thiopental, he will experience, in the following order: 1) the conscious experience of prolonged suffocation—which in itself is an Eighth Amendment violation—while being completely paralyzed; and 2) excruciating, burning pain in his veins from the potassium chloride, another Eighth Amendment violation.

---

[1] Sodium thiopental is the generic name for the drug Sodium Pentothal.

[2] The purpose and effect of these drugs are described in Dr. Mark Heath's declaration in support of plaintiff's companion motion for a temporary restraining order, preliminary injunction, and order to show cause.

A shocking amount of information about the administration of the California lethal injection procedure has not been made public. Each set of the requested documents seeks information about the procedures by which plaintiff will be put to death and the qualifications and training of the people responsible for correctly implementing those procedures. The material sought is clearly relevant to the subject matter of this action.

The "importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues," outweigh whatever burden that gathering and producing this information may place on defendants. (Fed.R.Civ.P. 26(b)(2).) It is unlikely that the requested information will fill more than a couple of banker's boxes. By contrast, plaintiff's interest in vindicating his constitutional rights and in holding California's veiled lethal injection procedure up to public scrutiny cannot be overstated. The documents should be produced.

III. CONCLUSION

For the foregoing reasons, plaintiff's motions should be granted.

MICHAEL ANGELO MORALES


By:        /s/
           John R Grele

Dated: January 13, 2006

David A. Senior (# 108759)
McBreen & Senior
1880 Century Park East, Suite 1450
Los Angeles, CA  90067
Phone: (310) 552-5300
Fax:  (310) 552-1205
dsenior@mcbreensenior.com

John R. Grele (# 167080)
Law Offices of John R. Grele
703 Market Street, Suite 550
San Francisco, CA  94103
Phone: (415) 348-9300
Fax: (415) 348-0364
jgrele@earthlink.net

Expedited Motion to Compel Production of Documents

Richard P. Steinken
Benjamin J. Bradford
Janice H. Lam
Stephanie L. Reinhart
Jenner & Block LLP
One IBM Plaza
Chicago, IL  60611-7603
Phone:  (312) 923-2938
Fax:  (312) 840-7338
rsteinken@jenner.com

Ginger D. Anders
Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington DC 20005-3823
Phone:  (202) 639-6000
Fax:  (202) 639-6066
ganders@jenner.com