\*\*E-filed 2/16/06\*\*

DESIGNATED FOR PUBLICATION

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| Michael Angelo MORALES,<br><br>  Plaintiff,<br><br>  v.<br><br>Roderick Q. HICKMAN, Secretary of the California Department of Corrections and Rehabilitation; Steven W. Ornoski, Acting Warden of San Quentin State Prison; and Does 1-50,<br><br>  Defendants. | Case Number C 06 219 JF<br>Case Number C 06 926 JF RS<br><br><u>DEATH-PENALTY CASE</u><br><br>FINAL ORDER RE DEFENDANTS' COMPLIANCE WITH CONDITIONS; ORDER DENYING PLAINTIFF'S MOTIONS FOR DISCOVERY OF INFORMATION AND FOR RECONSIDERATION<br><br>[Docket No. 64] |

Pursuant to this Court's order of February 14, 2006, denying conditionally Plaintiff's motion for a preliminary injunction, Defendants have submitted to the Court under seal the names and curricula vitae of two board-certified anesthesiologists who will, as directed in the order,

> independent[ly] verif[y], through direct observation and examination . . . in a manner comparable to that normally used in medical settings where a combination of sedative and paralytic medications is administered, that Plaintiff in fact is unconscious before either pancuronium bromide or potassium chloride is injected.  Because Plaintiff has raised a substantial question as to whether a person rendered unconscious by sodium thiopental might regain consciousness during the administration of pancuronium

> bromide or potassium chloride, the presence of [the anesthesiologists] shall be continuous until Plaintiff is pronounced dead.

Defendants also have publicly filed copies of the curricula vitae "with personal identifiers redacted" so that the anesthesiologists may preserve their anonymity. *Morales v. Hickman*, ___ F. Supp. 2d ___, Nos. C 06 219 JF & C 06 926 JF RS, 2006 WL 335427, at *8 (N.D. Cal. Feb. 14, 2006) (footnote omitted).

Plaintiff has filed a request for the release of this information (subject to a protective order) so that he may investigate whether the anesthesiologists have the credentials claimed, whether they have any disciplinary or litigation history that would cause concern about their experience or expertise, and whether they have participated in previous executions—including, in particular, the execution of Stanley Tookie Williams, because "[i]t appears that the formal log [of the Williams execution] has been altered without any indication as to who made the alteration." *Id.* at *6 n.13. Plaintiff also requests additional information with respect to the anesthesiologists, including information about lawsuits, criminal history, and references. Alternatively, Plaintiff requests that the Court obtain and review these materials *in camera*.

To the extent that Plaintiff asks that the information in question be released to his counsel, the request will be denied. The Court's order of February 14, 2006, contains specific provisions for assuring that the persons monitoring the execution retain their anonymity, and it may be presumed that the individuals whom Defendants have designated for that purpose have undertaken their responsibilities with that understanding. However, Plaintiff's suggestion that the Court should review additional information *in camera* in order to make a proper determination of the individuals' qualifications is well-taken. Accordingly, in response to Plaintiff's suggestion, the Court this morning telephonically directed Defendants to submit declarations under penalty of perjury that respond to these concerns. Defendants also have filed publicly a declaration from Bruce M. Slavin, the General Counsel of the Department of Corrections and Rehabilitation, and Defendants have agreed to submit under seal personal declarations from the two anesthesiologists: Slavin's declaration contains, and Defendants'

2

Case No. C 06 219 JF & C 06 926 JF RS
FINAL ORDER RE DEFENDANTS' COMPLIANCE WITH CONDITIONS; ORDER DENYING PLAINTIFF'S MOTIONS FOR DISCOVERY OF INFORMATION AND FOR RECONSIDERATION
(DPSAGOK)

counsel represents that the anesthesiologists' declarations will contain, statements under penalty of perjury that the anesthesiologists have the credentials set forth in their respective curricula vitae; that they do not have any criminal, disciplinary, or litigation history that would bear upon their experience or expertise; and that they have not participated in any previous executions. Subject to the actual submission and review by the Court of the anesthesiologists' declarations (which will occur after the Court issues the present order) and considering Defendants' counsel's representations as to what the declarations will show[1] together with Slavin's declaration[2] and the declaration of Defendants' counsel and the curricula vitae received by the Court on February 15, 2006, the Court finds and concludes that the two anesthesiologists are "qualified individuals" as defined in the Court's order of February 14, 2006. *See id.* at *8.

Plaintiff also has filed comments as directed by the Court's order. *See id.* Plaintiff contends that there has been insufficient time for meaningful review of the conditions under which he will be executed since the Court issued its order of February 14, 2006. In particular, Plaintiff suggests that Defendants might seek to comply with the order by having the

---

[1] The Court will notify counsel for Plaintiff as soon as it has the anesthesiologists' declarations in hand. Obviously, if the contents of the declarations differ in any respect from counsel's representations as to what the declarations will contain, the Court will take appropriate action and retains jurisdiction to do so. The present order is issued at this time solely to enable Plaintiff to pursue timely appellate review.

[2] Slavin has declared that:
> I have personally spoken to the anesthesiologists whose Curriculum [sic] Vitae (CV) were submitted to this court yesterday as Exhibits A and B to the declaration of Dane R. Gillette in support of Defendants' Response to Court's Conditional Denial of Preliminary Injunction. I confirmed that the information set forth in both CVs is correct. I also confirmed that neither doctor has ever participated in or observed an execution. I further confirmed that neither doctor has ever been convicted of a felony, been disciplined by the medical board of any state, or suffered an adverse judgment related to his practice of medicine. I also confirmed that both doctors are licensed to practice medicine in the State of California and currently practice in this state. This information was obtained through conversations with each doctor. My office is in the process of obtaining verification of this information through independent sources.

Slavin Decl. ¶ 2.

3

Case No. C 06 219 JF & C 06 926 JF RS
FINAL ORDER RE DEFENDANTS' COMPLIANCE WITH CONDITIONS; ORDER DENYING PLAINTIFF'S MOTIONS FOR DISCOVERY OF INFORMATION AND FOR RECONSIDERATION
(DPSAGOK)

anesthesiologists do nothing more than sit in the antechamber and attempt to view the execution process. Finally, Plaintiff expresses concern that applicable guidelines of the American Society of Anesthesiologists may not be observed.

In fact, however, the relevant terms of the Court's order of February 14, 2006, order are quite specific. As set forth above, the order directs the anesthesiologists to "independent[ly] verif[y], through direct observation and examination . . . in a manner comparable to that normally used in medical settings where a combination of sedative and paralytic medications is administered, that Plaintiff in fact is unconscious before either pancuronium bromide or potassium chloride is injected." *Id.* This language necessarily requires both that at least one of the anesthesiologists be present in the execution chamber and that the anesthesiologists' duties be performed in accordance with current professional medical standards. In particular, the anesthesiologists may use and would be expected to use whatever monitoring equipment a board-certified anesthesiologist would deem necessary to ensure that a patient to whom a combination of a barbiturate and a paralytic have been administered is fully unconscious at all times following the administration of sodium thiopental.[3]

Significantly, the precise terms of the Court's order of February 14, 2006 were influenced to a very large extent by the opinions of Plaintiff's own medical expert, Dr. Mark Heath. In his declaration submitted two days ago, Dr. Heath stated:

---

[3]Slavin has declared further that:
> I have spoken with both doctors and the warden of San Quentin about the participation of these doctors in the scheduled execution of Michael Morales. I confirmed that one doctor will be physically present in the execution chamber to monitor the consciousness of Mr. Morales using whatever equipment or other techniques he deems medically appropriate. The other doctor will be present outside the chamber as an observer. Other than the monitoring of Mr. Morales by the doctor who will be present in the execution chamber, the process by which San Quentin carries out an execution has not been changed from that set forth in Operations Procedure No. 770.

Slavin Decl. ¶ 3. To the extent that Slavin's declaration might be read to imply otherwise, the Court construes Slavin's use of the word "monitor" to mean that the anesthesiologists will take all medically appropriate steps to ensure that Plaintiff is and remains unconscious after Plaintiff is injected with sodium thiopental and before he is injected with pancuronium bromide or potassium chloride.

4

Case No. C 06 219 JF & C 06 926 JF RS
FINAL ORDER RE DEFENDANTS' COMPLIANCE WITH CONDITIONS; ORDER DENYING PLAINTIFF'S MOTIONS FOR DISCOVERY OF INFORMATION AND FOR RECONSIDERATION
(DPSAGOK)

> Regarding the possibility of "the presence of a qualified individual approved by the Court to insure that the Plaintiff is in fact unconscious," it is my strongly-held opinion that this would . . . represent a very positive step toward resolving concerns about the humaneness of the lethal injection procedure. While no complex human endeavor can ever be completely error-free, it is not disputable that the probability of error is reduced when complex tasks are performed by trained and experienced personnel. [¶] . . . Thus, a "qualified individual" would be someone with significant training and experience in the provision of general anesthesia, such as an anesthesiologist or Certified Registered Nurse Anesthetist (CRNA). The presence of a qualified individual at the "bedside" of the condemned prisoner, with the ability and intent to physically examine the prisoner and to view vital sign monitors, would meet the standard of care for general anesthesia, would meet the standard of care for veterinary euthanasia by potassium chloride administration, and could, if properly done, reasonably "insure that Plaintiff is in fact unconscious." ¶ . . . In summary, it is my strongly-held opinion that the inclusion of an individual with demonstrated experience and training in the provision of general anesthesia and the assessment of anesthetic depth is an easily-taken step that would greatly reduce the possibility of an inhumane execution.

4th Heath Decl. ¶¶ 10, 11, & 13. The Court intentionally fashioned its order so that the anesthesiologists would perform their duties precisely as contemplated by Dr. Heath. *Cf.* 2006 WL 335427, at *8 n.16.

While the Court believes that its prior order was sufficiently clear, Plaintiff points out that Defendants nonetheless may have misinterpreted it, as at least one Department of Corrections and Rehabilitation official has been quoted as suggesting to the news media that the anesthesiologists merely "'will be brought in as experts to observe and then report back to the court.'" Louis Sahagun, "Anesthesiologist to Monitor Execution," L.A. Times, Feb. 16, 2006, *available at http://www.latimes.com/news/local/la-me-morales16feb16,0,1949969.story?coll=la-headlines-california*. However, Defendants themselves as well as the anesthesiologists are presumed to understand and comply with the order in the context of the medical evidence provided by Dr. Heath and Defendants' medical expert, Dr. Mark Dershwitz. It has been demonstrated to the Court's satisfaction that the anesthesiologists designated by Defendants are qualified professionals who will use their professional judgment not merely to observe the execution but to *ensure* that Plaintiff is and remains unconscious before he is injected with

pancuronium bromide and potassium chloride.  The anesthesiologists necessarily are expected and required to abide by all appropriate medical standards for examination and documentation.  Nothing in the Slavin declaration suggests that the Department of Corrections and Rehabilitation has a different view.

        The Court concludes that, in accordance with its order of February 14, 2006, Defendants have taken appropriate steps to ensure that Plaintiff will not be subjected to a risk of unnecessary pain when he is executed.  Accordingly, to the extent that Plaintiff's latest submission may be construed as a motion for reconsideration of the Court's prior order, such motion is denied.  Defendants may proceed with Plaintiff's execution as scheduled subject to the conditions set forth in the Court's order of February 14, 2006, and reaffirmed in the present order.

        IT IS SO ORDERED.

DATED: February 16, 2006

_____
JEREMY FOGEL
United States District Judge

Case No. C 06 219 JF & C 06 926 JF RS
FINAL ORDER RE DEFENDANTS' COMPLIANCE WITH CONDITIONS; ORDER DENYING PLAINTIFF'S MOTIONS FOR DISCOVERY OF INFORMATION AND FOR RECONSIDERATION
(DPSAGOK)