David A. Senior (# 108759)
McBreen & Senior
1880 Century Park East, Suite 1450
Los Angeles, CA  90067
Phone:  (310) 552-5300
Fax:  (310) 552-1205
dsenior@mcbreensenior.com

John R. Grele (# 167080)
Law Offices of John R. Grele
703 Market Street, Suite 550
San Francisco, CA  94103
Phone:  (415) 348-9300
Fax:  (415) 348-0364
jgrele@earthlink.net

Richard P. Steinken (admitted *pro hac vice*)
Jenner & Block LLP
One IBM Plaza
Chicago, IL  60611-7603
Phone:  (312) 923-2938
Fax:  (312) 840-7338
rsteinken@jenner.com

Attorneys For Plaintiff MICHAEL ANGELO MORALES

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL ANGELO MORALES, ) | Case No. C 06 0219 (JF) (RS) |
| ) | C 06 926 (JF) (RS) |
| ) | |
| ) | |
| Plaintiff, ) | **PLAINTIFF'S MOTION TO** |
| ) | **COMPEL DISCOVERY** |
| ) | |
| ) | |
| v. ) | |
| ) | |
| JEANNE WOODFORD, Acting Secretary of ) | **Date: April 20, 2006** |
| the California Department of Corrections; ) | **Time: 2 pm** |
| EDDIE YLST, Acting Warden, San Quentin ) | **Court: courtroom 4** |
| State Prison, San Quentin, CA; and DOES ) | |
| 1-50, ) | |
| Defendants. ) | |
| ) | |

NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that Plaintiff Michael Morales will move this Court on the above date and time for an order compelling Defendants to produce discovery and to answer interrogatories. Plaintiff will rely upon the attached Memorandum of Points and Authorities, the Declaration of John R Grele, and the papers and pleadings on file in this matter.

The basis for this Motion is that Defendants have not properly responded under the Federal Rues of Civil Procedure; that Defendants have not properly asserted their privilege objections and they are, therefore, waived; that the privileges asserted by Defendants are inapplicable, particularly given the protective orders in place; and, that Defendants assertions of relevancy objections are incorrect under the law.

Respectfully submitted,

Dated: April 14, 2006

John R, Grele

David A. Senior (# 108759)
McBreen & Senior
1880 Century Park East, Suite 1450
Los Angeles, CA 90067
Phone: (310) 552-5300
Fax: (310) 552-1205
dsenior@mcbreensenior.com

John R. Grele (# 167080)
703 Market Street, Suite 550
San Francisco, CA 94103
Phone: (415) 348-9300
Fax: (415) 348-0364
jgrele@earthlink.net

Motion to Compel Discovery                    i
C 06-0129 (JF) (RS)  & C 06-926 (JF) (RS)

1    Richard P. Steinken (admitted *pro hac vice*)
     Janice H. Lam (admitted *pro hac vice*)
2    Stephanie L. Reinhart (admitted *pro hac vice*)
     Jenner & Block LLP
3    One IBM Plaza
     Chicago, IL  60611-7603
4    Phone:  (312) 923-2938
     Fax:  (312) 840-7338
5    rsteinken@jenner.com

6
     Ginger D. Anders (admitted *pro hac vice*)
7    Jenner & Block LLP
     601 Thirteenth Street, NW
8    Suite 1200 South
     Washington DC 20005-3823
9    Phone:  (202) 639-6000
     Fax:  (202) 639-6066
10   ganders@jenner.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion to Compel Discovery         i
C 06-0129 (JF) (RS)  & C 06-926 (JF) (RS)

David A. Senior (# 108759)
McBreen & Senior
1880 Century Park East, Suite 1450
Los Angeles, CA  90067
Phone:  (310) 552-5300
Fax:  (310) 552-1205
dsenior@mcbreensenior.com

John R. Grele (# 167080)
Law Offices of John R. Grele
703 Market Street, Suite 550
San Francisco, CA  94103
Phone :  (415) 348-9300
Fax:  (415) 348-0364
jgrele@earthlink.net

Richard P. Steinken (admitted *pro hac vice*)
Jenner & Block LLP
One IBM Plaza
Chicago, IL  60611-7603
Phone :  (312) 923-2938
Fax:  (312) 840-7338
rsteinken@jenner.com

Attorneys For Plaintiff MICHAEL ANGELO MORALES

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL ANGELO MORALES, | Case No. C 06 0219 (JF) (RS)<br>C 06 926 (JF) (RS) |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DISCOVERY** |
| v. | |
| JEANNE WOODFORD, Acting Secretary of the California Department of Corrections; EDDIE YLST, Acting Warden, San Quentin State Prison, San Quentin, CA; and DOES 1-50, | **Date: April 20, 2006**<br>**Time: 2 pm**<br>**Court: courtroom 4** |
| Defendants. | |

**TABLE OF CONTENTS**

I.      INTRODUCTION…………………………………………………...………....…..1

II.     ARGUMENT………………………………………………………………..…..4

        A.      Defendants Have Not Properly Responded…………………………….…..5

        B.      Plaintiff's Discovery Requests Seek Highly Relevant Information…………….…..5

        C.      Defendants' Assertion of the Attorney-Client, Work Product and Deliberative Process
                Privilege Fails……………………………………...…………………....13

                1.      Defendants' Boilerplate Objections to Plaintiff's Document Requests Are
                        Insufficient to Assert a Privilege………………………….………..……13

                2.      Defendants' Waived Any Privileges As to Their Responses to Plaintiff's First
                        Set of Document Requests by Failing to Produce a Privilege Log in a Timely
                        Manner……………………………………………...……………13

                3.      In Any Event, the Privileges are Inapplicable……………………….……14

        D.      The Right of Privacy…………………………………………………….……15

        E.      The Federal Official Information Privilege is Inapplicable…………………….……16

III.    DISCOVERY REQUESTS……………………………………………….....19

        A.      First Set of Interrogatories……………………………………………….20

        B.      Plaintiff's Second Set of Interrogatories………………………………………...21

        C.      Plaintiff's First Document Request………………………………………...23

        D.      Second Set of Document Requests……………………………………………...26

IV.     CONCLUSION……………………………………………………………30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

*Beardslee v. Woodford*, 395 F.3d 1064, 1076 (9th Cir. 2005)……………………………..6

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005)…………………………………………………..5, 13

*Charles O. Brady Trust v. Zenith Capital LLC*……………………………………………...16

*Cooper v. Rimmer,* 379 F.3d 1029, 1035 (9th Cir.2004)…………………………...…..7

*Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995)…...……………………...…6

*Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004)………………………………15

*Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001)…………………………...……14

*Hickman v. Taylor*, 329 U.S. 495, 507 (1947)…………………………………………….6

*Ins. Co. v. U.S. Dist. Court for the Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1988)...15

*Jaffee v. Redmond*, 518 U.S. 1 (1996)…………………………………………………...16

*Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987)………………………19

*Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 511 F.2d 192, 196 (9th Cir. 1975)…………6

*Kerr v. U.S.D.C.*, 426 U.S. 394 (1976)………………………………………………...18

*Kerr v. U.S.D.C.*, 511 F.2d 192 (9th Cir. 1975)…………………………………………18

*Larson v. Harrington,* 11 F. Supp. 2d 1198 (E.D. Cal. 1998)………………...…………14

*North Pacifica, LLC v. City of Pacifica,.* 274 F. Supp. 2d 1118 (N.D. Cal. 2003)…...…15

*Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992)…………..16

*Roper v. Simmons*, 543 U.S. 551 (2005)……………………………………….…………7

*Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (1990)………………………………18

*Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir.1993))……………………………………….6

*Soto v. City of Concord*, 162 F.R.D. 603, 614 (N.D. Cal. 1995)………………………...19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Trop v. Dulles,* 356 U.S. 86, 101 (1958)……………………………………………......7

*United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000)………………………15

*U.S. v. O'Neill*, 619 F.2d 222, 229-30 (3d Cir. 1980)……………………………………17

*United States v. Reynolds*, 345 U.S. 1 (1953)……………………………………………18

*Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988)…….15

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rules of Civil Procedure 26, 33, 34, 37 and Local Rules 7 and 37, Plaintiff moves the Court for an order compelling responses to Plaintiff's Interrogatories and Document Requests.

### I.

### INTRODUCTION

Plaintiff filed the present action on January 13, 2006.  Even before filing his complaint, Plaintiff propounded discovery requests relating to his claims upon the District Attorney for San Joaquin County and the California Attorney General by letter dated January 5, 2006.  *See* Declaration of John R Grele, par. 2.  ("Grele Decl.")  On January 6, 2006, the District Attorney and Attorney General informed Plaintiff that they would not provide the requested documents absent a court order.  *Id.*

A week after filing his Complaint, on January 20, 2006, Plaintiff filed a Motion for Expedited Discovery and to Compel the Production of Documents.  Grele decl., par. 3.  On January 23, 2006, Defendants filed their opposition and refused to provide any discovery to Plaintiff.  After the parties were unable to reach agreement on any discovery matters during a court-ordered meet and confer, and pursuant to the Court's instructions, on January 27, 2006, Plaintiff served a detailed Discovery Request upon Defendants which set forth document requests, interrogatories and deposition requests.  *Id.*  On January 30, 2006, Defendants filed a response objecting to the Discovery Request on the ground that Plaintiff was entitled to no discovery until he demonstrates that the lethal injection procedure was unconstitutional.  *Id.*  On February 1, 2006, this Court granted in part Plaintiff's motion for expedited discovery and ordered Defendants to produce limited documents pertaining to the past three executions and a redacted version of Procedure No. 770.

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

1

In a February 14, 2006 Order, this Court conditionally denied Plaintiff's motion for a preliminary injunction but held that Defendants could proceed with Plaintiff's execution only if they agreed either (1) to use only sodium thiopental or other barbiturates in the execution or (2) to place a medical professional in the execution chamber to verify that Plaintiff was rendered unconscious before the pancuronium and potassium is injected. Although Defendants had produced few documents and provided no interrogatory answers or depositions, the Court found that the limited evidence available raised substantial questions as to whether the lethal injection protocol was functioning as intended and whether Plaintiff would suffer excessive pain when executed under Procedure No. 770. The Court suggested that regardless whether the State proceeded with Plaintiff's execution as scheduled, the State should "conduct a thorough review of the lethal-injection protocol, including, *inter alia*, the manner in which the drugs are injected, the means used to determine when the person being executed has lost consciousness, and the quality of contemporaneous records of executions, such as execution logs and electrocardiograms." Order at 12-13 (February 14, 2006).

When Defendants twice scheduled Plaintiff's execution on February 21, 2006 and twice proved unwilling to comply with this Court's conditions for proceeding with the execution, a stay of execution was issued and the matter set for hearing on May 2-3, 2006. On March 3, 2006, a case management conference was held to discuss discovery and scheduling issues. Plaintiff immediately requested that Defendants answer the Document Request and Interrogatories propounded on January 27, 2006. *See* Grele Decl., par 6. On March 8, 2006, Defendants served Plaintiff with their responses to Plaintiff's First Set of Interrogatories and Document Requests. *Id*. Defendants also announced a new execution protocol. *Id.*, at par. 8. Plaintiff then propounded additional Document Requests and additional Interrogatories. *Id*., at par. 9. On March 24, 2006, Defendants served Plaintiff with their responses. *Id*. That day, they were informed the responses did not contain a

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

privilege log.  *Id*.  None of the Defendants' responses were signed, and although numerous privileges were invoked no description of documents withheld (privilege log) was provided.  *Id*.

On April 3, 2006, Plaintiff filed a Motion to Continue the Hearing Date of May 2, 2006 on the grounds that discovery could not be conducted in time for the hearing.  That motion was denied. On April 4, 2006, Defendants' counsel wrote to Plaintiff's counsel seeking advice on what items of discovery Plaintiff sought.  *See* Grele Decl., par. 10.  On April 4, 2006 Plaintiff's counsel responded that all of the requests were valid, that the responses were not proper because of lack of verifications and privilege logs, and if Defendants were contemplating supplementing their responses, they should do so.  *Id*.  After not receiving any response, on April 7th, Plaintiff reiterated that they were awaiting Defendants' determination as to whether or not they were preparing further responses, and to request a meet and confer if they were not.  *Id*.  The meet and confer was held on April 7th and Defendants' counsel agreed to supplement their responses to some of the requests.  *Id*.  On Monday, April 10, 2006, Plaintiff's counsel requested a date certain by when those supplements would be filed. Defendants' counsel responded they would be forthcoming on April 17, 2006.  *Id*.  Now, it won't be until April 19, 2006.

Depositions have also hit a stumbling block.  Defendants' counsel has instructed witnesses not to answer any questions having to do with the  identities of persons  involved in  executions, despite a protective order designed to allow just such an inquiry.  *See* Grele Decl., par. 17.   This leaves Plaintiff without an ability to discern who to depose.  *Id.*  Only recently, through a series of questions at the two that have been conducted, has Plaintiff learned that the person who ran all the previous 9 executions, the executioners for those executions,  and the registered nurses for those executions are all unavailable.  *Id*.  Of course, if Defendants had responded to the interrogatories, this information would have been learned months ago and Plaintiff could have taken appropriate

action to secure their depositions prior to their unavailability.

## II.

## ARGUMENT

Defendants object to virtually every discovery requests as overbroad and unduly burdensome and, to the extent they answered at all, the responses were highly evasive and non-responsive. Additionally, Defendants made blanket, boilerplate assertions of deliberative process, attorney-client, and federal official information privilege. In so responding, Defendants not only blatantly ignored this Court's March 3, 2006 admonition to the parties to cooperate during the discovery process, but they also overlook Plaintiff's "broad right of discovery" under the Federal Rules to ascertain information relevant to his case.

Defendants' objections boil down to two issues: (1) whether they should have to reveal information about the adoption and revisions of Procedure 770, including the current version, and (2) whether they should be required to reveal the names of execution team members. As to the first issue, the debate centers on relevancy and deliberative process privileges. As to the second, the concern is safety and confidentiality.

## A.     Defendants Have Not Properly Responded

The first difficulty is that Defendants have not responded properly. They have never complied with their initial disclosure requirements. *See* Fed.R.Civ.P. 26. The Federal Rules of Civil Procedure require that responses to interrogatories be verified. Fed.R.Civ.P. 33(b)(2). None of the responses are. Further, Defendants have not submitted any privilege log or other description of documents being withheld. *See* Fed. R. Civ. P. 26(b)(5). Under established precedent, this means all of their privilege objections are waived. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).

**B.      Plaintiff's Discovery Requests Seek Highly Relevant Information.**

Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."  "Relevance" for discovery purposes is broadly construed, and need not require that the requested information is itself admissible at trial.  *See* Fed. R. Civ. P. 26(b)(1) ("Information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.").  Discovery is "to be accorded a broad and liberal treatment."  *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Kerr v. U.S. Dist. Court for N. Dist. of Cal*., 511 F.2d 192, 196 (9th Cir. 1975) ("the question of relevancy is to be more loosely construed at the discovery stage than at the trial").  The Ninth Circuit has conclusively stated that the Federal Rules of Civil Procedure create a "broad right of discovery" because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth."  *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir.1993)).

Here, the Ninth Circuit has clearly articulated that it wishes to review a lethal injection challenge "based on a full record."  *See Beardslee v. Woodford*, 395 F.3d 1064, 1076 (9th Cir. 2005).  Noticeably, that court was very interested in the exact questions the requested discovery seeks to determine: how lethal injection came to be applied and why the state decided to use and continue to use the drugs it has chosen, specifically pancuronium bromide.  395 F.3d at 1075-76.  And, that court was very concerned with the absence of any rational explanation for it.  *Id.*[1]  This Court noted

---

[1]      As will become apparent at the hearing, the devising of the original lethal injection protocol by Oklahoma was not the process articulated in the Denno law review article cited by the Ninth Circuit.  It has a much more complicated and troublesome history, particularly the use of curare derivatives such as pancuronium bromide.  The use of such chemicals in prisons can be traced to prisoner behavioral modification programs.  *See Mackey v. Procunier,* 477 F.2d 877 (9th Cir. 1973).

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

that this was "one of the most memorable parts of the *Beardslee* decision" and noted Plaintiff's interest in this inquiry when balancing the risks of pain to determine if they were unnecessary, as the standard requires. *See* Tx of Hearing, 1/26/06, at 22; as entertained in *Cooper v. Rimmer,* 379 F.3d 1029, 1035 (9th Cir.2004) (standard is "unnecessary or wanton infliction of pain"). Mr. Morales has certainly pled that the state is engaged in both the unnecessary and wanton infliction of pain because it has adopted a procedure it knows contains such risks and has disregarded the fact that the procedure continues to show evidence of malfunction, and has, in fact, greatly contributed to this risk in its new protocol.

The Court echoed this in its initial statement about the importance of this matter, noting that "at some point there will be a value to the entire criminal justice system to vetting this issue thoroughly." *See* Tx of Hearing, 1/26/06, at 12. And, in that proceeding, the Court recognized that if Plaintiff were to establish a risk of pain (as opposed to actual pain), then the question becomes whether that risk justifies using the second and third drugs, as opposed to merely applying a lethal dose of sedative. *Id* , at 44-46. The test, after all, is whether there is an *unnecessary* risk, which requires weighing the reasons for the particular protocol.

Another Eighth Amendment inquiry is whether the evolving standards of decency are violated by the procedures in place. *Trop v. Dulles,* 356 U.S. 86, 101 (1958). This sometimes is reduced to an examination of what state legislatures have done, although that is by far not the only measure of review. *Roper v. Simmons*, 543 U.S. 551 (2005). Defendants and the courts have repeatedly turned to the approval by various state legislatures of lethal injection. *See Cooper v. Rimmer,* 379 F.3d 1029, 1033 n. 3 (9th Cir. 2004) (citing cases). However, what is missed is that many state legislatures have not approved any procedures and the majority of them, like California, have left it up to their state prisons to devise one. Thus, the method by which a state agency adopted

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

6

its procedure is directly relevant to a claim under the evolving standard of decency analysis.

Defendants have themselves made an issue of how the state came about devising its protocol in an effort to support its constitutionality. Defendants' counsel, at the initial proceeding, argued the history of adoption by copying other states as a rational method by which a state can choose its execution procedures. *See* Tx of Hearing on 1/26/06, at 39-41. They continue to assert it as a reason why the protocol is constitutional. *See* Tx of Hearing on 2/9/06, at 58-59. Of course, that may have been the method by which the state arrived at its procedures, it may not have been. Plaintiff is entitled to prove otherwise. And, even if it was, it doesn't answer the question of why and how it arrived at its determination to continue using it, or why only 6 weeks ago, it decided to change the amounts of drugs and the application methods.

The copying of other, failed plans in no way establishes that the lethal injection protocol in California survives constitutional challenge. And, Plaintiff is entitled to demonstrate they copied states with very problematic histories. For instance, if they adopted the Oklahoma procedure by dramatically reducing the sedative injection and employing a sedative drip, Plaintiff needs to know why they did so and what information they had that led to the new procedure. Oklahoma's procedure is perhaps the most dramatically unconstitutional one in the country.

Despite their position, Defendants have never been content with Plaintiff's inquiry into these very same matters, and have always sought to limit Plaintiff's case to the question of whether Plaintiff can prove that he will be conscious under the current procedure. In this manner, they can take advantage of the fact that the absence of evidence is their own creation. It is no where more apparent than in the application of the second drug, which serves to prevent resolution of even that very limited question. In fact, Plaintiff has alleged that its only purpose is to mask the improper administration of the sedative and that it does just that, as well as cause excruciating pain. It is the

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

epitome of an unnecessary procedure.  And, it is the pancuronium and potassium drugs that are *causing* the pain; they are the risky agents, not the sedative.

Defendants' view is a far too narrow one of Plaintiff's complaint, particularly the amended complaint recently filed, which explicitly alleges Defendants have engaged in a process of decision-making that, in effect, assured a flawed protocol (i.e. by not using or heeding medical advice, and flawed medical input).  The Court recently rejected their unreasonably narrow view in its decision to allow Plaintiff to investigate the reasons for difficulties that have arisen in past executions.  *See* Protective Order, April 3, 2006, at 2.  In light of this Order, it is hard to fathom how Defendants can still refuse to provide the information Plaintiff needs to identify those involved.

If this weren't enough to establish the relevancy of the requests, the Court, in its February 14, 2006 order, found substantial questions about whether the inmates were properly sedated.  The inquiry then shifts to whether that risk is unnecessary by balancing the degree of risk with the need for a particular protocol.  In response, the state has maintained it engaged in the process the Court urged for review and redesign, including consultation with experts ("court experts").[2]  These experts may believe the current version of Procedure 770 alleviates any concerns, or they may not.  What these "experts" observed about the protocols, and what they stated about them, are directly relevant to the claim of unconstitutionality, particularly the reviews surrounding the initial adoption of Procedure 770; the review undertaken in light of the challenge made in *Cooper* (which was only recently disclosed); and the adoption of the most recent version a result of this litigation.

As Defendants now concede when defending the new protocol, the review and revision process is relevant to the question of whether or not the procedure is medically appropriate.  Thus,

---

[2] Deposition testimony is to the effect that the anesthesiologists recommended changes in the protocol when they viewed it on February 18th.  Defendants refuse to release their names so they cannot be questioned about this.

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

the method by which Defendants arrived at Procedure 770 and determined its revisions is entirely relevant to the issue of whether there have been significant changes that address the difficulties identified by Plaintiff and the Court. For instance, if, in fact, all the changes were litigation-driven and none were of a scientific or medical nature, that is certainly relevant to the Court's inquiry.[3] If Defendants were informed that they could easily execute someone with a lethal dose of sedative and avoid any risk of pain, and that risk was going to be present as a result of the previous or new protocol, Plaintiff is entitled to know that. As stated above, if Defendants have information from other states, particularly those that it copied, and that information is relevant to whether or not the procedure in place unnecessarily risks pain, Plaintiff is entitled to know it.

The process of revising the protocol is directly relevant to the execution team's understanding of the protocol and their preparedness for contingencies that could occur during the execution. The protocol does not explain the reasons for which each element was adopted or describe measures to ensure the humaneness of the procedure. To the extent that, in revising the protocol, consulting experts gave advice to the execution team, discussed with them the issues that could lead to inhumane execution, explained to them how the protocol does or does not take those issues into account, or made suggestions regarding the actual performance of an execution, those conversations are directly relevant to the execution team's ability and preparedness to conduct an execution in the future. The extent to which such advice is or is not memorialized in the protocol itself is also directly relevant to the execution team's ability to perform executions in the future, because customary practices not specified by Procedure 770 raise concerns distinct from the issues raised by the steps specified in the protocol itself.

---

[3] Deposition testimony is to the effect that Defendants' changed to the newer version because they felt it would satisfy this Court.

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

Likewise, the relevancy of the inquiry into Procedure 770 prior to March 6, 2006 is apparent from the Court's orders and Defendant's own statements. As noted, the Court found substantial questions as to that procedure. Defendants have not altered the drug mix and are wedded to the 3-drug cocktail still. Why they believe the same cocktail is sufficient in light of the Court's orders and Plaintiff's presentation of evidence is relevant.

The identification, training and qualifications of the individuals involved in creating Procedure No. 770 and monitoring the lethal injection process during executions are central to Plaintiff's complaint. Plaintiff alleges that the state's lethal injection protocol lacks the requisite procedural safeguards to comport with the requirements of the Eighth Amendment. One of those is utilizing untrained and unqualified persons to devise the protocol and implement it. And, as the Court has already recognized, the records sought are significant as even the limited discovery provided to date supported Plaintiff's claims and demonstrated that Defendants altered the records in significant ways to disguise inmate suffering. The requests will shed light on how Defendants arrived at this procedure, why they continue to use it, what difficulties they have observed, how the procedure operates in practice, who was responsible for what events, and whether anything has really been done to address the problems the Court has identified, and that Plaintiff alleges.

The information sought by Plaintiff is critical to this proceeding because it is Plaintiff's contention that the procedures are not appropriate; that the designated drugs are inadequate to ensure a humane death; that Defendants would recognize these failings if they had undertaken a thorough and considered consultation with experts and medical professionals; and that the Defendants adopted the use of pancuronium to disguise the fact that there is a significant risk of malfunction in the procedure. Whether or not there is an unnecessary risk of pain or wanton suffering is completely informed by the Defendants' knowledge of how and why they arrived at the present procedure. Yet,

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

1   without basic information as to the foundational questions concerning creation and implementation,

2   Defendants have precluded Plaintiff's ability to conduct discovery on these issues, which are

3   necessary to present his case.

4       Moreover, the identities of consultants and participants are critical.   For instance, if

5   Defendants consulted with Nazi revisionist and so-called execution expert for many states, Fred

6   Leutcher, or someone of his ilk, Plaintiff is entitled to know.[4]   If Defendants consulted with no one

7   other than litigation staff, Plaintiff is entitled to know that as well.   And, if they sought out medical

8   advice, and that advice and discussion contained factual information about the protocol and the

9   necessity for the current procedure, or was critical of existing procedures, Plaintiff is entitled to

10  know this.[5]

11

12      Defendants point to the Court's inquiry of counsel early on in this case when Plaintiff's

13  counsel raised the issue of determining how the state arrived at its protocol.   In that colloquy, raised

14  in the context of whether or not a stay of execution should issue, the Court stated that it seems the

15  inquiry into the state of mind of state's agents was better suited for a deliberate indifference case,

16  and not a case that alleges inadequate safeguards.   *See* Tx of Hearing on 2/19/06, at 28.   But, as

17  counsel then responded, what the state actually does is determined by who they have had review the

18  process, and why.   *Id.*   The question is not what those who administer the drugs think about the

19  procedure themselves; it is why it is that they continue to use this procedure.   The facts underlying

20

21

22  ────────────────────

23  [4]   Leutcher holds a patent on one of the techniques used in lethal injection.   It is not certain whether
    it is one of those used at San Quentin.

24  [5]   In this regard, the events of February 21, 2006 are entirely relevant.   The anesthesiologists are the
25  only medical doctors to have observed the training process and would have very relevant insight into
    its viability.   Likewise, the lethal injection team members' views on the second method (the sedative
26  only), and how they were or were not able to accomplish it, and why, are important questions that
    will determine the knowledge of and reasons for retention of pancuronium bromide.   Again, Plaintiff
27  contends it is to mask error, the risk of which the State is completely aware.

    *Motion to Compel Discovery*
28  C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

their assumptions, or those they have but ignore, are discoverable.

The information sought in Plaintiff's requests relates directly to Plaintiff's claims about the inadequacies and unconstitutionality of California's lethal injection procedure. Plaintiff's claim directly challenges the design and administration of the lethal injection protocol and, as such, implicates training, experience and expertise of the personnel involved in creating and carrying out the executions by lethal injection. Thus, Plaintiff's requests are reasonably likely to lead to admissible evidence regarding the challenged protocol and Defendants should be ordered to respond to them accordingly.

Finally, from a practical point of view, Defendants are going to have to answer these very same requests in the related case, concerning the First Amendment challenge. The recent discovery propounded by PNS plaintiffs is included here. *See* Grele Decl., par. 18. The Court has requested that discovery be joined as much as possible. It makes no sense to allow Defendants to refuse to respond here, but a month later, perhaps after the hearing, require them to provide the very same information Plaintiff seeks.

**C.   Defendants' Assertion of the Attorney-Client, Work Product and Deliberative Process Privilege Fails.**

Defendants improperly asserted attorney-client, work product and deliberative process privileges in response to Plaintiff's interrogatories. Rather than set forth the facts upon which Defendants base their objection and the nature of the privilege asserted as Plaintiff requested, Defendants asserted a blanket privilege. Defendants also failed to provide a privilege log as to each interrogatory or document request they objected to as privileged or respond to the request to the extent the request did not seek privileged information. Accordingly, Defendants have waived any proper assertion of privilege.

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

### 1.   Defendants' Boilerplate Objections to Plaintiff's Document Requests Are Insufficient to Assert a Privilege.

With respect to Defendants' boilerplate objections to Plaintiff's document requests, the law is clear that Defendants' assertion of privilege is insufficient. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Here, Defendants' objections are precisely the kind of blanket assertions rejected by the *Burlington* court. Simply put, Defendants' improper assertion of blanket privileges in response to Plaintiff's document requests are inadequate, and Defendants should be ordered to provide the requested discovery.

### 2.   Defendants' Waived Any Privileges As to Their Responses to Plaintiff's First Set of Document Requests by Failing to Produce a Privilege Log in a Timely Manner.

Defendants' assertion of privilege fails for another reason: Defendants have failed to provide a privilege log in a timely manner. In *Burlington*, the court also rejected a *per se* waiver rule that deemed a privilege waived if the privilege log was not produced within the 30-day deadline in favor of resolution of the issue by a district court to make a case-by case determination. *Id.* Factors for the district court to take into account include the degree to which the objection enabled the party seeking discovery and the court to evaluate whether the documents are indeed privileged; the timeliness of the objection; and the magnitude of the production. *Id.*

Applying the "holistic, reasonableness analysis" employed by the Ninth Circuit in *Burlington*, the factors overwhelmingly weigh in favor of a determination that Defendants have waived any applicable privilege. First, Defendants leave Plaintiff and this Court guessing as to the applicability of the asserted privileges, given the nature of their uninformative responses. Indeed, all that is evident from Defendants' response is that they spent minimal time in responding to Plaintiff's inquiries, providing only blanket objections, rote responses, and almost no responsive information. Plaintiff has been severely hampered in the discovery process as a result, and has to guess at who to

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

depose and what questions to ask. The two depositions have been quite lengthy as a result and it is not at all clear the proper questions are being asked, or that the deponents are giving answers that comport with documents.

Second, although Plaintiff requested a small and manageable set of documents, Defendants asserted privilege in nearly half of its responses to Plaintiff's document requests, each of which seeks information critical to Plaintiff's allegations.

### 3. In Any Event, the Privileges are Inapplicable

To begin, none of the asserted privileges allow Defendants to refuse to disclose the names of those involved in devising and revising Procedure 770. And, if a portion of a document or interrogatory response is privileged, the remainder must be disclosed.

Defendants' assertion of attorney-client privilege fails. The attorney-client privilege protects communications between client and attorney for the purpose of obtaining legal advice, where such communications were intended to be confidential. *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001). Plaintiff's discovery requests do not inquire into privileged communications of Defendants and their attorneys, but rather seeks factual information related to Plaintiff's constitutional claims. And, the use of attorneys does not insulate Defendants from disclosure. *See Larson v. Harrington,* 11 F. Supp. 2d 1198 (E.D. Cal. 1998) (attendance of attorney to render legal advice does not insulate discussions of agency). Otherwise, every litigant, particularly state agency defendants, could shield itself from discovery simply by having an attorney present and participating.

The requested discovery is also not protected by the deliberative process privilege. For the privilege to apply, "a document must be both (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) deliberative, meaning 'it must actually be related to the process by which policies are formulated.'" *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) (quoting *Nat'l Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). It does not

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

apply to factual information. *Fernandez*, 231 F.3d at 1247; *see also North Pacifica, LLC v. City of Pacifica,*. 274 F. Supp. 2d 1118 (N.D. Cal. 2003).   Obviously, neither privilege applies to request to identify those involved in any discussions.

Defendants also cannot hide behind their assertion of work product privilege.  In order to successfully assert the work-product doctrine, which is a qualified immunity that protects from discovery certain documents and tangible things, a party must show that the documents were: (1) prepared in anticipation of litigation or for trial; and (2) prepared by or for another party or the party's representative.  *Admiral Ins. Co. v. U.S. Dist. Court for the Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1988); *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004).  Defendants, however, have failed to demonstrate that the discovery requests that Plaintiff seeks meet either prong of the test.

Here, Defendants' deficient responses pursuant to Rule 26(b)(5) and the absence of any privilege log prevent Plaintiff from determining which documents are otherwise responsive to the requests, and which are subject to any privilege, thus underscoring the reason the Ninth Circuit prohibits vague, blanket responses.  The onus is on Defendants, not Plaintiff, to justify their assertion of privilege.

## D.    The Right of Privacy

The right to privacy under Article I, Section I of the California Constitution,  is neither applicable nor absolute.  Federal law on privilege, rather than state law, applies to the instant case because of the federal claims Plaintiff asserts.  *Charles O. Brady Trust v. Zenith Capital LLC*, No. C-04-2239, 2005 WL 1030218, at *2 (N.D. Cal. May 3, 2005); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th Cir. 1992).  Applying the balancing test between disclosure of the requested information and a constitutional right to privacy protected under the federal constitution, it is clear that Defendants should be required to disclose the information requested in Plaintiff's

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

interrogatories, as the interests favoring disclosure (e.g., ascertaining the truth, addressing Plaintiff's allegations of a flawed lethal injection procedure) outweigh the interests favoring nondisclosure, especially given the serious nature of Plaintiff's constitutional claims and the fact that this Court has already granted Defendant's application for a protective order.   The protective order clearly contemplates disclosure of execution team members.   In fact, Plaintiffs are willing to allow disclosure of the name to a very limited number of persons even among the attorneys.

Even if this Court were to take into account the relevant state law on privacy as a matter of comity, which is questionable in light of *Jaffee v. Redmond*, 518 U.S. 1 (1996), the same balancing test would apply, also clearly weighing in favor of disclosure.   The right of privacy under the California Constitution is "not an absolute right, but a right subject to the invasion depending upon the circumstances."   *Zenith*, 2005 WL 1030218, at *2 n.1.

**E.     The Federal Official Information Privilege is Inapplicable.**

As indicated above, Defendants further object on the basis of the federal official information privilege.   Defendants' objection is wholly without merit.   There is no such federal privilege, to the extent some variation of such a privilege exists  it does not apply here, and, even assuming it was applicable, there has been an inadequate showing to invoke it.

Congress specifically rejected a proposed "official information privilege" because of its concern that codifying such a privilege would shield government actions from public scrutiny.   *See Rules of Evidence for* the *United States Courts and Magistrates,* [Proposed] Fed. R. Evid. 509, 56 F.R.D. 251 (1973).   Significantly, it was the first and only time that Congress has used its powers to reject proposed evidentiary rules.   *See* Glynn, T., *Federalizing Privilege*, 52 Am. U. L. Rev. 59, 88 & n. 116 (2002) (rejection of the entire proposed evidence code changes was a result of the inclusion of the proposed official information privilege).   *See U.S. v. O'Neill*, 619 F.2d 222, 229-30 (3d Cir.

1980) (citing to the rejection of Rule 509 as a strong basis to limit the privilege to the previously-established informant and executive privileges).

Commentators have been critical of any attempt to craft and apply a federal official information privilege in light of the requirement under Fed. R. Civ. P. 501 that a privilege must have been recognized "at common law." Moreover, the history of use of this so-called privilege to oppress the Colonies, the paucity of states to have explicitly adopted any such privilege,[6] and Congressional rejection of the government's attempt to codify such a privilege also argue against its recognition in Federal cases:

> The official information privilege was unknown to the common law, though some writers have attempted to find an ancestry for it in a variety of statutory provisions. The Field Code recognized a privilege for confidential communications to government officials, apparently carved out of the English crown privilege. The Model Code and the Uniform Rules of Evidence seem to have created the concept of a privilege for "official information" primarily as a method of preventing courts from emulating the English in creating an expansive privilege for government secrets. Some states have a statutory official information privilege. The Field Code provision has been largely moribund; in some states most of the cases that rely on it involve informers. Rejected Rule 509 is based on none of these prior statutes. Indeed, the Advisory Committee did not intend to recognize any official information privilege until it was pressured into doing so by the Justice Department and its allies.

26A Charles A. Wright & Kenneth Graham, *Federal Practice & Procedure: Evidence* § 5676 (2003).

Reflecting this profound ambivalence, the Supreme Court has never applied the privilege. Although it has recognized that some lower courts have applied it, the Court has taken great pains to avoid explicit endorsement. *See Kerr v. U.S.D.C.*, 426 U.S. 394 (1976). The reasons for this are

---

[6]   Few states apply such a privilege. California is by far the most wide-ranging in its application, which perhaps explains the numerous federal court decisions in this state examining the privilege, but by no means adopting it in federal cases or justifying its use here.

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

17

clear: not only does the official information privilege run counter to the truth-seeking function, but it flies in the face of our Nation's understanding, embodied in the Constitution and numerous statutes, that government must be subjected to public scrutiny and judicial review because such scrutiny is the most trustworthy guarantee of liberty in a democracy.

The case most often cited as establishing the federal official information privilege is *Kerr v. U.S.D.C.*, 511 F.2d 192 (9th Cir. 1975).  In *Kerr*, however, the court explicitly refused to recognize the asserted privilege and held that, even if it did apply, the government failed to properly assert it formally in writing.  *Id.* at 198.  The *Kerr* court relied on *United States v. Reynolds*, 345 U.S. 1 (1953), a case involving the established absolute privilege of military secrets, as delineating the scope of the privilege and the proper method by which it must be asserted.  *Id*.  Although one Ninth Circuit case and some California district courts have drawn from these cases support for a highly-qualified "privilege," it has very rarely been applied.  *See Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (1990) (denying plaintiffs' discovery requests because the information plaintiffs sought was available from other sources and was only slightly relevant).  Even the courts applying the privilege are careful to note the procedures they have crafted to articulate presumptions and weigh competing interests of the potential benefits of disclosure against the potential disadvantages. Nearly all allow production with an appropriate protective order and nearly every one involves the threat of disclosure of an ongoing criminal investigation or personal records, factors not present here. *See Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987); *Soto v. City of Concord*, 162 F.R.D. 603, 614 (N.D. Cal. 1995) (citing nearly every official information civil rights case in the district as allowing production under a protective order).  At the very least, a "substantial showing" is required.  *See Soto v. City of Concord*, 163 F.R.D. at 613 & n. 4 (listing the showing required and the method to assert privilege and the factors to weigh interests).  A generalized statement of vague

concerns about the "institutional security of San Quentin" such as alleged here, is insufficient.    A cursory review of these cases demonstrates that Defendants have not even come close to making the requisite showing.

Even assuming that Defendants have properly asserted the official information privilege and that the privilege is applicable in the instant case, the potential benefits of disclosure of Plaintiff's discovery requests nevertheless far outweigh any disadvantages.  Plaintiff would be prejudiced by the denial of his discovery requests, as his requests are derived directly from this Court's February 14, 2006 Order advocating a thorough review of the protocol.  Plaintiff's requests are calculated to determine the integrity and constitutionality of the lethal injection procedure by examining every aspect of the protocol as devised and implemented, including the training and qualifications of individuals involved in its administration.  Plaintiff simply cannot accomplish the goals of a thorough fact finding in order to permit a comprehensive evidentiary hearing into the constitutionality of the protocol in the absence of the information sought by Plaintiff's discovery requests.  This discovery is plainly permitted under the Federal Rules, and as such, Defendants should be compelled to respond fully and fairly to Plaintiff's discovery.

The original protective order was sufficient to satisfy the concerns raised in these cases and any problems Defendants may have.  The new one, established only recently, is more than sufficient. As the Court noted in issuing that order, the identity of those involved is a critical part of Plaintiff's inquiry, one he is entitled to make.

## III.

## DISCOVERY REQUESTS

The following discovery requests are in dispute.   This does not mean Defendants have responded to the remainder; they have not.  It merely means Plaintiff has culled out the more

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

important ones and is awaiting the promised further responses on the others.

**A.      First Set of Interrogatories**

Interrogatory No. 2

     Request: Identification of the persons, whether current employees or not, who were responsible for or contributed to the proposing, devising and/or modifying the qualifications, experience, and training of lethal injection personnel.

     Response: Defendants object to this interrogatory as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that disclosure of the information could compromise the institutional security of San Quentin and, to the extent it seeks the names of personnel on the execution team, the information is protected by the federal official information privilege.

     Reasons: Plaintiff is entitled to this discovery for the reasons in section II(B) discusing relevancy.  No federal information privilege applies, and a protective order is in place, as discussed in sections II(D) and (E), *supra*.

Interrogatory No. 4

     Request: Identification of the persons, whether current employees or not, who were responsible for or contributed to the creating, proposing, and devising of Procedure 770 (and revisions).

     Response: Defendants object to this interrogatory as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that disclosure of the information could compromise the institutional security of San Quentin and, to the extent it seeks the names of personnel on the execution team, the information is protected by the federal official information privilege.

     Reasons: It is not known how the list of persons could be burdensome when it appears to be a very limited number involved.  Plaintiff is entitled to this discovery for the reasons in section II(B) discussing relevancy.  No federal information privilege applies, as discussed in sections II(D) and (E), *supra*.

Interrogatory No. 5

     Request: Identification of the persons, whether current employees or not, who ha[ve] conducted or contributed to a medical, ethical, or other expert evaluation of the chemicals used, qualifications and training or personnel involved, and the procedures employed in Procedure 770 (and revisions).

     Response: Defendants object to this interrogatory as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  To the extent plaintiff seeks the names of experts to be called at the evidentiary hearing in May that information will be provided within the time frame set by the Court on March 3, 2006.

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

Reasons: It is not known how the list of persons could be burdensome when it appears to be a very limited number involved, and may be none.  Plaintiff is entitled to this discovery for the reasons in section II(B) discussing relevancy.

Interrogatory No. 8

Request: Names of all medical persons present at all prior lethal injection executions and their respective roles in the process.

Response: Defendants object to this interrogatory as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that disclosure of the information could compromise the institutional security of San Quentin and, to the extent it seeks the names of personnel on the execution team, the information is protected by the federal official information privilege.

Reasons: This is easily determined as the number involved in executions is limited.  The Court has already found that this information is relevant, and it is for the reasons discussed in section II(B), supra.  No federal information privilege applies, and a protective order is in place, as discussed in sections II(D) and (E), supra.

## B.    Plaintiff's Second Set of Interrogatories

Interrogatory No. 1

Request: Identify each person, including but not limited to  medical personnel and any "court experts," as referred to by Counsel for Defendants in press accounts following the March 3 status conference, who was consulted by the CDCR, or on whose opinions, analysis, or recommendations CDCR relied, in creating and issuing the modification of Procedure No. 770 reflected in the new protocol.

Response: Defendants object to this interrogatory as ambiguous, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that the requested information is protected by work product, attorney-client, and deliberative process privileges.

Reasons: Defendants' counsel publicly stated they relied on "court experts" and that they changed the protocol because inmates were "too unconscious."  Obviously, the names of such persons can lead to admissible evidence, which is relevant as discussed in section II(B), supra.  No privilege applies to identifications of names, and the listed privileges do not apply for the reasons stated in section II(C)(3), supra.

Interrogatory No. 2

Request: Identify each person, including but not limited to medical personnel, who participated in or was consulted regarding the assessment and attempted implementation of the proposed alternative execution procedures set forth by the Court in its February 14, 2006 Order.

Response: Defendants object to this interrogatory as overbroad and not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that the requested information is protected by work product, attorney-client, and deliberative process privileges.

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

**Reasons**: Because participation in executions, and those consulted, is limited to certain individuals, they are easily discernable. The names of such persons can lead to admissible evidence, which is relevant as discussed in section II(B), *supra*. No privilege applies to identifications of names, and the listed privileges do not apply for the reasons stated in section II(C)(3), *supra*.

Interrogatory No. 3
**Request**: Identify each person who participated in the executions of Jaturun Siripongs, Manuel Babbitt, Darrell Keith Rich, Stephen Wayne Anderson, Donald Beardslee, Stanley Williams or Clarence Ray Allen.

**Response**: Defendants object to this interrogatory as overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object that disclosure of the information could compromise the institutional security of San Quentin and that the names of personnel on the execution team are protected by the federal official information privilege. As previously disclosed, the witness who will testify at the March 30, 2006 hearing at San Quentin participated in each of the above executions. In some cases the names of the doctors who were present to pronounce death are included on the execution logs previously provided to counsel for plaintiff.

**Reasons**: Because participation in executions, and those consulted, is limited to certain individuals, they are easily discernable. This language mirrors Defendants' requested protective order. The Court has already found that this information is relevant, and it is for the reasons discussed in section II(B), *supra*. No federal information privilege applies, and a protective order is in place, as discussed in sections II(D) and (E), *supra*.

Interrogatory No. 4
**Request**: Identify each person who was present as part of the execution team for the execution of Mr. Morales, that was scheduled to take place at 12:01 a.m. on February 21, 2006 and then at 7:30 p.m. on February 21, 2006.

**Response**: Defendants object to this interrogatory as overbroad and unduly burdensome. It is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object that disclosure of the information could compromise the institutional security of San Quentin and that the names of personnel on the execution team are protected by the federal official information privilege. As previously disclosed, the witness who will testify at the March 30, 2006 hearing at San Quentin participated in the Morales execution.

**Reasons**: Because participation in executions, and those consulted, is limited to certain individuals, they are easily discernable. This language is even more restrictive than Defendants' requested protective order and only asks for those present. The Court has already found that this information is relevant, and it is for the reasons discussed in section II(B), *supra*. No federal information privilege applies, and a protective order is in place, as discussed in sections II(D) and (E), *supra*. To the extent that persons present were not members of the execution team, there is no reason they cannot be disclosed.

Interrogatory No. 6

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

Request: Explain in detail all medical, pharmacological scientific, or any other reason why CDCR decided to change the amounts of the drugs used under the new protocol from amounts used under previous versions of Procedure No. 770.

Response: Defendants object to this interrogatory as overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object that the requested information is protected by work product, attorney-client, and deliberative process privileges.

Reasons: Because those consulted is limited to certain individuals, they are easily discernable. The names of such persons is likely to lead to admissible evidence, which is relevant as discussed in section II(B), *supra*. Defendants have stated it was because inmates were "too unconscious." No privilege applies to identifications of names, and the listed privileges do not apply for the reasons stated in section II(C)(3), *supra*.

## C.            Plaintiff's First Document Request.

Request No. 4

Request: All documents related to the creation or provenance of San Quentin Operational Procedure No. 770, including other states' protocols.

Response: Defendants object to this request as overbroad and unduly burdensome. It is not reasonably calculated to lead to the discovery of admissible evidence.

Reasons: If Defendants are to be believed, there is very little material on this issue. As the Court noted, Plaintiff is entitled to examine Procedure 770 as it existed during the previous executions, and it is relevant, as discussed in section II(B), *supra*.

Request No. 5

Request: All documents related to any research, investigations, or tests related to the creation of San Quentin Operational Procedure No. 770.

Response: Defendants object to this request as overbroad and unduly burdensome. It is not reasonably calculated to lead to the discovery of admissible evidence.

Reasons: if Defendants are to be believed, there is very little material on this issue. As the Court noted, Plaintiff is entitled to examine Procedure 770 as it existed during the previous executions, and it is relevant, as discussed in section II(B), *supra*.

Request No. 6

Request: All documents relating to the administration of lethal injection which describes any revisions or changes in the process from its inception to the present.

Response: Modification of OP 770 are reflected in the amended version of the protocol, a redacted version of which will be provided to plaintiff. Defendants otherwise object to this request as overbroad and unduly burdensome. It is not reasonably calculated to lead to the discovery of admissible evidence.

Reasons: Defendants have modified 770 a number of times, sometimes in significant ways that are likely to reflect the need to alter it. As the Court noted, Plaintiff is entitled to examine Procedure 770 as it existed during the previous executions, and it is relevant, as discussed in section II(B), *supra*.

Request No. 7a

Request: All correspondence by the California Department of Corrections regarding the use of lethal injection.

Response: Defendants object to this request as overbroad and unduly burdensome. It is not reasonably calculated to lead to the discovery of admissible evidence.

Reasons: Because executions are rare, the team members are known, and there have been relatively few changes in Procedure 770, this is a narrow universe of documents. What facts are discussed and what information is exchanged regarding executions is relevant, as discussed in section II(B), *supra*.

Request No. 11

Request: All documents relating to the decision to implement lethal injection in California as it is currently practiced.

Response: Defendants object to this request as overbroad and unduly burdensome. It is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object that the requested information is protected by work product, attorney-client, and deliberative process privileges.

Reasons: This is closely related to #11. Because there have been relatively few changes in Procedure 770, this is a narrow universe of documents. What facts are discussed and what information is exchanged regarding executions is relevant, as well as the changes that have been implemented, as discussed in section II(B), *supra*. No privilege applies to such documents, as discussed in section II(C).

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

Request No. 17

Request: All documents relating to the Execution Team who will execute plaintiff, including but not limited to the identities of the team members and the Lieutenant in Charge of the Chamber; the role that each member is to play in plaintiff's execution; the training that each member has received for his or her intended role; each member's employment history, including discipline and complaints; any medical training the members have received at any time; any history of drug use; any criminal records, whether or not resulting in conviction; and any background checks performed on the team members"

Response: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that disclosure of the information could compromise the institutional security of San Quentin and, to the extent it seeks the names of personnel on the execution team, the information is protected by the federal official information privilege.

Reasons: Because the team members are known this is a narrow universe of documents. Training, experience, qualifications and background is relevant, as the Court found, and as is discussed in section II(B), *supra*.

Request No. 18

Request: All documents related to each one of the following tasks in the execution process of Mr. Morales, including but not limited to any descriptions or procedures for the task; the identities of persons in charge of the task; the training that each person has received for his or her intended role; each person's employment history, including discipline and complaints; any medical training that they have received at any time; any history of drug use; any criminal records, whether or not resulting in conviction; and any background checks performed on the team members:

      a.     Pre-execution examination of plaintiff's physical health, including assessment of plaintiff's venous integrity and ability to achieve peripheral IV access;
      b.     Drug mixing;
      c.     Syringe preparation;
      d.     IV line set-up;
      e.     Patency of catheters/IV lines;
      f.     Inmate removal from cell and strap down;
      g.     Catheter insertion;
      h.     Drug administration;
      i.     Assessment of plane anesthesia;
      j.     EKG monitoring;
      k.     Pronouncement of death.

Response: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that disclosure of the information could compromise the institutional security of San Quentin and, to the extent it seeks the names of personnel on the execution team, the information is protected by the federal official information privilege.

Reasons: Because the persons involved in these various tasks are all known, and the tasks

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

relate directly to the execution process, this is not burdensome.  Training, experience, qualifications and background is relevant, as the Court found, and as is discussed in section II(B), *supra*.  No federal information privilege applies, and a protective order is in place, as discussed in sections II(D) and (E), *supra*.

Request No. 19

     Request: All documents related to the State Physician and staff physician, referred to on p. 19 of the June 13, 2003 revision of Procedure No. 770, including but not limited to their identities, employment history, medical training, any history of drug use, criminal history, disciplinary history, history of malpractice or complaints wherever registered, and any background checks performed on them.

     Response: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that disclosure of the information could compromise the institutional security of San Quentin and, to the extent it seeks the names of personnel on the execution team, the information is protected by the federal official information privilege.

     Reasons: Because the persons involved in these various tasks are all known, and the tasks relate directly to the execution process, this is not burdensome.  Training, experience, qualifications and background is relevant, as the Court found, and as is discussed in section II(B), *supra*.  No federal information privilege applies, and a protective order is in place, as discussed in sections II(D) and (E), *supra*.

Request No. 24

     Request: All documents related to the 'injection team,' as referred to on p. 32 of the June 13, 2003 revision of Procedure No. 770, including but not limited to the qualifications required to serve on the injection team; identities of the team members; employment history, including discipline and complaints; medical training; any history of drug use; criminal history, whether or not resulting in conviction; and background checks performed on the team members.

     Response: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that disclosure of the information could compromise the institutional security of San Quentin and, to the extent it seeks the names of personnel on the execution team, the information is protected by the federal official information privilege.

     Reasons: Because the persons involved in these various tasks are all known, and the tasks relate directly to the execution process, this is not burdensome.  Training, experience, qualifications and background is relevant, as the Court found, and as is discussed in section II(B), *supra*.  No federal information privilege applies, and a protective order is in place, as discussed in sections II(D) and (E), *supra*.

**D.**       **Second Set of Document Requests**

Request No. 1

     Request: All documents and communications relating to the modifications of Procedure No.

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

26

770 reflected in the new protocol from the version that existed on February 20, 2006.

Response: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that the requested information is protected by work product, attorney-client, and deliberative process privileges.

Reasons: Procedure 770 was revised in less than a day.   This is neither broad nor burdensome.   As is discussed in section II(B), *supra*, the documents related to changes in 770 are very relevant.  No privilege applies to such documents, as discussed in section II(C).

Request No. 2
Request: All documents, including documents filed in connection with other litigation, relating to suggestions by "court experts" that the CDCR adopt any of the changes to Procedure No. 770 that are now reflected in the new protocol.

Response: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that the requested information is protected by work product, attorney-client, and deliberative process privileges.

Reasons: Procedure 770 was revised in less than a day.   This is neither broad nor burdensome.   As is discussed in section II(B), *supra*, the documents related to changes in 770 are very relevant.  No privilege applies to such documents, as discussed in section II(C).

Request No. 3
Request: All documents and communications relating to the CDCR's consideration, assessment, preparations for, planned implementation of and efforts to employ either or both of the two alternative execution procedures proposed by the Court on February 14, 2006.

Response: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that the requested information is protected by work product, attorney-client, and deliberative process privileges.

Reasons: This concerns events that span less than 5 days. This is neither broad nor burdensome.  As is discussed in section II(B), *supra*, the documents related to these events are very relevant, particularly relating to unnecessary risks.  No privilege applies to such documents, as discussed in section II(C).

Request No. 4
Request: All documents and communications relating to the CDCR's decision to continue to use the three-drug cocktail in the new protocol.

Response: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

the requested information is protected by work product, attorney-client, and deliberative process privileges.

 Reasons: Procedure 770 was revised in less than a day.   This is neither broad nor burdensome.   As is discussed in section II(B), *supra*, the documents related to the decision to use the 3 drugs are very relevant.  No privilege applies to such documents, as discussed in section II(C).

Request No. 5

 Request: All documents and communications relating to the CDCR's decision not to use sodium thiopental alone in the new protocol.

 Response: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that the requested information is protected by work product, attorney-client, and deliberative process privileges.

 Reasons: Procedure 770 was revised in less than a day.   This is neither broad nor burdensome.   As is discussed in section II(B), *supra*, the documents related to the decision to use the 3 drugs are very relevant.  No privilege applies to such documents, as discussed in section II(C).

Request No. 7

 Request: All documents and communications relating to the decision to alter the initial dose of sodium thiopental to 1.5 grams, including but not limited to all documents concerning analysis, testing or facts on which that decision was based.

 Response: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that the requested information is protected by work product, attorney-client, and deliberative process privileges.

 Reasons: Procedure 770 was revised in less than a day.   This is neither broad nor burdensome.   As is discussed in section II(B), *supra*, the documents related to the decision to reduce the sedative, after a finding of substantial questions as to the protocol, are very relevant.   No privilege applies to such documents, as discussed in section II(C).

Request No. 8

 Request: All documents and communications relating to the CDCR's decision to reduce the dose of pancuronium from 100 mg to 40 mg, including but not limited to all documents concerning analysis, testing or facts on which that decision was based.

 Response: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that the requested information is protected by work product, attorney-client, and deliberative process privileges.

 Reasons: Procedure 770 was revised in less than a day.    This is neither broad nor

burdensome.  As is discussed in section II(B), *supra*, the documents related to the decision to reduce the paralytic agent, yet still retain it, are very relevant.  No privilege applies to such documents, as discussed in section II(C).

Request No. 9

     <u>Request</u>: All documents and communications relating to the CDCR's decision to increase the dose of potassium from 100 mEq to 240 mEq, including but not limited to all documents concerning analysis, testing or facts on which that decision was based.

     <u>Response</u>: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that the requested information is protected by work product, attorney-client, and deliberative process privileges.

     <u>Reasons</u>: Procedure 770 was revised in less than a day.   This is neither broad nor burdensome.  As is discussed in section II(B), *supra*, the documents related to the decision to retain and increase the potassium chloride are very relevant.  No privilege applies to such documents, as discussed in section II(C).

Request No. 17

     <u>Request</u>: All documents relating to the CDCR's decision to include pancuronium in the protocol, including, but not limited to, any documents that relate to the purpose to be served by its inclusion in the protocol, as well as any evidence that seizures or writhing would occur in the absence of pancuronium.

Response to Request No. 17

     <u>Response</u>: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that the requested information is protected by work product, attorney-client, and deliberative process privileges.

     <u>Reasons</u>: Procedure 770 was revised only   a few times, so this is neither broad nor burdensome.   As is discussed in section II(B), *supra*, the documents related to the decision to include a paralytic agent are very relevant.  No privilege applies to such documents, as discussed in section II(C).

Request No. 24

     <u>Request</u>: All documents relating to sodium thiopental, pancuronium bromide, potassium chloride, or any other drug used by the CDCR in lethal injections, including but not limited to prescriptions, purchase orders, instructions, and inventory lists.

     <u>Response</u>: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.

     <u>Reasons</u>: Procedure 770 defines these documents narrowly. This is neither broad nor burdensome.  As is discussed in section II(B), *supra*, the documents related to the drugs, and

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

their condition and administration are very relevant.

Request No. 25

　　Request: All documents received from, sent to, reviewed by or exchanged with any anesthesiologist or other medical personnel regarding the execution of Michael Morales that was scheduled for February 21, 2006, including correspondence, billing records or invoices.

　　Response: Defendants object to this request as overbroad and unduly burdensome.  It is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants further object that the requested information is protected by work product, attorney-client, and deliberative process privileges.

　　Reasons: There are only two or three such persons. This is neither broad nor burdensome. As is discussed in section II(B), *supra*, the documents related to the events of February 21, 2006 are very relevant, particularly to the revisions in the protocol and the viability of the use of the second and third drugs.   No privilege applies to such documents, as discussed in section II(C), and none could apply to documents sent to third parties.

## IV.

## CONCLUSION

　　For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order compelling Defendants to produce the aforementioned documents and information.

MICHAEL ANGELO MORALES

By:

John R Grele

Dated: April 17, 2006

David A. Senior (# 108759)
McBreen & Senior
1880 Century Park East, Suite 1450
Los Angeles, CA  90067
Phone:  (310) 552-5300
Fax:  (310) 552-1205
dsenior@mcbreensenior.com

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)

John R. Grele (# 167080)
Law Offices of John R. Grele
703 Market Street, Suite 550
San Francisco, CA  94103
Phone:  (415) 348-9300
Fax:  (415) 348-0364
jgrele@earthlink.net

Richard P. Steinken (admitted *pro hac vice*)
Janice H. Lam (admitted *pro hac vice*)
Stephanie L. Reinhart (admitted *pro hac vice*)
Jenner & Block LLP
One IBM Plaza
Chicago, IL  60611-7603
Phone:  (312) 923-2938
Fax:  (312) 840-7338
rsteinken@jenner.com

Ginger D. Anders (admitted *pro hac vice*)
Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington DC 20005-3823
Phone:  (202) 639-6000
Fax:  (202) 639-6066
ganders@jenner.com

*Motion to Compel Discovery*
C 06-0129 (JF) (RS) & C 06-926 (JF) (RS)