*E-FILED 5/2/06*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Michael Angelo MORALES,<br><br>    Plaintiff,<br><br>v.<br><br>Jeanne S. WOODFORD, Acting Secretary of the California Department of Corrections and Rehabilitation; Eddie S. Ylst, Acting Warden of San Quentin State Prison; and Does 1-50,<br><br>    Defendants. | Case Number C 06 219 JF RS<br>Case Number C 06 926 JF RS<br><br>DEATH-PENALTY CASE<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL<br><br><br>[Docket Nos. 132, 134 & 135] |

The present action involves a challenge to California's lethal-injection protocol for carrying out sentences of death, which is known as San Quentin Operational Procedure No. 770, or "OP 770." Plaintiff Michael Angelo Morales, a condemned inmate at San Quentin State Prison, moves pursuant to Federal Rule of Civil Procedure 37(a) for an order compelling discovery from Defendants Jeanne S. Woodford, Acting Secretary of the California Department of Corrections and Rehabilitation, and Eddie S. Ylst, Acting Warden of San Quentin State Prison. Defendants oppose the Motion. The Court heard oral argument from counsel regarding the Motion on April 25, 2006.

I

The parties' discovery disputes stem primarily from document requests and interrogatories propounded by Plaintiff pursuant to Federal Rules of Civil Procedure 33 and 34. While the document requests and interrogatories involve a large number of complex issues in the present action, to resolve the disputes about them, the Court need address only two narrow issues: (1) whether information regarding the genesis and development of OP 770 is protected by the deliberative-process privilege; and (2) whether Defendants must disclose the identities of members of San Quentin's execution team as well as various personal-background information pursuant to the Protective Order entered in this action. In addition, the Court must address three discrete issues that Plaintiff raised in his reply brief and that were addressed during oral argument: (1) whether Defendants must produce Witness No. 4 to be deposed; (2) whether Defendants must produce Anesthesiologist No. 2 to be deposed; and (3) whether Steven W. Ornoski, a former acting warden of San Quentin State Prison, must answer certain questions posed by Plaintiff during his deposition.

II

In response to Plaintiff's discovery requests, Defendants initially declined to produce documents or answer interrogatories regarding the genesis and development of the lethal-injection protocol as irrelevant and protected by various privileges. Following Plaintiff's filing of his Amended Complaint, Defendants supplemented their responses to the requests, and Defendants' counsel has represented to the Court that Defendants have provided all of the discovery sought. Defendants' counsel has stated that he will make every effort to confirm that Defendants have produced all of the discovery related to the genesis and development of OP 770 and will turn over any additional discovery that may be found. However, Defendants continue to assert that this discovery is protected by the deliberative-process privilege by means of a general, boilerplate assertion of privilege—which, notably, is "insufficient to assert a privilege." *Burlington N. & Sante Fe Ry. Co. v. United States Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005).

Defendants note that the deliberative-process privilege "shields deliberations that contribute to the formulation of important public policy." *Scott v. Board of Educ.*, 219 F.R.D. 333, 337 (D.N.J. 2004). However,

> The burden of establishing application of the privilege is on the party asserting it. Even if established, the privilege is strictly confined within the narrowest possible limits consistent with the logic of its principles. Moreover, even if established, the privilege can be overcome because it is a qualified privilege; that is, a litigant may obtain deliberative materials or information if his or her need for the materials or information and the need for accurate fact-finding override the government's interest in non-disclosure.

*North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) (internal citations, quotation marks, and brackets omitted); *see Scott*, 219 F.R.D. at 337. Additionally, the privilege "is properly limited to communications relating to policy formulation at the higher levels of government." *Id.* (internal quotation marks and citations omitted); *see Kelly v. City of San Jose*, 114 F.R.D. 653, 658-59 (N.D. Cal. 1987). "Further, when the deliberations of a government agency are at issue, the [p]rivilege is not available to bar disclosure of such deliberarations." *Scott*, 219 F.R.D. at 337.

Deliberations regarding the development of the lethal-injection protocol—which, as noted, is formally categorized as a San Quentin Operational Procedure—relate to the routine implementation by corrections officials of the State's policy choice of lethal injection as its primary method of execution, not the formulation of that policy at the higher levels of government. "Routine operating decisions cannot be transformed into policy formulation at the higher levels of government simply because they are made at public institutions." *Id.* at 338. In addition, those deliberations are directly at issue in the instant litigation due to allegations contained in the Amended Complaint. Accordingly, the deliberative-process privilege is inapplicable. Moreover, even if it were applicable, the need for accurate fact-finding in answering the question of whether California's lethal-injection protocol comports with the Constitution outweighs Defendants' insufficiently asserted desire to keep such deliberations secret. Defendants therefore must disclose information regarding the genesis and development of OP 770.

### III

In the Protective Order entered in the present action, the Court recognized Defendants' "legitimate 'concerns about the safety of prison personnel' who conduct executions." Protective

Order at 1 (quoting *California First Amend. Coalition v. Woodford*, 299 F.3d 868, 880 (9th Cir. 2002)). However, the Court also concluded that Defendants' proposed form of order, which would have prevented Plaintiff's counsel from learning the identities of members of the execution team, was "overly broad." Protective Order at 1. As the Court stated,

> The issue in the present action is not, as argued by Defendants, "merely . . . the narrow question of whether the combination of drugs used by California in a lethal injection results in the infliction of cruel and unusual pain." Indeed, it is undisputed that the combination of drugs used by Defendants should *not* cause such pain if properly administered. However, the Court has found that the records of recent executions raise substantial questions as to whether the drugs are in fact being administered properly. *See Morales v. Hickman*, 438 F.3d 926, 929 (9th Cir. 2006). Under these circumstances, Plaintiff must be given a reasonable opportunity, in a manner that will not jeopardize the safety of prison personnel, to explore possible answers to these substantial questions, including answers that relate to the background, training, and experience of the members of the execution team.

Protective Order at 1-2. Accordingly, to ensure the safety of prison personnel, the Court entered a strict protective order providing that the identities and identifying information of members of the execution team

> shall be revealed to and used by only Plaintiff's attorneys, one expert (Dr. Mark Heath), and one licensed private investigator whose background and credentials must be approved by Defendants. Plaintiff's attorneys, expert, and investigator shall not disclose Protected Information to anyone without first obtaining express authorization to do so from the Court. Plaintiff's attorneys shall provide copies of this Protective Order to the expert and the investigator, who shall submit to the Court declarations under penalty of perjury that they have read this Protective Order and agree to abide by its terms. A violation of this Protective Order by any attorney, the expert, or the investigator may be punished by the Court as a contempt.

Protective Order at 2-3 (footnotes omitted). This Protective Order—particularly when considered in light of the Court's rejection of Defendants' effort to prevent altogether the disclosure of the identities of members of the execution team—reflects the Court's determination that this information is relevant.

Nonetheless, Defendants continue to refuse to disclose the identities of members of the execution team in accordance with this Protective Order. In their brief opposing the Motion to Compel and in a supplemental declaration, Defendants refer the Court to protective orders

entered in actions pending in the United States District Courts for the Western District of Missouri and the Eastern District of Virginia in which condemned inmates challenge their states' lethal-injection protocols.  The court in Missouri ordered "that the names of persons involved in executions will not be ordered produced by defendants in response to plaintiff's discovery requests." *Taylor v. Crawford*, No. 05-4173-CV-C-SOW, slip op. at 2 (W.D. Mo. Oct. 31, 2005) (Protective Order).  The court in Virginia "reserve[d] ruling upon Plaintiff's Motion to Compel with respect to Requests for Production and Interrogatories that request the names of persons" and ordered "that, pending further action by the Court, in responding to Plaintiff's discovery requests Defendants need not disclose the names or identities of any person acting on behalf of the Commonwealth [of Virginia], or information reasonably calculated to identify any such person. . . ." *Walker v. Johnson*, No. 1:05cv934, slip. op. at 1 (E.D. Va. Dec. 14, 2005) (Discovery Order).

While the particular circumstances that prompted these courts to address the difficult issues presented by means of restrictive protective orders are beyond the present record, what is of consequence here is the Protective Order actually entered by the presiding judge.  Defendants must reveal the information requested by Plaintiff—including the identities of members of the execution team—as is clearly contemplated by and in conformance with that order.

That being said, the Court is not unmindful of the legitimate concerns regarding safety and privacy that Defendants have raised.  At oral argument, Plaintiff's counsel agreed to limit access to the actual names of members of the execution team to Plaintiff's investigator, and to continue using numbers to identify execution-team members for other purposes.  In addition, while Plaintiff is entitled to information regarding the training, experience, and competence of execution-team members—including, for example, educational, licensing, employment, disciplinary, and malpractice records—Plaintiff has not demonstrated a need for personal, private information, including information regarding drug use and criminal histories, that would outweigh the obvious privacy interests implicated by that material.  Accordingly, Defendants must reveal the names of members of the execution team solely to Plaintiff's private investigator but are not required to provide execution-team members' personal, private information such as

5

Case Nos. C 06 219 JF RS & C 06 926 JF RS
ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL
(DPSAGOK)

1    that regarding histories of drug use, criminal records, or background checks.

2                                                    IV

3         Plaintiff has, in addition, raised three issues regarding depositions.  First, Plaintiff relates
4    that Defendants have declined to produce Witness No. 4 for deposition.  At oral argument,
5    Defendants' counsel stated that Defendants would produce Witness No. 4 to be deposed if
6    ordered to do so.  As the Court indicated at that time, Defendants are required to produce
7    Witness No. 4 for deposition.

8         Second, at oral argument, Defendants indicated that they were not willing to produce
9    Anesthesiologist No. 2 for deposition.  Defendants contend that the testimony of
10   Anesthesiologist No. 2 would be cumulative of that of Anesthesiologist No. 1, who also will be
11   an expert witness for Defendants at the evidentiary hearing to be held in this action.  However,
12   the fact that two witnesses were present at the same event does not necessarily make their
13   testimony cumulative:  the two anesthesiologists may have different perspectives and
14   conclusions regarding their experiences during the events surrounding Plaintiff's scheduled
15   execution.  Defendants must produce Anesthesiologist No. 2 to be deposed.

16        Third, Plaintiff reports that at a deposition Defendants' counsel instructed Mr. Ornoski
17   not to answer questions regarding a state investigation into mismanagement at San Quentin
18   during his tenure as acting warden, including questions regarding whether the witness's
19   reassignment from San Quentin was related to mismanagement of the three executions he
20   conducted.  Of course, if a witness or his counsel objects to a line of questioning at a deposition
21   as not relevant, the witness nonetheless is required to answer the questions subject to the
22   objection.  Fed. R. Civ. P. 30(c).  Moreover, whether Mr. Ornoski was reassigned from San
23   Quentin because of the mismanagement of executions is plainly relevant to the instant litigation.
24   Mr. Ornoski must answer the questions.

25        Similarly, again on the advice of Defendants' counsel, Mr. Ornoski declined on privilege
26   grounds to answer questions regarding a meeting he attended regarding the development of the
27   current version of OP 770 that was chaired by the legal counsel to Governor Arnold
28   Schwarzenegger.  However, the deliberative-process privilege is inapplicable and outweighed by

                                                     6
Case Nos. C 06 219 JF RS & C 06 926 JF RS
ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL
(DPSAGOK)

the need for evidence for the reasons discussed above; moreover, that privilege does not cover "communications made after the decision and designed to explain it," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151-52 (1975) (citations omitted), which may describe the meeting at issue. Mr. Ornoski must answer these questions as well.

## V

The United States Court of Appeals for the Ninth Circuit has indicated its desire to review a challenge to California's lethal-injection protocol "based on a full record." *Beardslee v. Woodford*, 395 F.3d 1064, 1076 (9th Cir. 2005). This Court has indicated its intention to have that record developed in the present action, noting at an earlier hearing that "there will be a value to the entire criminal-justice system to vetting this issue thoroughly." Defendants have assured the Court of their willingness to cooperate in developing a full record.

Accordingly, and good cause therefor appearing, Plaintiff's unopposed Ex Parte Motion to File Oversize Brief is granted and Plaintiff's Motion to Compel Discovery is granted in part as referenced above. Not later than twenty days after the present Order is issued: (1) in accordance with the limitations outlined herein, Defendants shall produce to Plaintiff's counsel the documents that Plaintiff has requested, except that the Execution Security Plan shall be submitted to the Court for review in camera; (2) in accordance with the limitations outlined herein, Defendants shall answer Plaintiff's interrogatories; (3) Defendants shall produce Witness No. 4 for deposition; (4) Defendants shall produce Anesthesiologist No. 2 for deposition; and (5) Steven W. Ornoski shall answer Plaintiff's deposition questions as indicated herein. Plaintiff's Motion for Order Shortening Time to Hear Motion to Compel is denied as moot.

*It is so ordered.*

DATED: May 2, 2006

_____
RICHARD SEEBORG
United States Magistrate Judge