*E-FILED 9/13/06*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Michael Angelo MORALES,<br><br>   Plaintiff,<br><br>   v.<br><br>James E. TILTON, Acting Secretary of the California Department of Corrections and Rehabilitation, and Robert L. Ayers Jr., Acting Warden of San Quentin State Prison,<br><br>   Defendants. | Case Number C 06 219 JF RS<br>Case Number C 06 926 JF RS<br><br>DEATH-PENALTY CASE<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SECOND MOTION TO COMPEL<br><br>[Docket No. 169] |

The present action involves a challenge to California's lethal-injection protocol for carrying out sentences of death, which is known as San Quentin Operational Procedure No. 770, or "OP 770." The district judge presiding over this matter has scheduled an evidentiary hearing in this action for the last week of September 2006. In anticipation of the evidentiary hearing, Plaintiff filed his Second Motion to Compel Discovery. Defendants and nonparty witnesses the Office of Governor Arnold Schwarzenegger of California and the California Office of the Inspector General oppose the Motion. The Court previously granted Plaintiff's Motion to Shorten Time (as well as his Motion to File Oversized Brief) that he filed in connection with his Second Motion to Compel. The Court heard oral argument from counsel regarding the Second Motion to Compel on September 12, 2006.

I

The consideration of this Motion generates a distinct sense of déja vu: in two prior Orders, issued on May 2[1] and June 9, 2006,[2] the Court addressed and resolved many of the issues now raised by the parties; moreover, these prior Orders necessarily provide background to the present Order. In particular, the Court ordered Defendants to produce the documents that Plaintiff requested prior to the issuance of the two Orders and to answer Plaintiff's interrogatories, subject to certain limitations, and the Court ordered that Steven W. Ornoski, a former warden at San Quentin State Prison, answer Plaintiff's deposition questions. There is no basis for relitigating these issues. That being said, the Court will not permit Plaintiff to expand the scope of discovery at this late date. Defendants, the Office of the Governor, and the Office of the Inspector General are required to respond to discovery as set forth below. The Court knows of no reason why this discovery cannot be completed in accordance with the schedule for the evidentiary hearing. The parties are advised to resolve any further disputes through the meet-and-confer process.

II

As previously ordered, Defendants must produce all of the documents requested and must answer all the interrogatories posed that were discussed in the Court's prior Orders, subject only to the limitations delineated in those prior Orders. A failure to produce such documents or to answer such interrogatories may be punished as a contempt.

Plaintiff continues to seek to depose current and former members of the execution team, including Witnesses Nos. 6 and 8.[3] The execution team members are at the center of this

---

[1] This is the Court's Order Granting in Part Plaintiff's Motion to Compel. (Doc. No. 151.)

[2] This is the Court's Order on Plaintiff's Motion for Reconsideration or Clarification of May 2, 2006, Order. (Doc. No. 158.)

[3] Witness No. 7 has been deposed. Witness No. 9 is the designation reserved for the team leader-in-training. As Defendants have not designated anyone for this position, this deposition cannot be taken at this time.

litigation. Accordingly, and for the same reasons that Defendants previously were required to produce Witness No. 4 (and other execution team members) for deposition, they must produce Witnesses Nos. 6 and 8. For any of these witnesses who are no longer in Defendants' employ (such as Witness No. 6, who is retired) and whom Defendants cannot produce, Defendants must provide any information that will enable Plaintiff to issue subpoenas to such witnesses. In addition, Mr. Ornoski must answer all questions regarding statements made by any participants at and in connection with the meeting on February 28, 2006, that included persons from the Office of the Governor.[4]  Finally, as discussed at oral argument, Defendants must produce Denise Dull.

Plaintiff made his Third Set of Document Requests after the Court issued its prior Orders on discovery. The Court therefore will address below these Requests in detail.

Requests Nos. 1, 2, 3, 5, 15, 16, 21, 23, 24, 26 through 34, 48, and 51 are specific iterations of earlier document requests. Accordingly, to the extent that they have not done so already, Defendants must produce the documents requested that are within their control.

Requests Nos. 7, 8, 9, and 10 are for pay sheets for execution team members. Plaintiff seeks these records because they contain information about the training of execution team members. These sheets appear to be too attenuated to any relevant information and their production would be unduly burdensome—particularly at this late date—for Defendants; moreover, they would be duplicative of the documents requested in Requests Nos. 11 through 14, which are discussed below. Defendants need not produce these documents.

Defendants have produced documents in response to Requests Nos. 11, 12, 13, and 14, which seek training logs that were covered by document requests previously addressed by the Court. However, Defendants have redacted the names on the training logs without replacing the names with witness numbers, thereby rendering the logs nearly meaningless. Defendants must produce either the documents without redactions[5] or the documents with the correct witness

---

[4]Such statements are not privileged, as indicated below.

[5]The names would be Protected Information covered by the Protective Order that was entered by the district judge and accordingly may be disclosed to Plaintiff's counsel.

3

numbers in place of the names.

Requests Nos. 49 and 50 seek documents regarding deaths that may have occurred due to allegedly inadequate medical care at San Quentin. These requests are overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Defendants need not produce the requested documents.

## III

At the outset, Plaintiff asked Defendants' counsel to produce documents in the custody of the Office of Governor Arnold Schwarzenegger. Defendants' counsel initially agreed to produce the documents; weeks later, Defendants' counsel declined to produce them on the claim that the documents were in the possession of a nonclient that is a nonparty to this action (i.e, the Governor's Office). Plaintiff then subpoenaed the documents directly from counsel for the Governor's Office. In Requests Nos. 2 through 7, Plaintiff apparently seeks fewer than 200 pages of documents, which relate to a single meeting in which persons from the Governor's Office of Legal Affairs participated in devising the most recently revised version of California's lethal-injection protocol.[6]

Many of the objections by the Governor's Office to Plaintiff's document requests are by means of general, boilerplate assertions of privilege. However, to the extent that the Governor's Office relies on them, such assertions are "insufficient to assert a privilege." *Burlington N. & Sante Fe Ry. Co. v. United States Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Moreover, for the same reasons provided in the Court's May 2 Order, the deliberative-process privilege is inapplicable to these document requests and the need for accurate fact-finding in this case outweighs the desire of the Governor's Office's to keep the documents at issue secret.

---

[6] Defendants report that the "changes to the amount and delivery of the drugs used" in the revised protocol actually were drafted by the now former execution team leader, a prison guard designated Witness No. 1, "at the direction of Warden Ornoski with some limited input from a staff physician as to the feasibility of a proposed continuous infusion." (See Doc. No. 194 at 3.)

4

Case Nos. C 06 219 JF RS & C 06 926 JF RS
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SECOND MOTION TO COMPEL
(DPSAGOK)

As a general matter, the Governor's Office is correct that notes by counsel at the Office of Legal Affairs may be protected as attorney work product. But this only applies to actual attorney work product that was prepared in an attorney's role as counsel for the Governor's Office, not to notes taken or prepared in the development of the lethal-injection protocol. Additionally, the Governor's Office cannot claim privilege for communications with, or documents created by, Defendants, Defendants' counsel, or other persons who are neither part of the Office of the Governor nor counsel for the Office of the Governor. This is so because counsel for Defendants and for the Governor's Office have stated that the Governor's Office is not a client of Defendants' counsel and not a party to the present action. That, along with Defendants' shift in position on that point, defeats any such claim of privilege and results in its waiver.[7] *See Evans v. City of Chicago*, 231 F.R.D. 302 (N.D. Ill. 2005) (no privilege or protection in factually similar case). The Governor's Office must produce the documents Plaintiff requests.

## IV

Plaintiff initially sought vast numbers of documents from the California Office of the Inspector General regarding both deaths and medical care at San Quentin. Such requests were overbroad and unduly burdensome (although understandable in light of Defendants' nondisclosure of the names of the execution team members). However, Plaintiff has narrowed the scope of these requests significantly: he now seeks only documents regarding any investigations of conduct by execution team members. If any such documents exist, they presumably are few in number and plainly discoverable.

Like the Governor's Office, many of the Inspector General's objections to Plaintiff's document requests are by means of general, boilerplate assertions of privilege. However, as

---

[7]The contentions advanced by Defendants and by the Governor's Office in this regard are disingenuous: they cannot have it both ways by being a nonparty whose communications with a party are protected by the attorney-client privilege. As Defendants' counsel has stated, counsel for the Governor's Office represents "an independent state agency" and is not counsel for Defendants.

1 noted, to the extent that the Inspector General relies on them, such assertions are "insufficient to assert a privilege." *Id.* Moreover, for the same reasons indicated in the Court's May 2 Order, the deliberative-process privilege is inapplicable to these document requests and the need for accurate fact-finding in this case outweighs the Inspector General's desire to keep the documents at issue secret; similarly, neither the official-information privilege nor the self-critical-analysis privilege applies. Finally, the Inspector General's privacy-based objections, though well-taken, may be resolved through inmate number designations and the redaction of identifying information and through a protective order.[8]

In short, the Inspector General must produce the documents Plaintiff requests to the extent that such documents relate to any investigations of execution team members (whose names shall be provided by Defendants as discussed at oral argument). However, the Inspector General may redact identifying information of execution team members and replace them with witness numbers; similarly, the Inspector General may redact the identifying information of inmates and replace them with inmate numbers.

V

Accordingly, and good cause therefor appearing, Plaintiff's Second Motion to Compel is granted in part as indicated herein. In particular, not later than September 22:

(1) Defendants shall produce for deposition Denise Dull and Witnesses Nos. 6 and 8—or, for any of these witnesses who are no longer in Defendants' employ and whom Defendants cannot produce, Defendants shall provide Plaintiff's investigator all records concerning such witnesses' residences, locations where they may be receiving retirement benefits, email addresses, any information indicating their whereabouts for the past year, and any information that will enable Plaintiff to issue subpoenas to such witnesses;

---

[8] The Inspector General raises the prospect of a protective order governing any documents he produces. The Protective Order already entered in this action is hereby incorporated.

(2) Defendants shall produce for further deposition Steven W. Ornoski, who shall answer all questions regarding statements made by any participants at and in connection with the meeting on February 28, 2006, that included persons from the Office of the Governor;

(3) Defendants shall provide Plaintiff's investigator with the names of all current and former execution team members and shall provide Plaintiff's counsel corresponding witness numbers;

(4) Defendants shall identify by witness number current and former execution team members and shall describe their roles in previous executions;

(5) Defendants shall identify by witness number the person who wrote the handwritten logs for the Stanley Williams execution;

(6) Defendants shall provide witness numbers on all redacted documents where witness names have been removed;

(7) Defendants shall provide all documents pertaining to revisions of OP 770, including documents prepared or generated in connection with the meeting with the Office of the Governor on February 28, 2006;

(8) Defendants shall disclose all communications regarding executions or lethal injection to or from Drs. Rosko, Singler, and Etkins;

(9) Defendants shall disclose the identities and roles of every person who contributed to revising OP 770;

(10) Defendants shall disclose all investigations of conduct by current and former execution team members;

(11) The Office of the Governor shall produce all documents concerning executions, revisions of OP 770, or meetings concerning lethal injection, including all documents provided by or to Defendants and Defendants' counsel; and

(12) The California Office of the Inspector General shall provide documents that relate to any investigations of execution team members (whose names shall be provided by Defendants), although identifying information of execution team members may be

7

1 redacted and replaced with witness numbers and identifying information of inmates
2 may be redacted and replaced with inmate numbers in conformity with the Protective
3 Order entered in this action.

4 In all other respects, Plaintiff's Second Motion to Compel is denied.

*It is so ordered.*

DATED:  September 12, 2006

_____
RICHARD SEEBORG
United States Magistrate Judge