
**E-filed 10/3/06**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Michael Angelo MORALES,<br><br>Plaintiff,<br><br>v.<br><br>James E. TILTON, Acting Secretary of the California Department of Corrections and Rehabilitation, and Robert L. Ayers Jr., Acting Warden of San Quentin State Prison,<br><br>Defendants. | Case Number C 06 219 JF RS<br>Case Number C 06 926 JF RS<br><br><u>DEATH-PENALTY CASE</u><br><br>REQUEST FOR BRIEFING<br><br>[] |

Pursuant to the schedule established at the conclusion of the evidentiary hearing on September 29, 2006, the parties' closing briefs are due on or before October 27, 2006. In addition to any arguments the parties wish to address in their closing briefs, the Court is interested in the parties' views with respect to the following questions:

1. In light of the evidence in the record, what steps can and should Defendants take to improve their actual implementation of the three-drug protocol described in OP 770? In answering this question, please address, without limitation:

    (a)    the qualifications, recruitment, screening, and training of the execution team;

    (b)    the physical aspects of the execution chamber and apparatus, including the available space, lighting, sight lines, length and positioning of IV tubing, and

                monitoring equipment; and

    (c)    record-keeping, including the preparation, content and reliability of execution logs and records indicating the disposition of drugs used in training and in executions.

The Court is particularly interested in the parties' views as to whether the experience of other jurisdictions that use a three-drug execution protocol might be useful with respect to these matters.

    2. Assuming the continued use of pancuronium bromide and potassium chloride in executions, what are the advantages and disadvantages of using a longer-acting barbiturate, such as pentobarbital, with or without the use of a narcotic, to induce unconsciousness? What modifications to OP 770 would be necessary?

    3. Again assuming the continued use of pancuronium bromide and potassium chloride in executions, what steps, in addition to those discussed in response to the first question above, can and should Defendants take to monitor inmates' levels of unconsciousness prior to and following injection of these drugs? For example, would the reliability of the protocol be improved by the use of a BIS monitor or an EEG? Is the involvement of medical professionals necessary, and if so, what type(s) of medical professionals should be involved in what ways? In the context of this question, what would be the advantages and disadvantages of eliminating pancuronium bromide from the protocol?

    4. What would be the advantages and disadvantages of an execution protocol that achieves its purpose by using one or more sedatives, such as sodium thiopental or pentobarbital, with or without a narcotic, and eliminates the other two drugs that currently are used? Should a single dose, multiple doses, a continuous infusion, or some combination of these be used? What modifications to OP 770 would be necessary?

    5. What additional evidence, if any, remains to be submitted in connection with the evidentiary hearing?

    This Request for Briefing should not be read as indicating in any way how the Court intends to rule in this matter, nor shall the Court construe any response to this request as a waiver of a party's arguments with respect either to the constitutionality of the current version of OP 770

1 | or any other legal issue or procedural question presented by the instant case.

DATED: October 3, 2006

_____
JEREMY FOGEL
United States District Judge

3

Case Nos. C 06 219 JF RS & C 06 926 JF RS
REQUEST FOR BRIEFING
(DPSAGOK)