1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  MICHAEL J. QUINN, State Bar No. 209542
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5726
    Fax:  (415) 703-5843
8   Email:  Michael.Quinn@doj.ca.gov

9  Attorneys for Defendants Schwarzenegger, Tilton, and
   Ayers

10

11                   IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                           SAN JOSE DIVISION

14

15  MICHAEL ANGELO MORALES,                    C06-0219 JF

16                           Plaintiff,

17          v.

18  JAMES TILTON, et al.,

19                           Defendants.

20

21

22            DEFENDANTS' OPPOSITION TO
       PLAINTIFF'S THIRD MOTION TO COMPEL DISCOVERY

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2                                                                                                          **Page**

3    INTRODUCTION                                                                                             1

4    STATEMENT OF FACTS                                                                                       2

5    ARGUMENT                                                                                                 3

6    A.   Defendants Have Properly Responded to Plaintiff's Discovery Requests.                               3

7         1.   The Production of the Electronically Stored Information is Unnecessary.                        3

8         2.   Defendants are not Required to Give Plaintiff's Investigator Detailed
9              Personal Information About the Execution Team Members.                                          4

          3.   Providing Information Regarding Team Members to Plaintiff's
10             Investigator                                                                                    4

11        4.   Defendants Have Complied with Rule 34.                                                          5

12        5.   Plaintiff's Exhibit Entitled "Emails Without Indicated Attachments"
13             is Misleading.                                                                                  6

          6.   The Attachments to the Governor's Office's Documents                                           9
14
          7.   Documents Discussed in the Documents Produced, and in Depositions                              9
15
     B.   Because Defendants Have Properly Asserted Privileges in This Case,
16        no Waiver Has Occurred.                                                                              10

17   C.   Defendants Have Not Waived the Attorney-Client Privilege.                                            11

18        1.   The Common-Interest Exception Applies.                                                          12

19        2.   The Governor's Office Counsel, CDCR Legal Affairs Counsel,
               CDCR General Counsel, the Attorney General's Office Counsel, CDCR
20             Employees, and Expert Witnesses are Not "Fact" Witnesses.                                       13

21        3.   The Revisions to the State's Lethal Injection Protocol Were Created
               for Purposes of Litigation.                                                                    14
22
          4.   Plaintiff Has No Compelling Need for the Protected Documents.                                   15
23
     D.   The Official-Information and Deliberative-Process Privileges Have
24        Been Properly Asserted.                                                                              17

25        1.   The Deliberative-Process Privilege Applies Here.                                                17

26        2.   Factors Favor Non-Disclosure of the Privileged Documents.                                       19

27             a.   Withheld Documents Are Not Relevant to the Issues Before the
                    Court.                                                                                     19
28

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.          Michael Angelo Morales v. James Tilton, et al.
                                                                                    C06-0219 JF

i

**TABLE OF CONTENTS  (continued)**

Page

b.  Other Available Evidence Renders Withheld Documents Redundant.  19

c.  The Government's Role as Defendant Does Not Impact Its Good Faith.  20

d.  Disclosure Would Harm Future Decisionmaking.  20

e.  The Official-Information Privilege Applies Here.  21

D.  Federal Rule of Civil Procedure 26(b)(4)(B) Protects the Identities and Work Product of the Experts Retained by CDCR and the Governor's Office.  22

1.  Significant Policy Considerations Justify the Application of Rule 26(b)(4)(B) in this Case.  24

2.  Discovery Should not be Permitted Under the "Exceptional Circumstances" Standard.  25

3.  Defendants Have not Waived the Confidential Status of the Consultants.  26

CONCLUSION  26

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.

Michael Angelo Morales v. James Tilton, et al.
C06-0219 JF

ii

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Admiral Ins. Co. v. United States District Court*
881 F.2d 1486 (9th Cir. 1989) ......... 16

5

*Assembly of Cal. v. U.S. Dep't of Commerce*
6   968 F.2d 916 (9th Cir. 1992) ......... 18

7

*Bank Brussels Lambert v. Chase Manhattan Bank*
175 F.R.D. 34 (S.D.N.Y. 1997) ......... 24, 25

8

*Burlington Northern & Santa Fe Railway Co. v. U.S. District Court*
9   408 F.3d 1142 (9th Cir. 2005) ......... 10

10

*Clark v. American Commerce National Bank*
974 F.2d 127 (9th Cir. 1992) ......... 13

11

*DOI v. Klamath Water Users Protective Ass'n*
12   532 U.S. 1 (2001) ......... 20

13

*Dominguez v. Superior Court of L.A. County*
101 Cal. App. 3d 6 (Ct. App. 1980) ......... 21

14

*Double Day v. Ruh*
15   149 F.R.D. 601 (E.D. Cal. 1993) ......... 16

16

*FMC Corp. v. Vendo Corp.*
196 F. Supp. 2d 1023 (E.D. Cal. 2002) ......... 25

17

*Fox v. Cal. Sierra Fin. Servs.*
18   120 F.R.D. 520 (N.D. Cal. 1988) ......... 23

19

*Frazier v. Southeastern Pennsylvania Transportation Authority*
161 F.R.E. 309 (E.D. Pa. 1995) ......... 16

20

*FTC v. Warner Communications, Inc.*
21   742 F.2d 1156 (9th Cir. 1984) ......... 17-19

22

*Griffith v. Davis*
161 F.R.D. 687 (C.D. Cal. 1995) ......... 12

23

*Heathman v. United States Dist. Court for Cent. Dist.*
24   503 F.2d 1032 (9th Cir. 1974) ......... 17

25

*Hickman v. Taylor*
329 U.S. 495 (1947) ......... 14, 15

26

*Holgreen v. State Farm Mutual Automobile Insurance Co.*
27   976 F.2d 573 (9th Cir. 1992) ......... 15

28

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.

Michael Angelo Morales v. James Tilton, et al.
C06-0219 JF

iii

**TABLE OF AUTHORITIES  (continued)**

**Page**

*In re California Pub. Utils. Comm'n*
892 F.2d 778 (9th Cir. 1989)                                              14

*In re Pizza Time Theatre Sec. Litig.*
113 F.R.D. 94 (N.D. Cal. 1986)                                           22

*Jumpsport, Inc. v. Jumpking, Inc.*
213 F.R.D. 329 (N.D. Cal. 2003)                                          16

*Kelly v. San Jose*
114 F.R.D. 653 (N.D. Cal. 1987)                                          18

*Kerr v. United States Dist. Court for Northern Dist.*
511 F.2d 192 (9th Cir. 1975)                                         17, 21

*Larsen v. Harrington*
11 F. Supp. 2d 1198 (E.D. Cal. 1998)                                     13

*Maricopa Audubon Society v. United States Forest Service*
108 F.3d 1089 (9th Cir. 1997)                                           11

*Modesto Irrigation District v. Gutierrez*
No. 06-453; 06-308 2007 WL 763370 (E.D. Cal. 2007)                   12, 20

*N.L.R.B. v. Sears, Roebuck & Co.*
421 U.S. 132 (1975)                                                     17

*North Pacifica, LLC v. City of Pacifica*
274 F. Supp. 2d 1118 (N.D. Cal. 2003)                                   13

*Ring v. Commercial Union Ins. Co.*
159 F.R.D. 653 (M.D.N.C. 1995)                                          16

*Sanchez v. City of Santa Ana*
936 F.2d 1027 (9th Cir. 1990)                                       17, 21

*State ex. rel. U.S. Fidelity and Guar. Co. v. Montana Second Judicial Dist. Court.*
240 Mont. 5 (1989)                                                     16

*U.S. v. Gulf Oil Corp.*
760 F.2d 292 (Temp. Emer. Ct. App. 1985)                               23

*U.S. v. Judson*
322 F.2d 460 (9th Cir. 1963)                                           11

*United States v. 22.80 Acres of Land*
107 F.R.D. 20 (N.D. Cal. 1985)                                         23

*United States v. Bell*
No. C94-20342 RMW, 1994 U.S. Dist.
LEXIS 17408, at *11, *25-26 (N.D. Cal. Nov. 9, 1994)                    24

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.          Michael Angelo Morales v. James Tilton, et al.
                                                                              C06-0219 JF

iv

**TABLE OF AUTHORITIES  (continued)**

Page

*United States v. Bergonzi*
216 F.R.D. 487 (N.D. Cal. 2003)                                    12

*United States v. Jose*
131 F.3d. 1325 (9th Cir. 1997)                                     12

*United States v. Kovel*
296 F.2d. 918 (2d Cir. 1961)                                    11, 26

*United States v. Nobles*
(1975) 422 U.S. 225 (1975)                                         15

*United States v. Torf*
357 F.3d. 900 (9th Cir. 2003)                                      15

*United States v. Zolin*
809 F.2nd. 1411 (9th Cir. 1987)                                    12

*Upjohn Co. v. United States*
449 US 383 (1981)                                                  11

*Weinstein v. Dep't of Health & Human Servs*
977 F. Supp. 41 (D.D.C. 1997)                                      18

**Constitutional Provisions**

United States Constitution
       Eighth Amendment                                13, 14, 17, 19, 26

**Court Rules**

Federal Rule of Civil Procedure
       rule 24                                                     26
       rule 26                                                     25
       rule 26(b)(3)                                           14, 15
       rule 26(b)(4)(B)                                       1, 22-26
       rule 34                                                 2, 5, 10
       rule 34(b)(i)                                              3, 5

**Other Authorities**

California Evidence Code
       § 1040                                                     21
       § 1040(a)                                                  21
       § 1040(b)(2)                                               21

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.        Michael Angelo Morales v. James Tilton, et al.
                                                                    C06-0219 JF

v

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DAVID S. CHANEY
    Chief Assistant Attorney General
3   FRANCES T. GRUNDER
    Senior Assistant Attorney General
4   THOMAS S. PATTERSON
    Supervising Deputy Attorney General
5   MICHAEL J. QUINN, State Bar No. 209542
    Deputy Attorney General
6     455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7     Telephone:  (415) 703-5726
    Fax:  (415) 703-5843
8     Email:  Michael.Quinn@doj.ca.gov

9   Attorneys for Defendants Schwarzenegger, Tilton, and
    Ayers

11

12              IN THE UNITED STATES DISTRICT COURT

13           FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                 SAN JOSE DIVISION

15   **MICHAEL ANGELO MORALES,**           C06-0219 JF

16                       Plaintiff,     **DEFENDANTS' OPPOSITION**
                                         **TO PLAINTIFF'S THIRD**
17         **v.**                             **MOTION TO COMPEL**
                                         **DISCOVERY**
18   **JAMES TILTON, et al.,**

19                       Defendants.

1    Defendants Schwarzenegger, Tilton, and Ayers (Defendants) submit their opposition to

2 Plaintiff's Third Motion to Compel Discovery.

3                                    **INTRODUCTION**

4    Plaintiff's third motion to compel attempts to convince this court that Defendants have

5 failed to respond to Plaintiff's discovery requests, and that Plaintiff is entitled to materials that

6 Defendants have objected to producing because they are privileged.

7    This court should reject Plaintiff's assertions and deny his motion, since Defendants have

8 not engaged in any discovery misconduct or abuses.  To the contrary, as described more fully

9 below, Defendants have made every effort to produce documents in an efficient manner, and

10 have attempted to be responsive to Plaintiff's extensive discovery demands.

11    Defendants' objections under the attorney-client and attorney work-product privileges have

12 also been appropriate.  Because communications among the Governor's legal staff, CDCR

13 counsel, the Attorney General's office, and CDCR officials were developed for the purpose of

14 the pending litigation, they should not be disclosed to Plaintiff.

15    In addition, the deliberative-process privilege has been properly asserted.  Regarding

16 documents from the Governor's office, the materials that have been withheld under that privilege

17 were deliberative, and reflect the opinions and communications related to the drafting of the new

18 lethal-injection protocol.  CDCR also withheld several lethal-injection protocols supplied by

19 other states who requested that the confidentiality of those materials be maintained.  Those

20 documents are covered by the deliberative-process privilege because they were provided in order

21 for the State to consider as it was redrafting its own protocol.  Moreover, those out-of-state

22 protocols are subject to the official-information privilege because they were acquired and kept in

23 confidence by public employees working on the revised version of O.P. 770.

24    Lastly, Federal Rule of Civil Procedure 26(b)(4)(B) protects the identities of, and opinions

25 rendered by, non-testifying experts retained by CDCR and the Governor's office, since those

26 consultants were retained in connection with the subject matter of the pending litigation, namely,

27 the rewriting of California's lethal-injection protocol.

28    Accordingly, because Defendants have not engaged in any discovery abuses, and the

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.          Michael Angelo Morales v. James Tilton, et al.
                                                          C06-0219 JF

1  privileges asserted by Defendants are appropriate, Plaintiff's request for additional discovery set

2  forth in the third motion to compel should be denied.

3                                        **STATEMENT OF FACTS**

4          On June 20, 2007, Plaintiff served Defendants Tilton and Ayers with 62 document-

5  production requests. (Decl. of M. Quinn Supp. Opp'n to Pl.'s Third Mot. to Compel (Decl. M.

6  Quinn) ¶ 2.) The parties agreed to a week's extension (from July 20, 2007 to July 27, 2007) to

7  allow Defendants' counsel to complete their review of over 15,000 pages of documents, finalize

8  a privilege log, and produce the documents to Plaintiff. (Decl. M. Quinn ¶ 3.) Contrary to

9  Plaintiff's allegations, the documents were produced in the manner that the California

10  Department of Corrections and Rehabilitation (CDCR) maintained them, and included numerous

11  page breaks that indicated where one document ended and another began. (Decl. of K. McClease

12  Supp. Opp'n to Pl.'s Third Mot. to Compel (Decl. K. McClease) ¶ 6.); (Decl. M. Quinn ¶ 4.)

13         Several days after these documents were produced, Plaintiff served Defendant

14  Schwarzenegger with 62 document-production requests. (Decl. M. Quinn ¶ 5.) On September 4,

15  roughly 3,000 pages of documents were provided to Plaintiff. (Decl. M. Quinn ¶ 6.) Like the

16  documents provided on July 27, those documents were produced in the manner that the

17  Governor's Office maintained them, and included page separations that demonstrated where one

18  document ended and the other began. (Decl. M. Quinn ¶ 6.)

19         In response to an August 28, 2007 meet-and-confer letter from counsel for Pacific News

20  Service, Defendants revised the privilege log for the CDCR documents and provided additional

21  documents to Plaintiff. (Decl. M. Quinn ¶ 7.) Following a September 6 telephone conference

22  with Plaintiff's counsel, Defendants again reviewed their privilege log and produced additional

23  documents to Plaintiff.[1/] (Decl. M. Quinn ¶ 8.)

24         The documents were produced in the manner in which they were kept by CDCR, and

25  Defendants believe that they have fulfilled their obligations under Federal Rule of Civil

26  Procedure 34. However, after conferring with Plaintiff, Defendants agreed to serve an amended

27

28         1. The privilege log for the CDCR documents has been reduced from 157 pages to 97 pages.

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.          Michael Angelo Morales v. James Tilton, et al.
                                                          C06-0219 JF

1  discovery response with Bates-stamp numbers that correspond to each document request. (Decl.

2  M. Quinn ¶ 9.) That document, which was produced on October 18, goes beyond Rule 34(b)(i)'s

3  requirements, which mandate that a party either produce documents as they are kept in the

4  ordinary course of business or organize and label them to correspond with the categories in the

5  request. Defendants have also provided Plaintiff with a chart identifying the new execution team

6  by witness number (not by name) with their corresponding duties, and have begun providing

7  documents related to the training manuals for the execution team. More than 1,300 pages of

8  documents related to the training manuals were produced on October 9. (Decl. M. Quinn ¶ 10.)

9      For the past several months, Defendants have reviewed thousands of pages of documents,

10  bates-labeled them, created privilege logs, and produced the materials to ensure that: (1)

11  Plaintiff's counsel obtains the information they are entitled to, and (2) the case can proceed. To

12  date, Defendants have provided more than 19,000 pages of documents to Plaintiff. There has

13  been no "shuffling of the deck" or any other abusive conduct concerning the document

14  production in this case. (Decl. of J. McAuliffe Supp. Opp'n to Pl.'s Third Mot. to Compel (Decl.

15  J. McAuliffe) ¶ 5.);(Decl. K. McClease ¶ 8.)

16                                    **ARGUMENT**

17  **A.    Defendants Have Properly Responded to Plaintiff's Discovery Requests.**

18      Plaintiff's motion incorrectly contends that Defendants provided "several non-responses or

19  defective responses." A review of the various issues raised by the Plaintiff demonstrates that

20  Defendants have properly responded to Plaintiff's requests.

21      **1.    The Production of the Electronically Stored Information is Unnecessary.**

22      Plaintiff states that one of the reasons for the request for electronically stored information

23  "is to obtain the meta-data contained therein, which will indicate the date of the document's last

24  edit, author of the edit, and other identifying information." (Third Motion to Compel, 8:10-17.)

25  However, the more than 19,000 documents that Defendants produced concerning the revised

26  lethal-injection protocol include printed versions of the electronically stored information, such as

27  e-mail messages. The production also included various draft versions of the protocol, draft

28  training manuals, articles and other materials that were reviewed in the course of revising the

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.                    Michael Angelo Morales v. James Tilton, et al.
                                                                                    C06-0219 JF

1   protocol, information obtained from other states, and numerous e-mails from individuals who

2   had any involvement with the project.  Because Defendants have satisfied their obligation to

3   produce documents responsive to Plaintiff's document requests by providing printed versions of

4   the materials, there is no need to order the production of electronically stored information.

5       **2.   Defendants are not Required to Give Plaintiff's Investigator Detailed Personal**
        **Information About the Execution Team Members.**

6

7       In its responses to Plaintiff's interrogatories concerning the execution team, which were

8   provided to Plaintiff on August 1, Defendants stated that an execution team had not yet been

9   selected.  Thus, Defendants could not provide complete responses to Interrogatory Numbers 1

10  and 8 through 12, which seek information regarding execution team members.

11      The execution team has now been assembled, and Defendants have provided a list of

12  execution team members that describes the particular sub-team that each person will be a part of

13  (i.e., infusion, i.v., security or recordkeeping), and the duties that they will be expected to

14  perform.  Defendants are in the process of updating their responses to the interrogatories, and

15  plan to provide supplemental responses to Plaintiff during the next several days.

16      **3.   Providing Information Regarding Team Members to Plaintiff's Investigator**

17      Plaintiff's Interrogatory Number 6 requests that not only the names of team members be

18  provided to the investigator, but the following information as well:

19      •     the date and place of each person's birth;

20      •     each person's social security number, and driver's license number, including the state

21            or other issuing entity;

22      •     each person's residence addresses for the last five years, and the dates they lived at

23            each address;

24      •     the name, address, dates of employment, job title, and nature of work for each

25            employer or self-employment each person has had for the past ten years;

26      •     the name and address of each school or other academic or vocational institution each

27            person has attended beginning with high school, the dates attended and degrees

28            received;

1    • the city, state, date and charges for any arrest, including the court and case number; and

2    • the caption, court, case number, city, and year of filing for any lawsuit in which the

3        person is a party.

4        Defendants have provided Plaintiff's investigator with the names of individual team

5    members, and will give the investigator access to the Personnel, Supervisory, Training, and CI&I

6    files of execution team members. However, because Defendants are not obligated, under this

7    court's May 6, 2007 Order, to provide Plaintiff's investigator with the other information sought

8    in Interrogatory Number Six, Defendants should not be required to produce it. In addition, the

9    information that is requested would intrude on the team members' privacy, and have no

10   relevance to this case.

11       **4.    Defendants Have Complied with Rule 34.**

12       Both the documents from CDCR and the Governor's Office have been produced in the

13   manner in which they were kept by those entities, and included countless page separations that

14   would allow Plaintiff to see where one document ended and the next began. (Decl. K. McClease)

15   ¶ 6.); (Decl. M. Quinn ¶ 4.) Accordingly, Defendants believed that they fulfilled their obligations

16   under Federal Rule of Civil Procedure 34.

17       However, after conferring with Plaintiff about his dispute that the documents were produced

18   in the manner in which they were kept, Defendant attempted to resolve the matter by serving an

19   amended discovery response with Bates-stamp numbers that corresponded to each document

20   request. That amended response, which was produced during the week of October 15, went

21   beyond Rule 34(b)(i)'s requirements, which mandate that a party either produce documents as

22   they are kept in the ordinary course of business or organize and label them to correspond with the

23   categories in the request. (Decl. M. Quinn ¶ 9.) With the production of the amended response,

24   Defendants have complied with all of Rule 34(b)(i)'s requirements.

25       To date, Defendants have provided more than 19,000 pages of documents to Plaintiff.

26   There has been no "shuffling of the deck" or any other abusive conduct concerning the document

27   production in this case. (Decl. J. McAuliffe ¶ 5.); (Decl. of K. McClease ¶ 8.) Accordingly, the

28   Court should disregard Plaintiff's claims concerning the purported failure to produce documents

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.          Michael Angelo Morales v. James Tilton, et al.
                                                                                        C06-0219 JF

1  in compliance with the Federal Rules.

2  **5.   Plaintiff's Exhibit Entitled "Emails Without Indicated Attachments" is Misleading.**

3

4  Plaintiff's exhibit entitled "E-mails Without Indicated Attachments" is inaccurate for

5  several reasons.  First, as described in John McAuliffe's declaration, e-mails were kept in a

6  separate file from the e-mail attachments, which were organized independently, in accord with

7  the attachments' subject matter.  (Decl. McAuliffe ¶ 4.)  The fact that attachments were not

8  maintained with the associated e-mail does not mean the attachments were not produced.  (*Id.*)

9  During a September 28 meet-and-confer, Plaintiff's counsel stated that it had a "three-

10  quarter inch" stack of e-mails without attachments, but failed to provide the Bates numbers of the

11  documents (like the one Plaintiff submitted with his motion) or copies of the documents

12  themselves, as Defendants' counsel requested.  (Decl. M. Quinn ¶ 11.)  Defendants' counsel

13  spent several days reviewing the documents that were produced to Plaintiff, and identified e-

14  mails that appeared to lack their attachments.  (Decl. M. Quinn ¶ 12.)

15  The review of the documents by Defendants revealed that many of the attachments Plaintiff

16  claims are missing are already in Plaintiff's possession or are accounted for on the privilege log.

17  The following addresses the status of many of the attachments listed on Plaintiff's exhibit:

18  •    Attachments to AG00011, AG02189, AG03112, and AG04711: Materials produced by

19       Arizona (listed on privilege log, see, e.g., AG00112-AG00127)

20  •    Attachments to AG00431: Materials produced by Kansas (listed on privilege log,

21       AG00432-AG00496)

22  •    Attachments to AG00542 & AG002284: Produced at AG00543 through AG00548

23  •    Attachments to AG00675, AG00686, and AG03115: Materials produced by Ohio

24       (listed on privilege log, AG00676-AG00685; AG00687-AG00697)

25  •    Attachments to AG00706: Initially produced at AG00091-AG00110 (According to

26       Plaintiff's document requests, Defendants are not required to produce duplicate

27       documents.  Therefore, the attachment to AG00706 has not been produced again.)

28  •    Attachments to AG00731, AG02713, and AG003102: Produced at AG00732-

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.                    Michael Angelo Morales v. James Tilton, et al.
                                                                                                    C06-0219 JF

1    AG00743

2    •   Attachments to AG001583 & AG001590: Produced at AG001601-AG001618

3    •   Attachment to AG001598: Produced at AG00317-AG00334; AG001601-AG001618

4    •   Attachment to AG01695: December 15, 2006 Memorandum of Intended Decision filed
5        in this case.

6    •   Attachment to AG01638: Produced at AG001601-AG001618

7    •   Attachments to AG02346-AG02348: Materials produced by Kansas (listed on privilege
8        log, AG02349-AG02415)

9    •   Attachment to AG02481: Materials produced by Kansas (listed on privilege log,
10       AG02486-AG02546)

11   •   Attachment to AG03775: Produced at AG03781 through AG03786

12   •   Attachment to AG04011: Privileged materials listed at AG00283-AG00284

13   •   Attachments to AG04697 and AG12813: Produced at AG12815-AG012817

14   •   Attachment to AG13047: Produced at AG13331-AG13333

15   •   Attachment to AG12706: Produced at AG13331-AG13333

16   •   Attachment to AG13130: Produced at AG13395

17   •   Attachment to AG13140: Produced at AG13141-AG13142

18   •   Attachment to AG13144: Produced at AG13234-AG13243

19   •   Attachments to AG13146 and AG13252: Produced at AG12354-AG12355; AG12358-
20       AG12365

21   •   Attachment to AG13184: Produced at AG13185

22   •   Attachment to AG13233: Produced at AG13234-AG13243

23   •   Attachment to AG13245: Produced at AG13246-AG13248

24   •   Attachment to AG13266: Produced at AG13267-AG13274

25   •   Attachment to AG13335: Produced at AG13335-AG13336 (attachment is pasted into
26       e-mail)

27   •   Attachment to AG13404: Produced at AG13405-AG13407

28   •   Attachment to AG13502: Produced at AG13395

---

1    In addition, in order to further address Plaintiff's concerns about the attachments to e-mails,

2 Defendants undertook to recover other attachments that were allegedly missing. The following

3 concerns a number of other e-mails mentioned by Plaintiff:

4    • Attachment to AG02280 & AG02337: Recovered by Defendants; photographs of

5      lethal-injection chamber in Ohio; withheld under official-information and deliberative-

6      process privileges

7    • Attachments to AG02297: State of Tennessee's responses to CDCR's lethal-injection

8      survey; already produced to Plaintiff

9    • Attachment to AG02322: Recovered by Defendants; State of Ohio's responses to

10     CDCR's lethal-injection survey; withheld under official-information and deliberative-

11     process privileges

12   • Attachment to AG02334: Recovered by Defendants; photographs of lethal-injection

13     chamber in Ohio; withheld under official-information and deliberative-process

14     privileges

15   • Attachment to AG02341 through AG02343: Recovered by Defendants; photographs of

16     lethal-injection chamber in Kansas; withheld under official-information and

17     deliberative-process privileges

18   • Attachments to AG02416 through AG02417; AG02466-AG02467; and AG02469:

19     Recovered by Defendants; State of Kansas' responses to CDCR's lethal-injection

20     survey; withheld under official-information and deliberative-process privileges

21   • Attachments to AG02428 through AG02430: Recovered by Defendants; photographs

22     of lethal-injection chamber in Kansas; withheld under official-information and

23     deliberative-process privileges

24   • Attachment to AG03116-AG03121: Recovered by Defendants; photographs of lethal-

25     injection chamber in Ohio; withheld under official-information and deliberative-

26     process privileges

27   • Attachments to AG04712 and AG12718: Produced at AG12714-AG12717 (portions

28     withheld as privileged and listed on privilege log)

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.          Michael Angelo Morales v. James Tilton, et al.
                                                                                          C06-0219 JF

1       • Attachment to AG04735: Recovered by Defendants; will be produced to Plaintiff

2       • Attachment to AG04737: Recovered by Defendants; will be produced to Plaintiff

3       • Attachment to AG04738: Recovered by Defendants; will be produced to Plaintiff

4       • Attachment to AG04741: Recovered by Defendants; will be produced to Plaintiff

5           As demonstrated above, Defendants have accounted for the majority of the documents listed

6    by Plaintiff.  Many of the other documents listed in Plaintiff's exhibit that Defendants have not

7    addressed concern the construction of the new lethal-injection facility, and Defendants are

8    attempting to recover those attachments.  However, among the thousands of pages of documents

9    from CDCR that Defendants have produced are numerous blueprints and other materials related

10   to that project. *See, e.g.,* AG01715-AG01804.  Defendants have also provided Plaintiff with the

11   names of the architect who designed the new chamber, as well as the individuals who worked on

12   it.  Accordingly, Plaintiff's contention that it requires additional attachments in order to develop

13   its case is unpersuasive.

14       **6.   The Attachments to the Governor's Office's Documents**

15           Plaintiff contends that attachments to the Governor's Office's documents are missing but

16   lists only one Bates-number (GOV1618) in support of the contention.  The attachment to

17   GOV1618 was a draft version of O.P. 770, and Defendants have provided Plaintiff with

18   numerous drafts of the protocol that were revised by various officials in the Governor's Office.

19   Accordingly, it does not appear that Plaintiff's complaints concerning the attachments to the

20   Governor's Office's documents have any merit.

21       **7.   Documents Discussed in the Documents Produced, and in Depositions**

22           As mentioned, Defendants have sent more than 19,000 pages of documents to Plaintiff, and

23   are in the process of producing materials related to the training manuals and the selection of the

24   execution team that have not yet been provided to Plaintiff.  Defendants will review Plaintiff's

25   Exhibit "H" to determine whether any of the documents listed therein have not yet been produced

26   to Plaintiff.

27   / / /

28   / / /

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.              Michael Angelo Morales v. James Tilton, et al.
                                                                                      C06-0219 JF

**B.    Because Defendants Have Properly Asserted Privileges in This Case, no Waiver Has Occurred.**

Plaintiff cites *Burlington Northern & Santa Fe Railway Co. v. U.S. District Court*, 408 F.3d 1142 (9th Cir. 2005) in support of his contention that Defendants have failed to properly assert privileges in connection with their document production.  However, there are significant differences between *Burlington* and this case.  There, the court found that a waiver had occurred where the privilege log was not filed until five months after the time limit for responding under Rule 34 had passed.  (*Id.* at 1149.)  In addition, the record established that because many of the same documents had been previously produced in a prior lawsuit, there was no reason for Burlington to have delayed in the production of the materials or the creation of a privilege log.  (*Id.*)

By contrast, in this case, there has been no delay in the production of documents or privilege logs.  Defendants have made every effort to produce documents in an efficient manner and have been responsive to Plaintiff's discovery demands.  As mentioned, after receiving Plaintiff's initial document request on June 20,  Defendants' counsel reviewed thousands of pages of documents, finalized a privilege log, and produced the documents to Plaintiff.  (Decl. M. Quinn ¶¶ 2-4.)  Defendants only sought a week's extension from Plaintiff in the course of preparing the materials for production.  (Decl. M. Quinn ¶ 3.)  With regard to the Governor's Office's documents, roughly 3,000 pages of documents were produced to Plaintiff on September 4, along with a privilege log.  (Decl. M. Quinn ¶¶ 5-6.)  Defendants did not seek an extension of time with regarding this production.

Plaintiff's contentions that Defendants' production of documents has been disorganized, and that Defendants' assertions of privilege are unsupported are baseless.   To the contrary, the documents from both CDCR and the Governor's Office included numerous page breaks that indicated where one document ended and another began.  In addition, on two occasions, Defendants have revised their privilege log and produced documents after conferring with Plaintiff, including e-mails involving attorneys that Defendants concluded were not privileged.  Defendants' remaining assertions of the attorney-client privilege and attorney work-product

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.                    Michael Angelo Morales v. James Tilton, et al.
C06-0219 JF

10

1 privilege in its logs are related to documents that it genuinely asserts are privileged and should be

2 withheld from discovery. Plaintiff's contention that the assertions of privilege are inadequate is

3 unsupported by the evidence, which establishes that Defendants' document production to

4 Plaintiff, as well as its assertions of privileges, have been made in good faith.

**C.   Defendants Have Not Waived the Attorney-Client Privilege.**

6       Plaintiff seeks to gain access to the internal communications between the Governor's

7 Office, CDCR Legal Affairs counsel, CDCR's General Counsel, the Attorney General's office,

8 CDCR's officials, and consultants by claiming that Defendants have waived the attorney-client

9 privilege. This is not the case.

10      The attorney-client privilege exists to promote the full and frank communication between

11 attorneys and their clients and protects confidential communications to facilitate the rendition of

12 professional legal services to the client. *Upjohn Co. v. United States*, 449 US 383, 389 (1981).

13      For purposes of the attorney-client privilege, an agency is a client under federal law.

14 *Maricopa Audubon Society v. United States Forest Service*, 108 F.3d 1089, 1092 (9th Cir. 1997)

15 The attorney-client privilege, therefore, applies to communications with other agency lawyers

16 who provide legal counsel. The Governor's legal staff, in their role as the Governor's counsel,

17 oversees the legal matters of all state agencies, including CDCR. In this capacity, the Governor's

18 legal staff has provided legal counsel to CDCR throughout the litigation. By virtue of this

19 relationship, communications among the Governor's legal staff, CDCR counsel, the Attorney

20 General's office, and CDCR officials were developed expressly for the purpose of the pending

21 litigation concerning the lethal-injection protocol and therefore are privileged.

22      Contrary to plaintiff's assertions, neither the presence of an expert nor the attendance of

23 CDCR officials in meetings waives the attorney-client privilege that protects the counsel's

24 thoughts and impressions. The expert served as a consultant in order to assist the attorneys, who

25 were rendering legal advice concerning the subject matter in the case. Under *United States v.*

26 *Kovel*, 296 F.2d 918, 922 (2d Cir. 1961), the attorney-client privilege is extended to

27 communications involving an expert where, as here, the expert was a consultant retained to assist

28 counsel in advising a client concerning litigation. Moreover, in *U.S. v. Judson*, 322 F.2d 460,

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.          Michael Angelo Morales v. James Tilton, et al.
                                                                                           C06-0219 JF

1    462 (9th Cir. 1963), the court determined that communications with experts hired to consult with

2    counsel in connection with pending litigation is privileged.   The privileged nature of the

3    documents, thus, is protected despite the presence of employees, experts, and other agency

4    counsel.

5        **1.   The Common-Interest Exception Applies.**

6        The sharing of the attorney-client communications between agency attorneys and employees

7    does not waive the privilege.  The entities share a common interest in this litigation.  This

8    doctrine, otherwise known as the joint privilege defense or the joint client doctrine, overcome

9    what would otherwise have constituted a waiver of communication because the communication

10   has been shared between two clients. *Griffith v. Davis*, 161 F.R.D. 687, 693 (C.D. Cal. 1995).

11   The common-interest exception applies where the communications are made by separate parties

12   in the course of a matter of common interest; the communication is designed to further the effort,

13   and the privilege has not been waived. *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D.

14   Cal. 2003).  The privilege does not require a complete unity of interests, and it may apply where

15   the parties' interest are adverse in substantial respects. (*Id.* at 495.)  *See also*, *United States v.*

16   *Zolin*, 809 F.2nd. 1411, 1417 (9th Cir. 1987), (*overruled on other grounds by United States v.*

17   *Jose*, 131 F.3d. 1325 (9th Cir. 1997) holding that the common-interest rule "protects

18   communications made when a nonparty sharing the client's interests are present at a confidential

19   communication between attorney and client.")

20       To qualify, the common interest between the parties must be like the interest shared by

21   "allied lawyers and clients who are working together in prosecuting or defending a lawsuit or in

22   certain other legal transactions." *Bergonzi*, 216 at 496.

23       Here, CDCR counsel, the Governor's office and the Attorney's General's office are working

24   with CDCR employees together to defend a lawsuit.  This exchange of information among the

25   individuals is done without loss of the privilege. In *Modesto Irrigation District v. Gutierrez*, No.

26   06-453; 06-308 2007 WL 763370 (E.D. Cal. 2007), defendant National Marine Fisheries Service

27   removed or redacted documents claiming attorney-client privilege.  The court found that

28   although the documents for which the attorney-client privilege was asserted were shared among

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.                    Michael Angelo Morales v. James Tilton, et al.
                                                                                                 C06-0219 JF

1   multiple agencies, those agencies shared the common goal of reaching a mutually acceptable

2   policy decision that would withstand legal challenge, and operated to protect these documents

3   from disclosure. (*Id.* at 18.)

4        The same can be said for this matter.  The communications among interdepartmental

5   counsel, Attorney General's counsel, CDCR employees, and non-testifying experts were for the

6   common purpose of developing a revised version of O.P. 770 that would comply with the Eighth

7   Amendment and ensure that the court's concerns, most notably those expressed in the December

8   15, 2006 Memorandum of Intended Decision, were fully addressed.  The joint communications

9   were plainly undertaken to facilitate the rendering of legal services in connection with the

10  development of the revised lethal-injection protocol.  Thus, the common-interest exception

11  applies.

12       **2.   The Governor's Office Counsel, CDCR Legal Affairs Counsel, CDCR General
           Counsel, the Attorney General's Office Counsel, CDCR Employees, and Expert
13         Witnesses are Not "Fact" Witnesses.**

14       Plaintiff cites three cases in support of his position that Defendants' attorneys and non-

15  testifying experts are fact witnesses.  However, none of the citations are on point. The first case,

16  *Clark v. American Commerce National Bank*, 974 F.2d 127 (9th Cir. 1992), found that attorney

17  billing statements were not attorney-client privileged because they contained general information

18  about the case.  Plaintiff's attempts to analogize a case involving attorney billing statements to

19  this case, which involves draft documents and the deliberations of an agency's protocol, are

20  unpersuasive.

21       Plaintiff next attempts to associate closed sessions of city and county councils to the lethal-

22  injection revisions.  In *North Pacifica, LLC v. City of Pacifica* 274 F. Supp. 2d 1118 (N.D. Cal.

23  2003), the court found that a closed session concerning substantive issues with legal counsel

24  present was not privileged.  But the court went on to hold that if the primary purpose of the

25  communication had been predominantly related to legal strategy or advice, it would have been

26  privileged.  (*Id.* at 1128.)  Likewise, in *Larsen v. Harrington*, 11 F. Supp. 2d 1198 (E.D. Cal.

27  1998), the court determined that a closed session of a county board meeting with counsel present

28  was not privileged because the session related to the discipline of a county employee, and did not

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.                         Michael Angelo Morales v. James Tilton, et al.
                                                                         C06-0219 JF

13

1   primarily involve a request for legal advice. In short, the lawyers in those cases weren't acting as

2   lawyers with the primary purpose of providing legal advice.

3        The deliberations that occurred in the course of revising O.P. 770 differ greatly from the

4   closed government sessions described above. The comments by attorneys on draft versions of

5   the protocol constitute confidential communications that were intended to advise and assist

6   CDCR with the legal issues associated with the lethal-injection protocol—particularly providing

7   advice in consideration of the Eighth Amendment standards at issue in this case. The comments

8   are advisory in nature and do not represent statements of agency policy or any final agency

9   decision on the particular matter. In the December 15, 2007 Memorandum, the Court

10  specifically stated that it "believes that the Governor's Office is in the best position to insist on

11  an appropriate degree of care and professionalism in carrying out what Defendants properly

12  characterize as the "solemn" tasks of executions." (Memorandum of Intended Decision 15: 7-9).

13  The court recognized that the Governor's office should take an active role in revising OP 770.

14  Defendants should not be penalized for adhering to the order.

15     **3.   The Revisions to the State's Lethal Injection Protocol Were Created for Purposes of Litigation**.

16

17       The work-product doctrine protects from discovery of materials prepared by or for an

18  attorney in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495 (1947). The Ninth

19  Circuit recognizes that "to qualify for protection against discovery under Rule 26(b)(3),

20  documents must have two characteristics: (1) they must be prepared in anticipation of litigation

21  and (2) they must be prepared by or for another party or by or for that other party's

22  representative." *In re California Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir. 1989).

23  Here, Defendants' revisions to the protocol satisfy both conditions.

24       Following the issuance of the Memorandum of Intended Decision, Defendants undertook to

25  revise the lethal-injection protocol. Since the revisions ensued during the course of this

26  litigation, they are inextricably intertwined with this pending litigation. The documents,

27  therefore, were not created as part of routine business activities, as argued by Plaintiff. To the

28  contrary, the documents were prepared exclusively because of the pending litigation, and fit

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.          Michael Angelo Morales v. James Tilton, et al.
                                                                              C06-0219 JF

1   squarely within the intended realm of the work-product doctrine.

2       Even if the court believes that the revisions have some secondary routine purpose, the

3   privilege still applies.  In *United States v. Torf*, 357 F.3d. 900, 907 (9th Cir. 2003), the Ninth

4   Circuit held that the work-product doctrine is extended to dual-purpose documents if it can fairly

5   be said that the document was created because of the anticipated litigation and would not have

6   been created in substantially similar form but for the prospect of litigation.  Here, the revisions

7   were drafted as a result of litigation and concern, among other things, over issues identified by

8   the court, including those set forth in the Memorandum of Intended Decision.

9       **4.   Plaintiff Has No Compelling Need for the Protected Documents.**

10      Generally, a party can obtain work-product materials only after showing substantial need

11  and undue hardship.  *Hickman v. Taylor*, 329 U.S. 495 (1947).  Plaintiff contends that even if the

12  documents constitute work product, he has made a sufficient showing of substantial need and

13  unavailability so as to overcome the qualified protection accorded by Rule 26(b)(3).  But Plaintiff

14  is incorrect.

15      "Fact" work product receives only qualified protection from discovery, whereas "opinion"

16  work product, which constitutes an attorney's impressions, conclusions, opinions, legal research

17  and theories, receives higher protection.  *Holgreen v. State Farm Mutual Automobile Insurance*

18  *Co.*, 976 F.2d 573, 577 (9th Cir. 1992).  Work product includes the work of agents like

19  investigators and consulting experts working under the direction of counsel.  *United States v.*

20  *Nobles* (1975) 422 U.S. 225, 238-39 (1975).  In this case, the communications are clearly opinion

21  work-product, because Plaintiff's counsel admits he is attempting to retrieve the documents

22  related to the deliberation process, which clearly reflects the opinions and strategies of counsel.

23  But regardless of whether the communications are considered traditional work-product or

24  opinion work-product, Plaintiff cannot overcome the substantial-need element.

25      The withheld documents generated during the revisions of the lethal-injection protocol fall

26  precisely within the work-product doctrine.   To date, Defendants have produced roughly 19,000

27  pages of documents that relate to the revisions of the lethal injection protocol.  The documents

28  include but are not limited to:  information about the individuals that Defendants communicated

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.                Michael Angelo Morales v. James Tilton, et al.
                                                                                    C06-0219 JF

1   with while revising the protocol, the research undertaken to revise the protocol, the other states

2   that CDCR officials visited, numerous drafts of the protocol, and training materials for the

3   execution team.

4        The information in the withheld documents contain the thoughts and impressions of the

5   attorneys, consultants, and others who aided with the revisions.  Plaintiff's assertion that he

6   cannot recreate the protocol review team's deliberations is not a basis to justify disclosure.

7   Otherwise, under such an expansive view, virtually every consultation with counsel or an expert

8   would be subject to disclosure.

9        Plaintiff cites insurance-bad-faith cases holding that claims files are not work product.  But

10  courts have also concluded that claims files are protected by the work product doctrine.  *See, e.g.*,

11  *State ex. rel. U.S. Fidelity and Guar. Co. v. Montana Second Judicial Dist. Court.*, 240 Mont. 5

12  (1989);  *Ring v. Commercial Union Ins. Co.,* 159 F.R.D. 653 (M.D.N.C. 1995)  Accordingly,

13  cases concerning insurance claims files provide no conclusive insight into whether the materials

14  withheld by Defendants should be disclosed.

15       Plaintiff further relies on *Double Day v. Ruh,* 149 F.R.D. 601 (E.D. Cal. 1993), which

16  involved the civil discovery of prior criminal litigation.  The court makes clear "that its holding

17  in this case is limited to the situation presented here - the prior case is criminal, and the

18  subsequent case is civil." *Id.* at 607.  Plaintiff also cites *Frazier v. Southeastern Pennsylvania*

19  *Transportation Authority*, 161 F.R.E. 309 (E.D. Pa. 1995) in an attempt to associate the court's

20  order to depose an attorney who previously represented the party in a prior unsuccessful

21  personal-injury action to attaining attorney deliberations over the lethal-injection protocol.

22  Neither *Double Day* nor *Frazier* is applicable or relevant here because the documents and

23  information were prepared for the instant litigation, and not for subsequent or prior litigation.

24       Plaintiff also has failed to justify the disclosure of the officials' and their attorneys'

25  deliberations.  Defendants should not have to provide their analysis and in essence do Plaintiff's

26  work because "such easy borrowing would discourage both the conscientious and the lazy

27  practitioner from devoting the effort to pretrial preparation on which the system depends."

28  *Jumpsport, Inc. v. Jumpking, Inc.* 213 F.R.D. 329, 335 (N.D. Cal. 2003) (citing *Admiral Ins. Co.*

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.          Michael Angelo Morales v. James Tilton, et al.
                                                                                        C06-0219 JF

1   *v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)).  Plaintiff is free to conduct

2   his own research and analysis, hire experts, and develop his own assessment regarding whether

3   O.P. 770 comports with the Eighth Amendment.  However, Plaintiff has failed to justify the

4   disclosure of Defendants' documents that have been withheld under the work-product privilege.

5   **D.   The Official-Information and Deliberative-Process Privileges Have Been Properly**
    **Asserted.**

6

7        Defendants have properly withheld documents protected by the official-information and

8   deliberative-process privileges.  CDCR has withheld the lethal-injection protocols of several

9   states and the Federal Bureau of Prisons, all of whom requested that the confidentiality of their

10  documents be maintained.  The Governor's Office has withheld certain notes, briefing materials,

11  revisions, and e-mails concerning O.P. 770.  These confidential government documents evince

12  deliberation over California's lethal-injection protocol.

13       In federal-question cases like this one, the Ninth Circuit has recognized that, "[T]he clear

14  weight of authority and logic supports reference to federal law on the issue of the existence and

15  scope of an asserted privilege." *Heathman v. United States Dist. Court for Cent. Dist.*, 503 F.2d

16  1032, 1034 (9th Cir. 1974).  The deliberative-process privilege permits non-disclosure of

17  documents that reflect an agency's "pre-decisional" deliberation. *FTC v. Warner*

18  *Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).  The official-information privilege,

19  which protects against governmental disclosure of official information, is also recognized in

20  federal law. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990); *Kerr v. United*

21  *States Dist. Court for Northern Dist.*, 511 F.2d 192, 198 (9th Cir. 1975).  Defendants have

22  properly asserted these privileges in withholding the documents at issue.

23       **1.   The Deliberative-Process Privilege Applies Here.**

24       The deliberative-process privilege protects the quality of agency decisions by allowing

25  candor in formulating policy, and encouraging public review based on the decision itself rather

26  than the considerations that contributed to the decision. *N.L.R.B. v. Sears, Roebuck & Co.*, 421

27  U.S. 132 (1975).  The privilege "permits the government to withhold documents that reflect

28  advisory opinions, recommendations and deliberations comprising part of a process by which the

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.          Michael Angelo Morales v. James Tilton, et al.
                                                          C06-0219 JF

1  government decisions and policies are formulated." *F.T.C. v. Warner Commc'ns, Inc.*, 742 F.2d

2  1156, 1161 (9th Cir. 1984). "It was developed to promote frank and independent discussion

3  among those responsible for making governmental decisions." *Id.*

4       In accord with its purposes, the deliberative-process privilege applies to documents that

5  are deliberative in nature and also pre-decisional, or generated before the adoption of the

6  agency's policy or decision. *F.T.C.*, 742 F.2d at 1161. There is no question that the documents

7  at issue are pre-decisional because they were generated before the adoption of O.P. 770 in May

8  2007.

9       For the deliberative-process privilege to apply, the documents must also be "deliberative

10  in nature, containing opinions, recommendations, or advice about agency policies," rather than

11  purely factual material. (*Id.*) A pre-decisional document is part of the "deliberative process" if

12  the document's disclosure "would expose an agency's decision-making process in such a way as

13  to discourage candid discussion within the agency and thereby undermine the agency's ability to

14  perform its functions." *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir.

15  1992) (internal quotes and citation omitted). In deciding whether the information sought is

16  deliberative, "it is necessary to examine the context in which the information is used, and to

17  determine what role the information plays in government's decision-making process and what

18  harm its release would do to the decision-making process." *Weinstein v. Dep't of Health &*

19  *Human Servs,* 977 F. Supp. 41, 44 (D.D.C. 1997).

20       The documents at issue here are deliberative in nature. CDCR withheld a number of

21  lethal-injection protocols that were supplied by other governments to assist California with the

22  drafting of its new lethal-injection protocol. This exchange is deliberative because, in context,

23  the documents are exemplary lethal-injection protocols communicated to California to consider

24  while re-drafting its own protocol. The Governor's Office withheld notes, briefing materials,

25  protocol versions, and e-mails concerning the revision of OP 770. These documents are also

26  deliberative, reflecting state decisionmakers' opinions and commentary concerning work on the

27  new protocol. The deliberative-process privilege "should be limited to communications designed

28  to contribute, directly, to the formulation of important public policy." *Kelly v. San Jose*, 114

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.       Michael Angelo Morales v. James Tilton, et al.
C06-0219 JF

18

1   F.R.D. 653, 659 (N.D. Cal. 1987). Documents of this sort are precisely what Defendants have

2   withheld.

3       **2.      Factors Favor Non-Disclosure of the Privileged Documents.**

4       The deliberative-process privilege is qualified by balancing the need for discovery with

5   the government's interest in non-disclosure. *F.T.C.*, 742 F.2d at 1161. Factors to consider when

6   deciding whether to uphold non-disclosure are: 1) relevance of the privileged evidence; 2)

7   availability of other evidence; 3) the government's role in the litigation; and 4) the extent to

8   which disclosure would hinder open discussion concerning contemplated policies and decisions.

9   *Id.* Here, all factors favor non-disclosure.

10          **a.      Withheld Documents Are Not Relevant to the Issues Before the Court.**

11      The withheld documents are not directly relevant to this case. The out-of-state protocols

12  withheld by CDCR cannot make O.P. 770 more or less compliant with the Eighth Amendment.

13  Disclosed or not, Plaintiff simply learns that California reviewed other protocols when re-

14  drafting its own. Similarly, communications and drafts withheld by the Governor's Office evince

15  deliberation contributing to O.P. 770, but this deliberation should not impact the Court's analysis

16  of the resulting protocol's constitutionality. The relevance of withheld documents here is not

17  compelling.

18          **b.      Other Available Evidence Renders Withheld Documents Redundant.**

19      The availability of other evidence diminishes the import of the withheld documents here.

20  In terms of quantity alone, CDCR has produced more than 15,000 pages of documents. The

21  Governor's Office has produced roughly 3,000 pages of documents. CDCR has produced the

22  protocols of most of the states that it consulted with, and is merely withholding a few other

23  protocols; Plaintiff has received plenty of alternative protocols to compensate for the withheld

24  ones. Similarly, the Governor's Office has produced, among other things, the various articles

25  and research materials that it relied upon in the course of assisting with the revisions to the

26  protocol. This production overwhelms any further light that the withheld communications and

27  drafts could present.

28  / / /

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.                Michael Angelo Morales v. James Tilton, et al.
                                                                C06-0219 JF

c.   **The Government's Role as Defendant Does Not Impact Its Good Faith.**

The government's role in this litigation is that of defendant. Although "no cases have discussed this factor in any depth . . . , the Ninth Circuit appeared to be looking for evidence of bad faith." *Modesto Irrigation Dist. v. Gutierrez*, No. 06–00453, 2007 U.S. Dist. LEXIS 21949, at *36 (D. Cal. 2007). Defendants have no bad-faith motive in withholding the documents at issue from disclosure. Rather, disclosure of withheld protocols would merely further confirm that CDCR engaged in widespread research and analysis of other protocols in developing the revised version of O.P. 770. Similarly, disclosure of communication and drafts from within the Governor's Office would demonstrate some of the labor and exchange of ideas that went into drafting O.P. 770.

Plaintiff suggests that forced disclosure of the withheld documents will remind Defendants that they are subject to scrutiny. (Pl.'s Third Mot. Compel Disc. 20.) But Defendants need no reminder of this, since they prepared O.P. 770 in the midst of the instant litigation. Plaintiff also casts suspicion on the fact that the Governor's Office often invoked the deliberative-process privilege in concert with the attorney-client and work-product privileges. (*Id.* 13.) But these protections are foreseeable precisely because O.P. 770 was re-drafted in the midst of this litigation.

d.   **Disclosure Would Harm Future Decisionmaking.**

Disclosure of the privileged documents would stifle frank and open discussion preceding policy decisions. The deliberative-process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (internal citations omitted). As this Court noted, the privilege is properly limited to policy-related communication at high levels of government. (Order 5/2/2006 at 3 (dkt. #151).) Here we are concerned with intra-state communication, and communication within the Governor's Office of California—the highest levels of state government, which were uniquely invited by this Court to collaborate and develop a new protocol. (Mem. Intended Decision 15–16

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.          Michael Angelo Morales v. James Tilton, et al.
C06-0219 JF

20

1  (dkt. #290).)

2          CDCR has withheld the protocols of several governments that specially asked California

3  not to make the documents public.  Disclosure of these documents would gravely harm inter-

4  governmental guidance and communication, and consequently the quality of California's

5  decisionmaking.  Likewise, disclosing communications and opinions of individuals in the

6  Governor's Office would stifle open discussion and future decisionmaking.  Because this

7  consideration is the crux of the deliberative-process privilege, the privilege must be maintained

8  here.

9                  **e.        The Official-Information Privilege Applies Here.**

10          The official-information privilege, which protects against disclosure of official

11  information, is recognized in federal law.  *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033

12  (9th Cir. 1990); *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir.

13  1975).  But Plaintiff argues that state law is relevant in federal court, which should consider state

14  authorities' views as a matter of comity.  (Pl.'s Third Mot. Compel 16.)  California Evidence

15  Code § 1040 defines the state's official-information privilege.  Plaintiff acknowledges that,

16  compared to other states' use of the official-information privilege, "California is by far the most

17  wide-ranging in its application."  (Pl.'s Third Mot. Compel 22.)

18          "Official information" is acquired in confidence by public employees in the course of

19  their duties, and not released to the public.  Cal Evid. Code § 1040(a).  The out-of-state protocols

20  withheld by CDCR were acquired and kept in confidence by public employees working on the re-

21  draft of OP 770.  (Decl. McAuliffe in Support of Assertion of Official-Information Privilege, ¶¶

22  2–3.)  The communications and drafts withheld by the Governor's Office were also created and

23  kept in confidence by public employees.

24          Similar to the deliberative-process privilege, official information is not disclosed when

25  the need to preserve its confidentiality outweighs the need for disclosure in the interests of

26  justice.  *Id.* § 1040(b)(2); *see Kerr*, 511 F.2d at 198.  In weighing these competing interests,

27  courts in essence consider the same factors analyzed under the deliberative-process privilege.

28  *See Dominguez v. Superior Court of L.A. County*, 101 Cal. App. 3d 6, 12 (Ct. App. 1980).

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.                    Michael Angelo Morales v. James Tilton, et al.
                                                                                      C06-0219 JF

1    Courts consider the importance of the withheld evidence to the case, and weigh this against the

2    availability of other evidence and the negative effect that disclosure would have on the

3    government. *Id.* As argued above, the result of this analysis favors non-disclosure.

4    **D.    Federal Rule of Civil Procedure 26(b)(4)(B) Protects the Identities and Work Product of the Experts Retained by CDCR and the Governor's Office.**

5

6    Federal Rule of Civil Procedure 26(b)(4)(B) extends work-product protection to facts

7    known and opinions held by experts retained by the party asserting the privilege who are not

8    expected to be called as witnesses at trial. The rule provides, in relevant part, that where the non-

9    testifying expert has been specially retained by a party in anticipation of litigation, and has

10   developed or acquired facts known and opinions held in anticipation of litigation, those facts and

11   opinions are only discoverable upon a showing of "exceptional circumstances."

12   The rationale for the Rule was explained by this court in *In re Pizza Time Theatre Sec.*

13   *Litig.*, 113 F.R.D. 94, 96 (N.D. Cal. 1986), which wrote that Rule 26(b)(4)(B) is designed to

14   "discourage lazy or unscrupulous lawyers from trying to cut case-preparation corners by leaching

15   basic information or valuable opinions from experts retained by their opponents." There, the

16   court extended the rule to protect the identities of the non-testifying experts. (*Id.* at 98.) The

17   court noted that "a lawyer's decision about which experts to consult, but not to call as a witness,

18   also is a matter that implicates values that the work product doctrine was designed to protect."

19   *Id.*[2]

20   For the "in anticipation of litigation" requirement to be satisfied, a lawsuit need not

21   actually have been filed, but when the materials were prepared, there must have been "more than

22

23   —————————————————————————————

24   2.  This court has observed that there is a "well grounded distinction in the law between consultative experts and testifying experts." (Transcript of 2/23/07 proceedings, 7 (dkt. #313).)
During the February 2007 hearing regarding discovery issues in this case, the court noted that "if a

25   hypothetical lawyer were making an argument in a patent case and didn't understand the technology, that lawyer could consult with a technological expert to understand the technology and make

26   argument, and that consultation would be absolutely privileged under the work product doctrine."

27   *Id.* The situation in this case is similar to the hypothetical situation mentioned by the court, because the experts were consulted to assist the officials at the Governor's Office and CDCR who were

28   rewriting the lethal-injection protocol.

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.                Michael Angelo Morales v. James Tilton, et al.
C06-0219 JF

22

1  a remote possibility of litigation." *Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520 (N.D. Cal.

2  1988).  Here, the "anticipation of litigation" requirement is met because the consultants were

3  retained after a lengthy evidentiary hearing in which this court had found that the implementation

4  of California's lethal-injection protocol lacked both reliability and transparency.  (Mem. Intended

5  Decision 13 (dkt. #290).)  At the time they were retained, it was certain that the case would be

6  further litigated.

7          The non-testifying experts were retained to analyze several issues related to the lethal-

8  injection protocol that had arisen as a result of the litigation, but had no role in revising or editing

9  the lethal-injection protocol.  Because the non-testifying experts were retained in connection with

10 the ongoing litigation, Rule 26(b)(4)(B) extends work-product protection to the materials that

11 they prepared for Defendants.

12         The key case cited by Plaintiff in support of his contention that the experts' work product

13 should be produced is distinguishable from this case.  In *United States v. 22.80 Acres of Land*,

14 107 F.R.D. 20, 21-22 (N.D. Cal. 1985), the court found that an appraisal report prepared for the

15 government was not protected under Rule 26(b)(4)(B) because the report's author was not

16 "retained or specially employed" to draft the report.  To the contrary, the author was an employee

17 on the payroll of the Bureau of Reclamation, and prepared the document before litigation had

18 commenced.  *Id.*  Because Rule 26(b)(4)(B) was not intended to extend protections to the party's

19 regular employees, its protections were not available to the government.

20         By contrast, in this case, the non-testifying experts were not "regular employees" of

21 CDCR or the Governor's Office, and were hired well-after litigation had begun.  Any advice that

22 they gave or materials they developed were intended to assist with the subject matter of the

23 pending litigation, namely, the review of California's lethal-injection protocol.  *U.S. v. Gulf Oil*

24 *Corp.*, 760 F.2d 292, 296 (Temp. Emer. Ct. App. 1985).  Under *United States v. 22.80 Acres of*

25 *Land*, the work performed by Defendants' experts is entitled to protection under Rule

26

27

28

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.          Michael Angelo Morales v. James Tilton, et al.
C06-0219 JF

23

1  26(b)(4)(B).[3/]

2      **1.  Significant Policy Considerations Justify the Application of Rule 26(b)(4)(B) in this Case.**

3

4      In *Bank Brussels Lambert v. Chase Manhattan Bank*, 175 F.R.D. 34, 43 (S.D.N.Y. 1997),

5  the court recognized that four policy considerations underpin Rule 26(b)(4)(B):

6      •   the interest in allowing counsel to obtain the expert advice they need to properly

7          evaluate and present their clients' positions without fear that every consultation

8          with an expert may yield grist for the adversary's mill;

9      •   the view that each side should prepare its own case at its own expense;

10      •   the concern that it would be unfair to the expert to compel its testimony and that

11          experts might become unwilling to serve as consultants if they suspected their

12          testimony would be compelled; and

13      •   the risk of prejudice to the party who retained the expert as a result of the mere

14          fact of retention.

15  *Id.* at 45.

16      The policy considerations set forth in *Bank Brussels Lambert* are applicable in this case.

17  Following the issuance of the Memorandum of Intended Decision in December 2006, Defendants

18  undertook a comprehensive review of the lethal-injection protocol.  The review involved, among

19  other things, site visits to other states' lethal-injection facilities, a review of the lethal-injection

20  protocols from other states, and consultation with experts.  Defendants believed that the

21  consultation with the experts was necessary to ensure that the deficiencies that the court had

22  found in the previous lethal-injection protocol would not be present in the revised version of the

23  document.

24      A finding that the identity of, and materials prepared by the non-testifying experts

25

26      3. In another case cited by Plaintiff, *United States v. Bell*, No. C94-20342 RMW, 1994 U.S.

27  Dist. LEXIS 17408, at *11, *25-26 (N.D. Cal. Nov. 9, 1994), the court ordered that the documents at issue be supplied to the court for *in camera* inspection.  Defendants are prepared to provide the

28  documents at issue to this court for *in camera* inspection if the court is so inclined.

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.        Michael Angelo Morales v. James Tilton, et al.
C06-0219 JF

1   retained by CDCR and the Governor's Office's must be disclosed could discourage other experts

2   from serving as consultants in the future.  Moreover, such a finding could inhibit a parties'

3   willingness to consult with experts if they believe that the consultations will yield "grist for the

4   adversary's mill." *Bank Brussels Lambert*, 175 F.R.D at 45.  Therefore, this Court should

5   confirm that the protections of Rule 26(b)(4)(B) are available to the non-testifying experts

6   retained by the Governor's Office and CDCR.

7        **2.    Discovery Should not be Permitted Under the"Exceptional Circumstances"**
             **Standard.**

8

9        Rule 26 provides that a party may discover facts known or opinions held by an expert

10   who has been retained or specially employed by another party in anticipation of litigation "upon a

11   showing of exceptional circumstances under which it is impracticable for the party seeking

12   discovery to obtain facts or opinions on the same subject by other means."  However, a party

13   "carries a heavy burden in demonstrating the existence of exceptional circumstances." *FMC*

14   *Corp. v. Vendo Corp.*, 196 F. Supp. 2d 1023, 1046 (E.D. Cal. 2002).  Exceptional circumstances

15   may exist where: "1) the object or condition at issue is destroyed or has deteriorated after the

16   non-testifying expert observes it but before the moving party's expert has an opportunity to

17   observe it; or 2) there are no other available experts in the same field or subject area." (*Id.*)

18        Contrary to Plaintiff's contentions, there are no exceptional circumstances that would

19   justify the disclosure of the materials prepared by the consulting experts.  The first criteria

20   mentioned in *FMC Corp.* is inapplicable, since nothing has been "destroyed or deteriorated" in

21   this case.  To the contrary, Defendants have gone to great lengths to attempt to preserve materials

22   related to the revised protocol.  To date, Defendants have produced roughly 19,000 pages of

23   documents that relate to the revision of the lethal-injection protocol.

24        With regard to the second criterion set forth in *FMC Corp.*, Plaintiff's assertion that it

25   cannot "recreate" the deliberations of the protocol review team should not be used as a basis for

26   finding that exceptional circumstances exist in this case.  Under such a standard, virtually every

27   consultation with an expert would be subject to disclosure, since it would be impossible to

28   recreate a series of meetings or interactions with a particular expert.

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.                    Michael Angelo Morales v. James Tilton, et al.
                                                                                    C06-0219 JF

                                             25

1      In this case, there are a plethora of experts who work in the same field as the CDCR's and

2  the Governor's Office's consultants who can assist Plaintiff in reviewing both the revised

3  protocol and Defendants' documents to determine whether O.P. 770 comports with the Eighth

4  Amendment.  Accordingly, because "exceptional circumstances" under Rule 24 do not exist in

5  this case, Plaintiff's attempt to obtain the consultants' work-product should be rejected.

6      **3.      Defendants Have not Waived the Confidential Status of the Consultants.**

7      As described more fully in Section C, Defendants have not waived the protections

8  provided to the consultants under Rule 26(b)(4)(B).  Communications between the Governor's

9  legal staff, CDCR counsel, the Attorney General's Office, and CDCR employees were developed

10  expressly for the purpose of the pending litigation concerning the lethal-injection protocol and

11  therefore are privileged.  Moreover, under *United States v. Kovel,* 296 F.2d. 918, 922 (2d Cir.

12  1961), the attorney-client privilege is extended to communications involving an expert where, as

13  here, the expert was a consultant retained to assist counsel in advising a client concerning

14  litigation.  Accordingly, contrary to Plaintiff's assertions, no waiver occurred when the

15  Governor's Office disclosed its expert and opinions to CDCR, or when CDCR did the same to

16  the Governor's Office with its expert.

17                          **CONCLUSION**

18      For the foregoing reasons, Defendants respectfully request that Plaintiff's third motion to

19  compel be denied.

20

21

22

23

24

25

26

27

28

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.                Michael Angelo Morales v. James Tilton, et al.
                                                                C06-0219 JF

1    Dated:  October 25, 2007

2                          Respectfully submitted,

3                          EDMUND G. BROWN JR.
                           Attorney General of the State of California

4                          DAVID S. CHANEY
                           Chief Assistant Attorney General

5                          FRANCES T. GRUNDER
6                          Senior Assistant Attorney General

                           THOMAS S. PATTERSON
7                          Supervising Deputy Attorney General

8

9

10   _____
     MICHAEL J. QUINN
11   Deputy Attorney General
     Attorneys for Defendants
12   Schwarzenegger, Tilton, and Ayers

13

14   20108883.wpd
     SF2007200210
15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

Defs.' Opp'n to Pl.'s Third Mot. to Compel Disc.          Michael Angelo Morales v. James Tilton, et al.
                                                                                          C06-0219 JF

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Michael Angelo Morales v. James Tilton, et al.**

No.:   **C06-0219**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>October 25, 2007,</u> I served the attached

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S THIRD MOTION TO COMPEL DISCOVERY**

**DECLARATION OF KELLY L. MCCLEASE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S THIRD MOTION TO COMPEL DISCOVERY**

**DECLARATION OF JOHN W. MCAULIFFE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S THIRD MOTION TO COMPEL**

**DECLARATION OF MICHAEL J. QUINN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S THIRD MOTION TO COMPEL DISCOVERY**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Habeas Corpus Resource Center**
**50 Fremont Street, Suite 1800**
**San Francisco, CA 94105**

**Office of the Inspector General**
**P.O. Box 348780**
**Sacramento, CA 95834**

**Michael G. Millman**
**California Appellate Project**
**101 Second Street, Suite 600**
**San Francisco, CA 94105**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 25, 2007, at San Francisco, California.

| L. Santos | L. Santos |
| --- | --- |
| Declarant | Signature |