David A. Senior (SBN 108759)
MCBREEN & SENIOR
2029 Century Park East, Third Floor
Los Angeles, California 90067
Phone: (310) 552-5300
Fax: (310) 552-1205
dsenior@mcbreensenior.com

John R. Grele (SBN 167080)
LAW OFFICE OF JOHN R. GRELE
149 Natoma Street, 3rd Floor
San Francisco, California 94105
Phone: (415) 348-9300
Fax: (415) 348-0364
jgrele@earthlink.net

Richard P. Steinken (admitted PHV)
JENNER & BLOCK
353 N. Clark Street
Chicago, IL 60654
Phone: (312) 923-2938
Fax: (312) 840-7338
rsteinken@jenner.com

Attorneys for Intervenor
ALBERT GREENWOOD BROWN

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| MICHAEL ANGELO MORALES,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES E. TILTON, Acting Secretary of the California Department of Corrections; ROBERT L. AYERS, Acting Warden, San Quentin State Prison, San Quentin, CA; and DOES 1-50,<br><br>Defendants. | CASE NO. C 06 0219 (JF) (RS)<br>    C 06-0926 (JF) (RS)<br><br>NOTICE OF MOTION AND MOTION TO INTERVENE BY ALBERT BROWN; NOTICE OF MOTION AND MOTION TO STAY EXECUTION; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>PROPOSED DATE: September 21, 2010<br>TIME: 3:00 p.m.<br>PLACE: Courtroom 3 |

1

MOTION TO INTERVENE BY ALBERT BROWN AND FOR STAY OF EXECUTION
Case Nos. C 06 219 JF RS, C 06 926 JF RS

PLEASE TAKE NOTICE that on September 21, 2010 at 3:00 p.m. or as soon thereafter as he may be heard, before the Honorable Jeremy Fogel in Courtroom 3 of the United States District Court for the Northern District of California, located at 280 South First Street, San Jose, California, intervenor Albert Greenwood Brown ("Brown") will and does move the Court under Federal Rules of Civil Procedure Rule 24(b), for an order granting him leave to intervene in the present matter. Intervenor Brown's claims share with the main action common questions of law or fact.

Brown further will and does move the Court for an order staying his September 29, 2010 execution date. There is a strong likelihood the present matter will succeed on the merits, the relative harm to the parties weighs in favor of Brown, and Brown has not delayed unnecessarily in bringing this motion for a stay.

The motions are based on the Ex Parte Application for Order Shortening Time, this Notice, Memorandum of Points and Authorities, along with all exhibits and papers filed in this action, and on any evidence received at the hearing.

DATED: September 15, 2010

By:    /s/
   David A. Senior
   McBREEN &SENIOR

   Richard P. Steinken
   JENNER & BLOCK

   John R. Grele
   LAW OFFICE OF JOHN R. GRELE

   *Attorneys for Intervenor*
   ALBERT GREENWOOD BROWN

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................ 1

TABLE OF AUTHORITIES .............................................................................................. II

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 3

    I.    SUMMARY OF RELEVANT FACTS ................................................................... 3

    II.    BROWN'S MOTION TO INTERVENE SHOULD BE GRANTED ...................... 5

        A.    Introduction ................................................................................................ 5

        B.    This Court Has Independent Grounds for Jurisdiction ........................... 6

        C.    Brown's Motion to Intervene Is Timely .................................................. 6

        D.    Brown's Claims and the Main Action Have Common Questions of Law or Fact ................................................................... 8

    III.    MOTION TO STAY EXECUTION ........................................................................ 9

        A.    Brown Is Likely to Succeed on the Merits .............................................. 9

        B.    Possibility of Irreparable Harm ............................................................. 13

        C.    No Unnecessary Delay ........................................................................... 13

    IV.    CONCLUSION ...................................................................................................... 13

**MCBREEN & SENIOR**
2029 Century Park East, Third Floor
Los Angeles, California 90067
Telephone: (310) 552-5300

## TABLE OF AUTHORITIES

Cases

*Beardslee v. Woodford*, 395 F.3d 1064 (9th Cir. 2005) .................................................... 10

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) ............ 7, 8

*Morales v. Cal. Dep't of Corr. & Rehab.*, 85 Cal. Rptr. 3d 724 (Cal. Ct. App. 2008) ....... 5

*Morales v. Cal. Dep't of Corr. & Rehab.*, No. CV 061436 (Super. Ct. Marin County, Cal. Nov. 29, 2007) ................................................................................................................ 5, 6

*Morales v. Hickman*, 415 F. Supp. 2d 1037, 1048 (N.D. Cal. 2006) ............................... 10

*Morales v. Tilton*, 465 F. Supp. 2d 972 (N.D. Cal. 2006) ...................................... 4, 10, 14

*Nw. Forest Research Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) ....................... 7, 8

*United States v. Oregon*, 745 F.2d 550 (9th Cir. 1984) ...................................................... 8

Statutes

Cal. Code Regs. tit. 15, § 3349 ....................................................................... 5, 11, 12, 13

Fed. R. Civ. P. 24(b) ................................................................................................. 2, 4, 7

**MCBREEN & SENIOR**
2029 Century Park East, Third Floor
Los Angeles, California 90067
Telephone: (310) 552-5300

# MEMORANDUM OF POINTS AND AUTHORITIES

Albert Greenwood Brown ("Brown") seeks to intervene in the present action, pursuant to Rule 24(b) of the Federal Rules of Civil Procedure, because he "has a claim or defense that shares with the main action a common question of law or fact." *Id.* Brown further seeks a stay of his September 29, 2010 execution date.

I.   Summary of Relevant Facts

Brown is a condemned inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR").

On December 15, 2006, this Court issued an order finding that the "implementation of California's lethal-injection protocol lacks both reliability and transparency." *Morales v. Tilton*, 465 F. Supp. 2d 972, 981 (N.D. Cal. 2006). California's actions and failures to act with respect to the implementation of its lethal-injection protocol have resulted in an intolerable risk of a Constitutional violation. *Id.* To remedy this situation, California would have to undertake a "meaningful" review of its processes, which "*must be undertaken* with an openness to the idea of making significant improvements in the 'infrastructure' of executions." *Id.* at 983 (emphasis added).

In response to this clear, unambiguous, and respectful guidance, Governor Schwarzenegger announced via a press release on December 18, 2006, that he was "committed to doing whatever it takes . . . to ensure that the lethal injection process is constitutional . . . ." Response by the Governor's Office to the Court's Memorandum of Intended Decision Dated December 15, 2006, Docket 291, Ex. A.  The Governor added

that his "administration will take immediate action to resolve [the] court['s] concerns . . ." *Id.*

The Governor and CDCR issued a revised Operational Procedure 770 ("Lethal Injection Protocol") on May 15, 2007. On November 29, 2007, in *Morales v. California Department of Corrections and Rehabilitation*, the Marin County Superior Court declared invalid and enjoined the enforcement of California's Lethal Injection Protocol. *Morales v. Cal. Dep't of Corr. & Rehab.*, No. CV 061436 (Super. Ct. Marin County, Cal. Nov. 29, 2007); *aff'd, Morales v. Cal. Dep't of Corr. & Rehab.*, 85 Cal. Rptr. 3d 724, 733 (Cal. Ct. App. 2008).

On July 30, 2010, California promulgated regulations of the Lethal Injection Protocol, effective August 29, 2010. Cal. Code Regs. tit. 15, § 3349. With the exception of a few additional deficiencies, the regulations are substantially identical to the version of OP 770 that was published by the Governor and CDCR on May 15, 2007.

The day after the regulations took effect, on August 30, 2010, the Riverside County Superior Court issued an execution warrant for Brown. *People v. Brown*, No. CR18104 (Super. Ct. Riverside County, Cal. Aug. 30, 2010). Brown requested that an execution date be set not sooner than 60 days so as to permit orderly litigation as to the effect of such a date setting, both in this Court and in the Marin County Superior Court. Exhibit "A", hereto, at 9-10. The state insisted that the execution date be set in only 30 days, and represented to the Riverside County Superior Court that the action pending before this Court was "irrelevant" to setting the execution date requested by the State. *Id.* at 12. The Riverside County Superior Court denied Brown's request and ordered Brown to be executed on September 29, 2010. *Id.* at 16.

4
MOTION TO INTERVENE BY ALBERT BROWN AND FOR STAY OF EXECUTION
Case Nos. C 06 219 JF RS, C 06 926 JF RS

On August 31, 2010, the Marin County Superior Court ordered,

> Defendant California Department of corrections and rehabilitation [sic] ("CDCR") shall refrain from carrying out the lethal injection of any condemned inmates unless and until this court dissolves the permanent injunction issued by this court in its final judgment granting plaintiffs' motion for summary judgment issued on November 29, 2007.

*Morales v. Cal. Dep't of Corr. & Rehab.*, No. CV 061436 (Super. Ct. Marin County, Cal. Aug. 31, 2010).

The CDCR is seeking a peremptory writ of mandate to vacate the August 31, 2010 order. Based upon information and belief, Brown is the only condemned inmate with a scheduled execution date.

Brown submitted his inmate appeal for administrative remedy on September 2, 2010. One week later, September 9, 2010, Brown received notice that the appeal had been sent to prison staff for a first level response, with an indicated response date of September 15, 2010. The notice further informed Brown that if he was dissatisfied with the response, he would have fifteen days (i.e., until September 30, 2010) in which to pursue a second level review.

II. Brown's Motion to Intervene Should Be Granted

A. Introduction

Plaintiff Michael Angelo Morales' ("Morales") Third Amended Complaint for Equitable and Injunctive Relief ("Morales Complaint", Docket No. 323) before this Court is incorporated herein by reference. Brown joins in the Morales Complaint in all its particulars as it currently is set forth.

MCBREEN & SENIOR
2029 Century Park East, Third Floor
Los Angeles, California 90067
Telephone: (310) 552-5300

"[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Nw. Forest Research Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996); Fed. R. Civ. P. 24(b). Brown can show all the above factors.

### B.   This Court Has Independent Grounds for Jurisdiction

Brown's claims arise under the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has independent grounds for jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

### C.   Brown's Motion to Intervene Is Timely

In determining whether a motion to intervene under Rule 24(b) is timely, courts consider three factors: "the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997); Fed. R. Civ. P. 24(b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."). All three factors weigh in favor of granting Brown's motion to intervene.

This matter is still in its initial stages. On July 30, 2010, California promulgated regulations containing its Lethal Injection Protocol, which were to take effect August 29, 2010. On August 6, 2010, this Court issued its Order Following Regulatory Action. On August 30 and 31, 2010, the parties filed status reports in response to this Court's August 6, 2010 order. A status conference is set for September

21, 2010. The litigation is not "beginning to wind itself down," such that any additional delay caused by Brown's intervention is "relevant to the timeliness calculus." *League of United Latin Am. Citizens*, 131 F.3d at 1304.

Brown is not aware of any prejudice to existing parties, and counsel for plaintiff Morales have no objection to the intervention. Brown's interests are identical to those of Morales. *See Donnelly v. Glickman*, 159 F.3d 405, 411 (9th Cir. 1998) (upholding the denial of a motion to intervene because "the interests of plaintiffs and the proposed intervenors 'are in direct opposition,' resulting in prejudice to existing parties."). Brown does not seek to "relitigate matters which have previously been litigated," raise any claims other than those raised by Morales, or assert any claims against Morales. *United States v. Oregon*, 745 F.2d 550, 553 (9th Cir. 1984) (holding that the state of Idaho could intervene in litigation concerning fishing on the Columbia River when "Idaho has disclaimed any intent to relitigate matters which have previously been litigated, to raise any claims unrelated to the Tribes' treaty fishing rights, or to assert any claims against the other states.").

Brown has not delayed in bringing his claims. California's execution protocol allegedly went into effect on August 29, 2010. Brown's death warrant was signed on August 30, 2010. The Marin County Superior Court enjoined all executions August 31, 2010, and that injunction remains in effect now. Brown brings this motion to intervene promptly after his execution date was set and while he is exhausting his administrative remedies (602 filed on September 2, 2010) and awaiting a disposition by defendant CDCR.

### D. Brown's Claims and the Main Action Have Common Questions of Law or Fact

Brown joins in the Morales Complaint. Morales's and Brown's claims have the following common questions of law:

1. Whether the Lethal Injection Protocol violates the Eighth and Fourteenth Amendments. Morales Complaint, ¶¶ 53-54.

2. Whether the protocol should provide that "the personnel entrusted with the lethal injection procedure possess the proper and necessary training, experience, or expertise," including assuring "sufficient expertise to insert an intravenous line properly in all situations, determine if there is a blockage in the intravenous line, or evaluate whether a prisoner is properly sedated before proceeding with the painful parts of the execution process." *Id*. at ¶¶ 55-56.

3. Whether the Lethal Injection Protocol should provide "specific guidelines for the administration of the three separate chemicals." *Id*. at ¶ 55.

4. Whether the protocol should contain guidelines to assure that the inmate is "deeply anesthetized prior to injecting the second two drugs, or establish procedures for determining when an additional dose of sodium pentothal should be administered." *Id*. at ¶ 58.

5. Whether Brown is entitled to injunctive relief. *Id*. at ¶22.

Morales and Brown are both inmates condemned to death. The Morales Complaint and Brown's claims only relate to California's lethal injection protocol. All

**MCBREEN & SENIOR**
2029 Century Park East, Third Floor
Los Angeles, California 90067
Telephone: (310) 552-5300

questions of fact related to Brown's claims are identical to those in the Morales Complaint.

### III. Motion to Stay Execution

This Court should stay Brown's execution. There is a strong likelihood of success on the merits, the relative harms to the parties weigh in favor of Brown, and Brown has not delayed unnecessarily in bringing the claim. *Beardslee v. Woodford*, 395 F.3d 1064, 1068 (9th Cir. 2005).

On February 14, 2006, this Court issued a stay of execution in favor of Morales to allow the Court to "hold an evidentiary hearing on the merits of Plaintiff's claims . . ." *Morales v. Hickman*, 415 F. Supp. 2d 1037, 1048 (N.D. Cal. 2006); *see also Morales v. Tilton*, 465 F. Supp. 2d 972, 977 (N.D. Cal. 2006). After the Court issued its Memorandum of Intended Decision on December 15, 2006, the hearing was scheduled to be continued on December 10-11, 2007, but was then stayed pending the outcome of the state regulatory litigation by agreement of the parties. Order Granting Parties' Joint Request to Vacate Case-Management Schedule, Docket 370, Nov. 6, 2007. So too should Brown be allowed time to present the same case for this Court's consideration of the merits of his claims.

### A. Brown Is Likely to Succeed on the Merits

Brown's request for an injunction is likely to succeed on the merits. In its Memorandum of Intended Decision, this Court already has found that the demonstrable unreliability of the State's execution protocol, and defendants' failure to correct it, creates a substantial risk of an Eighth Amendment violation. Defendants were afforded an

opportunity to attempt to rectify, among other things, the protocol's deficiencies and then demonstrate that this has been accomplished. Thus, as it stands, the finding is adverse to defendants. Irrespective whether defendants may be able to demonstrate that the concerns expressed by the Court have been properly addressed and alleviated, they have not done so and cannot by merely promulgating a protocol, given the previous findings such as the loss of substantial amounts of drugs; the failure of team members to be able to mix them properly; placement on the team of persons with histories of psychiatric disabilities and smuggling drugs into the prison; the failure of those effectuating executions to attend trainings; the lack of knowledge of the process by those in charge; and, the documented misadventures in over half the executions. This is but a partial list of such significant findings.

Lest there be any argument that the defendants are entitled to be insulated from scrutiny because they have yet another new procedure, there is already concern that they have deviated from that procedure in order to accelerate executions. The execution protocol inadequately ensures that the personnel entrusted with the lethal injection procedure possess the proper and necessary training, experience, or expertise (*see* Complaint at ¶¶ 55-56). CDCR already has disregarded the express provisions of its Lethal Execution Protocol with respect to Brown.

The lethal injection protocol that purportedly became effective on August 29, 2010 required the formation of a Lethal Injection Team comprised of at least 20 members drawn from employees of San Quentin or the CDCR. Cal. Code Regs. tit. 15, § 3349.1.2(a)(1). Selection of the team was required to proceed in three phases: recruitment and selection of a Team Administrator, a Team Leader and then Team

Members. Cal. Code Regs. tit. 15, § 3349.1.2(a)(1)-(2) and (4). With the assistance of the Director, Division of Adult Institutions (DAI), the Warden "shall hold interviews of prospective candidates" for the position of Team Leader. Cal. Code Regs. tit. 15, § 3349.1.2(a)(2). Hiring authorities designated by the Warden "shall" forward names of "prospective team members" to the DAI. Cal. Code Regs. tit. 15, § 3349.1.2(a)(4). Thereafter, a "Selection Panel comprised of the Warden, Associate Director-Reception Centers, the Team Administrator, and the Team Leader . . . shall review qualifications, interview prospective candidates, and select the Lethal Injection Team members." Cal. Code Regs. tit. 15, § 3349.1.2(a)(4)(A). The required pre-interview review includes reviewing "all available candidate's performance evaluations," "personnel, supervisory, and training files," "personal history and background" and "professional history." Cal. Code Regs. tit. 15, § 3349.1.2(b)(2)(A) and (B); Cal. Code Regs. tit. 15, § 3349.1.2(b)(3)(A) and (B).

Two days later, however, on August 31, 2010, the Warden of San Quentin State Prison served a Death Warrant on Brown for his execution to take place on September 29, 2010, only 29 days later. At the time the Death Warrant was served, the protocol provided that "[t]he Warden *shall* [m]eet with Lethal Injection Team members involved in the lethal injection process to ensure that all staff understand their roles in the scheduled execution." Cal. Code Regs. tit. 15, § 3349.3, Chronology of Events Prior to a Scheduled Execution (a)(1)(H). Thus, selection of the Lethal Injection Team was either conducted in some unknown manner before the regulations were in effect and not pursuant to the regulations, or it was done within two days. Neither scenario is acceptable.

When the death warrant was read to Brown on August 31, the protocol required the Associate Warden - Specialized Housing Division, to, among other things, "[r]efer the inmate to the Intravenous Sub-Team for a vein assessment to determine the size, location, and resilience of the veins in the inmate's anticubital areas." Cal. Code Regs. tit. 15, § 3349.3, Chronology of Events Prior to a Scheduled Execution (c)(3) . Brown's veins were examined at that time, again by team members selected at some unknown time in some unknown manner or by a hastily employed 48 hour review, interview, evaluation, and selection process for 20 execution team members. Once again, neither scenario is acceptable.

Although only 30 days existed between the approval of the execution regulations and Brown's scheduled execution, "monthly [execution team] training" was required to have taken place leading up to Brown's September 29 execution. Cal. Code Regs. tit. 15, § 3349.1.4, Lethal Injection Team Training (a) (1). This *monthly* training *shall* include the use of an electronic monitor for vital signs; setting up intravenous lines and intravenous drip; sizing intravenous catheters; performing simulated lethal injection executions; performance of consciousness checks; monitoring intravenous lines to ensure patency; appropriate mixing of the chemicals used in the lethal injection process; proper level and rate of infusion of the chemicals into the intravenous lines; the physical effects each chemical can have on the inmate as they are administered. Cal. Code Regs. tit. 15, § 3349.1.4, Lethal Injection Team Training. This clearly will not take place before the September 29 execution of Brown, in view of the fact that the Lethal Injection Protocol regulations only became effective on August 29, 2010.

Defendants' disregard for the newly adopted regulations reflects the past sloppy actions of CDCR and the Governor, but it is consistent with the State's overarching interest that "basically, we want to speed along the case." Joint Status Conference, RT 9, June 1, 2007.

### B. Possibility of Irreparable Harm

Brown is scheduled to be executed pursuant to the same – or worse – Lethal Injection Protocol which already has not passed constitutional muster. As this Court found,

> Defendants' implementation of California's lethal-injection protocol lacks both reliability and transparency. In light of the substantial questions raised by the records of previous executions, Defendants' actions and failures to act have resulted in an undue and unnecessary risk of an Eighth Amendment violation. This is intolerable under the Constitution.

*Morales v. Tilton*, 465 F. Supp. 2d 972, 981 (N.D. Cal. 2006).

Nothing has changed in this regard, and without a stay, Brown faces the real possibility of cruel and unusual capital punishment.

### C. No Unnecessary Delay

As discussed *supra*, Brown brings this request for a stay promptly after the effective date of California's execution protocol, the setting of his execution date, and the exhaustion of his administrative remedies. There has been no delay.

/ /

/ /

/ /

IV.   Conclusion

For the foregoing reasons, Albert Greenwood Brown respectfully requests that this Court grant his motion to intervene and motion to stay his execution.

DATED: September 15, 2010

By: _____/s/_____

David A. Senior
McBREEN &SENIOR

Richard P. Steinken
JENNER & BLOCK

John R. Grele
LAW OFFICE OF JOHN R. GRELE

*Attorneys for Intervenor*
ALBERT GREENWOOD BROWN