EDMUND G. BROWN JR.
Attorney General of California
THOMAS S. PATTERSON
Supervising Deputy Attorney General
MICHAEL J. QUINN
Deputy Attorney General
State Bar No. 209542
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5726
  Fax: (415) 703-5843
  E-mail: Michael.Quinn@doj.ca.gov
*Attorneys for Defendants Schwarzenegger, Cate and Cullen*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL ANGELO MORALES,<br><br>                 Plaintiff,<br><br>v.<br><br>JAMES TILTON, et al.,<br><br>                 Defendants. | C 06-0219 JF<br><br>**DEFENDANTS' OPPOSITION TO ALBERT G. BROWN'S MOTION TO INTERVENE AND FOR STAY OF EXECUTION**<br><br>Date: September 21, 2010<br>Time: 3:00 p.m.<br>Courtroom: 3<br>Judge: The Honorable Jeremy Fogel<br>Trial Date: None set<br>Action Filed: 1/5/2006 |

**INTRODUCTION**

This Court should deny Albert Brown's motion to intervene and to stay his September 29, 2010 execution date. The operative complaint in this case concerns a lethal-injection protocol, revised Operational Procedure 770 (O.P. 770), that is no longer in effect. If Plaintiff Morales believes that the lethal-injection regulations that became effective on August 29, 2010 violate the Eighth Amendment in some manner, he should seek leave to amend the complaint. Brown's motion to intervene should not be adjudicated unless and until such an amendment occurs—he should not be permitted to intervene in a case that concerns an operational procedure that has not,

1

and never will be, used in an execution.

Albert Brown's motion to stay the execution is meritless because Brown failed to establish that he is likely to prevail in the action or that there is substantial evidence that he will suffer irreparable harm—that is, cruel and unusual punishment—during the September 29 execution. Since December 2006, when this Court issued its memorandum of intended decision, the Department has improved the lethal-injection procedures, built a new lethal-injection facility, and trained an execution team that is prepared to conduct the execution of both Brown and other condemned inmates in compliance with the Eighth Amendment.

## ARGUMENT

### I. BROWN SHOULD NOT BE PERMITTED TO INTERVENE IN THIS CASE BECAUSE OPERATIONAL PROCEDURE 770 IS NO LONGER IN EFFECT.

Brown purports to "join in the Morales Complaint in all its particulars as it currently is set forth." (Docket No. 387, 5:25-26; *see also id.* at 7:11-13 ("Brown does not seek to . . . raise any claims other than those raised by Morales").) But as "currently set forth," the Morales Complaint attacks a lethal-injection protocol that is no longer in effect and will never again be used in connection with any execution—including Brown's. Brown's execution will be effectuated under new regulations that are unchallenged in Morales's "main action." Accordingly, Brown cannot conceivably have any claim "that share[s] with the main action a common question of law or fact." Fed. R. App. P. 24(b).

The operative complaint in this case concerns revised Operational Procedure 770, which the California Department of Corrections and Rehabilitation (CDCR) issued on May 15, 2007. Several months later, the Marin County Superior Court permanently enjoined CDCR from carrying out the lethal injection of any condemned inmate under O.P. 770 unless and until CDCR promulgated O.P. 770 as a regulation in compliance with the APA.

After the Court of Appeal upheld the superior court's decision, CDCR proposed an amendment to title 15, section 3349 of the California Code of Regulations, and the adoption of twenty-two new regulations related to the execution process. Following public notice and comment, the Office of Administrative Law approved the regulations on July 30, 2010, and filed

2

Defs.' Opp'n Brown's Mot. Intervene and Stay of Execution (C 06-0219 JF)

them with the Secretary of State. The new regulations became effective thirty calendar days after approval, on August 29, 2010.

If Morales believes that he can challenge the new regulations on Eighth Amendment grounds despite the Supreme Court's ruling in *Baze v. Rees* (see Argument II, B), then he will need to seek permission to amend. But at this time, he has not done so, and there is no meaningful claim on which Brown may intervene. In short, Brown should not be permitted to intervene in a case concerning an operational procedure that is not being used. This Court should not consider Brown's motion to intervene unless and until the complaint in this case is amended and states a claim against the new regulations.

## II. THE MOTION TO STAY THE EXECUTION SHOULD BE DENIED.

A plaintiff is not entitled to a preliminary injunction unless he can show "either: (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor." *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985). As the Ninth Circuit has explained, "[t]hese are not separate tests, but the outer reaches 'of a single continuum.'" *Dollar Rent A Car of Wash., Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1375 (9th Cir. 1985) (quoting *Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978)). In the context of imposing a capital judgment, this equitable analysis "must take into consideration the State's strong interest in proceeding with its judgment" and any attempt by the inmate at manipulation. *Gomez v. U.S. Dist. Court for the N. Dist. Cal.*, 503 U.S. 653, 654 (1992).

The decision to grant or deny a preliminary injunction "rests in the sound discretion of the court." *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964). The Supreme Court has stated, however, that a motion for preliminary injunction carries with it a "requirement for substantial proof," higher than even a motion for summary judgment. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane,

3

Defs.' Opp'n Brown's Mot. Intervene and Stay of Execution (C 06-0219 JF)

1  *Federal Practice and Procedure* § 2948, pp. 129-30 (2d ed. 1995)).

2  As explained more fully below, Brown cannot demonstrate a likelihood of success on the
3  merits, and fails to provide substantial evidence that he will suffer irreparable injury during the
4  September 29 execution. To the contrary, the safeguards in the new lethal-injection regulations
5  will ensure that the execution satisfies the Eighth Amendment. Accordingly, the motion to stay
6  the execution date should be denied.

7      **A.    Brown Cannot Establish That He Is Likely to Succeed on the Merits.**

8  Without citation to any evidence, Brown asserts that he is likely to succeed on the merits
9  because the selection of the lethal-injection team "was either conducted in some unknown manner
10 before the regulations were in effect . . . or was done in two days." (Docket No. 387, 11:25-28.)
11 According to Brown, "neither scenario is acceptable." (*Id*. at 11:27-28.) The evidence shows,
12 however, that the selection and training of the team was not performed in two days, but has been
13 an ongoing process over considerable time. Brown's ignorance about these preparations is not an
14 adequate ground to prevent his execution from going forward.

15 An execution team has been training at San Quentin since October 2007. (Decl. J.
16 McAuliffe Supp. Defs.' Opp'n to Brown's Mot. Intervene (Decl. J. McAuliffe) ¶ 2.) During 2007
17 and 2008, while the parties were litigating in state court about whether the lethal-injection
18 protocol was subject to the APA, the execution team trained as if O.P. 770 was in effect. (*Id*.)
19 After the Defendants agreed to promulgate the protocol in compliance with the APA, the team
20 had access to the proposed regulations and used them during training sessions. (*Id*. at ¶ 3.) The
21 team is now training under the regulations that were finalized by the Department on July 6, 2010
22 and went into effect on August 29, 2010. (*Id*. at ¶ 4.) However, many of the current regulations,
23 including those concerning the movement of the condemned inmate before an execution, and the
24 administration of the drugs during an execution, are similar to those that were proposed by CDCR
25 in mid-2009. (*Id*.) Therefore, although the new lethal-injection regulations were issued recently,
26 the team has been aware of, and training under, many of the provisions since at least 2009. (*Id*.)

27 In conducting training sessions for the execution team during the past several years, CDCR
28 has attempted to address one of this Court's key criticisms in its December 2006 memorandum of

4

Defs.' Opp'n Brown's Mot. Intervene and Stay of Execution (C 06-0219 JF)

intended decision: the "lack of meaningful training, supervision, and oversight of the execution team." During the sessions, the execution team has become knowledgeable about the drugs that are used during the execution, the sequence and manner in which they are applied, and the effect that they have on the condemned inmate. (*Id.* at ¶ 5.) The team, which now includes several nurses who are licensed to set intravenous catheters and do so on a regular basis, has also mixed and prepared the sodium thiopental during the training. (*Id.*) The training sessions that the team has engaged in will enable it to conduct Brown's execution with an appropriate degree of care and professionalism. Because Brown is unlikely to establish that the training of the execution team during the past several years somehow violated the Eighth Amendment and provides no evidence to that effect, the motion to stay the execution should be denied.

### B. Brown Has Not Provided Substantial Evidence That He Will Experience Cruel and Unusual Punishment During His Execution.

Brown asserts that there is a chance of irreparable harm based on an incorrect statement that "nothing has changed" since the Court issued its memorandum of intended decision in December 2006. (Docket No. 387, 13:6-18.) As a threshold issue, a mere possibility of harm in this case is insufficient for a stay. Rather, Brown must show substantial evidence that he will endure cruel and unusual punishment if his execution goes forward. *Mazurek*, 520 U.S. at 972. He has not and cannot do so because a great deal has changed since 2006. During the past several years, the Department has conducted extensive training of the execution team, has built a new lethal-injection facility at San Quentin, and has promulgated lethal-injection regulations in compliance with the APA. That process, among other things, permitted interested parties to have a role in developing regulations through public comment and public hearings.

Moreover, the Supreme Court has decided *Baze v. Rees*, 553 U.S. 35, 99 (2008), a critical development that Brown wholly fails to mention. Thus, it is not enough for Brown—who hopes to show that he "is likely to succeed on the merits" of some future challenge—to demonstrate that he "faces the real possibility of cruel and unusual capital punishment." (Docket No. 387 at 9:24; 13:17-18.) Rather, he must show that California's current protocol presents a substantial or objectively unreasonable risk of serious harm that can be avoided by an alternative procedure that

5

Defs.' Opp'n Brown's Mot. Intervene and Stay of Execution  (C 06-0219 JF)

is feasible, readily implemented, and would in fact significantly reduce a substantial risk of severe pain. *Baze*, 553 U.S. at 47-52. Brown makes no effort to address this standard, much less satisfy it.[1]

Even the dissenting opinion in *Baze* noted that California had adopted safeguards that were not contained in the Kentucky protocol that the Court found to satisfy the Eighth Amendment. 553 U.S. at 119-21. In her dissent, Justice Ginsburg wrote that several states, including California, had recognized the "importance of a window between the first and second drugs." *Id.* at 119. Justice Ginsburg went on to recount that under O.P. 770, "a member of the IV team brushes the inmate's eyelashes, speaks to him, and shakes him at the halfway point and, again, at the completion of the sodium thiopental injection." *Id.* at 120-21. The lethal-injection regulations that went into effect on August 29, 2010 contain similar provisions requiring a "consciousness assessment" at both the "halfway point" and the completion of the sodium thiopental injection. Cal Code Regs. tit. 15, §3349.4.5(g)(5)(A-C).

In the aftermath of the *Baze* decision, several courts have rejected challenges by condemned inmates to lethal-injection protocols. *See, e.g., Raby v. Livingston*, 600 F.3d 552, 560-62 (5th Cir. 2010) (holding in a Texas case that Baze created a "safe harbor" for any protocol that is consistent with what was approved by the Supreme Court); *Jackson v. Danberg*, 594 F.3d 210, 228-29 (3rd Cir. 2010) (rejecting a challenge to the Delaware protocol simply because Ohio had successfully used a single-drug protocol); *Emmett v. Jackson*, 532 F.3d 291, 300 (4th Cir. 2009) (holding that because Virginia satisfied *Baze* there was no need to consider alternatives).

Since December 2006, CDCR has, among other things, vastly improved the lethal-injection procedures through the regulatory process, the training of the execution team, and the lethal-injection facility. Accordingly, there is no basis for Brown's claim that there is a possibility that he will suffer irreparable harm in violation of Eighth Amendment during his September 29 execution.

---

[1] None of the alleged transgressions mentioned on pages 10-13 of Brown's memorandum of points and authorities (which set forth "concerns" that CDCR has "deviated" from the protocol) implicate the Eighth Amendment or any other constitutional provision.

6

### III. EVEN IF THIS COURT WERE TO STAY THE EXECUTION DATE, IT SHOULD NOT BAR THE DEPARTMENT FROM TAKING STEPS TO PREPARE FOR AN EXECUTION.

In the proposed order, Brown seeks to stay not only his actual execution, but preparations that the Department may undertake in connection with the execution. (Docket No. 387-2, 2:3-7.) But Brown's memorandum of points and authorities neither asserts that the preparations for the execution should be stayed nor explains how such preparations implicate the Eighth Amendment.

Because Brown never explains how the Department's mere preparation for an execution violates the Eighth Amendment, this Court—even if it were to stay the execution date—should not prevent the Department from taking steps to prepare for the execution. The claims that have been asserted in this case relate to the actual imposition of lethal injection, not to preparations. And the preparations themselves implicate no Eighth Amendment concerns.[2]

### CONCLUSION

For the foregoing reasons, the motion to intervene by Albert Brown and for stay of execution should be denied.

Dated: September 17, 2010

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of California
THOMAS S. PATTERSON
Supervising Deputy Attorney General

MICHAEL J. QUINN
Deputy Attorney General
*Attorneys for Defendants Schwarzenegger, Cate and Cullen*

SF2007200210
40463910.doc

---

[2] During a recent proceeding in the APA action, Brown argued that the Department should not be permitted to engage in execution preparations. The Marin County Superior Court rejected his request. For the Court's convenience, Defendants attach a copy of the Marin County Superior Court's August 31, 2010 order granting Plaintiff Mitchell Sims' motion to enforce injunction and for contempt. Fed. R. Evid. 201. On September 1, 2010, Defendants' filed a petition for writ of mandate, prohibition, certiorari, or other appropriate relief in the Court of Appeal, First Appellate District. That petition is currently pending before the court.

7

Defs.' Opp'n Brown's Mot. Intervene and Stay of Execution (C 06-0219 JF)

# CERTIFICATE OF SERVICE

Case Name:   **Michael Angelo Morales v. James Tilton, et al.**          No.   C 06-0219 JF

I hereby certify that on **September 17, 2010**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' OPPOSITION TO ALBERT G. BROWN'S MOTION TO INTERVENE AND FOR STAY OF EXECUTION**

**DECLARATION OF JOHN W. MCAULIFFE IN SUPPORT OF OPPOSITION TO ALBERT G. BROWN'S MOTION TO INTERVENE AND FOR STAY OF EXECUTION**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. On **September 17, 2010**, I have mailed the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

**Habeas Corpus Resource Center**
**303 Second Street, Suite 400 South**
**San Francisco, CA 94107**

**Janice H. Lam**
**Jenner & Block**
**One IBM Plaza**
**Chicago, IL 60611**

**Michael G. Millman**
**California Appellate Project**
**101 Second St., Suite 600**
**San Francisco, CA 94105**

**Office of the Inspector General**
**P.O. Box 348780**
**Sacramento, CA 95834**

**Stephanie L. Reinhart**
**Jenner & Block**
**One IBM Plaza**
**Chicago, IL 60611**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **September 17, 2010**, at San Francisco, California.

|  M.M. Argarin  |  _(signed)_  |
| :---: | :---: |
| Declarant | Signature |

40463921.doc