David A. Senior (# 108759)
MCBREEN & SENIOR
2029 Century Park East, Third Floor
Los Angeles, CA  90067
Phone:  (310) 552-5300
Fax:  (310) 552-1205
dsenior@mcbreensenior.com

John R. Grele (# 167080)
LAW OFFICES OF JOHN R. GRELE
149 Natoma Street, Third Floor
San Francisco, CA  94105
Phone:  (415) 348-9300
Fax: (415) 348-0364
jgrele@earthlink.net

Richard P. Steinken (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL  60654
Phone: (312) 923-2938
Fax: (312) 840-7338
rsteinken@jenner.com

Attorneys for Intervenor
ALBERT GREENWOOD BROWN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL ANGELO MORALES,<br><br>    Plaintiff,<br><br>    v.<br><br>Matthew CATE, Secretary of the California Department of Corrections and Rehabilitation, et al.,<br><br>    Defendants. | Case No. C 06 219 JF RS<br>          C 06 926 JF RS<br><br>REPLY OF ALBERT GREENWOOD BROWN TO DEFENDANTS' OPPOSITION TO HIS MOTION TO INTERVENE AND MOTION TO STAY EXECUTION<br><br>Date:  September 21, 2010<br>Time:  3:00 pm<br>Place:  Courtroom 3 |

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Brown's Motion to Intervene Should Be Granted

### A. No Deficiencies in Brown's Claims

Citing no cases, Ninth Circuit or otherwise, defendants incorrectly contend that Albert Greenwood Brown's ("Brown") motion to intervene should be denied because of alleged extrinsic deficiencies in the intervenor's federal notice pleading claims, i.e., that the claims he seeks to join relate to defendants' prior continuum of amended lethal injection protocols rather than the current one. Opp. at 3. First, the claims raised include whether "California's lethal-injection protocol--*as actually administered in practice*-- . . . offends the Eighth Amendment?" *Morales v. Tilton*, 465 F. Supp. 2d 972, 974 (N.D. Cal. 2006) (emphasis added). Second, under Rule 24(a), an "application for intervention cannot be resolved by reference to the ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their face" (*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999)), and Brown's claims are not frivolous on their face.

Brown has shown that this Court has jurisdiction, that his motion to intervene is timely, and that the claims of Brown and Morales have "common questions of law or fact." *See Nw. Forest Research Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996); Fed. R. Civ. Proc. 24(b). Defendants have not attempted to rebut Brown's allegations of jurisdiction and timeliness. Brown joined in plaintiff Morales' Third Amended Complaint in all its particulars. The claims by Brown and Morales obviously share common questions of both law and fact.

Despite the recent promulgation of a nearly identical version of OP 770 through the APA regulation process (a promulgation of inadequacies that has resulted in state court litigation not subject to demurrer), Brown seeks to join a complaint that continues to raise "meaningful claims" against defendants. One of the main questions raised has existed since 2006 and continues to this day: does California's lethal-injection protocol *as actually administered in practice* offend the Eighth

MCBREEN & SENIOR
2029 Century Park East, Third Floor
Los Angeles, California 90067
Telephone: (310) 552-5300

Amendment? *Morales*, 465 F. Supp. 2d at 974. Defendants have proven to be an unworthy arbiter of this issue. While defendants now claim that they have "vastly improved the lethal-injection Procedures" since December 2006 (Opp. at 6), they also claimed in January 2006 that no improvements were necessary; and then claimed such vast improvements in March 2006. Defendants should now be demanding transparency and inspection of their recent actions, and not be attempting to bypass impartial and orderly review with a rushed attempt to proceed to an execution before any court has the opportunity to examine what they purportedly have done.

A fair reading of the Third Amended Complaint demonstrates that it remains legally sufficient. Tellingly, Defendants cannot cite to any legal deficiency or insufficiency in the Third Amended Complaint as it pertains to either Morales or Brown. The most Defendants can say is that the Third Amended Complaint refers to the procedure as O.P. 770 rather than by its new label of 15 CCR 3349 et seq.

Reflective of the fact that O.P. 770 and the current regulations are substantially similar in the most pertinent respects, Morales' Third Amended Complaint begins with a claim as relevant today as at any time: "Plaintiff additionally contends that Defendants, as a result of their deliberate failure to use medically approved procedures and properly trained personnel, have inflicted pain and torture on several executed prisoners in the past, making Plaintiff certain he will suffer the same fate unless Defendants adopt a humane and safe execution protocol." (par. 1) The Complaint also alleges that "[t]here is a reasonable likelihood that sodium pentothal will be ineffectively delivered, given the inadequacy of the administration procedures and the personnel involved, and as a result will not provide a sufficient sedative effect for the duration of the execution process. This has actually occurred in many California executions and in executions in other states." (par. 16) In challenging the administration of the sedative, Morales notes that "[t]he CDCR's use of sodium pentothal knowingly exacerbates the risk of error created by its deficient protocol because sodium pentothal is

extremely volatile, short acting, and sensitive to human error, and because CDCR makes no determination of a suitable level for any particular inmate, despite this being a required procedure for administration of a sedative to all humans and animals for any purpose." With regards to the pancuronium bromide, Morales alleges that "[w]ithout the use of pancuronium bromide, a prisoner would be able to indicate that he was still conscious or had regained consciousness or awareness prior to the administration of potassium chloride.  Properly trained and qualified personnel would be able to assess unconsciousness, which CDCR personnel at present cannot and do not do and thus are unable to determine whether a prisoner is aware of or feeling pain at the time the pancuronium bromide is administered, or if the administration causes the prisoner to become able enough to sense the pain from pancuronium bromide and, then, potassium chloride." (par. 19)   The complaint over the lack of medical professional involvement remains (Complaint, par. 40), as does the Defendants' deliberate disregard of their own expert's advice to proceed with a single-drug protocol. (par. 43, 59, 62).

## II. Brown's Motion to Stay Execution Should Be Granted

This Court should stay Brown's execution.  Defendants have not rebutted Brown's showing that there exists a strong likelihood of success on the merits, that the relative harms to the parties weigh in favor of Brown, and that Brown has not delayed unnecessarily in bringing this claim. *Beardslee v. Woodford*, 395 F.3d 1064, 1068 (9th Cir. 2005).

### A. A Stay Will Preserve the Status Quo

Brown seeks a temporary stay until this Court can complete its evidentiary hearing. "A preliminary injunction, of course, is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).  A stay will

4

REPLY TO OPPOSITION TO MOTION TO STAY
Case Nos. C 06 219 JF RS, C 06 926 JF RS

preserve the status quo while this Court determines whether defendants' implementation of the lethal-injection protocol is transparently reliable. *See Morales*, 465 F. Supp. 2d at 981. As a condemned inmate scheduled for imminent execution, Brown could suffer "irreparable loss of rights" without a stay. By contrast, a stay will not result in any discernable harm to defendants. *See Wilson v. United States Dist. Court for the Northern Dist. of California*, 161 F.3d 1185, 1187 (9th Cir. 1998) (denying State's mandamus petition to review TRO because, *inter alia*, complaint alleged colorable due process violation for denial of fairness in clemency proceedings, and "damage to state defendants is questionable . . . because the only harm complained of is the inability to execute the petitioner within 5 hours of the district court's order").

### B. Brown Will Likely Succeed on the Merits

#### 1. Defendants Have Not Corrected Implementation Problems.

Brown's claim is likely to succeed on the merits. The following known deficiencies, among others, exist in the implementation of California's lethal injection protocol:

1. "Inconsistent and unreliable screening of execution team members."
2. "A lack of meaningful training, supervision, and oversight of the execution team."
3. "Inconsistent and unreliable record-keeping."
4. "Improper mixing preparation, and administration of sodium thiopental by the execution team."
5. "Inadequate lighting, overcrowded conditions, and poorly designed facilities in which the execution team must work."

*Morales*, 465 F. Supp. 2d at 979-80.

//

MCBREEN & SENIOR
2029 Century Park East, Third Floor
Los Angeles, California 90067
Telephone: (310) 552-5300

John W. McAuliffe's declaration, which was provided by CDCR but was not subject to cross-examination, provides a cursory description of the training of the execution team members. Defendants presented no evidence, however, regarding the screening of execution team members, record keeping, or the conditions at the facilities. *Id*. While defendants can point to a new execution chamber, it is a matter of public record that defendants used fiscal fraud to avoid legislative oversight in procuring that chamber. Nor have defendants provided any tested evidence that they have remedied any of the constitutional deficiencies identified by this Court.

Mr. McAuliffe's declaration is reminiscent of the testimony given by Witness #1 on March 31, 2006.[1] Like Mr. McAuliffe, Witness #1 testified with certainty, albeit in a similarly vague manner, that CDCR conducted regular training. After discovery, the CDCR forms plainly disproved that assertion and witness #6 correctly noted that they (meaning the non-security team members) really did not do any training.[2] Like Mr. McAuliffe, Witness #1 also identified licensed nurses who assisted, but they turned out to be Witnesses # 6 & 7, whose stipulated facts, particularly about the mixing of chemicals and the infusion process, was extremely problematic. Witness #1 also noted the

---

[1] Mr. McAuliffe, a retired Correctional Counselor II working on prisoner transfer issues, was the consultant hired to devise O.P. 770 (May 15, 2007) after the Memorandum of Intended Decision. Mr. McAuliffe eventually recommended a single-drug protocol. The basis for his recommendation and the documentation reflecting why it was not accepted, have not been disclosed due to a claim of privilege. A motion to compel this material was argued and pending when the matter was stayed as a result of the state court's injunction. One of the issues before the state court will be whether and to what extent CDCR was permitted to withhold that material from their rule making file. In fact, the state APA process requires an evaluation of less harmful alternatives, which is very relevant given the experiences with one-drug protocols in Ohio and Washington, as well as the still-undisclosed information that was the subject of the discovery litigation here.

[2] One of the issues here is whether the regulations specifically instruct the team <u>not</u> to fill out the forms that were used previously to identify who attended what training. 15 CCR 3349.1.4(e). The forms identified in this subsection that are to be completed, although not part of the proposed regulation, do not appear to require identification of trainees. McAuliffe's declaration reflects either confusion as to the process or a failure to explain who is responsible for any particular function. His declaration refers to the "team" as undertaking training and mentions the nurses in the context of both setting IVs (only saying they have in the past, not that this is their assignment here), and mixing the drugs. However, those are tasks undertaken by different teams.

MCBREEN & SENIOR
2029 Century Park East, Third Floor
Los Angeles, California 90067
Telephone: (310) 552-5300

involvement of supposedly qualified medical professionals with licenses. Like Mr. McAuliffe, Witness #1 claimed certainty that the drugs were being properly handled and monitored. It turned out that was not the case, as the stipulated facts detail. In light of this history, CDCR's most recently proffered assurances are cause for concern because similar assurances in the past have not been substantiated. Mr. McAuliffe's declaration, without more, cannot and does not establish that anything of substance has changed since the Court's Memorandum of Intended Decision.

<u>2.</u>    <u>Defendants Have Not Followed Their Own Revised Protocol</u>

Defendants' failure to follow their new protocol is a continuing example of their constitutionally inadequate behavior. Defendants present no evidence that they followed the revised protocol to:

1. interview candidates for Lethal Injection Team Leader. Cal. Code Regs. tit. 15, § 3349.1.2(a)(1);

2. select Lethal Injection Team members. Cal. Code Regs. tit. 15, § 3349.1.2(a)(4); and/or

3. schedule and conduct *monthly* training for the Lethal Injection Team members. Cal. Code Regs. tit. 15, § 3349.1.4(a)(1).

Each of these deficiencies was identified in Brown's motion for a stay. These deficiencies were also identified in this Court's December 15, 2006 Memorandum of Intended Decision. As a result, there is no reason to suspect that Brown's claims will not succeed on the merits.

//

//

### C. Brown Will Suffer Irreparable Harm

Defendants have not rebutted Brown's showing of irreparable harm.

This Court held "[i]n light of the substantial questions raised by the records of previous executions, Defendants' actions and failures to act have resulted in an undue and unnecessary risk of an Eighth Amendment violation." *Morales*, 465 F. Supp. 2d at 981. Defendants have not addressed this Court's concerns about the implementation of the lethal injection protocol, and are not currently following their own protocol.

In *Baze v. Rees*, 553 U.S. 35, 49-50 (2008), the Supreme Court specifically left open the possibility that the actual implementation of lethal injection procedures could violate the Eighth Amendment. "[T]o prevail on such a claim there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id*. (*quoting Farmer v. Brennan*, 511 U.S. 825, 842, 846 & n. 9 (1994)).

The risk of harm in improper implementation of the new lethal injection protocol is substantial and intolerable: "the parties agree that it would be unconstitutional to inject a conscious person with pancuronium bromide and potassium chloride in the amounts contemplated by OP 770." *Morales*, 465 F. Supp. 2d at 978. Defendants' failure to show compliance with this Court's order and with their own protocol shows that they cannot plead that they are "subjectively blameless."

### D. No Unnecessary Delay

Defendants do not contest that Brown has brought this motion to stay his execution promptly.

//

//

### III. Conclusion

For the foregoing reasons, Albert Greenwood Brown respectfully requests that this Court grant his motion to intervene and motion for a stay of execution.

DATED: September 20, 2010

By:  _____/s/_____
David A. Senior
McBREEN &SENIOR

Richard P. Steinken
JENNER & BLOCK

John R. Grele
LAW OFFICE OF JOHN R. GRELE

*Attorneys for Intervenor*
ALBERT GREENWOOD BROWN

**MCBREEN & SENIOR**
2029 Century Park East, Third Floor
Los Angeles, California 90067
Telephone: (310) 552-5300

9

REPLY TO OPPOSITION TO MOTION TO STAY
Case Nos. C 06 219 JF RS, C 06 926 JF RS