**E-Filed 9/24/2010**

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| Michael Angelo MORALES,<br><br>    Plaintiff,<br><br>    v.<br><br>Matthew CATE, Secretary of the California Department of Corrections and Rehabilitation, et al.,<br><br>    Defendants. | Case Number C 06 219 JF HRL<br>Case Number C 06 926 JF HRL<br><br>DEATH-PENALTY CASE<br><br>ORDER GRANTING MOTION FOR LEAVE TO INTERVENE; AND DENYING CONDITIONALLY INTERVENOR'S MOTION FOR A STAY OF EXECUTION |

    Albert Greenwood Brown, a condemned inmate at San Quentin State Prison, seeks leave to intervene in the above-entitled actions. He also seeks a stay of his execution, which currently is scheduled for September 29, 2010 at 12:00am. Because Brown's federal claims are virtually identical to those asserted by Plaintiff Michael Angelo Morales, the motion for leave to intervene will be granted. The motion for a stay of execution will be denied, subject to the conditions set forth below.

### I. BACKGROUND

    Morales filed the first of these consolidated actions in January 2006, claiming that the lethal-injection execution protocol then used by Defendants, known as O.P. 770, was so seriously

flawed that it violated the Eighth Amendment's prohibition against "cruel and unusual punishments." Morales produced evidence indicating that a number of inmates who had been executed pursuant to O.P. 770 may not have been unconscious when they were injected with the second and third drugs used in the protocol.[1] While disputing the probative value of Morales's showing, Defendants stipulated that injecting these two drugs into a conscious person would cause an unconstitutional degree of pain and suffering.

After receiving briefing and holding an evidentiary hearing, the Court found that Morales was entitled to relief under the legal standard then applicable in the Ninth Circuit, which prohibited methods of execution that exposed the condemned person to "an unnecessary risk of unconstitutional pain." *Cooper v. Rimmer*, 379 F.3d 1029, 1033 (9th Cir. 2004). However, rather than granting Morales an outright stay of execution, the Court entered an order permitting Defendants to proceed with the execution under certain alternative conditions, one of which was to execute Morales using only a barbiturate. *Morales v. Hickman*, 415 F. Supp. 2d 1037 (N.D. Cal. 2006).

For reasons that for the most part are not directly relevant to the instant motions, Defendants did not carry out the execution, and a stay issued pursuant to the Court's conditional order. The parties then engaged in several months of discovery, including a judicial visit to the execution facilities at San Quentin. The Court subsequently held a four-day evidentiary hearing and received voluminous briefing and documentary evidence. As a result of this process, the Court "learned a great deal about executions by lethal injection in general and their implementation in California in particular." *Morales v. Tilton*, 465 F. Supp. 2d 972, 978 (N.D. Cal. 2006). It found and concluded that as implemented in actual practice, O.P. 770 contained

---

[1] The first drug in the three-drug execution protocol is sodium thiopental, which is painless and is intended to induce unconsciousness. The second drug, pancuronium bromide, induces paralysis. The third drug, potassium chloride, stops the heart. It is undisputed that in the quantities specified in the protocol, any of the three drugs will cause death.

several serious deficiencies[2], and it asked Defendants to engage in a through review and revision of the protocol.

Defendants accepted the Court's invitation to revise California's lethal injection procedures, and they presented a new version of O.P. 770 on April 15, 2007. Defendants also began construction of new execution facilities at San Quentin. It was the Court's intention at that time to review Defendants' revisions expeditiously so that the instant lawsuit could be resolved. However, as a result of separate litigation in the Marin Superior Court, Defendants were enjoined from implementing the new protocol unless and until they complied with California's Administrative Procedures Act ("APA"), Cal. Govt. Code §§ 11340, et seq., and the superior court's order was upheld on appeal. *Morales v. Cal. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 749 (Cal. Ct. App. 2008). Although several status conferences were scheduled thereafter, both Morales and Defendants requested that this Court not proceed further until the state-court appeal and the subsequent administrative process were completed. While the instant case was brought by Morales in his individual capacity and not on behalf of other condemned inmates similarly situated, the Court always has understood, apparently incorrectly, that executions would not resume until it had an opportunity to review the new lethal-injection protocol in the context of the evidentiary record developed during the 2006 proceedings.

The new lethal-injection protocol, which now is a formal regulation, Cal. Code Regs. tit. 15, §§ 3349, et seq., became effective on August 29, 2010. On August 30, 2010, at the request of that county's district attorney, the Riverside Superior Court scheduled Brown's execution for September 29, 2010. On August 31, 2010, the Marin Superior Court granted a motion to enforce its earlier injunction, thereby staying any execution, including Brown's, "unless and until this

---

[2]The deficiencies included inconsistent and unreliable screening of execution team members; a lack of meaningful training, supervision and oversight of the execution team; inconsistent and unreliable record-keeping; improper mixing, preparation and administration of sodium thiopental by the execution team; and inadequate lighting, overcrowded conditions, and poorly designed facilities in which the execution team must work. *Morales v. Tilton*, 465 F. Supp. 2d at 979-80.

1  court dissolves the permanent injunction issued by this court in its final judgment." Defendants
2  sought appellate review, and on September 20, 2010, the California Court of Appeal issued a
3  peremptory writ of mandate directing the lower court to dissolve the injunction. *Cal. Dep't of*
4  *Corr. & Rehab. v. Super. Ct.*, No. A129540 (Cal. Ct. App., Sept. 20, 2010). Brown filed the
5  instant motions on September 15, 2010, while Defendants' writ petition was pending, and this
6  Court heard oral argument on September 21, 2010.

7      During the lengthy hiatus in these federal proceedings, the United States Supreme Court
8  decided *Baze v. Rees*, 553 U.S. 35 (2008), holding that Kentucky's lethal-injection protocol,
9  which uses the same three drugs as California's, did not violate the Eighth Amendment. The
10 plurality opinion by Chief Justice Roberts stated that in a case involving an Eighth Amendment
11 challenge to a lethal-injection protocol, a federal court may not stay an execution "unless the
12 condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated
13 risk of severe pain." *Id.* at 61 (plurality op.). Finding that "[t]here were no reported problems"
14 during the one lethal-injection execution actually carried out in Kentucky, *id.,* at 46 (plurality
15 op.), the plurality concluded that the petitioners had "not carried their burden of showing that the
16 risk of pain... constituted cruel and unusual punishment," *id*. at 41 (plurality op.).

17     The requirement that an inmate seeking stay of execution show "a demonstrated risk of
18 severe pain" superseded the lesser showing ("an unnecessary risk of unconstitutional pain") that
19 had been articulated by the Ninth Circuit in *Cooper*, 379 F. 3d at 1033, and that was binding on
20 this Court at the time that Morales filed the instant action in 2006 and until *Baze* was decided.
21 At the same time, while it rejected the petitioners' argument that Kentucky was constitutionally
22 required to adopt a single-drug method of execution, which at that point had not been tested in
23 any state, the *Baze* plurality did note the relevance of "known and available alternatives" to a
24 lethal-injection protocol in a case in which a substantial risk of a constitutional violation has been
25 shown. In the words of the Chief Justice,

26         To qualify, the alternative procedure must be feasible, readily implemented,
        and in fact significantly reduce a substantial risk of severe pain. If a State
27         refuses to adopt such an alternative in the face of these documented advantages,
        without a legitimate penological justification for adhering to its current method
28         of execution, then a State's refusal to change its method can be viewed as "cruel

and unusual" under the Eighth Amendment.

553 U.S. at 52 (plurality op.) Since *Baze* was decided, two states–Ohio and Washington–have carried out a total of nine successful and problem-free executions using only sodium thiopental.

## II. DISCUSSION

### A. Abstention

Federal courts ordinarily should abstain from the exercise of jurisdiction "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813-14 (1976) (internal quotation marks and citations omitted). In the instant case, Brown is one of several condemned inmates who have challenged California's new lethal-injection regulations in the Marin Superior Court on the basis that the regulations were not adopted properly under California's Administrative Procedures Act. At oral argument, counsel for Brown represented that they intended to seek injunctive relief that would permit the state court to consider the merits of this challenge prior to any executions taking place. Such relief would render moot Brown's motion for a stay of execution by this Court.

Apparently, the state court will not consider Brown's request until Monday, September 27, 2010.[3] Because Brown's execution is set for midnight on Wednesday, September 29, 2010, a decision by this Court to defer its ruling until after the state court has acted likely would frustrate the parties' ability to obtain meaningful appellate review of this Court's ruling. Accordingly, the Court concludes that abstention is not warranted. In deference to the state court, this Court has not considered and does not address Brown's state-law claims.

### B. Timeliness

The Supreme Court has held that in determining the appropriateness of issuing a stay of execution,

> a district court must consider not only the likelihood of success on the merits and

---

[3] Brown made a previous, unsuccessful request for injunctive relief in the state court, but at that time the now-vacated injunction in the earlier APA litigation was still in place, and it does not appear that the state court addressed the merits of Brown's claims.
5

Case Nos. C 06 219 JF HRL & C 06 926 JF HRL
ORDER GRANTING MOTION FOR LEAVE TO INTERVENE; AND DENYING CONDITIONALLY INTERVENOR'S MOTION FOR A STAY OF EXECUTION

> relative harm to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim. Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.

*Nelson v. Campbell*, 541 U.S. 637, 649050 (2004). Brown filed the instant motions on September 15, 2010, only two weeks before his execution date. Because of the need for at least minimal briefing, oral argument did not occur until September 21, 2010, only eight days before the scheduled execution. Under ordinary circumstances, Brown's motions clearly would be untimely. *See,* e.g., *Cooper*, 379 F.3d at 1031.

However, the circumstances in this case are anything but ordinary. Until September 20, 2010 an injunction was in place that prohibited, pending state-court review, any executions under California's new lethal-injection regulations. While that injunction since has been vacated, no authority cited by Defendants holds that Brown was required to predict how the state appellate court would rule or to seek "back-up" relief from this Court or in other state-court litigation. Brown's counsel also claim that they relied on assurances by Defendants' counsel that Defendants would not seek to resume executions while the instant federal case was pending.[4] Although arguably Brown could have filed his motions as a protective measure some weeks earlier (that is, on or shortly after August 30, 2010, when his execution date was set), it is Defendants who seek an execution date that effectively precludes an orderly review of the new regulations in either state or federal courts, and Defendants thus bear at least some responsibility for the fact that the Court now must address constitutional issues in a severely limited time frame. Significantly, while the Court must address the timeliness of Brown's motions *sua sponte*

---

[4] Defendants' counsel dispute this claim. They acknowledge stating to this Court in 2006 that no executions would be scheduled during the period immediately preceding and following the evidentiary hearing because there were no condemned inmates whose cases had progressed to the point where that was a legal possibility, but they deny making any subsequent representations to counsel that executions would not be scheduled until after this Court has considered the new lethal-injection regulations. After hearing from all counsel at a telephonic hearing earlier today, the Court is not persuaded that Defendants' counsel made any representation that would affect the analysis or disposition of the instant motions. Although the Court itself was surprised by Defendants' decision to seek an execution date for Brown when they did, that decision is not inconsistent with anything communicated to the Court by Defendants' legal representatives.

6

Case Nos. C 06 219 JF HRL & C 06 926 JF HRL
ORDER GRANTING MOTION FOR LEAVE TO INTERVENE; AND DENYING CONDITIONALLY
INTERVENOR'S MOTION FOR A STAY OF EXECUTION

in determining the appropriateness of equitable relief, Defendants themselves did not contend in their briefing that Brown has not been diligent in seeking federal relief.

**C. Merits**

Brown contends that because California's new lethal-injection regulations are a direct response to this Court's earlier factual findings, no executions should take place unless and until the Court has had the opportunity to conduct a full review of the regulations. Brown also claims that the regulations have failed to address many of the deficiencies identified by the Court, particularly with regard to selection and training of the execution team.

Defendants argue that Brown has not made the showing required by *Baze*, that is, that the new regulations create "a demonstrated risk of severe pain." *Id.*, at p. 61 (plurality op.) They point out that the regulations were subjected to months of public and administrative scrutiny, and that they have built a new execution facility that remedies specifically a number of the deficiencies in the old facility that were identified by the Court. They also observe that the Kentucky lethal-injection protocol that passed constitutional muster in *Baze* in some respects had fewer safeguards even than O.P. 770, *Cf. Baze*, 553 U.S. at 120-21 (Ginsburg, J., dissenting), which they contend has been improved significantly under the new regulations.

In considering these arguments, this Court hardly is writing on a clean slate. Indeed, it is fair to say that there is no case involving an Eighth Amendment challenge to a lethal-injection protocol in which the factual record is as developed as is the record here. As noted earlier, there had been only one execution under the Kentucky protocol considered by the Supreme Court in *Baze*, and the plurality opinion noted specifically that there had been "no reported problems" with that execution. *Id.*, at p.46 (plurality op.) Similarly, in a post-*Baze* decision affirming the denial of relief by the district court in Delaware, the Third Circuit found that the plaintiffs "ha[d] submitted no evidence" and thus "on this record" concluded that they had "failed to show that Delaware's lethal injection protocol violates the Eighth Amendment under *Baze*." *Jackson v. Danberg*, 594 F.3d 210, 229 (3rd Cir. 2010).

In contrast, the record in this case, much of which was stipulated to by Defendants, shows that there may have been problems with as many as seven of the eleven lethal-injection

7

executions carried out under O.P. 770. Defendants' own medical expert expressed concern that at least one inmate well may have been awake when he was injected with the second and third drugs in the lethal-injection cocktail. *Morales v. Tilton*, 465 F. Supp. 2d at 980. After considering four days of testimony and hundreds of pages of documentary evidence, the Court found that O.P. 770 as implemented in practice "lack[ed] both reliability and transparency." *Id.*, at p. 981. Although the Court framed its factual findings and legal conclusions under the legal standard then applicable in the Ninth Circuit, *cf., Cooper*, 379 F.2d at 1033, it likely would have made the same findings and reached the same conclusions under the "demonstrated risk" standard announced in *Baze*.

The question remains whether Brown is entitled to a stay of execution. As discussed above, Morales's own request for a stay of execution, which involved the lesser showing then required under *Cooper*, was conditionally denied, and Morales was not executed only because the conditions were not met. As the Court recognized in its order concerning Morales, California has a "strong interest in proceeding with its judgment," *Gomez v. U.S. Dist. Ct. N.D. Cal.*, 503 U.S. 653, 654 (1992). While Brown is correct that the development of the record after Morales's execution was stayed produced even stronger evidence of problems with O.P. 770, O.P. 770 no longer is operative, and Defendants reasonably point both to their extensive efforts to address the Court's concerns in the new regulations and facilities and the higher threshold for obtaining stays of execution established by the Supreme Court in *Baze*.

Although it has adopted an accelerated case management schedule for resolution of Morales's claims in light of the new regulations, there is no way that the Court can engage in a thorough analysis of the relevant factual and legal issues in the days remaining before Brown's execution date. The regulations have been more than three years in the making, and the Court would have preferred strongly to address any constitutional issues with respect to the regulations in a more orderly fashion. Nonetheless, the Court recognizes that there was no legal impediment to the setting of Brown's execution date, and that absent a *presently-existing* "demonstrated risk" of a constitutional violation, Defendants are entitled to proceed with the execution.

8

Case Nos. C 06 219 JF HRL & C 06 926 JF HRL
ORDER GRANTING MOTION FOR LEAVE TO INTERVENE; AND DENYING CONDITIONALLY
INTERVENOR'S MOTION FOR A STAY OF EXECUTION

Based on the foregoing discussion, the Court concludes that Brown has no greater entitlement to equitable relief than Morales did in February 2006. As relevant here, the Court concluded that Morales was not entitled to an outright stay of execution, but that it was appropriate that certain conditions be imposed that insured that Morales would not endure an unconstitutional degree of pain and suffering. *Morales v. Hickman*, 415 F. Supp. 2d at 1047. One of the alternatives offered to Defendants was to execute Morales using only sodium thiopental. For reasons not relevant here, Defendants did not seek to proceed with that alternative until hours before Morales's death warrant was to expire, and at that point no clear procedure had been articulated for carrying out a single-drug execution.

In an effort to avoid repeating that situation, the Court asked Defendants at oral argument on the instant motions to indicate what variation from the current regulations, if any, would be necessary to carry out Brown's execution using only sodium thiopental, and how much advance notice Defendants would require to implement such a variation. Defendants responded to the Court's questions on September 22, 2010, and Brown filed a response on September 23, 2010. Drawing upon its familiarity with and understanding of the record, the Court is satisfied that the procedure described in Defendants' submission is sufficient to eliminate any "demonstrated risk" of a constitutional violation. The fact that nine single-drug executions have been carried out in Ohio and Washington without any apparent difficulty is undisputed and significant.

Defendants reasonably are concerned that having been required by the state courts to promulgate the current lethal-injection protocol as formal regulations, any variation from the regulations would be problematic. The Court is satisfied that it can address this concern by allowing Brown himself to choose whether the second and third drugs in the protocol will be withheld. Allowing a condemned inmate to make such a choice is consistent with Ninth Circuit authority in cases arising both in California and elsewhere. *Fierro v. Gomez*, 77 F.3d 301 (9th Cir. 1996), *vacated on other grounds sub nom. Gomez v. Fierro*, 519 U.S. 918 (election between

Case Nos. C 06 219 JF HRL & C 06 926 JF HRL
ORDER GRANTING MOTION FOR LEAVE TO INTERVENE; AND DENYING CONDITIONALLY
INTERVENOR'S MOTION FOR A STAY OF EXECUTION

lethal injection and lethal gas in California); *Campbell v. Wood*, 18 F.3d 662 (9th Cir. 1994) (election between lethal injection and hanging in Washington).[5]

The Court is constrained to point out once again that the instant litigation is not about the wisdom or morality of the death penalty or the tragic suffering of the families and loved ones of those who commit capital crimes. The passions that surround these issues are deep and entirely understandable, but they have little to do with the limited legal question presented here, which is whether under the United States Constitution as interpreted by the United States Supreme Court, Albert Greenwood Brown is entitled to a stay of execution. The Court is painfully aware that however it decides a case of this nature, there will be many who disagree profoundly with its decision. The moral and political debate about capital punishment will continue, as it should.

### III.  DISPOSITION

Good cause therefor appearing,

1. The motion for leave to intervene is granted;

2. The motion for a stay of execution is denied, subject to the following conditions:

    a. Not later than 6:00pm on Saturday, September 25, 2010, Brown shall advise Defendants through counsel whether he elects to be executed by the injection of all of the drugs specified in Cal. Code Regs. tit. 15, §§ 3349, et seq., or by the

---

[5] *See also* Ala. Code 1975 § 15-18-82 (Alabama)(lethal injection but prisoner may elect electrocution) A.C.A. § 5-4-617 (Arkansas)(lethal injection; if offense committed before certain date, lethal injection but prisoner may elect electrocution); F.S.A. § 922.10 (West) (Florida)(lethal injection but prisoner may elect electrocution); KRS § 431.220 (Kentucky)(lethal injection; if offense committed before certain date, lethal injection but prisoner may elect electrocution); Code 1976 § 24-3-530 (South Carolina)(lethal injection but prisoner may elect electrocution;T. C. A. § 40-23-114 (Tennessee)(lethal injection but prisoner may elect electrocution); Va. Code Ann. § 53.1-234 (Virginia)(lethal injection but prisoner may elect electrocution); Ariz. Const. art. XXII § 22 (Arizona) (lethal injection; if offense committed before certain date, lethal injection but prisoner may elect lethal gas)**;** Cal. Penal Code § 3604 (California)(lethal injection but prisoner may elect gas); V.A.M.S. 546.720 (Missouri)(unclear who makes election); N.H. Rev. Stat. § 630:5 (New Hampshire)(lethal injection but state may elect hanging); RCWA 10.95.180 (West) (Washington)(lethal injection or hanging); U.C.A. 1953 § 77-18-5.5 (Utah)(lethal injection; if offense committed before certain date, lethal injection but prisoner may elect firing squad).

injection of sodium thiopental only.  Such election shall not be deemed to be a waiver of Brown's right to appeal from this order or any part of it, but it shall be deemed consent for Defendants to vary from the regulations as described in Defendants' submission dated September 23, 2010, in the event that this order is not vacated or modified on appeal;

b.  If Brown timely elects to be executed by the injection of sodium thiopental only, Defendants shall carry out the execution in accordance with Cal. Code Regs. tit. 15, §§ 3349, et seq, except that they shall do so using sodium thiopental only and in the quantity and in the manner described in their submission dated September 23, 2010;

c.  If Brown timely elects to be executed by the injection of sodium thiopental only, and if for any reason Defendants decline to proceed in accordance with that election, a stay of execution shall issue without further order. To permit orderly appellate review, Defendants shall advise Brown's counsel and the Court of any such declination not later than 12:00pm on Monday, September 27, 2010;

d.  If Brown does not timely elect to be executed by the injection of sodium thiopental only, Defendants may carry out the execution in accordance with  Cal. Code Regs. tit. 15, §§ 3349, et seq.

IT IS SO ORDERED.


DATED: September 24, 2010

_____
JEREMY FOGEL
United States District Judge