1  EDMUND G. BROWN JR.
   Attorney General of California
2  ROCHELLE C. EAST
   Senior Assistant Attorney General
3  RONALD S. MATTHIAS
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  MICHAEL J. QUINN
   Deputy Attorney General
6  State Bar No. 209542
    455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA  94102-7004
    Telephone:  (415) 703-5726
8   Fax:  (415) 703-5843
    E-mail:  Michael.Quinn@doj.ca.gov
9  *Attorneys for Defendants Schwarzenegger, Cate and Cullen*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **MICHAEL ANGELO MORALES and ALBERT GREENWOOD BROWN,**<br><br>Plaintiffs,<br><br>v.<br><br>**MATTHEW CATE, Secretary, et al.,**<br><br>Defendants. | C 06-0219 JF<br><br>**DEFENDANTS' BRIEFING FOLLOWING REMAND** |

In a published order issued last night, the Ninth Circuit remanded the matter to this Court

> to determine whether, under *Baze* [*v. Rees*, 553 U.S. 35 (2008)], Brown is entitled to a stay of execution as it would be conducted under the three-drug protocol now in effect. Specifically, the court should address the similarity between the previous O.P. 770 and Cal. Code Regs. tit. 15 § 3349 et seq., as well as the court's statement that, with respect to the constitutionality of the State's previous execution protocol, "it likely would have made the same findings and reached the same conclusions under the 'demonstrated risk standard' adopted" by the three Justices in *Baze*. The district court should also consider the standards for a stay as articulated in *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004).

Remand Order, CA9 No. 10-99019, at 8-9.

Brown bears a "heavy burden" of showing that Cal. Code Regs. tit. 15, §§ 3349, et seq. (Exh. A) is "cruelly inhumane." *Baze v. Rees*, 553 U.S. 35, 53 (2008) (plurality op.) "A stay of execution *may not be granted*" in connection with such a claim unless Brown "establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. He must show that the risk is substantial when compared to the known and available alternatives. *A State with a lethal injection protocol substantially similar to [Kentucky's] would not create a risk that meets this standard*." *Id.* at 61 (emphasis added.)

At least until now, Brown has assiduously avoided comparing the Kentucky protocol approved in *Baze* with Cal. Code Regs. tit. 15, §§ 3349, et seq. This is so because Cal. Code Regs. tit. 15, §§ 3349, et seq. requires, among other things, confirmation that the inmate is unconscious before injection of pancuronium and potassium chloride can occur. This safeguard alone—while plainly not *essential* to establish that a protocol is constitutional—is *more than sufficient to assure it*. Compare

1

Defs.' Br. Foll. Remand (C 06-0219 JF)

*Baze*, 553 U.S. at 60 with *id*. at 120-121 (Ginsburg, J., dissenting).[1]

Justice Ginsburg, referring to an iteration of OP 770 that supplanted the version this Court examined in 2006, observed—with manifest approval—that "[i]n California, a member of the IV team brushes the inmate's eyelashes, speaks to him, and shakes him at the halfway point and, again, at the completion of the sodium thiopental injection.  See State of California, San Quentin Operational Procedure No. 0-770, Execution by Lethal Injection, § V(S)(4)(e) (2007), online at http:// www. cdcr. ca. gov/ News/ docs/ Revised Protocol. pdf."  That version of OP 770, in turn, has since been supplanted by Cal. Code Regs. tit. 15, §§ 3349, et seq., but, as noted, the formal regulations continue to incorporate the consciousness-check feature.  The version of OP 770 examined by this Court in 2006, of course, contained no consciousness check.

According to Brown himself, the only "showing" he offers in his effort to meet the *Baze* standard "is the *Morales* record."  Reply to Defendant's Opposition to Stay of Execution, CA9 No. 10-99019, at p. 6.  But "the *Morales* record" generated in 2006 is woefully inadequate to satisfy Brown's burden today under *Baze*.  To begin with, Brown faces a burden greater than that which was applied to Morales.  Doc. 401 at 4:17-20.  Moreover, the facility at which Brown will be executed is not the one this Court described in its 2006 *Morales* order.  Doc. 401 at 3:5.[2]  And perhaps of greatest significance, the

---

[1] Cal. Code Regs. tit. 15, §§ 3349, et seq. compares favorably with Kentucky's protocol in virtually every respect.  We have summarized this state of affairs in a chart, appended to this pleading as Exhibit B.  It demonstrates that the Regulations are *at least* "substantially similar" to the protocol upheld by the Supreme Court in *Baze*.

[2] The Court may tour the execution facility at San Quentin any time today or tomorrow by arrangement with the Warden.

2

Defs.' Br. Foll. Remand (C 06-0219 JF)

protocol examined in "the *Morales* record" is not the one set forth in Cal. Code Regs. tit. 15, §§ 3349, et seq. Doc. 401 at 16-17; see also *id*. at 8 ("[A]bsent a *presently-existing* 'demonstrated risk' of a constitutional violation, Defendants are entitled to proceed with the execution" (emphasis in original)).  Brown might hope to bluster that Cal. Code Regs. tit. 15, §§ 3349, et seq. and the version of OP 770 in effect in 2006 are "the same," but the contrary is plain.

As noted, Cal. Code Regs. tit. 15, §§ 3349, et seq.—unlike the 2006 version of OP 770—requires, among other things, confirmation that the inmate is unconscious before injection of pancuronium and potassium chloride can occur.  Under these circumstances, not only does "the *Morales* record" not support Brown's demand for a stay, it actually demonstrates why that request *must be denied*.  As Brown must concede, "assuming effective anesthesia, the use in executions of pancuronium bromide or potassium chloride as such does not violate the Eighth Amendment." Doc. 401 at 9:5-9.  Thus, any challenge to Cal. Code Regs. tit. 15, §§ 3349, et seq. will necessarily fail if the Regulations provide a constitutionally adequate assurance that inmates are rendered unconscious before they are injected with pancuronium bromide and potassium chloride.  The Regulations require injection of 3 grams of sodium thiopental.  This Court has concluded that "even one and one-half grams of sodium thiopental, *if properly administered*, are sufficient to eliminate any unconstitutional risk." Doc. 290 at 9:27-28 n. 6.  Because the consciousness-check feature confirms that sodium thiopental has been "properly administered," the Regulations plainly meet constitutional standards.

Nothing in "the Morales record" remotely undermines these straightforward facts.

3

Because Brown must show "a *presently-existing* 'demonstrated risk' of a constitutional violation" Doc. 401 at 8 (emphasis in original), he cannot content himself with rehashing historical shortcomings. *Raby v. Livingston,* 600 F.3d 552, 560-62 (5th Cir. 2010) (holding that *Baze* created a "safe harbor" for any protocol that is consistent with what was approved by the Supreme Court[3]; *State of Tennessee v. Jordon*, 2010 WL 3368513 (September 22, 2010); *Jackson v. Danberg*, 594 F.3d 210, 226-27 (3d Cir. 2010) ("Clearly, any blunder committed during Steckel's execution does not suffice to show a substantial risk of serious harm in future executions"); see also *Nooner v. Norris*, 594 F.3d 592, 602 (8th Cir. 2010) ("[E]ven if the ADC engaged in a 'series of abortive' execution attempts under previous protocols, the record does not establish a genuine issue of material fact about whether the Inmates will remain conscious during the injection of the pancuronium bromide and potassium chloride under the current protocol"). In short, whatever might have occurred during earlier executions carried out under now-defunct protocols—or, indeed, whatever, potential problems Brown might think plague the current Regulations—the latter's inclusion of provision for checking the inmate's consciousness alone adequately ensures that no problems of *constitutional* dimension will actually materialize.

There are, of course, many other differences between the version of OP 770 this Court examined in 2006 and the Regulations now in force. There being before the Court,

---

[3] As noted in *Raby*, "[t]he safe harbor established by *Baze* would hardly be safe if states following a substantially similar protocol nonetheless had to engage in prolonged litigation defending their method of lethal injection. Absent some intentional malevolence on the part of the state in its administration of an otherwise acceptable protocol, it would be almost impossible for condemned inmates to meet the high burden of establishing 'wanton exposure to objectively intolerable risk.'" 600 F.3d at 562.

4

however, no amended complaint from Brown identifying the features of Cal. Code Regs. tit. 15, §§ 3349, et seq. that he thinks undermine its constitutionality, Defendants' ability to refute Brown's attack is somewhat impaired. So, too, is the Court's ability to meaningfully assess the parties' respective prospects of prevailing on the merits. But the burden is on Brown, and it is a heavy one. And his failure to present Defendants and this Court with an amended complaint even at *this point*—two months after the Regulations were approved, and just days before his execution—speaks volumes about his true intentions. Doc. 290 at 15:23-24 n.13 ("Plaintiff's primary interest in the present litigation is not improving California's lethal-injection protocol but rather delaying or avoiding his own execution").[4]

Baze demonstrates that Brown's stay request must be denied for an additional reason. As the Supreme Court did in *Baze,* "[w]e begin with the principle, settled by *Gregg,* that capital punishment is constitutional. . . . It necessarily follows that there must be a means of carrying it out." *Baze*, 553 U.S. at 47. Thus, if Cal. Code Regs. tit. 15, §§ 3349, et seq. is constitutionally defective, it must mean that there is some alternative method *that is not*. Accordingly, *Baze* places the burden on Brown to identify an alternative that " effectively address[es] a 'substantial risk of serious harm.'" Further, "To

---

[4] "A stay is an equitable remedy, and '[e]quity must take into consideration the State's strong interest in proceeding with its judgment and . . . attempt[s] at manipulation.' . . . Thus, before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in *bringing the claim*. Given the State's significant interest in enforcing its criminal judgments, see *Blodgett,* 502 U. S., at 239; *McCleskey,* 499 U. S., at 491, there is a strong equitable presumption against the grant of a stay where *a claim could have been brought* at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson v. Campbell*, 541 U.S. 637, 649-650 (2004) (emphases added). To this day, Defendants are somewhat at loss to know what Brown's "claim" against *Cal. Code Regs. tit. 15, §§ 3349, et seq.* actually is.

5

Defs.' Br. Foll. Remand (C 06-0219 JF)

qualify, the alternative procedure must be feasible, readily implemented, and in fact significantly reduce a substantial risk of severe pain." *Id*. at 37. Brown has identified no such procedure. And while his refusal to do so might have been "understandable" back in 2006, Doc. 290 at 15:23-24 n.13, it no longer is, for that failure is now fatal to stating a prima facie case of constitutional deprivation.

Brown grudgingly acknowledges that identifying a compelling alternative is part of his burden, but resolutely refuses to take it on, merely forecasting that "[a] more complete and orderly review of the record will provide a multitude of examples of readily available execution procedures available to defendants." Reply to Defendant's Opposition to Stay of Execution, CA9 No. 10-99019, at p. 15. Brown's vague predictions do not entitle him to a stay.

To be sure, Brown vaguely hints that the qualifying alternative is, ironically, a single-dose of sodium thiopental. It is almost certainly true that a three-drug protocol and one-drug protocol each have desirable attributes that the other might not. E.g., *Baze*, 553 U.S. at 38 (referencing the state's legitimate interest in, among other things, "preserving the procedure's dignity"). But weighing and prioritizing these matters is a task for the state to undertake for itself, lest courts find themselves "transform[ed] into boards of inquiry charged with determining 'best practices' for executions, with each ruling supplanted by another round of litigation touting a new and improved methodology. Such an approach finds no support in our cases, would embroil the courts in ongoing scientific controversies beyond their expertise, and would substantially intrude on the role of state legislatures in implementing their execution procedures—a role that by all accounts the

6

Defs.' Br. Foll. Remand (C 06-0219 JF)

1  States have fulfilled with an earnest desire to provide for a progressively more humane

2  manner of death." *Id*. at 51.  "As this Court previously has noted, 'under the doctrines of

3  comity and separation of powers, the particulars of California's lethal-injection protocol

4  are and should remain the province of the State's executive branch." Doc. 290 at 14:6-8.

5  

6        Because Brown has failed to show, or even meaningfully allege, that Cal. Code

7  Regs. tit. 15, §§ 3349, et seq. creates a demonstrated risk of severe pain, his motion for

8  stay of execution must be denied.

Dated:  September 28, 2010

Respectfully Submitted,

EDMUND G. BROWN JR.
Attorney General of California
ROCHELLE C. EAST
Senior Assistant Attorney General
THOMAS S. PATTERSON
Supervising Deputy Attorney General

/s/ RONALD S. MATTHIAS

_____
RONALD S. MATTHIAS
Senior Assistant Attorney General
MICHAEL J. QUINN
Deputy Attorney General
*Attorneys for Defendants Schwarzenegger, Cate and Cullen*

SF2007200210

7

Defs.' Br. Foll. Remand (C 06-0219 JF)