# State of California
# Office of Administrative Law

In re:
**Department of Corrections and Rehabilitation**

**Regulatory Action:**

**Title 15, California Code of Regulations**

| | |
|---|---|
| Adopt sections: | 3349.1.1, 3349.1.2, 3349.1.3, 3349.1.4, 3349.2.1, 3349.2.2, 3349.2.3, 3349.2.4, 3349.3, 3349.3.1, 3349.3.2, 3349.3.3, 3349.3.4, 3349.3.5, 3349.3.6, 3349.3.7, 3349.4.1, 3349.4.2, 3349.4.3, 3349.4.4, 3349.4.5, 3349.4.6 |
| Amend sections: | 3349 |
| Repeal sections: | |

**NOTICE OF APPROVAL OF REGULATORY ACTION**

Government Code Section 11349.3

OAL File No.  2010-0706-02 SR

---

In this regulatory action, the California Department of Corrections and Rehabilitation amends and adopts regulations in Title 15 of the California Code of Regulations to establish the procedures for execution of death sentences by lethal injection at San Quentin State Prison.

OAL approves this regulatory action pursuant to section 11349.3 of the Government Code.  This regulatory action becomes effective on 8/29/2010.

Date:   7/30/2010

Susan  Lapsley
Director

Original:  Matthew  Cate
   Copy:  Randy  Marshall

STATE OF CALIFORNIA—OFFICE OF ADMINISTRATIVE LAW (See instructions on reverse) For use by Secretary of State only

NOTICE PUBLICATION/REGULATIONS SUBMISSION

| STD. 400 (REV. 01-09) | | | | |
|---|---|---|---|---|
| OAL FILE NUMBERS | NOTICE FILE NUMBER Z- 2009-0417-01 | REGULATORY ACTION NUMBER 2010-0706-02SR | EMERGENCY NUMBER | ENDORSED FILED IN THE OFFICE OF |

For use by Office of Administrative Law (OAL) only

2010 JUL -6 PM 3: 13

OFFICE OF
ADMINISTRATIVE LAW

2010 JUL 30 PM 3: 34

Debra Bowen
DEBRA BOWEN
SECRETARY OF STATE

| NOTICE | REGULATIONS | |
|---|---|---|

| AGENCY WITH RULEMAKING AUTHORITY California Department of Corrections and Rehabilitation | AGENCY FILE NUMBER (If any) 08-0069 |
|---|---|

## PUBLICATION OF NOTICE (Complete for publication in Notice Register)

| SUBJECT OF NOTICE | TITLE(S) | FIRST SECTION AFFECTED | 2. REQUESTED PUBLICATION DATE |
|---|---|---|---|
| NOTICE TYPE ☐ Notice re Proposed Regulatory Action ☐ Other | 4. AGENCY CONTACT PERSON | TELEPHONE NUMBER | FAX NUMBER (Optional) |

| OAL USE ONLY | ACTION ON PROPOSED NOTICE | | | | NOTICE REGISTER NUMBER 2009#18Z | PUBLICATION DATE 5/1/2009 |
|---|---|---|---|---|---|---|
| | ☐ Approved as Submitted | ☐ Approved as Modified | | ☐ Disapproved/ Withdrawn | | |

## SUBMISSION OF REGULATIONS (Complete when submitting regulations)

| 1a. SUBJECT OF REGULATION(S) Lethal Injection Process | 1b. ALL PREVIOUS RELATED OAL REGULATORY ACTION NUMBER(S) 2010-0429-04 S |
|---|---|

| SPECIFY CALIFORNIA CODE OF REGULATIONS TITLE(S) AND SECTION(S) (Including title 26, if toxics related) | | |
|---|---|---|
| SECTION(S) AFFECTED (List all section number(s) individually. Attach additional sheet if needed.) | SECTION(S) See Form 400 Attachment | |
| | AMEND 3349 | |
| TITLE(S) 15 | REPEAL | |

| TYPE OF FILING | | | |
|---|---|---|---|
| ☐ Regular Rulemaking (Gov. Code §11346) | ☐ Certificate of Compliance: The agency officer named below certifies that this agency complied with the provisions of Gov. Code §§11346.2-11347.3 either before the emergency regulation was adopted or within the time period required by statute. | ☐ Emergency Readopt (Gov. Code, §11346.1(h)) | ☐ Changes Without Regulatory Effect (Cal. Code Regs., title 1, §100) |
| ☒ Resubmittal of disapproved or withdrawn nonemergency filing (Gov. Code §§11349.3, 11349.4) | | ☐ File & Print | ☐ Print Only |
| ☐ Emergency (Gov. Code, 11346.1(b)) | ☐ Resubmittal of disapproved or withdrawn emergency filing (Gov. Code, §11346.1) | ☐ Other (Specify) | |

| ALL BEGINNING AND ENDING DATES OF AVAILABILITY OF MODIFIED REGULATIONS AND/OR MATERIAL ADDED TO THE RULEMAKING FILE (Cal. Code Regs. title 1, §44 and Gov. Code §11347.1) January 4, 2010 - January 20, 2010; June 11, 2010 - June 25, 2010 |
|---|

| EFFECTIVE DATE OF CHANGES (Gov. Code, §§ 11343.4, 11346.1(d); Cal. Code Regs. title 1, §100) | | | |
|---|---|---|---|
| ☒ Effective 30th day after filing with Secretary of State | ☒ Effective on filing with Secretary of State | ☐ §100 Changes Without Regulatory Effect | ☐ Effective other (Specify) CT |

| CHECK IF THESE REGULATIONS REQUIRE NOTICE TO, OR REVIEW, CONSULTATION, APPROVAL OR CONCURRENCE BY, ANOTHER AGENCY OR ENTITY | | |
|---|---|---|
| ☐ Department of Finance (Form STD. 399) (SAM §6660) | ☐ Fair Political Practices Commission | ☐ State Fire Marshal |
| ☐ Other (Specify) | | |

| CONTACT PERSON Randy Marshall | TELEPHONE NUMBER (916) 255-5785 | FAX NUMBER (Optional) (916) 255-5601 | E-MAIL ADDRESS (Optional) Randall.marshall@cdcr.ca.gov |
|---|---|---|---|

I certify that the attached copy of the regulation(s) is a true and correct copy of the regulation(s) identified on this form, that the information specified on this form is true and correct, and that I am the head of the agency taking this action, or a designee of the head of the agency, and am authorized to make this certification.

For use by Office of Administrative Law (OAL) only

ENDORSED APPROVED

JUL 30 2010

Office of Administrative Law

| SIGNATURE OF AGENCY HEAD OR DESIGNEE | DATE 7/6/10 |
|---|---|
| TYPED NAME AND TITLE OF SIGNATORY BRETT H. MORGAN, Chief of Staff | |

# FORM 400, ATTACHMENT

**Subject: Title 15, Division 3, Subchapter 4, Lethal Injection Process**

**Adopts sections**:  3349.1.1, 3349.1.2, 3349.1.3, 3349.1.4, 3349.2.1, 3349.2.2, 3349.2.3, 3349.2.4, 3349.3, 3349.3.1, 3349.3.2, 3349.3.3, 3349.3.4, 3349.3.5, 3349.3.6, 3349.3.7, 3349.4.1, 3349.4.2, 3349.4.3, 3349.4.4, 3349.4.5, and 3349.4.6.

**TEXT OF PROPOSED REGULATIONS**

In the following, <u>underline</u> indicates additional added text, and ~~strikethrough~~ indicates deleted text.

**Subchapter 4. GENERAL INSTITUTION REGULATIONS**

**Title to Article 7.5 is amended to read:**

**Article 7.5. ~~Execution~~ <u>Administration</u> of Death Penalty**

**Section 3349 is amended to read:**

**3349. Method of Execution.**
(a) Inmates sentenced to death shall have the opportunity to <u>choose</u> ~~elect~~ to have the punishment imposed by lethal gas or lethal injection. Upon being served with the warrant of execution, the inmate shall be served with <u>California Department of Corrections and Rehabilitation</u> (CDC<u>R</u>) Form 1801-B (4/98 <u>Rev. 06/10</u>), Service of Execution Warrant, Warden's Initial Interview<u>, which is incorporated by reference</u>. The completed CDC<u>R</u> Form 1801-B shall be transmitted to the ~~warden~~ <u>Warden</u>.

(b) The inmate shall be notified of the opportunity for such <u>choice</u> ~~selection~~ and that, if the inmate does not choose either lethal gas or lethal injection within ten days after being served with the execution warrant, the penalty of death shall be imposed by lethal injection. The inmate's attestation to this service and notification shall be made in writing and witness~~es~~<u>ed</u> utilizing the CDC<u>R</u> Form 1801 (Rev. 4/98 <u>01/09</u>), Notification of Execution Date and Choice of Execution Method<u>, which is incorporated by reference</u>. The completed CDC<u>R</u> Form 1801 shall be transmitted to the ~~w~~<u>W</u>arden.

(c) The inmate's <u>choice</u> ~~selection~~ shall be made in writing and witnessed utilizing the CDC<u>R</u> Form 1801-A (Rev. 4/98 <u>01/09</u>), Choice of Execution Method<u>, which is incorporated by reference</u>. The completed CDC<u>R</u> Form 1801-A shall be transmitted to the ~~w~~<u>W</u>arden.

(d) The inmate's <u>choice</u> ~~selection~~ shall be irrevocable, with the exception that, if the inmate sentenced to death is not executed on the date set for execution and a new execution date is subsequently set, the <u>inmate</u> ~~person~~ again shall have the opportunity to <u>choose</u> ~~elect~~ to have the punishment imposed by lethal gas or lethal injection, according to the procedures set forth in <u>sub</u>sections (a), (b), and (c) <u>of this section</u>.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections <u>190, 3603,</u> 3604, <u>and 5054,</u> Penal Code.

***NOTICE TO PRINTER: DELETE PICTURES OF REVISED 4/98 COPIES OF CDC FORMS 1801, 1801-A, AND 1801-B.***

**New Section 3349.1.1 is adopted to read:**

**<u>3349.1.1. Definitions</u>**

<u>For the purpose of Subchapter 4, Article 7.5, the following definitions shall apply:</u>

<u>(a) *Adjustment Center* means one of four housing units at San Quentin State Prison that houses condemned inmates who are placed under administrative segregation based on their custodial behavior, notoriety and/or protective needs.</u>

(b)  *Alienists* means the physicians who treat mental disorders and who specialize in related legal matters.

(c)  *Assistant Secretary* means one of several executive positions within the Department of Corrections and Rehabilitation.

(d)  *Assistant Team Leader* means the individual who is the second line supervisor of the Lethal Injection Team.

(e)  *Associate Warden-Specialized Housing Division* is the designated Correctional Administrator of the East Block Adjustment Center, North Segregation and Administrative Segregation units at San Quentin who reports to the Warden.

(f)  *Case Records Manager* means the individual responsible for all inmate files at San Quentin.

(g)  *Chaplain* means an individual duly designated by a religious denomination to discharge specified religious duties, including a Native American Indian spiritual leader.

(h)  *Correctional Food Manager* means the individual manager responsible for all food service within San Quentin State Prison.

(i)  *Crisis Response Team Commander* means the individual who supervises and coordinates all security for San Quentin on the day of the execution.

(j)  *East Block* means one of four housing units at San Quentin State Prison that houses condemned inmates.

(k)  *East Gate* means the east entrance into San Quentin State Prison.

(*l*)  *Emergency Operations Center* means the command post established within San Quentin State Prison by the Chief Deputy Warden.

(m)  *Facility Captain* means the custodial manager assigned to the specialized housing division.

(n)  *Infusion Control Room* means the space allocated to accommodate the Infusion Sub-Team, designated members of the Intravenous Sub-Team, the Security Sub-Team and the chemical mixing area.

(o)  *Infusion Sub-Team* means the Lethal Injection Team Members who are responsible for receiving the chemicals, mixing the chemicals, drawing the chemicals into syringes, labeling and color coding the syringes and infusing the Lethal Injection Chemicals.

(p)  *Intravenous Sub-Team* means the Lethal Injection Team Members who are responsible for placing electronic monitoring sensors, inserting the intravenous catheters, performing a consciousness check, monitoring the intravenous lines, and crimping and uncoupling the intravenous lines.

(q)  *Lethal Injection Chemicals* means the three chemicals used to perform an execution, Sodium Thiopental, Pancuronium Bromide and Potassium Chloride.

(r)  *Lethal Injection Facility* means the dedicated structure consisting of three witness viewing rooms, one holding cell, an Infusion Control Room, Security Sub-Team areas, restrooms and Lethal Injection Room.

(s) *Lethal Injection Facility Holding Area* means the cell and associated area where the inmate is held prior to an execution.

(t)  *Lethal Injection Room* means the room where the inmate is executed.

(u)   *Lethal Injection Team* means the individuals that comprise the four sub-teams described in this article.

(v)  *Main Control Room* means the area where the key control is maintained at San Quentin.

(w)   *Master Execution File* means the permanent record of all documents related to an execution that is maintained in the Warden's office complex.

(x)  *North Segregation* means one of four housing units at San Quentin State Prison that houses condemned inmates.

(y)  *Official Witness* means any member of the public selected by the Warden to be present at the execution.

(z)  *Personnel Assignment Officer* means the Lieutenant who is in charge of assigning correctional staff to individual duty positions within San Quentin.

(aa)  *Public Information Officer* means the San Quentin staff member responsible for responding to media inquiries.

(bb)   *Record Keeping Sub-Team* means the Lethal Injection Team members who are responsible for documenting each element of the lethal injection process and for assembling all documents pertaining to the lethal injection process for inclusion in the Master Execution File.

(cc)  *Selection Panel* means the Warden, the Associate Director-Reception Centers, the Team Administrator, and the Team Leader.

(dd)  *Security Sub-Team* means the Lethal Injection Team members who are responsible for ensuring the security of the Lethal Injection Facility, providing direct constant supervision of the inmate in the final hours prior to an execution, and restraining and escorting the inmate to the execution room.

(ee)  *Security Team Area* means a location in the Lethal Injection Facility consisting of an observation post near the holding cell, a search area, a preparation area and a staff restroom.

(ff) *Special Visiting Team* means custody staff who are available to facilitate visiting.

(gg)  *Spiritual Advisor* means a person who, by profession or practice, provides spiritual advice, assistance, or guidance.

(hh)  *Team Administrator* means the Associate Warden who is responsible for providing managerial oversight and supervision of the Lethal Injection Team's training, preparation and performance during an execution.

(ii)  *Team Leader* means the Lethal Injection Team member who is responsible for providing direct supervision of the Lethal Injection Team during training, preparation, and the implementation of the lethal injection procedure.

(jj)  *Visiting Lieutenant* means the officer assigned to oversee inmate visiting at the institution.

(kk)  *Warden* means the Warden of San Quentin State Prison.

(ll)  *West Gate* means the west entrance into San Quentin State Prison (main entrance).

(mm)  *Witness Areas* means the three separate viewing rooms for the official witnesses, media and all other witnesses to an execution.

NOTE: Authority cited: Section 5058, Penal Code.  Reference: Sections, 190, 3600, 3601, 3602, 3603, 3605, 3607, 3700, 3700.5, 3701, 3702, 3703, 3704 and 5054, Penal Code; *Baze v. Rees* (2008) 553 U.S. 35.

**New Section 3349.1.2 is adopted to read:**

**3349.1.2. Selection, Recruitment and Annual Review of Lethal Injection Team Members.**

(a)  Recruitment and Selection Process.

(1)  With the assistance of the Director, Division of Adult Institutions (DAI), the Warden shall coordinate the recruitment and selection of Lethal Injection Team members from employees of San Quentin.  The Lethal Injection Team shall consist of a minimum of 20 members, including the Team Leader who shall serve at the pleasure of the Warden.  The total number of Lethal Injection Team members shall be determined by the Warden. Names of the members of the Lethal Injection Team shall remain confidential.

(2)  Any vacancy of the Team Leader position shall be filled prior to the recruitment and selection of any other vacant team positions.  The Warden shall also select an Associate Warden to serve as the Team Administrator.  The Team Administrator is not a member of the Lethal Injection Team, but the factors set forth in subsections (b)(2) and (3) and (e)(1)-(7) shall apply.  The Warden shall coordinate the recruitment and selection of potential candidates.  The Warden, with the DAI's assistance, shall hold interviews of prospective candidates.

(3)  In the event the Warden is unable to recruit and select a sufficient number of qualified Lethal Injection Team members from employees at San Quentin, the Warden shall contact the Director, DAI to coordinate the identification of additional potential candidates for team membership from other CDCR locations or outside of CDCR.  Source locations for prospective team members shall be selected as determined appropriate by the Director, DAI.

(4)  The hiring authorities from locations designated by the Warden shall select prospective team members from personnel assigned to their respective areas of responsibility consistent with the selection process established in this article.  The hiring authorities shall forward the names and classifications of prospective team members to the Director, DAI.

(A)  A Selection Panel comprised of the Warden, Associate Director-Reception Centers, the Team Administrator, and the Team Leader (Selection Panel) shall review qualifications, interview prospective candidates, and select the Lethal Injection Team members.  The Warden shall chair the Selection Panel and be responsible for the selection of Lethal Injection Team members consistent with the criteria established in this article.  After the Selection Panel selects the lethal injection team members, the Team Leader shall assign each member to a sub-team.

(B)  If necessary, the Warden may contract with medical personnel to be members of the Lethal Injection Team, or to serve as the physician attending the execution.

(b)  Screening of Lethal Injection Team Candidates.

(1)  The Selection Panel shall screen all candidates to ensure that each candidate meets the criteria established for either that of the Team Leader or for membership on one of the four designated sub-teams as set forth in (e) and (f) below.

(2)  The Selection Panel screening process shall include:

(A)  Review of all the available candidate's performance evaluations.

(B)  Review of the candidate's personnel, supervisory, and training files.

(C)  Review of the candidate's current Criminal Investigation and Information (CI&I) Report from the California Department of Justice.

(3)  As part of the screening process, the Selection Panel shall interview each candidate to determine the following:

(A)  Personal history and background.

(B)  Professional experience, including, but not limited to, the following:

1. Professional experiences that would aid the candidate in performing this duty.

2. Professional characteristics which made this individual a candidate for membership on the team.

(c)  The Selection Panel shall identify and maintain a list of pre-qualified employees that meet the criteria for membership on the Lethal Injection Team.  The Director, DAI shall ensure that a minimum number of 10 qualified employees will be maintained.  It is the responsibility of the Warden to notify the Director, DAI of the necessity to fill vacancies.

(d)  When appointing a person to fill a vacant position from the list of screened candidates, the Selection Panel shall review the person's background, qualifications and work performance to determine whether that person meets the required criteria, as described in subsections 3349.1.2(e) and (f), even if that person has previously been screened by the Selection Panel.

(e)  Criteria for Lethal Injection Team membership.  Each team member shall be selected based on their qualifications and expertise to effectively carry out the duties in one of the specialized functions. The following criteria shall be utilized in the selection of all Lethal Injection Team members:

(1)  Demonstrated professional job performance and demeanor.

(2) Good attendance record.

(3) No prior stress claims.

(4)  No corrective action in the past three years.

(5) No sustained adverse action as reflected in the CDCR and State Personnel Board records and as substantiated by the candidate.

(6)   The most recent annual permanent employee performance evaluation meets or exceeds expected standards.

(7)   Must not be on probation in the candidate's current classification.  This does not apply to promotions made subsequent to initial placement on the Lethal Injection Team.

(8)   Must agree that if selected to be a member of the Lethal Injection Team, they can no longer work or be assigned to any condemned housing unit, either full or part-time.  This includes any overtime.

(f)  In addition to the general selection criteria as described above in subsection 3349.1.2(e), each member in a specific Lethal Injection Team category, as follows, shall meet the following criteria:

(1)  The Team Leader must be a Correctional Lieutenant or Captain and have:

(A)  Five years of supervisory experience.

(B)  Proven ability to make sound decisions and effectively direct the actions of others.

(C)  Demonstrated proficiency in the transportation of inmates and the application of restraints.

(D)  Good physical condition.

(2)  The Assistant Team Leader must be a Sergeant or Lieutenant and have:

(A) Three years of supervisory experience.

(B)  Proven ability to make sound decisions and effectively direct the actions of others.

(C)  Demonstrated proficiency in the transportation of inmates and the application of restraints.

(D)  Good physical condition.

(3)  The Security Sub-Team members must be Correctional Officers or Sergeants and have:

(A)  Three years of line experience.

(B)  Proven ability to make sound decisions.

(C)  Demonstrated proficiency in the transportation of inmates and the application of restraints.

(D)  Good physical condition.

(4)   Intravenous Sub-Team members have no rank requirement, but shall:

(A)  Maintain current certification and license to insert intravenous catheters into peripheral veins.

(B)  Maintain a current certification and license for placement of the Electrocardiogram (ECG) leads used during the lethal injection process.

(C)  Demonstrate ability to insert an intravenous catheter or catheters into an appropriate vein or veins of an inmate.

(D)  Demonstrate ability to set up intravenous lines and intravenous drip.

(E)  Qualified in the appropriate placement of the ECG leads utilized during this process.

(F)  Regularly set up intravenous lines in the performance of their job duties, unrelated to their duties on the Lethal Injection Team.

(G)  Have a basic understanding of the effects of the three chemicals used in the lethal injection process.

(5)  Infusion Sub-Team members have no rank requirement, but shall:

(A)  Be able to follow the directions provided by the manufacturer in mixing the lethal injection chemicals.

(B)  Possess the organizational skills necessary to appropriately label and color code the chemicals used during the lethal injection process.

(6)  Record Keeping Sub-Team members have no rank requirement, but shall:

(A)  Understand the critical need to keep accurate records during the lethal injection process.

(B)  Demonstrate expertise in report writing and record keeping.

(g)  Annual Review. In order to ensure that the Lethal Injection Team members maintain their qualifications pursuant to the selection criteria, an annual compliance review shall be conducted by the Warden.  This shall be completed annually in the month of June.   This review shall include, but not be limited to, the following:

(1)  Review of the personnel, supervisory and training files.

(2)  Review of the most recent performance evaluation.

(3)  Review of the Criminal Investigation and Information (CI&I) Report from the California Department of Justice.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604 and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27.

**New Section 3349.1.3 is adopted to read:**

**3349.1.3.  Lethal Injection Team Duties.**

(a)  Duties performed by the Lethal Injection Team members may include, but not be limited to the following:

(1)  Security.

(2)  Intravenous Access.

(3)  Infusion of Lethal Injection Chemicals.

(4) Record keeping.

(b)   The Team Administrator shall ensure that the Lethal Injection Team is trained pursuant to section 3349.1.4 and prepared to carry out their specific duties.

(c)   The Team Leader shall assign each of the Lethal Injection Team members to one of the following Sub-Teams:

(1)  Security Sub-Team.  The Security Sub-Team shall perform the following tasks:

(A)  Ensure the security of the Lethal Injection Facility.

(B)   Provide direct and constant supervision of the inmate in the final six hours prior to the scheduled execution.

(C)   Place the inmate in appropriate restraints and escort the inmate into the execution room prior to the scheduled execution.

(2)  Intravenous Sub-Team.  The Intravenous Sub-Team shall perform the following tasks:

(A)  Assist in preparing the inmate by placing the electronic monitoring on the inmate prior to the scheduled execution.

(B)   Insert the intravenous catheters into appropriate veins in the inmate as set forth in section 3349.4.5.

(C)  Perform consciousness checks as specified in section 3349.4.5.

(D)  Monitor the intravenous lines to ensure patency of the lines as required by section 3349.4.5.

(E)  Crimp and uncouple the intravenous lines after the inmate has expired.

(3)  Infusion Sub-Team.  The Infusion Sub-Team shall perform the following tasks:

(A)  Receive the Lethal Injection Chemicals from the Team Administrator and Team Leader after removal from the Lethal Injection Facility safe/refrigerator prior to the scheduled execution.

(B)  Mix the Lethal Injection Chemicals in accordance with the manufacturer's instructions and draw the needed chemicals into the appropriate syringes.

(C)  Label and color code the syringes.

(D)  Infuse the Lethal Injection Chemicals in accordance with this article.

(4)  Record Keeping Sub-Team.

(A) One member of the Record Keeping Sub-Team shall be assigned to, and keep records for, each of the following sub-teams:

1. Security Sub-Team.

2. Intravenous Sub-Team.

3. Infusion Sub-Team.

(B) One member of the Record Keeping Sub-Team shall be assigned to the Team Administrator and to the Team Leader to keep records for both.

(C) The Record Keeping Sub-Team shall perform the following tasks and shall document each element of the Lethal Injection process:

1. The Record Keeping Sub-Team member assigned to the Infusion Sub-Team shall complete the CDCR Form 2177 (01/09), San Quentin State Prison Execution Log Lethal Injection Infusion Sub-Team, which is incorporated by reference.

2. The Record Keeping Sub-Team member assigned to the Intravenous Sub-Team shall complete the CDCR Form 2179 (01/09), San Quentin State Prison Execution Log Lethal Injection Intravenous Sub-Team, which is incorporated by reference.

3. The Record Keeping Sub-Team member assigned to the Security Sub-Team shall complete the CDCR Form 2180 (01/09), San Quentin State Prison Execution Log Lethal Injection Security Sub-Team, which is incorporated by reference.

4. The Record Keeping Sub-Team members assigned to the Team Administrator and to the Team Leader shall complete the CDCR Form 2181 (01/09), San Quentin State Prison Execution Log Lethal Injection Team Administrator/Team Leader, which is incorporated by reference.

(D) Upon completion of the execution, the Record Keeping Sub-Team shall assemble all documents pertaining to the lethal injection process for inclusion in the Master Execution File.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604 and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27.

**New Section 3349.1.4 is adopted to read:**

**3349.1.4. Lethal Injection Team Training.**

(a) The Team Administrator shall have direct responsibility to ensure that relevant quality training is provided to each member of the Lethal Injection Team.

(b) Each Lethal Injection Team member, as described in subsection 3349.1.3(c), shall undergo specific training relevant to their assigned duties during an execution.

(c) Training for Lethal Injection Team members.

(1) Monthly training shall occur and shall include, but not be limited to, the following:

(A) A simulation of an execution by lethal injection.

(B) Training on potential problems and recommendations for avoidance or resolution.

(2) Training for the Team Leader and the Security Sub-Team shall include, but not be limited to, the following:

(A) Application of restraints.

(B) Escort and transportation of inmates.

(C)  Inmate/staff relations.

(D)  Effective communication, as defined in section 3000.

(E)  Appropriate methods of securing the inmate so the restraints do not interfere with the intravenous lines.

(F)  Departmental Use of Force pursuant to section 3268 et seq. and use of force options.

(G)  Potential problems and recommendations for avoidance or resolution.

(H)  Security of the Lethal Injection Facility.

(I)  Direct and constant supervision of the inmate.

(3)  Intravenous Sub-Team training shall include, but not be limited to, the following:

(A)  Use of an electronic monitor for vital signs.

(B)  Setting up intravenous lines and intravenous drip.

(C)  The different sizes of intravenous catheters and determination of the proper size of the catheter(s) to be used, dependent on the size of the vein.

(D)  Potential problems and recommendations for avoidance or resolution.

(E)  Performance of consciousness checks.

(F)  Monitoring intravenous lines to ensure patency.

(G)  Crimping and uncoupling intravenous lines.

(4)  Infusion Sub-Team training shall include, but not be limited to, the following:

(A)  Appropriate mixing of the chemicals used in the lethal injection process.

(B)  Proper level and rate of infusion of the chemicals into the intravenous lines established by the Intravenous Sub-Team.

(C)  Proper sequence of infusion of the three chemicals used in the lethal injection process and the physical effects each chemical can have on the inmate as they are administered.

(D)  Numbering and color coding of the syringes used in the lethal injection process to ensure each chemical is administered in appropriate order.

(E)  Proper handling and accountability of controlled substances.

(F)  Potential problems and recommendations for avoidance or resolution.

(5)  Record Keeping Sub-Team training shall include, but not be limited to, the following:

(A)  Accurate record keeping.

(B)  Report writing.

(C)  Specific records used to document an execution.

(d)  Periodic Training Requirements.

(1)  Training shall be conducted monthly, as provided in subsection (c) of this section, for the Lethal Injection Team members.  Specific training dates will be scheduled by the Team Leader and approved by the Warden.

(2) When a Death Warrant has been served on an inmate, the Team Leader shall schedule training in the 30 calendar days immediately preceding the scheduled execution date.

(3) Except for those Lethal Injection Team members described in subsection 3349.1.2(a)(4)(B), the Lethal Injection Team shall train at least once per month for a minimum of eight hours, and shall also attend additional training as directed by the Team Leader.  Any team member described in subsection 3349.1.2(a)(4)(B) shall train with the Lethal Injection Team at least once every six months.  All Lethal Injection Team members must attend all training, as specified, unless on approved vacation/sick leave.

(4)  Except for those team members described in subsection 3349.1.2(a)(4)(B), the Lethal Injection Team members must attend at least six training sessions prior to being assigned duties during an execution. This includes a minimum of three training sessions in the six months immediately preceding a scheduled execution, and participation in each of the three daily training sessions immediately preceding the scheduled execution.  Any team member described in subsection 3349.1.2(a)(4)(B) must attend at least one training session in the six months immediately preceding a scheduled execution, and participate in each of the three daily training sessions immediately preceding the scheduled execution.

(e)  Training Documentation and Records.

(1)  The Team Leader shall maintain a lethal injection process training file.  This training file shall contain a record of all lethal injection process training sessions.

(2)  Lethal injection process logs, CDCR Forms 2177, 2179, 2180, and 2181, as described in section 3349.1.3, shall be completed by the Team Leader or designee during each training session to document that appropriate training was conducted and a complete walk-through of the lethal injection process was conducted.

(3)  In-Service Training sign-in sheets, the CDC Form 844 (Rev. 4/98), In-Service Training Sign-In Sheet, which is incorporated by reference, shall not be completed during training sessions and the names of the Lethal Injection Team members shall not be included in the training file.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604 and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27.

**New Section 3349.2.1 is adopted to read:**

**3349.2.1. Execution Site Operation.**

(a)  Security. All staff entering the Lethal Injection Facility must have prior oral or written approval of the Warden, or acting Warden in the Warden's absence.

(b)  The Infusion Control Room shall have sufficient space to accommodate the Infusion Sub-Team and designated members of the Intravenous Sub-Team and the Security Sub-Team.  There shall be a mixing area located in the Infusion Control Room.

(c)  The Lethal Injection Facility safe and refrigerator shall be permanently mounted within the Infusion Control Room.

(1)  Combination numbers to the Infusion Control Room safe shall be known only by the Warden, Team Administrator and the Team Leader.

(2)  The combination to the Infusion Control Room safe shall be changed after each execution to maintain quality control, accountability, and security of lethal injection chemicals.

(3)  The refrigerator shall be secured within a lockable, heavy gauge, steel enclosure to prevent unauthorized access.  Access to the keys for the enclosure shall be limited to the Warden, Team Administrator, and the Team Leader.

(4)  The temperature of the refrigerator shall be monitored and documented to ensure that the storage temperature of the pancuronium bromide is maintained according to the manufacturer's directions.

(5)  The refrigerator shall be connected to a power supply which is connected to the institution's back-up generator to ensure the integrity of the chemicals in the event of a power outage.

(d)  Key Procedure.

(1)  The keys for the Lethal Injection Facility shall be located in the San Quentin's Main Control Room, in a locked box secured under glass.  All access must be approved by the Warden.

(2)  Keys allowing access to the locked box shall only be issued to the Warden, Team Administrator, or the Team Leader.

(3)  Each person authorized to draw these keys shall be required to sign the key control log noting the time, reason for entry into the Lethal Injection Facility, and time of return.

(4)  Each person authorized to draw the keys to the Lethal Injection Facility shall personally return the keys to the Main Control Room to ensure that the keys are properly secured in the locked box under glass.  Under no circumstances shall the keys be returned by someone other than the person authorized to draw the keys.

(5)  Any emergency access to the Lethal Injection Facility shall be documented in a CDCR Form 837-A (Rev. 07/05), Crime/Incident Report Part A-Cover Sheet, which is incorporated by reference, and forwarded to the Warden as an unusual occurrence at the institution.  The Warden (or Administrative Officer of the Day during weekends, holidays, and 1st and 3rd watches) shall be notified immediately of the reasons access to the Lethal Injection Facility was required.

(e)  Maintenance.

(1)  The Team Administrator, Chief of Plant Operations, and the Team Leader shall ensure that documented inspections of the Lethal Injection Facility are conducted on a monthly basis.

(2)  The Team Administrator shall work with the Team Leader to complete documented security inspections of the Lethal Injection Facility.

(A)  The Team Leader shall:

1. Inspect all keys, locking devices, security systems, sanitation, electrical, and other physical plant systems in the Lethal Injection Facility to ensure that the Lethal Injection Facility is fully operational at all times.

2. Immediately report any discrepancy to the Team Administrator.

3. Coordinate with the plant operations staff at San Quentin for the immediate repair of any noted discrepancies and for scheduled maintenance as needed.

4. Submit a written report to the Team Administrator after each monthly inspection attesting to the security readiness of the Lethal Injection Facility.

(B) The Chief of Plant Operations shall note any discrepancies, schedule immediate repairs as necessary, and shall report directly to the Warden the status of any repairs.

(3) Thirty calendar days prior to a scheduled execution, the Team Administrator shall schedule weekly inspections of the Lethal Injection Facility.

(A) The Team Administrator shall coordinate with the Team Leader to conduct weekly security inspections of the Lethal Injection Facility.

(B) The Team Leader shall follow the procedures identified in subsection (e)(2)(A) above for these weekly inspections.

(4) Five calendar days prior to a scheduled execution, the Team Administrator shall schedule daily inspections of the Lethal Injection Facility and shall ensure that daily inspections of the Lethal Injection Facility are conducted as identified in subsection (e)(2)(A) above.

(5) The Team Administrator shall confirm that all items (including but not limited to clothing, personal hygiene items, television, radio) needed to re-house the inmate in the Lethal Injection Facility Secured Holding Area are present prior to re-housing the inmate in the Lethal Injection Facility.

(6) On the morning before a scheduled execution, the Team Administrator, Chief of Plant Operations, and the Team Leader shall make a final inspection of the Lethal Injection Facility. All discrepancies and a plan of correction shall be reported directly to the Warden.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604, 3605 and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27.

**New Section 3349.2.2 is adopted to read:**

**3349.2.2. Lethal Injection Record Keeping and Documentation.**

(a) The Litigation Coordinator, shall be responsible for the security of all documents generated prior to, during, and after the lethal injection process. Each Associate Warden is responsible to ensure that all documents generated by staff are accurate, completed in a timely manner, and forwarded to the Litigation Coordinator. The Team Administrator shall ensure that all documents generated by the Lethal Injection Team are accurate, completed in a timely manner, and forwarded to the Litigation Coordinator. The Litigation Coordinator shall maintain the Master Execution File in the Warden's office complex. The Master Execution File shall serve as a permanent record of all documents related to the execution.

(b) Each procedure in the lethal injection process shall be documented by a staff member of the Record Keeping Sub-Team assigned to maintain records of the lethal injection process.

(c) A Correctional Counselor II shall collect and log all documents from the inmate on the Correctional Counselor's Pre-Execution Log.   All documents received from the inmate as well as the Correctional Counselor's Pre-Execution Log will be forwarded to the Litigation Coordinator for inclusion in the Master Execution File.

(d)  The Litigation Coordinator shall maintain a copy of and log all documents and notices transmitted between San Quentin State Prison and California Department of Corrections and Rehabilitation headquarters, or any other agency or organization, pertaining to a scheduled execution.

(e)  The Team Leader shall ensure documentation of the following:

(1)  All training of the Lethal Injection Team.

(2)  All inspections of the Lethal Injection Facility.

(3)  All activities regarding the lethal injection process.

(4)  All inmate activities after the inmate is re-housed in the Lethal Injection Facility Holding Area.

(f)  The Team Leader shall assign a member of the Record Keeping Sub-Team to the Team Administrator, Team Leader, the Security Sub-Team, the Intravenous Sub-Team, and to the Infusion Sub-Team to ensure that these teams' actions are documented without distracting the team members from their duties.

(g)  Immediately following the execution, the Team Leader shall complete the CDCR Form 2182 (01/09), San Quentin State Prison Execution Report-Part A, which is incorporated by reference.

(1)  Each team member shall complete a CDCR Form 2183 (01/09), San Quentin State Prison Execution Report - Part B, which is incorporated by reference, documenting their actions and observations during the execution.

(2)  Team members shall use identifiers assigned to their specific position (duties), rather than their names and classifications, when completing the Execution Report - Part B.

(3)  The Team Leader shall assemble the complete Execution Report for review by the Team Administrator.  The Execution Report shall include all appropriate supplemental reports.

(h) All the records of the execution shall be processed by the Team Administrator.   The Team Administrator shall personally meet with the Record Keeping Sub-Team following the execution to evaluate and critique all records submitted for inclusion in the Master Execution File.

(i)  The Public Information Officer shall ensure that the Litigation Coordinator is provided copies of any press releases regarding the lethal injection process.

(j)  Documents to be maintained.   Each sub-file within the Master Execution File shall contain the following documentation.

(1)  Notifications to inmate and involved agencies:

(A)  People's Application for Appointment of Execution Date.

(B)  Death Warrant.

(C)  CDCR Form 1801 (Rev. 01/09), Notification of Execution Date and Choice of Execution Method

(D)  CDCR Form 1801-B (Rev. 06/10), Service of Execution Warrant-Warden's Initial Interview.

(E)   Notice to Director, Division of Adult Institutions.

(F)   Notice to Governor's Legal Affairs Secretary.

(G)  Memo to Director, DAI, Identifying Alienist Panel.

(H)  CDCR Form 1801-A (Rev. 01/09), Choice of Execution Method.

(I)   CDCR Form 2172 (01/09), Thirty Day Notification San Quentin State Prison, signed by inmate.  The CDCR Form 2172 (01/09) is incorporated by reference.

(J)  Media Notification of Scheduled Execution.

(2)  Medical Review Documentation:

(A)  CDCR 2173 (06/10), 20-Day Pre-Execution Report, which is incorporated by reference, pursuant to Penal Code section 3700.5.

(B)  Medical Status Report.

(C)  CDCR Form 2175 (06/10), 7-Day Pre-Execution Report, which is incorporated by reference.

(D) The CDCR Form 2174 (01/09), Notification By Warden to Marin County District Attorney Concerning Sanity of Condemned Inmate (Penal Code section 3700), which is incorporated by reference.

(3)  Inmate Visiting Records:

(A)  Inmate Visiting File.

(B)  Inmate Visiting History.

(C)  Request for Approval of Visitors from CDCR Form 2172.

(4)  Inmate's completed attachments from CDCR Form 2172.

(A)  Request for Approval of Witnesses.

(B)  Disposition of Property.

(C)  Next of Kin Notification.

(D)  Last Meal Request.

(E)  Release of Remains and Burial Arrangements.

(5)  Pre-Execution Logs and Logs:

(A)  CDC Form 128-B General Chronos, as defined in section 3000.

(B)  Lethal Injection Facility Activity Logbook.

(C)  Condemned Unit 15 Minute Log.

(D)  Correctional Counselor's Pre-Execution Log.

(6)  Equipment and Controlled Substance Accountability Reports:

(A)  Pre and Post Lethal Injection Supply Inventories.

(B)  Pre and Post Lethal Injection Controlled Substance Inventories.

(C)  Controlled Substance Chain of Custody Reports.

(D)  Security Equipment Inventories.

(7)  Execution Records:

(A)  CDCR Form 2180 (01/09), San Quentin State Prison Execution Log-Lethal Injection Security Sub-Team.

(B)  CDCR Form 2179 (01/09), San Quentin State Prison Execution Log-Lethal Injection Intravenous Sub-Team.

(C)  CDCR Form 2177 (01/09), San Quentin State Prison Execution Log-Lethal Injection Infusion Sub-Team.

(D)  CDCR Form 2181 (01/09), San Quentin State Prison Execution Log-Lethal Injection Team Administrator/Team Leader.

(E)  Electrocardiogram (ECG) Tape.

(F)  Lethal Injection Facility Announcements.

(G)  Emergency Operations Center Log.

(8)  Post Execution Logs and Records:

(A)  Death Certificate.

(B)  CDCR Form 2178 (01/09), Return On Warrant of Death, which is incorporated by reference.

(9)  Legal Documents:

(A)  Execution Related Pleadings.

(B)  Clemency Petition.

(C)  Clemency Denial.

(k)  Correspondences.  If additional documentation is generated as a result of the lethal injection process, those documents shall be added to the appropriate sub-file category.

(l)  Review of the Master Execution File.

(2)  After an execution has been concluded, the Team Administrator shall review the Master Execution File to ensure that all documents are accounted for and appropriately categorized.

(3)  If force was utilized at any point during the lethal injection process, the Execution Report shall be available to the Executive Use of Force Review Committee.  When the Committee has completed their review of the Use of Force, the Executive Use of Force Review Committee findings and all associated documentation shall be added to the Master Execution File.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604, 3605, 3700, 3700.5, 3701, 3702, 3703, 3704 and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27.

**New Section 3349.2.3 is adopted to read:**

**3349.2.3. Witnesses, Observers,  Media, and Information Releases.**

(a)  Selection of Witnesses.

(1)  The Warden shall invite the Attorney General, members of the immediate family of the victim or victims and at least 12 reputable citizens, that are to be selected by the Warden.

(2)  The Warden shall, at the request of the inmate, permit no more than two spiritual advisors, including but not limited to Chaplains, as the inmate may name, and any persons, relatives or friends, not to exceed five, to be present at the execution.

(b)  The Warden shall authorize those peace officers or other CDCR employees as he or she may deem necessary to witness the execution.

(c)  Number of persons permitted in the witness areas.

(1)  A maximum of 50 persons shall be permitted in the witness areas including:

(A)  Members of the Victim(s)'s Immediate Family.

(B) Official Witnesses, and news media witnesses as provided in subsection (e), all of whom shall be reputable citizens to be selected by the Warden in accordance with Penal Code section 3605.   The inmate's attorney shall be considered an official witness solely for purposes of this section consistent with Penal Code section 3605.

(C)  Attorney General.

(D) San Quentin security staff.

(E) Spiritual advisor (not to exceed 2).

(F) Inmate's family/friends (not to exceed 5).

(2)  If the number of victim(s)'s immediate family exceeds the available spaces in the witness viewing room, then the institution may make whatever arrangements are necessary including, but not limited to, video conferencing or any other electronic means available to permit them to view the execution from a remote location.

(d)  The Offices of the Governor, the Inspector General and the Attorney General shall each be permitted one reputable citizen selected by the Warden in accordance with Penal Code section 3605 to be present in the Infusion Control Room of the Lethal Injection Facility during an execution in locations designated by the Warden.  No other observers will be permitted.

(e)  News Media Witnesses.

(1)  When an execution is scheduled, the California Department of Corrections and Rehabilitation (CDCR), Assistant Secretary, Office of Public and Employee Communications, shall notify the media and establish a ten-day filing period in which media may request to witness the execution.

(A)  Requests may only be accepted during the designated ten-day filing period.

(B)  All media requests to witness an execution shall be directed to the CDCR, Assistant Secretary, Office of Public and Employee Communications, 1515 S. Street, Sacramento, California, 94283-0001.

(C)  Requests shall only be considered for the scheduled execution and shall not be kept on file as a standing request.

(2) The Assistant Secretary, Office of Public and Employee Communications, and the San Quentin Public Information Officer shall consult with the Warden regarding selection of the members of the news media to witness an execution.  All media witnesses must agree to the use of a pool method and all media witnesses must agree to release information simultaneously to all other news agencies at a press conference held after the execution.

(f)  Confidentiality of Witnesses.  The names of the witnesses shall not be released.

(g)  Processing of Witnesses.

(1)  All witnesses must arrive at the institution's West Gate at the time designated by the Warden.

(2)  Parking will be in the designated parking area.

(3)  All witnesses will be screened per existing procedures outlined in section 3261.1, Media Access to Facilities, to include the following:

(A)  All witnesses must have a valid identification as outlined in subsections 3173(c)(1) through (c)(6).

(B)  No blue jeans, and no jeans-style blue, black, or grey pants for security purposes so that visitors are not confused with inmates by institution staff.

(C)  No cameras, cell phones, blackberries, tape recorders, recording devices, electronic devices, drawing implements, or other similar equipment, shall be permitted in the witness area, except that media witnesses shall be provided with pencils and notepads.

(h)  Witness Accommodation Prior to Execution.

(1)  There shall be three designated witness staging areas; one for official/victim witnesses, one for media witnesses, and one for the inmate's witnesses.

(2)  After screening, each group shall be escorted to their respective staging area.

(3)  All witnesses shall view an execution orientation video in their respective staging area.

(4)  At a time directed by the Warden, the witnesses shall be escorted to their respective designated witness rooms within the Lethal Injection Facility.

(i)  Witness Accommodation after Execution.

(1)  After the announcement of death, the Official Witnesses, the inmate's witnesses, and victim's witnesses shall be escorted back to their designated staging area.  The witnesses shall be transported to the West Gate and processed out of the institution.

(2)  The media witnesses shall be transported to the media area to await the Warden's press conference which will be conducted approximately one hour after the execution.

(j)  Selection and accommodations of media not selected to witness the execution.

(1)  The San Quentin Public Information Officer, under the direction of the Warden, in conjunction with the Assistant Secretary, Office of Public and Employee Communications, is responsible for the selection, accommodation, and coordination of news media personnel not selected to witness the execution.

(2)  News media representatives, as defined in subsection 3261.5(a)(1), shall be allowed on San Quentin grounds on the day and time specified by the Warden.

(3)  Requests must be made to the Assistant Secretary, Office of Public and Employee Communications. For media credentials, send a written request signed by the news department manager on company letterhead with the name(s) of the proposed representatives, their dates of birth, driver's license number and expiration date, social security number, and size of vehicle for live broadcast purposes to: Office of Public and Employee Communications, P.O. Box 942883, Sacramento, CA 94283-001.

(4)  A maximum of 125 non-witness news media personnel shall be permitted to remain in the media area during and after the execution.  To accommodate as many media firms as possible, each news media organization applying will be limited to one representative.  Firms selected to send a news reporter to witness the execution will be allowed a separate representative at the media center.  Pool arrangements may be necessary for audio/visual feeds and still photographs from inside the media center.

(5)  Parking will be in the designated parking area. Media broadcast vans will be admitted to the institution grounds on a space-available basis with prior written approval.  Requests for such accommodations should be made when requesting to cover the scheduled execution.  All media members must have a valid State of California photo I.D. as outlined in subsections 3173(c)(1) through (c)(6).

(6)  The non-witness media members shall be processed through a security check at the West Gate and escorted to the media area.

(7)  After the execution, the media witnesses will join the non-witness media as soon as possible at the media area for the media press conference, where they will relate what they witnessed to the non-witness media.

(8)  No more than 30 minutes after the conclusion of the Warden's press conference, the escorting of all media personnel to the West Gate shall begin.

(k)  In the event media request to interview a condemned inmate, all interviews shall be consistent with departmental rules pursuant to subsections 3261.5(a) through (g).

(*l*)  Information Releases.

(1)  The names of the Official Witnesses shall not be released for safety and security purposes.

(2)  The names of Lethal Injection Team members shall not be released, nor shall they be available for interviews or photographs for safety and security purposes.

(3)  The San Quentin Public Information Officer and CDCR, Assistant Secretary, Office of Public and Employee Communications will be responsible for all CDCR press releases prior to, during and after an execution and for the development of all information releases.

(4)  The Warden, with the assistance of the Assistant Secretary and Public Information Officer, shall hold a press conference approximately one hour after an execution.  No other interview(s) will be given by the Warden after the news conference is completed.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections190, 3600, 3603, 3604, 3605 and 5054, Penal Code; United States Constitution, Amendment I and VIII; California Constitution, Art. 1, Sections 17, 27.

**New Section 3349.2.4 is adopted to read:**

**3349.2.4.  Communication.**

Dedicated telephone lines to the State Supreme Court, the Governor's Office, and the State Attorney General's Office shall be opened and staffed beginning at least fifteen minutes prior to a scheduled execution.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

**New Section 3349.3 is adopted to read:**

**3349.3. Chronology of Events Prior to a Scheduled Execution.**

(a)  Upon receipt of the execution order, the following shall occur:

(1)  The Warden shall:

(A)  Notify the Director, DAI and other appropriate officials identified in this article.

(B)  In the presence of a Correctional Counselor II, Litigation Coordinator, and the Associate Warden-Specialized Housing Division, interview the inmate to be executed, serve the warrant of execution, and document the interview on a CDCR Form 1801-B (Rev. 06/10), Service of Execution Warrant-Warden's Initial Interview.

(C)  Inform the inmate of the choices of execution method, either lethal injection or lethal gas and document this information on the CDCR Form 1801 (Rev. 01/09), Notification of Execution Date and Choice of Execution Method.

(D)  Instruct the inmate to indicate his choice within ten days on a CDCR Form 1801-A (Rev. 01/09), Choice of Execution Method, with the explanation that if no choice is made, lethal injection will be the method of execution.

(E)  Provide the inmate a copy of the CDCR Form 2172 (01/09), Thirty Day Notification-San Quentin State Prison informational package regarding visiting, phone calls, witness list, burial arrangements, and the general rules and procedures that will be utilized during the days leading up to the date of execution.

(F)  Notify the Governor's Legal Affairs Secretary by overnight mail of the scheduled execution with a copy of the execution order enclosed.

(G)  Submit to the Director, DAI the names of the three psychiatrists who will serve as the required panel of Alienists pursuant to Penal Code section 3700.5.  The Alienists will be employees of the CDCR who have previously received the approval of the Director, DAI.

(H)  Meet with Lethal Injection Team members involved in the lethal injection process to ensure that all staff understand their roles in the scheduled execution.

(b)  The Chief Deputy Warden shall review San Quentin's Emergency Operations Plan to ensure it is current.

(c)  The Associate Warden - Specialized Housing Division, shall:

(1)  Accompany the Warden and be present as described in subsection 3349.3(a)(1)(B).

(2) Contact the Team Administrator and inform him/her that the warrant of execution has been served and that the Team Administrator shall contact the Team Leader to ensure the Lethal Injection Facility is maintained and is operational.

(3) Refer the inmate to the Intravenous Sub-Team for a vein assessment to determine the size, location, and resilience of the veins in the inmate's anticubital areas.  If a suitable vein is not available, alternate insertion sites will be considered, including, but not limited to:

(A)  Forearm.

(B)  Wrist.

(C)  Back of hand.

(D)  Top of foot.

(E)  Ankle, lower leg, or other appropriate location.

(4)  Report the results of the vein assessment to the Warden.

(d)  The Team Leader shall notify Lethal Injection Team members of the execution order.

(e)  A Correctional Counselor II shall:

(1)  Accompany the Warden and be present as described in subsection 3349.3(a)(1)(B).

(2)  Maintain close daily contact with the inmate upon service of the execution warrant.

(3)  If the inmate cannot communicate effectively, obtain the services of an interpreter or other person required to facilitate effective communication.

(f)  The Litigation Coordinator shall:

(1) Advise the Warden of any pending litigation regarding the inmate or the scheduled execution.

(2) Accompany the Warden and be present as described in subsection 3349.3(a)(1)(B).

(3) Obtain from the Visiting Lieutenant a copy of the list of approved visitors and a printout of visits weekly.

(4) Instruct the Visiting Lieutenant who schedules legal visiting to give priority accommodations to the attorney for the inmate.  If a scheduling problem occurs, the Litigation Coordinator must immediately be notified.

(5) Construct a Master Execution File for the inmate that shall contain all pertinent documents; i.e., execution order, photocopy of the visiting printout, CDCR Form 1801-B, Service of Execution Warrant-Warden's Initial Interview, CDCR Form 1801, Notification of Execution Date and Choice of Execution Method, pre-execution activity log, CDC Form 128-B, General Chronos and any other pertinent information.

(A)   The Master Execution File shall be kept in the Warden's office complex.

(B)  In the event the execution is stayed, the Master Execution File shall be closed and shall remain in the Warden's Office complex.

(6)  Update the list of scheduled executions and distribute it to the Administrative Officer of the Day book, and also to the Chief Deputy Warden, Associate Warden-Specialized Housing Division, Visiting Lieutenant, Mailroom Sergeant, Chief Psychiatrist and Chaplains.

(g)  The Warden's Administrative Assistant shall:

(1)  Act as liaison between the inmate's family and the Warden.

(2)  Direct the mailroom sergeant to deliver all non-legal incoming mail for the inmate to the Warden's Administrative Assistant to be inspected, logged, and forwarded to the inmate via the oncoming Third Watch Sergeant.  Mail that is sent to the inmate by anonymous senders, containing offensive messages, shall be hand carried to the inmate by a Correctional Counselor II.  The inmate shall have the option to accept or reject the offensive correspondence.

(3)  Instruct the First Watch Sergeant to inspect and log all non-legal outgoing mail from the inmate.

(A)  The Sergeant shall forward any unusual mail immediately to the Warden's Administrative Assistant who shall deliver to the Warden for review and appropriate handling.

(B)   This process must be handled expeditiously to avoid unnecessary delay of outgoing or incoming mail.

(h)  The San Quentin Public Information Officer shall advise the CDCR Assistant Secretary, Office of Public and Employee Communications, by telephone, of the execution date and coordinate the development of a press release for news media agencies.

(i)  The Visiting Lieutenant shall:

(1)  Flag the computer file, in the memo field, with the following instruction:

Priority Visiting Privileges. Do not turn away visitors without approval of Warden or Administrative Officer of the Day. Starting seven days prior to a scheduled execution, notify the Public Information Officer of each visit that the inmate has on the day that it occurs.

(2) Ensure compliance with these instructions.

(3) Make photocopies of the inmate's visiting file along with a computer printout of all approved visitors and deliver them to the Litigation Coordinator.

(4) Ensure that the attorney(s) for the inmate is afforded assistance in expeditiously having access to the inmate. In the final weeks prior to the execution, this may include facilitating attorney visits during weekends and holidays, if necessary.

(5) Arrange for visiting.

(A) Grade A inmate visiting will take place in a designated secure visiting area of the Main Visiting Room during normal visiting hours. A correctional officer shall be assigned to provide constant and direct supervision of the visit.

(B) Grade B inmates shall continue to receive non-contact visits in the Main Visiting Room.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604, 3605, 3700, 3700.5, 3701, 3702, 3703, 3704 and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27.

**New Section 3349.3.1 is adopted to read:**

**3349.3.1. Responsibilities and Tasks Approximately 45 days Prior to a Scheduled Execution.**

(a) The Warden shall:

(1) Work with the Attorney General's Office of Victims' Services to confirm the availability of victim(s) family members and the selection of official witnesses and 2 or more alternates.

(2) Initiate the process for completion of the CDCR Form 2173 (06/10), 20-Day Pre-Execution Report, as described in subsection (d)(1), pursuant to Penal Code section 3700.5, for submission to the Director, DAI. The report shall include the following:

(A) A current psychiatric report, written by each of the three alienists.

(B) Comments of the Chaplain, as defined in section 3000, attending to the inmate.

(C) A summary of the inmate's conduct and behavior, submitted by a Correctional Counselor II.

(D) A cover letter from the Warden.

(b) The Associate Warden-Specialized Housing Division, shall:

(1) Move the inmate to a designated area.

(A) Inmates housed in East Block shall be moved to the first tier upon receipt of the death warrant.

(B)  Inmates in North Segregation shall remain in their assigned cells.

(C)  Inmates in the Adjustment Center shall remain in their assigned cells.

(2)  Implement hourly checks and logs prepared by condemned unit staff.

(3)  Direct the condemned unit staff to commence documentation of the inmate's behavior on a CDC Form 128-B, General Chrono, on each shift.

(A)  These CDC Form 128-B's shall be forwarded daily to the Litigation Coordinator via the Associate Warden-Specialized Housing Division.

(B)  Any documentation regarding unusual behavior shall be brought to the attention of the Warden.

(4)  Visit the unit daily to ensure procedural follow through and shall sign in on the unit log book with each visit.

(c)  The Public Information Officer shall:

(1)  Coordinate with the CDCR Assistant Secretary, Office of Public and Employee Communications, to make distribution of an announcement to the media via recognized wire services that the execution is scheduled.

(A)  The advisory must provide instructions to media representatives wishing to witness or otherwise cover the scheduled execution.

(B)  The Public Information Officer and CDCR Assistant Secretary, Office of Public and Employee Communications shall announce a ten-day filing period in which the news media may submit their written requests as provided in section 3349.2.3 to witness the execution.

(C)  Media witness requests must be for the scheduled execution and will not be kept on file.

(D)  No request will be considered that is received after close of business on the tenth and final day.

(2)  Work with the Assistant Secretary and consult with the Warden regarding selection of media witnesses to the execution.  Consideration will be given to the broadest cross-section of media format and greatest circulation or viewers.

(d)  The Alienists shall provide the following:

(1)  Interview and examine the inmate within sufficient time to evaluate the findings and give written reports, to include the CDCR Form 2173 (06/10), 20-Day Pre-Execution Report, to the Governor and the Warden at least 20 days prior to the day appointed for the execution.  The written reports shall include an interpretation of the examinations, interviews, and history and shall be stated in plain language.

(2)  Information available to one Alienist pertinent to the inmate's sanity shall be made available to the other two Alienists for evaluation and inclusion in the appropriate psychiatric reports.

(e)  The Chaplain shall:

(1)  Interview the inmate to assess the inmate's spiritual and emotional well-being.

(2)   Determine the inmate's religious preferences and needs, next of kin, funeral or other requests, attitudes or thoughts on death and dying, and note any observations regarding the inmate's emotional stability such as acceptance of the sentence of death.

(3)  Formulate these observations into a written report and submit it to the Warden within sufficient time to meet the 20-day report deadline.

(f)  A Correctional Counselor II shall:

(1)  Assess the observations of the inmate's counselor and custody staff, and research the case history to determine the inmate's past and present conduct and behavior.

(2)   Submit this information in writing to the Warden within sufficient time to meet the 20-day report deadline.

(3)  Continue close daily contact with the inmate.  Collect the completed pages of the CDCR Form 2172 (01/09), Thirty Day Notification-San Quentin State Prison, that was provided to the inmate by the Warden.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604, 3605, 3700, 3700.5, 3701, 3702, 3703, 3704, and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27.

**New Section 3349.3.2 is adopted to read:**

**3349.3.2.  Responsibilities and Tasks Approximately 30 Days Prior to a Scheduled Execution.**

(a)  Sanity Review Request.

(1) Attorneys may submit in writing for the Warden's review, any current information that they believe may have a bearing on evaluating the sanity of an inmate with a scheduled execution date. This information will be accepted within 30 days and, except as provided in PC section 3701, up to 7 days prior to the scheduled execution and will be forwarded to the Alienists so long as their duties continue.

(2)   Information submitted more than 30 days prior to the scheduled execution will be accepted for consideration by the panel of Alienists.   The panel of Alienists shall consider this information in preparation of the CDCR Form 2173 (06/10), 20-Day Pre-Execution Report.

(3)   The Warden shall have available for review, all psychiatric information pertaining to the inmate known to San Quentin's psychiatric staff.

(A)  This information shall be reviewed along with all material submitted by the inmate's attorney.

(B)  This information shall be used to determine if substantial showing of insanity exists.

(4)  The Warden shall notify the inmate's attorney in writing of the results of the requested sanity review. Should the Warden, with the assistance of the independent CDCR psychiatrist, find a substantial showing of insanity, the Warden shall notify the District Attorney by a CDCR Form 2174 (01/09), Notification By Warden To Marin County District Attorney Concerning Sanity of Condemned Inmate, in accordance with the reporting provisions of Penal Code section 3701.

(5) Beginning the week prior to the execution the Warden shall be provided with current daily information regarding the inmate's behavior and psychiatric condition.

(6) The inmate's behavior shall be continuously monitored by unit staff for the final five days with documentation completed every 15 minutes.

(A) Should the inmate display unusual or inappropriate behavior, the Warden shall be notified immediately by institutional staff.

(B) The Warden shall take necessary steps to evaluate any reported changes including utilizing the provisions of Penal Code section 3701. Results shall be reported to the Secretary of the CDCR in writing via the Director, DAI.

(7) The Secretary of the CDCR shall notify the Governor's Legal Affairs Secretary in writing of all referrals to the District Attorney's office under the provisions of Penal Code section 3701.

(b) The Warden shall deliver the CDCR Form 2173 (06/10), 20-Day Pre-Execution Report to the Director, DAI.

(c) The Team Administrator shall:

(1) Coordinate with the Team Leader to conduct weekly security inspections of the Lethal Injection Facility.

(2) Schedule and conduct required training for the Lethal Injection Team.

(3) Ensure the Lethal Injection Facility is ready and fully stocked with supplies.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604, 3605, 3700, 3700.5, 3701, 3702, 3703, 3704, and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27.

**New Section 3349.3.3 is adopted to read:**

**3349.3.3. Approximately Ten Days Prior to a Scheduled Execution.**

(a) The Warden shall:

(1) Compile and send a final CDCR Form 2175 (06/10), 7-Day Pre-Execution Report (original documents) to the Director, DAI.

(A) This report shall indicate whether there has been any change in the inmate's mental condition since the CDCR Form 2173 (06/10), 20-Day Pre-Execution Report.

(B) The CDCR Form 2175 (06/10), 7-Day Pre-Execution Report shall be delivered in sufficient time for forwarding to the Secretary of the CDCR whose office shall then forward the report to the Governor's Legal Affairs Secretary.

(C) This report shall be a memorandum updating the formal CDCR Form 2173 (06/10), 20-Day Pre-Execution Report based upon current observations.

(D)  Intermediate reports may be submitted by the Warden any time there is a change which may have an effect under Penal Code section 3700.5.

(2)  Review the inmate's requested witnesses and spiritual advisor(s) including but not limited to, department Chaplains, as provided by the Associate Warden-Specialized Housing Division, to ensure they meet existing witness and visitor criteria.

(3)  Secure from the Case Records Manager the central file of the inmate, which shall be maintained in the Warden's office until the date of execution.

(b)  The Chief Deputy Warden shall direct the Crisis Response Team Commander to notify appropriate area managers of intent to re-assign any employee from their normal assignments associated with the scheduled execution at least five days prior to proposed assignment change.

(c)  The Team Administrator shall:

(1)  Ascertain if the inmate wishes to invite up to five witnesses and two spiritual advisors and provide the Warden with the names.

(2)  Ensure Lethal Injection Team members are prepared.

(3)  Ensure the Lethal Injection Facility is operational.

(4)  Ensure the Lethal Injection Facility has necessary supplies, including but not limited to, supplies for household and personal needs.

(5)  Ensure the required clothing is available.

(6)  Ensure a supply of documentation logs, graph paper, and record keeping materials are in place.

(7)  Ensure that the necessary chemicals are available and properly controlled.

(8)  Notify the Personnel Assignment Office of the names of personnel that are to be relieved of their regularly assigned duties and temporarily assigned to the execution detail three days prior to the scheduled execution.

(d)  The Public Information Officer shall:

(1)  Notify all media representatives either by phone or writing selected to be witnesses.

(2)  Notify all non-witness media representatives either by phone or writing selected to cover the scheduled execution event.

(e)  The Alienists shall interview and evaluate the inmate and submit their findings to the Warden in writing.

(1)  The Alienists shall compare their current evaluations with their previous findings to determine any change in the inmate's mental condition.

(2)  Their observations must be current and pertain to the inmate's mental state.

(3)  Submit a 7-Day report to the Warden, the CDCR Form 2175 (06/10), 7-Day Pre-Execution Report.

(f)  The Chaplain shall deliver a written report to the Warden regarding the emotional state of mind of the inmate.  These observations shall be limited to contacts made within three days preceding preparation of the report.

(g)  A Correctional Counselor II shall report any change in conduct or behavior in writing to the Warden.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604, 3605, 3700, 3700.5, 3701, 3702, 3703, 3704, and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27.

**New Section 3349.3.4 is adopted to read:**

**3349.3.4. Five Days Prior to a Scheduled Execution.**

(a)  The Warden shall:

(1)  Order the inmate to be moved to the designated security housing area where the inmate will be under observation 24-hours a day by an officer assigned for that purpose.  The Warden may authorize the move at any time following receipt of the death warrant or when, in the opinion of the Warden, it is necessary to maintain the safety and security of the public, the institution and/or the inmate.

(2)  Ensure that the inmate's behavior be continuously monitored by unit staff for the final five days prior to a scheduled execution with documentation completed every 15 minutes.

(A) If the inmate displays unusual or inappropriate behavior, the Warden shall be notified immediately by institutional staff.

(B)  The Warden shall take necessary steps to evaluate any reported changes including utilizing the provisions of Penal Code section 3701.  Results shall be reported to the Secretary of the CDCR in writing via the Director, DAI.

(b)  The Team Administrator shall:

(1) Confirm that the inmate is moved to the designated security housing area and place the inmate under 24-hour a day observation by an officer assigned for that purpose.

(2)  Conduct the daily inspections of the Lethal Injection Facility with the Team Leader.

(3)  Direct that all personal property, with the exception of legal material, belonging to the inmate be removed from the inmate's cell and placed under the security of the officer stationed outside the security cell.  The inmate will be given the use of items by the officer as he needs them, and then the inmate shall return them to the officer's care.

(4)  In the event of a stay of execution, the Team Administrator shall return the inmate's property and initiate return of the inmate to the inmate's former housing status.

(5)  Along with the Food Manager, interview the inmate to ascertain what request, if any, the inmate may have for a last meal.

(A)  Determine if Food Service will be able to fulfill the request or make arrangements to obtain the requested menu items.

(B)  Accommodations for the last meal will be made up to 50 dollars ($50.00).

(c)  The Visiting Lieutenant shall ensure:

(1)  Grade B inmates will continue to receive non-contact visits during designated visiting hours.

(2)  The visitor(s)/attorney(s) will be required to clear the walk-through metal detector and a clothed body search.  Refusal to comply with the above search procedures will be grounds for denial of a visit.

(3)  The inmate will visit in waist restraints.

(4)  The inmate and the visitor(s) may briefly embrace or shake hands at the beginning and end of the visit.  No other physical contact shall be allowed.

(5)  In the event there is a scheduled attorney visit, the following procedures shall apply:

(A)  Attorneys and other approved visitors of the inmate will not be permitted to visit with the inmate simultaneously.

(B)  For an attorney/client confidential visit, the attorney shall be allowed to bring the following items:

1. One pen or pencil.

2.  One notepad.

3.  Necessary legal materials.

(6)  For attorney/client confidential visits, the inmate shall be removed from the conference room and shall proceed with the attorney to visit in designated visiting area under constant visual observation by the special visiting team.

(7)  Visitors are informed by a posted notice or Warden's Bulletin that visiting will be closed the day preceding a scheduled execution as well as the day of a scheduled execution.

(8)  The family visiting quarters shall be vacant the day before and the day of a scheduled execution.

(9)  All visiting, with the exception of Chaplains and approved Spiritual Advisors, shall cease once the inmate is placed in the secured holding cell in the Lethal Injection Facility.  Attorneys may have access to their client by phone as requested by either the attorney or the inmate.

(d)  A Correctional Counselor II shall:

(1)  Interview the inmate to discern any special requests as to the disposition of his property.  The inmate shall package and label any property to be sent out of the institution.

(2)  Maintain a signed inventory receipt of all packaged property for mailing the first weekday following the execution.

(3)  In the event of an indefinite stay of execution, return the property to the inmate with a signed receipt.

(4)  Arrange for the monitoring of all telephone calls made by the inmate on an institutional telephone.

(A)  Legal calls will not be monitored but shall be facilitated by staff.

(B)  All calls shall be logged on the pre-execution activity log.

(C)  The inmate shall have 24-hour access to a telephone for attorney contact.

(5)  Obtain clothing sizes from the inmate and ensure that appropriate clothing is available.

(6)  Begin daily briefings for the Warden, Chief Deputy Warden, Associate Warden-Specialized Housing Division, and Facility Captain as to the inmate's needs, requests, and behavior.

(e)  Religious accommodations.

(1)  State employed Chaplains selected by the inmate shall be allowed to perform their spiritual functions at the inmate's cell front on either second or third watch.

(2)  Non-state employed Spiritual Advisors may visit the inmate utilizing the visitor process outlined in this article.

(3)  Once the inmate is moved to the Lethal Injection Facility Holding Area, state-employed and pre-approved non-state Spiritual Advisors may visit the inmate in the Lethal Injection Facility Holding Area.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604, 3605, 3700, 3700.5, 3701, 3702, 3703, 3704, and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27.

**New Section 3349.3.5 is adopted to read:**

 **3349.3.5.  Four Days Prior to a Scheduled Execution.**

(a)  The Warden shall:

(1)  Issue a letter to San Quentin Village residents, Marin Rod and Gun Club, and the Post Office advising them of any likelihood of a gathering or demonstration at the East Gate.

(2)  Ensure that a notice is passed out during staff briefings and displayed on the count gate television monitor located at the prison's main entrance, to inform staff of the East Gate closure on the evening prior to the day of the execution.  Staff shall be instructed to use the West Gate.

(b)  The Team Administrator shall direct the Team Leader to conduct a final equipment check of all materials necessary to perform the execution.  This shall be conducted not less than 24 hours, and not more than 96 hours, before a scheduled execution.

(c)  The Business Manager II shall notify all contractors and vendors that San Quentin will not be accepting any goods or services beginning at 1800 hours, two days prior to a scheduled execution and continuing through the execution day.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604 and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27.

**New Section 3349.3.6 is adopted to read:**

**3349.3.6.  Three Days Prior to a Scheduled Execution.**

(a)  The Team Administrator shall:

(1)  Assume direct supervision of all Lethal Injection Team responsibilities.

(2)  Coordinate and discuss with the Team Leader the specific Lethal Injection Team assignments to:

(A)  Ensure Lethal Injection Team members are available.

(B)  Confirm Lethal Injection Team members are properly trained and capable of carrying out specific assignments.

(C)  Confirm other Lethal Injection Team members are properly assigned as back ups and that each back up is properly trained and capable to perform the assigned functions.

(D)  Begin conducting daily inspections of the Lethal Injection Facility.

(E)  Confirm the facility remains fully operational and stocked with appropriate supplies.

(b)  The Team Leader shall:

(1)  Activate all members of the Lethal Injection Team and schedule daily training and preparedness exercises on each of the three days prior to the scheduled execution.

(2)  Ensure that all items that will come into contact with the inmate are properly searched.

(3)  Ensure that continuous security is provided at the Lethal Injection Facility.

(4)  Ensure that Lethal Injection Team members assigned to specific functions begin daily training on their specific assignments, and all team members assigned as back-ups are also involved in training for their specific back-up functions.

(c)  The Correctional Captain, Central Services Division, shall:

(1)  Establish an internal support team to assist as needed to maintain the smooth operation of the institution.  The internal support team members will be located in an area designated by the Correctional Captain, Central Services Division.

(2)  Ensure witness and media staging areas are clean and sanitized.

(d)  The Public Information Officer (PIO) shall:

(1)  Activate the media center at the appropriate time commensurate with the day and hour of the scheduled execution in the designated area, and staff it with one Correctional Sergeant and six Correctional Officers assigned by the Watch Sergeants for that purpose.

(A) Address the needs of media representatives that may be operating out of the media center.  The assigned staff will release no information or offer any commentary unless specifically authorized by the PIO.

(B) Give regular updates to any media gathered, and will notify the Assistant Secretary, Office of Public and Employee Communications of this action.

(2)  Work with the Assistant Secretary, Office of Public and Employee Communications to prepare a biographical and general information sheet on the inmate for briefing notes for the media, including CDCR identification photo.  A copy of this biographical and general information sheet will be sent to the Assistant Secretary.

(3)  The Warden, through the PIO, shall designate a cut-off time for the media to arrive.

(e)  Female inmates shall be transported to San Quentin no sooner than 72 hours prior to the scheduled execution and no later than 6 hours prior to the scheduled execution.  The inmate will be secured in the Lethal Injection Facility Holding Area.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3601, 3602, 3603, 3604, 3605, 3705, 3706 and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27.

**New Section 3349.3.7 is adopted to read:**

**3349.3.7.  Two Days Prior to a Scheduled Execution.**

The Chief Deputy Warden shall prepare to activate the Emergency Operations Center and consult with the Warden on specific areas of concern.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Section 5054, Penal Code.

**New Section 3349.4.1 is adopted to read:**

**3349.4.1. Twenty-Four Hours Prior to a Scheduled Execution.**

(a)  The Warden shall confirm that all Lethal Injection Team members are fully prepared and ready to perform their assigned duties.

(b)  The Chief Deputy Warden shall activate the Emergency Operations Center.

(c)  The Team Administrator shall:

(1)  Accompany the Team Leader to obtain the Lethal Injection Chemicals and saline from a licensed pharmaceutical facility or distributor and complete the CDCR Form 2176 (06/10), Lethal Injection Chain of Custody-San Quentin State Prison, which is incorporated by reference, to acknowledge receipt of chemicals.

(2)  Verify the Lethal Injection Chemicals and quantity of these chemicals and saline.  Secure the Lethal Injection Chemicals and saline in the Lethal Injection Facility safe or refrigerator, as appropriate, and complete the CDCR Form 2176 (06/10), Lethal Injection Chain of Custody-San Quentin State Prison.

The original copy of the chain of custody form shall remain with the Lethal Injection Chemicals. A copy of the form shall be distributed to the following:

(A) Warden.

(B) Chief Deputy Warden.

(C) Team Administrator.

(D) Team Leader.

(3) Assume direct supervision of the Lethal Injection Team members.

(4) Make a final inspection of the Lethal Injection Facility to ensure operational readiness.

(5) In conjunction with the Team Leader:

(A) Brief the Security Sub-Team on their specific duties during the scheduled execution.

(B) Assess each Lethal Injection Team member to ensure readiness for their role in the execution.

(C) If necessary, excuse any Lethal Injection Team member they believe may be unable to complete their assigned duties.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604 and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27; *Baze v. Rees* (2008) 553 U.S.35.

**New Section 3349.4.2 is adopted to read:**

**3349.4.2. Six Hours Prior to a Scheduled Execution.**

(a) The Team Leader shall:

(1) Meet with and brief the inmate on procedures and the responsibilities of the Security Watch Staff.

(2) Supervise the movement of the inmate to the Lethal Injection Facility holding cell.

(3) Assign at least one Correctional Sergeant and two Correctional Officers from the Security Sub-Team that shall ensure direct and constant supervision of the inmate in the Lethal Injection Facility holding area.

(4) Ensure a security watch log is maintained with entries made every 15 minutes. The log will reflect all activities involving the inmate, including the following:

(A) Telephone calls.

(B) Correspondence.

(C) Visits by staff and approved visitors.

(D) Last meal.

(5) Address requests made by the inmate.

(b) Visits.

(1)  The inmate can be visited by a spiritual advisor, including but not limited to, Chaplains, as defined in section 3000, and the Warden.

(2)  Spiritual advisors that are not Chaplains, as defined in section 3000, must be approved by the Warden.

(3)  Spiritual advisors wishing to bring religious items into the institution must have received advanced written permission from the Warden.  All items are subject to search by staff prior to entry into the Lethal Injection Facility.

(4)  No food, drinks, or vending machine items are permitted in the Lethal Injection Facility visiting areas. Coffee and juice will be provided.

(5)  No other visits will be permitted in the Lethal Injection Facility Holding Area without the approval of the Warden.

(c)  Last meal.

(1)  The inmate may request a last meal in so far as reasonable within the established $50.00 limit.

(2)  The Correctional Food Manager or designee shall deliver the last meal to the Lethal Injection Facility.

(3)  The Team Leader shall ensure that the meal is inspected for contraband.

(4)  The meal shall be served in the Lethal Injection Facility Holding Area.

(d)  Additional items the inmate may request include:

(1)  Food items, coffee, juice and soft drinks.

(2)  Programs on the radio or television.

(3)  Phone calls.

(4)  Mailing of letters.

(e)  The Lethal Injection Security Sub-Team shall:

(1)  Initiate direct and constant supervision of the inmate, and also initiate the security watch log, and shall:

(A)  Make entries at least every 15 minutes.

(B)  Document all activities involving the inmate.

(2)  Take custody of and search the inmate by the following:

(A)  Conduct an unclothed body search.

(B)  Scan the inmate with a metal detector.

(3)  Search the inmate's approved property.

(4)  Secure the inmate in the lethal injection holding cell.

(5)  Issue the inmate new state clothing, which shall include:

(A)  Appropriate undergarments.

(B)  One pair of socks.

(C)  One pair of slippers.

(D)  One pair of pants and one shirt or one jumpsuit.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604 and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27; *Baze v. Rees* (2008) 553 U.S.35.


**New Section 3349.4.3 is adopted to read:**

**3349.4.3.  Approximately Three Hours Prior to a Scheduled Execution.**

(a)  The Team Administrator in the company of the Team Leader shall:

(1)  Remove the Lethal Injection Chemicals and saline from the Lethal Injection Facility safe and refrigerator.

(2)  Transfer custody of the Lethal Injection Chemicals to two members of the Infusion Sub-Team.

(3)  Ensure accountability of the Lethal Injection Chemicals and saline.  A minimum of two members of the Infusion Sub-Team shall verify all Lethal Injection Chemicals and saline at the time of transfer and sign the CDCR Form 2176 (06/10), Lethal Injection Chain of Custody-San Quentin State Prison.

(b)  The Infusion Sub-Team shall prepare Lethal Injection Chemicals and saline as follows:

(1)  Two Identical trays shall be prepared.

(A)  Tray A shall be color-coded red and will be the primary tray used for the lethal injection process.

(B)  Tray B shall be colored-coded blue and will be the backup tray.

(2)  Each tray shall have eight color-coded syringes to match the tray and be labeled by content and sequence of administration as follows:

> # 1   60cc syringe   1.5 grams Sodium Thiopental
> # 2   60cc syringe   1.5 grams Sodium Thiopental
> # 3   60cc syringe   50cc saline flush
> # 4   60cc syringe   50 milligrams Pancuronium Bromide
> # 5   60cc syringe   50cc saline flush
> # 6   60cc syringe   100 milliequivalents Potassium Chloride
> # 7   60cc syringe   100 milliequivalents Potassium Chloride
> # 8   60cc syringe   50cc saline flush

(3)  The Sodium Thiopental shall be mixed according to the manufacturer's instructions.

(4)  One Infusion Sub-Team member shall prepare the syringes for Tray A.

(A)  Another Infusion Sub-Team member shall verify proper preparation of the syringes for Tray A.

(B)   A Record Keeping Sub-Team member shall observe and document the preparation on the CDCR Form 2177 (01/09), San Quentin State Prison Execution Log-Lethal Injection Infusion Sub-Team.

(5)   Tray B shall be prepared by a different Infusion Sub-Team member.

(A)   Another Infusion Sub-Team member shall verify proper preparation of the syringes for Tray B.

(B)   A Record Keeping Sub-Team member shall also observe and document the preparation on the CDCR Form 2177 (01/09), San Quentin State Prison Execution Log-Lethal Injection Infusion Sub-Team.

NOTE: Authority cited: Section 5058, Penal Code. Reference: Sections 190, 3600, 3603, 3604 and 5054, Penal Code; United States Constitution, Amendment VIII; California Constitution, Art. 1, Sections 17, 27; *Baze v. Rees* (2008) 553 U.S.35.


**New Section 3349.4.4 is adopted to read:**

**3349.4.4. During The Day of a Scheduled Execution.**

(a)   The Warden shall confirm the following activities:

(1)   Approximately two hours prior to a scheduled execution, ensure all witnesses are appropriately accommodated.

(2)   Accompanied by the Team Administrator, meet with the inmate in the Lethal Injection Facility Holding Area.

(A)   Advise the inmate that a written last statement can be prepared, to be made available after the execution.

(B)   Inform the inmate that a sedative is available.  Upon request, a sedative will be administered under the direction and approval of a clinician.

(3)   The official witnesses are ushered to their assembly area and given final instructions as needed.

(4)   Approximately 45 minutes before a scheduled execution, the Warden shall instruct the Lethal Injection Team to prepare the inmate.

(5)   Ensure open dedicated phone contact with the Governor's Office, the Office of the Attorney General and the California State Supreme Court is established.

(6)   Ensure that the curtain is open on the viewing windows prior to the witnesses' arrival.  The curtain will remain open throughout the execution process until the inmate is pronounced dead.

(7)   Approximately 25 minutes before a scheduled execution, instruct staff to admit the witnesses to their designated areas.

(8)   Approximately 15 minutes before a scheduled execution, order the inmate brought into the execution room and secured to the gurney.

(b)  The Chief Deputy Warden shall:

(1)  Place the institution on lockdown at the appropriate time commensurate with the day and hour of a scheduled execution.

(2)  Assume command of the Emergency Operations Center.

(c)  The Team Administrator shall:

(1)  Approximately two hours prior to a scheduled execution, accompany the Warden into the Lethal Injection Facility to meet with the inmate.

(2)  During the execution, take a position in the Infusion Control Room and provide direct supervision of the infusion of the Lethal Injection Chemicals and saline.

(d)  The Litigation Coordinator shall:

(1)  Take a position at the Lethal Injection Facility telephones 15 minutes prior to a scheduled execution to ensure constant communication with the Governor's Office, the State Attorney General and the State Supreme Court.

(2)  Relay all calls to the Warden and the Team Administrator.

(e)  The Warden's Administrative Assistant shall, at the time designated by the Warden:

(1)  Assign a correctional officer to escort all witnesses, except those invited by the inmate to their respective areas.

(2)  Assign a correctional officer to escort the inmate's attorney and the inmate's invited witnesses to their designated witness area.

(3)  During the execution, remain in the Lethal Injection Facility witness area to assist the Public Information Officer.

(f)  The Public Information Officer shall:

(1)  At the time designated by the Warden, identify the media witnesses and escort them from the media center to their designated witness viewing room.

(2)  Instruct the media witnesses regarding items that are not permitted in the Lethal Injection Facility. These items will be deposited at the media center for later retrieval.  No equipment shall be allowed in the witness gallery.  Pencils and notepads will be provided.

(3)  Utilize the metal detector at the visitor processing center or any other search method deemed necessary and reasonable.

(4)  Immediately upon the Warden's announcement of death, usher the media witnesses directly to the media center where they will give pool commentary to the other assembled media.  No commentary shall be given until after the official statement by the Warden.