\*\*E-Filed 12/10/2010\*\*

DESIGNATED FOR PUBLICATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Michael Angelo MORALES<br>and Albert Greenwood Brown,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>Matthew CATE, Secretary of the California<br>Department of Corrections and Rehabilitation,<br>et al.,<br><br>　　　　　　　Defendants. | Case Number 5-6-cv-219-JF-HRL<br>Case Number 5-6-cv-926-JF-HRL<br><br>DEATH-PENALTY CASE<br><br>ORDER RE PARTIAL MOTION TO DISMISS<br><br>[Doc. No. 430] |

　　　Plaintiffs are condemned prisoners whom Defendants seek to execute pursuant to California's operative lethal-injection protocol, California Code of Regulations, title 15, sections 3349 et seq. (2010), which took effect on August 29, 2010. (*See* Doc. No. 432-1.) On December 15, 2006, this Court found that an earlier version of the protocol, then officially designated as San Quentin Operational Procedure No. 0-770, or OP 770, as actually applied in practice violated the Eighth Amendment's prohibition against "cruel and unusual punishments," U.S. Const. amend. VIII. *Morales v. Tilton* (*Morales 290*), 465 F. Supp. 2d 972 (N.D. Cal. 2006). The principal issue in the current proceedings is whether the new protocol is constitutional.

　　　Like its several predecessors, the new protocol provides for "the injection of three drugs into a person being executed: sodium thiopental, a barbiturate sedative, to induce

unconsciousness; pancuronium bromide, a neuromuscular blocking agent, to induce paralysis; and potassium chloride, to induce cardiac arrest." *Id.* at 975; Cal. Code Regs., tit. 15, §3349.4.5(g). Defendants have stipulated throughout these proceedings that "injection of the second and third drugs . . . without adequate anesthesia will cause an unconstitutional level of pain," *Morales v. Cate* (*Morales 424*), No. 5-6-cv-219-JF-HRL, 2010 WL 3835655, at *3 (N.D. Cal. Sept. 28, 2010); thus, the ultimate merit of Plaintiffs' case turns, as it has from the outset, on a factual determination as to the degree of risk that a condemned inmate will not be or remain sufficiently anesthetized by the first drug when the second and third drugs are administered.

Pursuant to Court order, Plaintiffs recently have amended their complaint to "set[] forth their claims with respect to California's new lethal-injection regulations." (Doc. No. 425 at 1.) In response, and as permitted by Federal Rule of Civil Procedure 12(b)(6), Defendants now move to dismiss portions of Plaintiffs' amended pleading, (Doc. No. 428), for failure to state a claim upon which relief can be granted:

> (1) Plaintiffs' facial challenge to the State of California's written regulations governing the administration of the death penalty by use of lethal injection; and (2) Plaintiffs' attempt to allege a claim that, under the standard for adopting an alternative execution protocol set forth in *Baze v. Rees*, 553 U.S. 35, 61 (2008), there exists a known and available alternative to California's regulations as written which, in comparison to California's regulations, significantly reduces a substantial risk of severe pain.[1]

(Doc. No. 430 at 7.) The Court has read the moving and responding briefs and has considered the oral arguments of counsel presented on December 2, 2010. For the reasons set forth herein, the partial motion to dismiss will be denied. At the same time, the Court will exercise its supervisory powers to limit the scope of the instant proceedings—and particularly the scope of discovery—so that the merits of Plaintiffs' claims may be resolved as expeditiously as possible.[2]

---

[1] Defendants do not seek dismissal to the extent that Plaintiffs assert an as-applied challenge to the new protocol.

[2] Plaintiffs' complaint contains only a single count of an alleged violation of the Constitution. (Doc. No. 428 at 49–56.) Although the instant motion parses this count into three separate claims, the Supreme Court recently has observed that "the distinction between facial and as-applied challenges is not so well defined . . . that it must always control the pleadings and disposition in every case involving a

2

I

A

As the Court has noted repeatedly throughout the instant litigation, neither the constitutionality of the death penalty, nor the constitutionality of lethal injection *per se* as a method of execution, is at issue in the present action. The action does not present the question of "whether the death penalty makes sense morally or as a matter of policy," *Morales 290* at 973, or of whether Plaintiffs' convictions and death sentences are just and appropriate, *see, e.g.*, *id.* at 974. Both Plaintiffs have been convicted of and sentenced to death for truly heinous crimes. Their convictions and sentences have been affirmed on appeal and have survived literally decades of both state and federal collateral review. *Morales v. Woodford*, 388 F.3d 1159 (9th Cir. 2004); *Brown v. Ornoski*, 503 F.3d 1006 (9th Cir. 2007). The present action involves only the means by which Plaintiffs will be executed.

B

It also must be emphasized at the outset that the specific issue raised by a motion to dismiss is *not* whether a claim ultimately has merit. Rather, the only determination that the Court is permitted to make at this point is procedural: whether Defendants have shown beyond doubt that the Court could not grant any relief no matter what Plaintiffs are able to prove. *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987); *Rodriguez v. Cal. Hwy. Patrol*, 89 F. Supp. 2d 1131, 1134–35 (N.D. Cal. 2000). The Court may dismiss a claim for failure to state a claim upon which relief can be granted for

---

constitutional challenge." Although in some ways "[t]he distinction is both instructive and necessary," this is because "it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876, 893 (2010). Even if the Court were to dismiss Plaintiffs' facial challenge, "that would not prevent the Court from . . . addressing the facial validity," *id.* at 892, of the lethal-injection protocol. Accordingly, the dismissal of a facial challenge while retaining an as-applied challenge would be a meaningless exercise. Similarly, as explained below, Plaintiffs' argument regarding the availability of alternative lethal-injection procedures is not properly characterized as a separate claim. "Rather, it is—at most—a new argument to support what has been a consistent claim," *id.* at 893 (internal quotation marks and brackets omitted), to wit, that California's lethal-injection protocol violates Plaintiffs' right "to be free from cruel and unusual punishment and to be free from arbitrary and capricious procedures," (Doc. No. 428 at 49; *see id.* at 51, 53).

3

only two reasons: (1) lack of a cognizable legal theory; or (2) failure to allege sufficient facts under a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984). Moreover, even if the Court were to grant the instant motion, Plaintiffs' claim that the new regulations are unconstitutional as applied, the sufficiency of which is not challenged by Defendants, would proceed.

For present purposes, the Court is required to assume, without deciding, the truth of all of the factual allegations in Plaintiffs' complaint, and to construe those allegations in the light most favorable to Plaintiffs. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987). In particular, "[c]ivil rights complaints are to be liberally construed," and need only comply with Federal Rule of Civil Procedure 8(a), *Buckey v. Cnty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992), which provides that a complaint "must contain . . . a short and plain statement of the claim showing the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted) (construing Fed. R. Civ. P. 8(a)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007) (same). The Court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in a complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

In light of this standard, motions to dismiss are viewed with disfavor and rarely are granted. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Moreover, when a claim is dismissed, leave to amend must be granted unless it is clear that amendment cannot cure the complaint's deficiencies. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

II

A

Kevin Cooper was the first condemned prisoner to challenge the constitutionality of California's lethal-injection protocol in this Court . *Cooper v. Rimmer*, No. 5-4-cv-436-JF, 2004 WL 231325 (ND. Cal. Feb. 6), *aff'd*, 379 F.3d 1029 (9th Cir. 2004). Cooper filed his action a

mere eight days before he was scheduled to be executed, which left no time before his execution to develop a factual record with respect to the eight lethal-injection executions that California had conducted previously. The Court found that Cooper had "done no more than raise the possibility that California's lethal-injection protocol unnecessarily risks an unconstitutional level of pain and suffering." 2004 WL 231325, at *4. Accordingly, the Court concluded that Cooper had "not met his burden of demonstrating" his entitlement to a stay of his execution. *Id.*, at *3.

The United States Court of Appeals for the Ninth Circuit affirmed, holding that Cooper had fallen "far short of showing that he is subject to an unnecessary risk of unconstitutional pain or suffering. . . ." 379 F.3d at 1033. Judge Browning concurred, noting that the circuit panel had determined "only that the district court did not abuse its discretion in applying the law to the factual record before it." *Id.* at 1034 (Browning, J., concurring). Judge Browning observed that the ultimate outcome of the case might well be different were the case to proceed to trial, in part "'because the fully developed factual record may be materially different from that initially before the district court.'" *Id.* (quoting *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982)).[3]

The next prisoner scheduled for execution in California, Donald J. Beardslee, also filed a challenge to California's lethal-injection protocol. *Beardslee v. Woodford*, No. 5-4-cv-5381-JF, 2005 WL 40073 (N.D. Cal. Jan. 7), *aff'd*, 395 F.3d 1064 (9th Cir. 2005). Beardslee initiated his action thirty days before his scheduled execution. Although Beardslee had "been somewhat more diligent" than Cooper and had submitted additional evidence, the Court found once again that there was insufficient time to develop a complete factual record prior to the execution. 2005 WL 40073, at *2. It concluded that, like Cooper, Beardslee had "done no more than raise a concern that errors may be made during his execution that could expose him to a risk of unnecessary pain. Based upon the . . . record" then before it, the Court determined that "a

---

[3] For reasons unrelated to his lethal-injection challenge, Cooper was not executed as scheduled, and the Court ultimately dismissed his complaint without prejudice for failure to exhaust administrative remedies. *Cooper v. Woodford*, No. 5-4-cv-436-JF (N.D. Cal. Oct. 14, 2004) (Doc. No. 33), *aff'd*, No. 04-99001 (9th Cir. Aug. 11, 2005).

5

finding that there is a reasonable possibility that such errors will occur would not be supported by the evidence." The Court concluded that Beardslee's action thus was "materially indistinguishable from *Cooper*," and it declined to issue a stay of execution. *Id.*, at *3.

The Court of Appeals again affirmed, noting that "the question before us is not the ultimate resolution of the merits of this issue. That will have to await another day, based on a full record." 395 F.3d at 1076. Although in the panel's view the evidence submitted by Beardslee "raise[d] extremely troubling questions about the protocol," *id.* at 1075, the determinative question was "whether, in this specific challenge, [Beardslee] has shown enough of a likelihood that he will be conscious during the administration of pancuronium bromide and potassium chloride to experience pain," *id.* at 1076. The court concluded that, "[o]n this limited record, he has not made that showing," *id.*, pointedly observing that it "express[ed] no opinion on the ultimate merits of the claims," *id.* at 1077.[4]

Plaintiff Michael Angelo Morales initiated the present action, which is the third challenge to California's lethal-injection protocol, on January 13, 2006,[5] shortly before the scheduling of his execution (which thereafter was scheduled for February 21, 2006), and accordingly there was sufficient time for at least some discovery.[6] For this reason, "the record in the present action [was] substantially more developed than the record in *Cooper* or *Beardslee*." *Morales v. Hickman* (*Morales 62*), 415 F. Supp. 2d 1037, 1043 (N.D. Cal.), *aff'd*, 438 F.3d 926 (9th Cir. 2006). The record evidence at the time of the hearing on Morales's motion for a preliminary injunction supported a finding that "inmates' breathing may not have ceased as expected in at least six [lethal-injection] executions." As a result, and for the first time, the Court had "at least some doubt as to whether the protocol actually is functioning as intended." 415 F. Supp. 2d at 1045. However, though it found that Morales had "raised more substantial questions than his

---

[4] Beardslee subsequently was executed as provided in OP 770. The next two prisoners executed, Stanley "Tookie" Williams and Clarence Ray Allen, did not file challenges to the protocol.

[5] The first document he filed was his original complaint. (Doc. No. 1.)

[6] Morales thereafter amended his complaint. (Doc. No. 51.)

counterparts in *Cooper* and *Beardslee*," *id.* at 1046, the Court nonetheless denied Morales a stay of execution, on the condition that Defendants conduct the execution either using "only sodium thiopental or another barbiturate or combination of barbiturates" or with the involvement of an anesthetist or an anesthesiologist, *id.* at 1047.

Once again, the Court of Appeals affirmed. 438 F.3d 926. The court observed that "[u]nlike the earlier challenges to [OP] 770, in this case the district court had a more developed record, including evidence from executions subsequent to and including Beardslee's." *Id.* at 930. That record supported the finding that Morales, unlike Cooper and Beardslee, had "shown sufficient likelihood that the administration of the sodium thiopental will be improper in his case. . . .'" *Id.* (quoting *Beardslee*, 395 F.3d at 1076) (internal brackets omitted).

As recounted in *Morales 290*, Morales was not executed, and a stay of execution issued. 465 F. Supp. 2d at 976–77.[7] Shortly thereafter, Defendants revised OP 770.[8] *Id.* at 977. Over the next several months, the parties engaged in substantial fact discovery, and the Court "conducted five days of formal hearings, including a day at San Quentin State Prison that involved a detailed examination of the execution chamber and related facilities." *Id.* at 974. These proceedings yielded "a mountain of documents, including hundreds of pages of legal briefs, expert declarations, and deposition testimony." *Id.* This Court found that the factual record, "particularly as it has been developed through discovery and the evidentiary hearing, [was] replete with evidence that in actual practice OP 770 [did] not function as intended. The evidence show[ed] that the protocol and Defendants' implementation of it suffer[ed] from a number of critical deficiencies," *id.* at 979, several of which the Court discussed at some length, *id.* at 979–81. The Court found that there was a "pervasive lack of professionalism in the implementation of OP 770" as well as "systemic flaws in the implementation of the protocol."

---

[7] Defendants initially retained two anesthesiologists to be present at the execution. After the anesthesiologists declined to go forward at the eleventh hour, Defendants sought and obtained an order permitting them to execute Morales using only sodium thiopental, but they were unable or chose not to comply with certain terms of that order.

[8] Consequently, Mr. Morales filed his second amended complaint. (Doc. No. 131.)

*Id.* at 980.  It noted that "[w]hatever the merits of the protocol in the abstract, there can be no real doubt that Defendants' implementation of OP 770 has major flaws." *Id.* at 981.  The Court concluded that

> Defendants' implementation of California's lethal-injection protocol lacks both reliability and transparency.  In light of the substantial questions raised by the records of previous executions, Defendants' actions and failures to act have resulted in an undue and unnecessary risk of an Eighth Amendment violation.  This is intolerable under the Constitution.

*Id.*

At the same time, the Court found that "the deficiencies in the protocol appear to be correctable." *Id.* at 982; *see also id.* at 974 ("Defendants' implementation of lethal injection is broken, but it can be fixed.").  Rather than simply enter judgment for Plaintiffs, the Court therefore "respectfully . . . urge[d] the Governor's Office to take this opportunity to address seriously now, rather than later, the significant problems with OP 770 and its implementation."

The Governor's Office accepted the Court's invitation, and on May 15, 2007, Defendants issued a new version of OP 770.[9] (Docs. Nos. 317–18.)  Discovery then resumed, and the Court scheduled an evidentiary hearing for December of that year.  (*See* Doc. No. 319.)  However, on October 31, 2007, a state trial court imposed a moratorium on executions in California "based on its conclusions that Defendants were required to and did not comply with California's Administrative Procedures Act when they promulgated the protocol." (Doc. No. 370 at 1 (citing *Morales v. Cal. Dep't of Corr. & Rehab.*, No. CV061436 (Cal. Super. Ct. Marin Cnty. Oct 31, 2007) (internal citation omitted)).)  Because California no longer had an operative protocol for this Court to review, "all parties filed a statement with this Court whereby they jointly request[ed] that discovery be stayed and that the present case-management schedule be vacated." (Doc. No. 370 at 1–2.)  The Court responded that "[w]ithout making any findings or reaching any conclusions as to the appropriateness of or need for any changes to the schedule in this action, the Court will defer to the request made by the parties." (*Id.* at 2.)  The state-court litigation

---

[9] Morales filed his third amended complaint to reflect the new version of the protocol.  (Doc. No. 323.)

ultimately led to the promulgation of the regulations now at issue. Active litigation in the present action then resumed.[10]

B

While the state-court moratorium on executions was in effect, the Supreme Court decided *Baze v. Rees*, 553 U.S. 35 (2008). *Baze* involved a constitutional challenge to Kentucky's lethal-injection protocol, which uses the same three drugs used in California, *id.* at 44 (plurality op.), and the case clarified the standard that federal courts must apply to a constitutional challenge to an execution protocol. Prior to *Baze*, courts in the Ninth Circuit were required to determine whether an execution protocol subjected a prisoner to an "unnecessary risk of unconstitutional pain." *Cooper*, 379 F.3d at 1033. This Court was obligated to apply that standard in *Morales 290* in determining whether Morales had carried his burden of proof. However, Chief Justice Roberts, writing for the plurality in *Baze*, explicitly rejected an "unnecessary risk" standard. 553 U.S. at 51 (plurality op.). Plaintiffs now must establish that California's lethal-injection protocol "creates a demonstrated risk of severe pain. [They] must show that the risk is substantial when compared to the known and available alternatives." *Id.* at 61. The plurality also observed that "a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard." *Id.*

Although "[t]he trial court held extensive hearings and entered detailed" factual findings, *id.* at 41, the record in *Baze* included evidence only with respect to the one lethal-injection execution that Kentucky had conducted, in which there had been "no reported problems," *id.* at 46. As this Court has noted elsewhere, "the factual record before the Supreme Court [in *Baze*] was virtually nonexistent." *Morales 424*, 2010 WL 3835655, at *3. Indeed, that record plainly was *less* developed even than the records in *Cooper* and *Beardslee*. Like this Court in *Cooper* and *Beardslee*, the Supreme Court held that, on the facts before it, the prisoners had "not carried

---

[10] This included Albert Greenwood Brown's intervention in the present action and the conditional denial of a stay of his execution, *Morales v. Cate* (*Morales 401*), No. 5-6-cv-219-JF-HRL, 2010 WL 3751757 (N.D. Cal. Sept. 24, 2010); the subsequent issuance of a stay of Brown's execution, *Morales 424*, 2010 WL 3835655; and the filing of Plaintiffs' fourth amended complaint to reflect the current version of the protocol, (Doc. No. 428).

9

their burden of showing that the risk of pain from maladministration of a concededly humane lethal injection protocol, and the failure to adopt untried and untested alternatives, constitute cruel and unusual punishment." *Id.* at 41; *see also id.* at 53–54 (prisoners "have not shown" a substantial risk of serious problems).

The *Baze* plurality also commented explicitly on the difference that a developed record could make. It observed that, in a case with a slight record, "an isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty, or that the procedure at issue gives rise to a substantial risk of serious harm." *Id.* at 50. But it also recognized that a pattern of serious problems during executions "—unlike an innocent misadventure—would demonstrate an objectively intolerable risk of harm that officials may not ignore." *Id.*

Because the *Baze* petitioners could not identify even "an isolated mishap" during Kentucky's only lethal-injection execution, it is not surprising that they were unable to "show[] that the risk of an inadequate dose of [sodium thiopental] is substantial." *Id.* at 54. The plurality accepted the Kentucky trial court's finding, based solely on expert testimony, that the risk of improper preparation of sodium thiopental was minimal, in part because such preparation is not particularly difficult. *Id.* at 54. Similarly, the plurality rejected concerns related to the intravenous lines used to administer the drugs in light of "several important safeguards to ensure that an adequate dose of sodium thiopental is delivered to the condemned prisoner." These safeguards include requirements that members of the IV team have sufficient qualifications, *id.* at 45, 55–56, and at least one year of relevant medical professional experience (the plurality described this as the "most significant" safeguard), *id.* at 45, 55; that the entire execution team participate in at least ten practice sessions per year, each encompassing "a complete walk-through of the execution procedures," *id.*; that the IV team have ample time to establish primary and backup lines, and to prepare two sets of the drugs, *id.*; and that the warden and deputy warden be present in the execution chamber both to observe the prisoner and to watch for signs of the proper administration of the sodium thiopental along with any IV problems, *id.* at 45–46, 56. The plurality concluded that "[i]n light of these safeguards, we cannot say that the risks

identified by [the petitioners] are so substantial or imminent as to amount to an Eighth Amendment violation." *Id.* In short, the plurality assumed that the sodium thiopental would function as intended, as there was no evidence to the contrary.

The Kentucky trial court's factual findings, based on this limited record, stand in sharp contrast to this Court's factual findings in *Morales 290*, which were based on a voluminous record that included evidence with respect to eleven lethal-injection executions, the majority of which appeared to have had significant problems. Among other deficiencies in OP 770, the Court found, in large part on the basis of undisputed evidence, that the execution team improperly mixed, prepared, and administered sodium thiopental during executions, 465 F. Supp. 2d at 980; that members of California's execution team were insufficiently qualified, *id.* at 979; that the IV team members were "not adequately prepared to deal with any complications that may arise," *id.*; that the walk-throughs in which the execution team participated were incomplete, and the team did not receive meaningful training, *id.*; that the IV team did not always prepare a backup line, *id.*; and that the physical conditions in which executions were carried out did not permit effective observation of the condemned inmate, *id.* at 980.

Accordingly, when it recently was directed by the Court of Appeals to apply the *Baze* standard to the record developed in *Morales 290*, the Court found that Morales had shown that California's former lethal-injection protocol created a substantial risk of severe pain.

> This finding [was] based on the entire record, *see Morales* [*290*], 465 F. Supp. 2d 972; on the largely undisputed evidence presented at the hearing; on Defendants' stipulation that injection of the second and third drugs in the three-drug protocol (pancuronium bromide and potassium chloride) without adequate anesthesia will cause an unconstitutional level of pain; on the fact that data in Defendants' execution logs indicate that sodium thiopental did not have its expected effect or function as expected in 64% of lethal-injection executions pursuant to the protocol; and in particular on the testimony of Defendants' own medical expert, Dr. Singler, that in at least one execution the inmate likely was awake when the second and third drugs were injected, and that the only reason that the anesthesiologist could not render a definitive opinion was the apparent unreliability of Defendants' records, *id.* at 980.

*Morales 424*, 2010 WL 3835655, at *2.

III

A

Defendants' arguments with respect to Plaintiffs' facial challenge essentially are the same as they asserted in opposition to Brown's application for a stay of execution. *See Morales v. Cate* (*Morales 401*), No. 5-6-cv-219-JF-HRL, 2010 WL 3751757, at *4 (N.D. Cal. Sept. 24, 2010); *Morales 424*, 2010 WL 3835655, at *3. Defendants contend that a facial challenge to the new regulations is not cognizable because the regulations "are substantially similar to or exceed comparable aspects of the Kentucky protocol upheld in *Baze*." (Doc. No. 430 at 18.) The bulk of Defendants' briefing is a side-by-side comparison of written provisions of the two protocols that demonstrates substantial similarity. (*Id.* at 4–14, 19–24.) Defendants argue that this comparison should be both the beginning and the end of the present inquiry in light of the statement by the *Baze* plurality that "a lethal injection protocol substantially similar" to Kentucky's "would not create" "a demonstrated risk of severe pain." 535 U.S. at 61 (plurality op.).

Indeed, standing alone, this statement would appear to obviate the need for any factual development with respect to a protocol that on paper is "substantially similar" to Kentucky's. However, the remainder of the plurality opinion does not support that reading. In its actual context, the statement simply stands for the unremarkable proposition that a protocol substantially similar to Kentucky's cannot in and of itself give rise to an Eighth Amendment claim. Nothing in *Baze* evidences the plurality's intent to foreclose all future facial challenges to protocols that appear substantially similar to Kentucky's, even if they are fact-based and even where as here there is substantial evidence that similar prior protocols have been deficient in actual practice.

Defendants also contend that the new protocol has remedied any deficiencies in OP 770 by adding significant new safeguards. That well may be true, as Defendants have undertaken a major upgrade of their execution-related facilities and there are a number of important differences between the current and former versions of the protocol. (*See* Doc. No. 449 at 7–12 (comparing and contrasting versions of the protocol).) But, as the Court previously has noted,

Plaintiffs have raised "substantial questions" of fact concerning the efficacy of these changes, *Morales 424*, 2010 WL 3835655, at *4, and at the pleading stage Plaintiffs' detailed factual allegations as to the various ways in which the new regulations allegedly have failed to remedy the deficiencies of OP 770, (*e.g.*, Doc. No. 428 at 38–46), cannot simply be dismissed as implausible. While Defendants very well may prevail on the merits, particularly given the high legal threshold for lethal-injection claims established by *Baze*, the Court must accept the allegations as true for purposes of a motion to dismiss.

B

Defendants also seek dismissal of Plaintiffs' "claim that, under the standard for adopting an alternative execution protocol set forth in *Baze v. Rees*, 553 U.S. 35, 61 (2008), there exists a known and available alternative to California's regulations as written which, in comparison to California's regulations, significantly reduces a substantial risk of severe pain." (Doc. No. 430 at 7.) As Chief Justice Roberts wrote for the plurality,

> [A] condemned prisoner cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative. . . . [¶] Instead, the proffered alternatives must effectively address a substantial risk of harm. To qualify, the alternative procedure must be feasible, readily implemented, and in fact significantly reduce a substantial risk of severe pain. If a State refuses to adopt such an alternative in the face of these documented advantages, without a legitimate penological justification for adhering to its current method of execution, then a State's refusal to change its method can be viewed as cruel and unusual under the Eighth Amendment.

553 U.S. at 51–52 (plurality op.) (internal quotation marks and citation omitted).

The *Baze* petitioners claimed conclusorily that "Kentucky could switch from a three-drug protocol to a one-drug protocol by using a single dose of sodium thiopental or other barbiturate." *Id.* at 56. However, this alternative was suggested for the first time in briefing before the Supreme Court, and thus the trial court made no factual findings regarding its effectiveness. *Id.* at 56–57. The plurality found it significant that "no other State has adopted the one-drug method[11] and [the prisoners] proffered no study showing that it is an equally effective manner of

---

[11] Subsequent to *Baze*, both Ohio and Washington formally adopted a single-drug protocol.

13

imposing a death sentence." *Id.* at 57. For these reasons, the plurality concluded that "the comparative efficacy of a one-drug method of execution is not so well established that Kentucky's failure to adopt it constitutes a violation of the Eighth Amendment." *Id.* The *Baze* petitioners also suggested various steps that could be taken to ensure proper delivery of the sodium thiopental prior to and during the administration of the other two drugs, including a consciousness check. *Id.* at 58–60. However, the plurality already had determined that the prisoners had "not shown that the risk of an inadequate dose of the first drug is substantial," *id.* at 54, and it held that "an inmate cannot succeed on an Eighth Amendment claim simply by showing one more step the State could take as a failsafe for other, independently adequate measures," *id.* at 60–61.

Contrary to Defendants' contentions, (Doc. No. 430 at 24–25), Plaintiffs' amended complaint is sufficiently specific with respect to available alternative procedures to address the concerns articulated by the Chief Justice and thus to survive a motion to dismiss. In particular, Plaintiffs note that twice in the course of the instant proceedings Defendants themselves have agreed that a single-drug protocol using only sodium thiopental is feasible and readily implemented,[12] (Doc. No. 428 at 47); Plaintiffs also allege (and it is the case) that such a protocol has been successfully implemented in Ohio and Washington since *Baze* was decided, (*id.*). Such allegations are not merely "vague references" to alternative procedures. (Doc. No. 430 at 25.) Again, given the minimal showing Plaintiffs are required to make in opposition to a motion to dismiss, they are sufficient for present purposes.[13]

## IV

Good cause appearing therefor, Defendants' requests for judicial notice are granted, Plaintiffs' objections thereto are overruled, Defendants' partial motion to dismiss is denied, and

---

[12] Defendants agreed to use only sodium thiopental to execute both Morales, (Doc. No. 73), and Brown, (Docs. Nos. 394, 404).

[13] In *Morales 290*, the Court observed, inter alia, that a one-drug "lethal-injection protocol, with the execution accomplished solely by an anesthetic, such as sodium pentobarbital, would eliminate any constitutional concerns, subject only to the implementation of adequate, verifiable procedures to ensure that the inmate actually receives a fatal dose of the anesthetic." 465 F. Supp. 2d at 983.

the stay of discovery previously entered is lifted.  However, for the very reason that it concludes that Plaintiffs are entitled to pursue the two aspects of their claims that are the subject of the instant motion—the existence of an extensive, well-developed factual record—the Court intends to monitor closely the scope and pace of any additional discovery so that the merits of Plaintiffs' claims can be adjudicated promptly.  The Court will hold a status conference for that purpose on December 17, 2010, at 10:30 a.m.

    IT IS SO ORDERED.

DATED:  December 10, 2010

_____
JEREMY FOGEL
United States District Judge

Case Nos. 5-6-cv-219-JF-HRL & 5-6-cv-926-JF-HRL
ORDER RE PARTIAL MOTION TO DISMISS
(DPSAGOK)