

**KAMALA D. HARRIS**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public: (415) 703-5500
Telephone: (415) 703-5726
Facsimile: (415) 703-5843
E-Mail: Michael.Quinn@doj.ca.gov

February 18, 2011

The Honorable Jeremy Fogel
United States District Court
Northern District of California
280 South First Street
San Jose, CA 95113

RE: *Michael Angelo Morales v. James Tilton, et al.*, No. 06-219-JF
*Pacific News Service v. James Tilton, et al.*, No. 06-1793-JF

Dear Judge Fogel:

     Defendants Cullen, Cate, and Brown submit this letter brief to address the impact that the recent decision in *Dickens v. Brewer*, No. 09-16539, 2011 U.S. App. LEXIS 2543 (9th Cir. Feb. 9, 2011) has on a variety of issues in this case, including Defendants' pending motion to strike, their motion for protective order, and the scope of discovery.

     As explained more fully below, the *Dickens* opinion, which upheld the constitutionality of Arizona's three drug lethal-injection protocol, establishes that Plaintiffs cannot merely point to events that allegedly occurred during previous executions to demonstrate that California's current lethal-injection regulations violate the Eighth Amendment. To the contrary, Plaintiffs face the "uphill battle" of demonstrating that there is a substantial risk that they will be improperly anesthetized despite the regulation's safeguards, which exceed those in the Kentucky protocol upheld in *Baze v. Rees*, 553 U.S. 35 (2008). *Dickens*, 2011 U.S. App. LEXIS 2543, *17. Accordingly, Plaintiffs' discovery requests and any additional proceedings in this case should be limited to the qualifications and training of the current Lethal Injection Team, and whether there is a substantial risk that California will implement the regulations in an unconstitutional manner.

     In addition, the opinion rejects the claim that lethal-injection regulations can be declared unconstitutional because a one-drug protocol is a proven alternative. *Id.* at *28-*29. Unless this Court determines that the current regulations create a substantial risk of serious harm, California cannot be required to adopt a one-drug protocol, even if such a protocol is feasible and arguably "safer" than the current regulations. *Id.*

/ / /

The Honorable Jeremy Fogel
February 18, 2011
Page 2

I.   Summary of the *Dickens* Decision

   A.   Dickens's Claims.

   In 2007, Gregory Dickens, a death row inmate in Arizona, brought an action under 42 U.S.C. § 1983, asserting that Arizona's three-drug-lethal-injection execution protocol violated the Eighth Amendment because of the risk of improper anesthetization. *Dickens*, 2011 U.S. App. LEXIS 2543, *2. Following the issuance of the *Baze* decision, the district court granted summary judgment in favor of Arizona. *Id*. The court held that the protocol contained sufficient safeguards to protect against improper anesthetization, and thus was constitutional under the *Baze* standard. *Id*.

   On appeal, Dickens's central assertion was that "evidence gathered during discovery raises issues of fact as to whether Arizona will follow the protocol and ensure that the existing safeguards are properly implemented." *Id*. at *3. Dickens claimed that the evidence obtained during discovery suggested that Arizona was incapable of—or not interested in—hiring competent individuals to serve on the execution teams and adhere to the protocol's procedures during an execution. *Id*. at *16. According to Dickens, if Arizona did not follow its protocol, there was a substantial risk that he would be inadequately anesthetized when the pancuronium bromide and potassium chloride were administered. *Id*.

   B.   "Safe Harbor" Under *Baze* and Dickens's Claim of "Substantial Risk."

   In its decision, the Ninth Circuit noted that *Baze* created a "safe harbor" for lethal-injection protocols that are substantially similar to Kentucky's protocol. *Id*. The court stated that Arizona's protocol fell within the safe harbor because it incorporated even more safeguards against the maladministration of sodium thiopental than Kentucky's protocol. *Id*.

   Dickens's appeal asked the court to look beyond the protocol's facial constitutionality to consider whether there was a substantial risk that it would be implemented in an unconstitutional manner. *Id*. at *17. The court observed that Dickens faced an "uphill battle" to succeed on that argument, and stated that he was required to raise issues of fact about whether there was a substantial risk that he would be improperly anesthetized despite the protocol's safeguards. *Id*. In addition, the evidence would have to show more than a single accident, mistake, or failure to follow the protocol. *Id*. at *18.

   The court ultimately rejected Dickens's argument that past missteps by Arizona in hiring and training execution-team members raised an issue of fact about whether Arizona would hire competent team members in the future. *Id*. at *21. According to the court, Arizona's hiring of unqualified execution-team members before the protocol was in place, and its failure to interview and screen one team member after the protocol was in place, did not create issues of fact about whether Arizona would do the same when operating under the new protocol. *Id*.

/ / /

### C. The Implementation of the Execution Procedures and the "Additional Safeguards" Issue.

The Ninth Circuit also rejected Dickens's argument that evidence of problems that Arizona had in administering chemicals during a 2007 execution cast doubt on the state's ability or willingness to follow the procedures set forth in its current protocol. *Id.* at *24-*25. According to the court, even if the evidence suggested that Arizona's past execution procedure had created a substantial risk of harm, that evidence, alone, would not establish an issue of fact about whether such a risk existed under the state's current protocol. *Id.* at *25.

The court further noted that the Arizona protocol contained more safeguards than the Kentucky protocol, and there was no evidence that Arizona would fail to follow them in future executions. *Id.* at *26-*27. Therefore, Dickens's argument that there was a risk that he would be improperly anesthetized if the state failed to adopt additional safeguards was too remote and attenuated to raise a question of fact regarding the protocol's constitutionality. *Id.* at *27.

### D. Arizona's Decision Not to Adopt a One-Drug Protocol.

The Ninth Circuit also recognized that under *Baze*, the decision not to adopt an alternative protocol establishes an Eighth Amendment violation only if the current protocol creates a substantial risk of serious harm that the alternative protocol will reduce. *Id.* at *28-*29. Because the Arizona protocol did not create a substantial risk of serious harm, the state was not required to adopt a one-drug protocol, even if there was evidence that it was safe and feasible. *Id.*

## II. The *Dickens* Decision Narrows the Scope of the *Morales* Litigation.

The *Dickens* decision clarifies several issues in this case, beginning with whether California's lethal-injection regulations fall within the "safe harbor" created in *Baze*. *Dickens* emphasizes that *Baze* created a "safe harbor" for protocols that are substantially similar to Kentucky's protocol. *Id.* at *16. As with the Arizona protocol, California's lethal-injection regulations incorporate more safeguards against the maladministration of sodium thiopental than Kentucky's protocol. For example, the Kentucky protocol approved by the Supreme Court simply required that a warden and deputy warden observe the inmate for consciousness during an execution, and did not require any specialized procedures in this regard. *Baze*, 553 U.S. at 58-60. By contrast, as was noted by Justice Ginsberg in her dissent in *Baze*, California's consciousness check, consisting of brushing an inmate's eyelashes, speaking to the inmate and shaking him at both the halfway point and, again, at the completion of the sodium thiopental injection, exceeds Kentucky's method of monitoring consciousness. *Id.* at 120-21. Accordingly, because the safeguards in California's regulations are superior to those in Kentucky's protocol, the lethal-injection regulations are facially constitutional as a matter of law.

The Honorable Jeremy Fogel
February 18, 2011
Page 4

Under *Dickens*, because California's lethal-injection regulations fall within *Baze's* safe harbor, Plaintiffs, to prevail in this action, must establish that there is a substantial risk that they will be implemented in an unconstitutional manner. As in *Dickens*, Plaintiffs face an "uphill battle" in succeeding on this argument. The Ninth Circuit's opinion recognized that Arizona's previous hiring of individuals who were unqualified to serve as execution team members did not create an issue of fact regarding whether Arizona would engage in similar conduct under the new protocol. *Dickens*, 2011 U.S. App. LEXIS 2543, *21. Moreover, the court noted that evidence of Arizona's past execution procedures creating a substantial risk of harm, alone, would not establish a question of fact about whether such a risk existed under its current protocol. *Id.* at *25. The court emphasized that point by noting the Eighth Circuit's decision in *Nooner v. Norris*, 594 F.3d 592, 602 (8th Cir. 2010), which stated that even if Arkansas had engaged in a series of abortive execution attempts under previous protocols, the record did not "establish a genuine issue of material fact about whether inmates will remain conscious . . . under the current protocol." *Id.*

Both the *Dickens* decision, and the language it refers to from *Nooner*, establish that alleged problems with administering chemicals during past executions are insufficient to cast doubt on California's willingness and ability to follow the procedures in the current regulations. Although a significant portion of both Plaintiffs' Fourth Amended Complaint and discovery requests concern events from 2006 and 2007, and seek information from the Governor's Office and CDCR regarding the drafting of the regulations, *Dickens* demonstrates that those issues do not rise to the level of constitutional significance. *Id.* at *25. To the contrary, *Dickens* establishes that Plaintiffs cannot rely on events during past executions—which used a lethal-injection protocol that is no longer in effect—to raise issues of fact about whether "there is a substantial risk that [they] will be improperly anesthetized *despite*" the current regulations' safeguards. *Id* at *17, *25 (emphasis in original).

The *Dickens* decision addresses several other issues in the *Morales* action. The court noted that where an execution protocol contains sufficient safeguards, the risk of not adopting an additional safeguard is too "remote and attenuated" to give rise to a substantial risk of serious harm. *Dickens*, 2011 U.S. App. LEXIS 2543, *27. Accordingly, Plaintiffs cannot raise questions of fact about the regulations' constitutionality by merely asserting that there are additional safeguards that California could take "as a failsafe for other, independently adequate measures." *Id.* at *26-*27.

Moreover, the Ninth Circuit recognized that the mere fact that a one-drug approach is a proven alternative did not render the Arizona protocol unconstitutional. *Id.* at *28-*29. According to the court, a state's decision not to use an alternative protocol establishes an Eighth Amendment violation only if its current protocol creates a substantial risk of serious harm that the alternative will reduce. *Id.* Therefore, in this case, unless the Court determines that California's regulations create a substantial risk of serious harm, the state cannot be required to adopt a one-drug protocol, even if there is evidence that the alternative protocol is safer and feasible. *Id.*

The Honorable Jeremy Fogel
February 18, 2011
Page 5

### III. The *Dickens* Decision Establishes that Defendants' Pending Motion to Strike and Motion for Protective Order Should Be Granted.

*Dickens* concluded that evidence of past execution procedures creating a substantial risk of harm did not establish an issue of fact about whether such a risk exists under the current protocol. *Id.* at *25. That determination fully validates Defendants' arguments in the motion for protective order and motion to strike.

#### A. The Motion to Strike

In the motion to strike, Defendants contend that portions of the Fourth Amended Complaint are unrelated to whether California's implementation of the current lethal-injection regulations creates a substantial risk of severe pain to the inmates. Specifically, Defendants seek to strike allegations related to events in 2006 and 2007, when previous protocols were in effect, and allegations that attempt to cast aspersions on the manner in which the lethal-injection regulations and previous protocol were drafted, as well as the opinions and thought processes of the persons involved in the drafting. Defendants also target allegations concerning the planning, budgeting, and construction of the new lethal-injection facility.

The *Dickens* opinion confirms that the relevant inquiry in this case concerns how the lethal-injection regulations will be implemented in practice, not the history of the regulations' drafting, or the approval and funding process for the lethal-injection facility. Therefore, this Court should strike the immaterial and impertinent portions of the Fourth Amended Complaint that are described in the motion.

#### B. The Motion for Protective Order

In the motion for protective order, Defendants seek an order clarifying that the correct scope of discovery by Plaintiffs is limited to information that is either relevant to, or will lead to the discovery of relevant evidence pertaining to, whether California's current lethal-injection regulations will operate in a manner that will create a substantial risk of severe pain to an inmate during an execution.

Defendants object to discovery requests by Plaintiffs that seek three years of documents, going back to 2007, regarding every discussion, meeting, communication, evaluation, and decision, and everything ever reviewed, by the Governor's Office or CDCR, about the inclusion of each particular provision pertaining to the lethal-injection regulations. None of the discovery relates to whether California's regulations will operate in a manner that will create a substantial risk of serious harm in violation of the Eighth Amendment. Moreover, Plaintiffs' requests for additional documents about long-defunct execution protocols, communications regarding the setting of execution dates, and other topics, have nothing to do with how California's current lethal-injection regulations will work in practice, and cannot lead to the discovery of relevant evidence.

The *Dickens* decision recognized that even abortive execution attempts under previous protocols would not create a genuine issue of material fact about whether the inmate will remain conscious under the current protocol. *Dickens*, 2011 U.S. App. LEXIS 2543, *25. Accordingly, Plaintiffs should not be permitted to seek a broad range of discovery, covering a three-year period, when these requests have nothing to do with how the current lethal-injection regulations and execution team members will function during an execution. To the contrary, the discovery should be limited to the qualifications and training of the current Lethal Injection Team, and whether there is a substantial risk that California will implement the regulations in an unconstitutional manner. None of the discovery regarding the events of 2006 and 2007, long-defunct protocols, and documents related to the formation of the lethal-injection regulations, seeks information that is relevant or may lead to the discovery of relevant information.

### IV. Summary of Outstanding Discovery Issues

There are several discovery issues that must be resolved in this case, most notably: (1) Plaintiffs' failure to provide adequate responses to Defendants' contention interrogatories, (2) Plaintiffs' failure to verify their interrogatory responses, and (3) Plaintiffs' failure to obey this Court's December 17, 2010 order requiring them to disclose which one-drug alternatives to California's existing three-drug lethal-injection regulations will, if properly administered, execute a condemned inmate in a manner that complies with the Eighth Amendment. Although Plaintiffs bear the burden of proof, they have thus far stymied all attempts by Defendants to obtain discovery about their claims.

#### A. Plaintiffs Morales and Brown Have Given Non-Responsive Answers to Contention Interrogatories.

Plaintiffs responded to Defendants twenty contention interrogatories by failing to provide a responsive answer to Interrogatory No. 1, and then for each interrogatory thereafter directing Defendants to "See Response to Interrogatory No. 1."

Interrogatory No. 1 asks: "Do you contend that CDCR has violated any provision of the written Lethal-Injection Execution Regulations at any time from August 29, 2010, to the present?"[1] Plaintiffs can respond to this interrogatory by simply reviewing their Fourth Amended Complaint and providing an answer that specifies whether, in Plaintiffs' view, they made such allegations in their complaint. And if they have, they must disclose the facts,

---

[1] Interrogatories 2 through 20 seek to obtain further information about Plaintiffs' contentions, and the facts, witnesses, and documents that support their contentions. For example, Interrogatory No. 8 requests: "For each violation by CDCR of the written Lethal-Injection Execution Regulations identified by Plaintiffs, state all facts that demonstrate that the violation is very likely to cause Plaintiffs severe pain during their execution under the written Lethal-Injection Execution Regulations." Plaintiffs responded to each of these interrogatories by stating: "*See* Response to Interrogatory No. 1."

The Honorable Jeremy Fogel
February 18, 2011
Page 7

documents, and witnesses supporting this contention. Indeed, under Federal Rule of Civil Procedure 11, if Plaintiffs made such allegations, they were required to have had a good-faith basis for doing so. On the other hand, if Plaintiffs are *not* contending that Defendants violated the lethal-injection regulations, Plaintiffs are obligated to provide a forthright response in this regard.

Instead, Plaintiffs responded by claiming that information about their own contentions "is outside Plaintiffs' custody, possession, or control and is not available to Plaintiffs." Plaintiffs then provided a list of written discovery responses they want Defendants to supplement, and also stated that they want to conduct depositions before providing a substantive response to Defendants' written discovery requests. This type of response is improper. A party may not decide to hold their discovery responses "hostage" until they obtain discovery responses from defendant which meet their satisfaction." *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 (D.Md. 1997).

Plaintiffs' answers to Interrogatory Nos. 1 through 20 are evasive and nonresponsive. Contention interrogatories are beneficial in that they "can help pin down an opponent's legal theories in a case as well as the primary facts supporting them." *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 652 (D.Md. 1997). If Plaintiffs are contending in their Fourth Amended Complaint that Defendants have violated the lethal-injection regulations since they went into effect, they must stop feigning ignorance of their own contentions and instead state this fact. They must also answer the remaining interrogatories that seek the facts, witnesses, and the identification of documents, if any, that support such contentions.

In addition, Plaintiffs served baseless objections to one Interrogatory, No. 6. This interrogatory requires that Plaintiffs "[i]dentify each person who has knowledge of any violation by CDCR of the written Lethal-Injection Execution Regulations from August 29, 2010, to the present." In response, Plaintiffs direct Defendants to see their response to Interrogatory No. 1, but also object as follows: "vague, ambiguous, over broad, unduly burdensome, and calls for speculation." These objections are meritless. If Plaintiffs contend that CDCR violated the lethal-injection regulations, they must identify the persons who have knowledge of these violations so that Defendants can depose these individuals. And if Plaintiffs do not know of anyone who has knowledge of a regulatory violation by CDCR, Plaintiffs must state this fact.

Plaintiffs ought not to be allowed to pursue an "as applied" claim against Defendants while refusing to answer interrogatories that seek to determine whether they contend that Defendants have violated California's lethal-injection regulations. Plaintiffs should be ordered to provide substantive responses to Defendants' Interrogatories Nos. 1 through 20.

/ / /

/ / /

The Honorable Jeremy Fogel
February 18, 2011
Page 8

### B. Plaintiffs Morales and Brown Must Serve Verifications for Their Interrogatory Responses.

Plaintiffs' failure to serve verifications with their responses violates Federal Rule of Civil Procedure 33 (b)(5). This Court should order Plaintiffs Morales and Brown to verify their interrogatory responses.

### C. Plaintiffs Violated This Court's December 17, 2010 Disclosure Order.

At the December 17, 2010 status conference, this Court ordered Plaintiffs to disclose, by January 14, 2011, which particular one-drug alternative would, if properly implemented, comply with the Eighth Amendment. The Court explained that there were at least three different execution formulas in use, and that this was a fair question to ask of Plaintiffs. And Plaintiffs' counsel agreed to comply, as is seen on pages 22-23 of the transcript of this proceeding:

> The Court: . . . . I think what Mr. Goldman just phrased is actually something – I can't speak for Plaintiff's counsel, but it seems to me you are not conceding anything by saying that a properly implemented one-drug protocol, for instance, would be constitutional.[2] I think Plaintiff has already said that. So then it gets to be a little bit more because the key to that whole sentence is "properly implemented." So that – perhaps it would be helpful for you to answer that question however you choose to answer it because there may be one, there may be more than one. We've got – as I count we have at least three different formulas floating around now that have been used in executions.
>
> Mr. Grele: That's correct Your Honor.
>
> The Court: So I think that's a fair question, and I think you can answer it in a way that's consistent with your obligations to your client.
>
> Mr. Grele: I agree. We can make a real good response to that. I will look – I think they've asked it several times in their discovery.
>
> The Court: So by the 14th.

However, Plaintiffs did not comply with the Court's order. After repeated efforts by Defendants to have Plaintiffs provide the required disclosure ordered by the Court, Plaintiffs provided the attached letter on January 24, 2011. In this letter, Plaintiffs did not disclose which of the one-drug alternatives would, if properly implemented, comply with the Eighth

---

[2] Mr. Goldman had requested that "[p]erhaps on the 14th the Plaintiffs could voluntarily disclose just which of the – if any of the one-drug alternatives in their complaint would, if correctly implemented, comply with the 8th Amendment." Transcript of the December 17, 2010, Status Conference at 22:1-7.

Amendment. Instead, they stated: "In accordance with the Court's order and over our objection, the Plaintiffs submit that a single drug protocol, if properly implemented, could satisfy the Eighth Amendment ban on cruel and unusual punishment."

This response, like Plaintiffs' answers to Defendants' contention interrogatories, is evasive and inadequate. And contrary to Plaintiffs' assertion in their letter, they did not object to the Court's December 17, 2010 order that Plaintiffs disclose the specific one-drug formulas that would be constitutional alternatives, if properly implemented, to California's three-drug formula. To the contrary, Mr. Grele stated to the Court "I agree. We can make a real good response to that."

The Supreme Court requires that a plaintiff seeking to replace a provision of an existing execution protocol with an alternative measure must, among other things, prove that the alternative is feasible and readily available. *Baze*, 553 U.S. at 52. No alternative can be feasible if it violates the Constitution. Therefore, Plaintiffs should be ordered to immediately comply with the Court's prior order, and disclose which specific alternate drugs will, if properly administered during an execution, execute an inmate in a manner that complies with the Eighth Amendment.

If Plaintiffs continue to defy the Court's December 17, 2010, order, this Court ought to preclude Plaintiffs from claiming that a single-drug alternative ought to replace California's existing three-drug execution formula. Moreover, Defendants cannot properly prepare for an evidentiary hearing in this matter if Plaintiffs continue to disobey the Court's orders and the rules pertaining to discovery. Post-*Baze*, a challenger has the burden to show that a state has flouted the provisions of an execution protocol that meets or exceeds the safe harbor provisions established in *Baze*. *Dickens*, 2011 U.S. App. LEXIS 2543, *17-*18. Plaintiffs must disclose their contentions, and obey the Court's December 17, 2010 disclosure order.

**V.    Conclusion**

*Dickens* narrows the scope of the inquiry in the *Morales* action. The focus of discovery and any additional proceedings in the case should concern the qualifications and training of the current Lethal Injection Team, and whether there is a substantial risk that California will implement the regulations in an unconstitutional manner. Plaintiffs' attempts to expand the case into an examination of, among other things, long-defunct protocols and documents exchanged between the Governor's Office and CDCR during the drafting of the current regulations is contrary to *Dickens*, and should not be permitted by this Court.

*Dickens* also buttresses the claims in Defendants' motion to strike and motion for protective order. The motion to strike asserts that the portions of the Fourth Amended Complaint related to events in 2006 and 2007, and the construction of the lethal-injection facility, are unrelated to whether California's implementation of the current lethal-injection regulations creates a substantial risk of severe pain. The motion for protective order seeks to limit a number of discovery requests, including those that ask for information about interactions between the

The Honorable Jeremy Fogel
February 18, 2011
Page 10

Governor's Office and CDCR. Neither the portions of the Fourth Amended Complaint mentioned in the motion to strike nor the discovery requests at issue in the motion for protective order relate to whether California's regulations will operate in a manner that will create a substantial risk of serious harm in violation of the Eighth Amendment. Accordingly, those motions should be granted.

                                        Sincerely,

                                        MICHAEL J. QUINN
                                        Deputy Attorney General

                      For    KAMALA D. HARRIS
                              Attorney General

MJQ:

SF2007200210
20406306.doc

## CERTIFICATE OF SERVICE

Case Name:  **Michael Angelo Morales v. James Tilton, et al.**        No.   **C 06-0219 JF**

I hereby certify that on **February 18, 2011**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**LETTER BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **February 18, 2011**, at San Francisco, California.

D. Criswell
Declarant

Signature

20410933.doc