KEKER & VAN NEST, LLP
JON B. STREETER - #101970
AJAY S. KRISHNAN - #222476
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
E-mail: jstreeter@kvn.com

ACLU FOUNDATION OF NORTHERN CALIFORNIA
ALAN SCHLOSSER - #49957
MICHAEL RISHER - #191627
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-1478
E-mail: aschlosser@aclunc.org

Attorneys for Plaintiffs
PACIFIC NEWS SERVICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PACIFIC NEWS SERVICE,<br><br>        Plaintiff,<br><br> v.<br><br>MATTHEW CATE, Secretary of the California Department of Corrections and Rehabilitation; et al.,<br><br>        Defendants.<br><hr>MICHAEL ANGELO MORALES,<br><br>        Plaintiff,<br><br> v.<br><br>MATTHEW CATE, Secretary of the California Department of Corrections and Rehabilitation; et al.,<br><br>        Defendants. | Case No. 5:06-cv-01793-JF<br><br>**DEATH PENALTY CASE**<br><br>**LETTER BRIEF OF PACIFIC NEWS SERVICE IN RESPONSE TO COURT ORDER OF FEBRUARY 11, 2011**<br><br>Dept:  Courtroom 3, 5th Floor<br>Judge: Hon. Jeremy Fogel<br><br>Case No. 5:06-cv-00219-JF-HRL<br>Case No. 5:06-cv-00926-JF-HRL |

545503.01

LETTER BRIEF OF PACIFIC NEWS SERVICE IN RESPONSE TO COURT ORDER OF FEBRUARY 11, 2011
CASE NOS. C-06-1793-JF, 5:06-CV-0219-JF, & 5:06-CV-0926-JF

LAW OFFICES
# KEKER & VAN NEST
LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

AJAY S. KRISHNAN
AKRISHNAN@KVN.COM

February 18, 2011

The Honorable Jeremy Fogel
United States District Court
Courtroom 3, 5th Floor
280 South First Street
San Jose, CA 95113

Re:   *Pacific News Service v. Cate, et al.*, United States District Court,
      Northern District of California, Case No. 5:06-CV-01793-JF
      <u>Letter Brief in Response to Court Order of February 11, 2011</u>

Dear Judge Fogel:

    Plaintiff Pacific News Service ("PNS") submits this letter brief addressing discovery, pursuant to the Court's request for briefing at the February 11, 2011 Status Conference. At that Status Conference, the Court requested briefing on (1) the impact, if any, of *Dickens v. Brewer*, 2011 WL 420682, No. 09-16539 (9th Cir. Feb. 9, 2011), on the litigation; and (2) the current discovery disputes.

    *Dickens* had no effect on PNS's lawsuit. *Dickens* is an Eighth Amendment case that addresses neither the First Amendment, nor the particular type of claim that PNS is alleging.

    Accordingly, in this letter brief, PNS primarily addresses the discovery disputes, and requests immediate Court action to address Defendants' absolute failure to comply with their discovery obligations. PNS has propounded very limited discovery. These discovery requests generally target three highly relevant areas of inquiry: (1) the provenance of the protocol (*i.e.*, how and why did California arrive at this particular protocol?); (2) the function and effect of the three drugs; and (3) the ability of execution witnesses to meaningfully hear and view the process. Pursuant to the Court's order, PNS has coordinated discovery with the plaintiffs in the Eighth Amendment litigation, *Morales et al. v. Cate*, Case Nos. 5-6-cv-219-JF-HRL, 5-6-cv-926-JF-HRL.

    For their part, Defendants have done nothing. The Court specifically instructed Defendants to comply with PNS's discovery requests, to the extent possible. Krishnan Decl.,[1]

---

[1] "Krishnan Decl." refers to the Declaration of Ajay S. Krishnan in Support of Plaintiff PNS's Letter Brief in Response to Court Order of February 11, 2011.

545297.01

The Honorable Jeremy Fogel
February 18, 2011
Page 2

Ex. G (Transcript of 12/17/10 Status Conference) at 16:16-17:5; 18:24-19:2. Defendants have ignored this instruction. They have refused even to respond to PNS's discovery, let alone to meet and confer about particular requests. Nor have they provided the discovery that PNS seeks to the Eighth Amendment plaintiffs. Defendants' excuse is that they need not respond to PNS discovery until the Court rules on their Motion to Dismiss PNS's Second Amended Complaint. Even though the Court has already expressly rejected that argument, Defendants adhere to it.

Given that it has been five years since PNS initiated this lawsuit, and nearly six months since PNS filed its Second Amended Complaint, it is time for Defendants to stop stalling and to start producing documents and written discovery responses.

## I.    BACKGROUND

PNS has propounded very limited discovery: 18 identical document requests to each of the Defendants, 5 interrogatories, and 9 requests for admissions ("RFAs"). *Id.*, Exs. A – C. Defendants have refused to respond to any of these discovery requests. They have not submitted a single objection, nor have they identified a particular request as burdensome.

### A.    Document Requests

PNS's requested documents fall into three categories:

**Provenance documents.** These are documents related to how and why California arrived at this particular protocol. As discovery is coordinated, PNS largely relied on the *Morales/Brown* plaintiffs' document requests to obtain these documents. *See, e.g., id.*, Ex. D (Defendants' Response to Brown's Document Requests) at Request Nos. 3-17, 20-31, 35-36, 38.

Nonetheless, PNS also issued targeted document requests to make sure that it captured the provenance documents of central importance to the PNS case. These include:

- Documents related to Defendants' reasons for including pancuronium bromide in the protocol. *See id.*, Ex. A Ex. A (PNS Document Requests) at Request No. 3.

- Documents identifying all people involved in developing the protocol. *See id.*, Request No. 11.

- Documents related to Defendants' communications with other states about the protocol. *See id.*, Request Nos. 2 (trips to other states), 17 (communications with other states), 18 (same).

- Documents that are likely to reveal an intention by Defendants to conceal information from the press and the public. *See id.*, Request Nos. 12 (documents related to interest in making executions appear peaceful or humane); 13 (documents related to policies governing witnesses); 14 – 16 (reasons for certain

The Honorable Jeremy Fogel
February 18, 2011
Page 3

procedures, such as turning off the microphone during the injection of the drugs, that unnecessarily impair the ability to witness executions).

PNS's provenance-related document requests were not intended to be exclusive of the analogous *Morales/Brown* requests. For instance, while PNS requested documents identifying the people who developed the protocol, PNS relied on the *Morales/Brown* requests related to meetings held (*id.*, Ex. D, Request No. 5), and documents relied on (*id.* at Request No. 3). As such, many PNS requests are subsumed within the *Morales/Brown* requests.

**Documents related to the function and effects of the drugs.** PNS submitted seven documents requests on this subject. *Id.*, Ex. A at Request Nos. 4-10. Again, PNS relied in part on the *Morales/Brown* requests. For instance, PNS did not specifically request documents regarding the consciousness check—which may be an issue in the PNS case—because the *Morales/Brown* plaintiffs did. *Id.*, Ex. D at Request Nos. 33 – 34.

**Documents related to the ability to witness executions.** *See id.*, Ex. A at Request Nos. 12 (documents related to interest in making executions appear peaceful or humane); 13 (documents related to policies governing witnesses); 14 – 16 (reasons for certain procedures, such as turning off the microphone during the injection of the drugs, that unnecessarily reduce the ability to witness executions). These were discussed above as provenance documents, but they are more directly focused on the ability to meaningfully witness executions. Again, PNS did not repeat certain requests that were propounded by the *Morales/Brown* plaintiffs.

B.   **RFAs and Interrogatories**

PNS also propounded a single set of nine RFAs and a single set of five interrogatories. Seven of the RFAs pertain to Defendants' reasons for including pancuronium bromide in the protocol. *Id.*, Ex. B at Request Nos. 1-7. The remaining two pertain to Defendants' reasons for implementing other procedures that appear to evidence an intention to conceal information. *Id.* at Request Nos. 8 (the regulation requiring that the microphone be turned off during the actual execution), 9 (the design of the execution chamber such that media witnesses can see the witnesses related to the victim or inmate). The five interrogatories pertain to these exact same subjects. *See id.*, Ex. C.

C.   **The Court's Instructions and Defendants' Position**

At a December 17, 2010 Status Conference, the Court explicitly ordered Defendants either (1) to produce the discovery that PNS requested, or (2) to respond by objecting or seeking a protective order:

> MR. QUINN: It's been our practice throughout that whatever we provide to the Morales Counsel we provide to the Pacific News Counsel. The dispute is whether we have to go beyond that and respond to Pacific News' Discovery while our Motion to Dismiss is Pending.

545297.01

The Honorable Jeremy Fogel
February 18, 2011
Page 4

> THE COURT: I think it would depend what it is. If it's not burdensome and it's not—proprietary is not the right word, but if it's not something that's entitled to some type of protection, then I would say propound it. If it's something that would either be a burden or would implicate some type of privilege or confidential information, go ahead and either object or seek a protective order.

*Id.*, Ex. G (Excerpt of Transcript of Dec. 17, 2010 Status Conference) at 16:16-17:5. After further colloquy, the Court stated: "So does that make sense? Give them whatever you can. If you don't want to give it to them, don't give it to them, we will fight about it later."

Defendants take the position that they need not respond to any PNS discovery requests, and they refuse to do so until the Court rules on their Motion to Dismiss PNS's Second Amended Complaint. *Id.*, Ex. E (1/24/11 Quinn Letter). The Court has explicitly rejected the notion that the absence of a ruling on the Motion to Dismiss is a categorical basis to refuse to respond to PNS's discovery requests:

> "The fact that the motion to dismiss hasn't been decided is something that I would consider, depending on what it is they want that you don't want to give them."

*Id.*, Ex. G (Excerpt of Transcript of Dec. 17, 2010 Status Conference) at 18:1-4.

Additionally, PNS has repeatedly asked Defendants to meet and confer as to any particularized burden that might be posed by specific PNS requests. Id., Ex. F (1/26/11 Krishnan Letter). Defendants have refused to do so.

## II.   ARGUMENT

PNS has sought limited discovery that is directly relevant to PNS's claims. Defendants have not provided a single reason why any of PNS's discovery requests are burdensome and improper. The Court should therefore compel production of all documents requested by PNS, and compel responses to all of PNS's interrogatories and RFAs.

### A.   Pancuronium's function and effects, Defendants' reasons for using it, and their intent to conceal information are all relevant.

Defendants' reasons for using pancuronium, and any intent they has to conceal information from the press and public is highly relevant. PNS alleges that Defendants' use of pancuronium infringes the First Amendment right of the press and the public to meaningfully witness executions. Specifically, PNS alleges that pancuronium bromide, by completely paralyzing the inmate, acts as a chemical curtain that conceals whether sodium pentothal has been properly administered. *Id.*, Ex. H (Second Amended Complaint ("SAC")), ¶¶ 1, 12, 16, 18-20. PNS further alleges that in the context of the lethal injection protocol, pancuronium does not advance the interest of killing the inmate, nor does it have any legitimate penological purpose. *Id.*, ¶¶ 12, 24, 25.

The Honorable Jeremy Fogel
February 18, 2011
Page 5

To evaluate this claim, the Court will have to apply the four-factor "exaggerated response" test of *Turner v. Safley*, 482 U.S. 78 (1987), to determine whether an asserted constitutional right outweighs the legitimate penological interests of the prison. *California First Amendment Coalition v. Woodford*, 299 F.3d 868, 878 (9th Cir. 2002) ("*CFAC*"). The *Turner* test unquestionably involves a weighing of the government's reasons or interests:

> In determining whether a restriction on the exercise of rights is reasonable or exaggerated in light of those penological interests, four factors are relevant: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) what impact accommodation of the asserted constitutional rights will have on guards and other inmates, and on the allocation of prison resources generally and (4) whether there exist ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Id.* (internal quotations omitted) (quoting *Turner*, 482 U.S. at 89-91). Thus, Defendants' reasons for using pancuronium are relevant, as are "ready alternatives" that can serve the same purported interest without suppressing information.

Additionally, evidence of Defendants' intention to conceal information is relevant. In *CFAC*, the Ninth Circuit specifically held that if the government is motivated by an illegitimate interest—such as concealing from the public procedures that "would be perceived as brutal"—the challenged restriction will automatically fail the *Turner* test. *Id.* at 880. Accordingly, if Defendants' proffered interests in using pancuronium is mere pretext, that is relevant to the First Amendment inquiry.

### B. All of the categories of documents that PNS seeks are discoverable.

Each of the categories of documents that PNS seeks is "reasonably calculated to lead to the discovery of admissible evidence," and therefore discoverable. Federal Rule of Civil Procedure 26(b)(1).

*First*, the provenance documents—*i.e.*, documents showing how and why California arrived at the current lethal injection protocol—are discoverable. PNS' requests for provenance documents related to Defendants' reasons for using pancuronium bromide, and any intention they may have had to conceal information from the public, are of central importance. This is because the *Turner* inquiry focuses on whether the challenged restriction advances the state's alleged interests, and if so, whether "ready alternatives" are available that do not infringe constitutional rights.

The provenance documents related to meetings, participants in the process, and to documents are examined because PNS is entitled to uncover Defendants' *actual* reasons for using pancuronium—not just the reasons that Defendants proffered. Evidence that Defendants' proffered reasons are mere pretext would be dispositive under the *Turner* test, because an

545297.01

illegitimate interest cannot be used to justify infringement of a constitutional right. *CFAC*, 299 F.3d at 880. More generally, evidence of pretext can be used to attack the strength of any after-the-fact justifications for pancuronium that Defendants proffer.

Similarly provenance documents related to Defendants' communications with other states are reasonably calculated to reveal Defendants' reasons for using pancuronium and their intention to conceal. This is not just because Defendants may have discussed an intention to conceal with other states. It is also because there is a substantial likelihood that California retained pancuronium in its protocol as a result of pressure from or an agreement with other states, given that *at least* 36 of 38 states used the same three-drug protocol as California at the time that California made its decision to retain pancuronium.

*Second*, documents relating to the function and effects of the drugs is discoverable. This can hardly be controversial. PNS has alleged that, in the context of the protocol, pancuronium conceals information from the public by paralyzing the inmate's body. Krishnan Decl., Ex. H (SAC), ¶ 18-20. And PNS has alleged that pancuronium does not contribute to the interest in killing the inmate. *Id.*, ¶ 24. This is both because each of the other two drugs will kill the inmate faster than pancuronium, and because a death by pancuronium would violate the Eighth Amendment. Plaintiffs are therefore entitled to these documents. This includes documents generated under the current Lethal Injection Regulations, or under prior versions of the protocol, all of which are substantially identical.

*Third*, the requests related to the ability to witness executions cover documents that are directly relevant to PNS's claim. These are directly relevant to PNS's allegation that pancuronium suppresses information. Additionally, some of these requests target other efforts by Defendants to conceal information, such as by turning off the microphone during the actual execution. Such efforts reveal an illegitimate intent to conceal, which is relevant to the *Turner* analysis.

Thus, all of the three main categories of documents that PNS seeks are discoverable, and should be produced.

### C. PNS's interrogatories and RFAs seek relevant, discoverable information.

PNS's interrogatories and RFAs all pertain to Defendants' reasons for using pancuronium, and to Defendants' acts that evidence an intent to conceal information. They therefore only seek relevant, discoverable information.

### D. The Court should compel production of all PNS-requested documents and compel responses to PNS's written discovery.

As discussed above, PNS's discovery requests only target relevant, admissible information. Additionally, despite months of requests by PNS to meet and confer, Defendants have never identified a single PNS discovery request as burdensome or improper. Indeed, a simple review of these requests reveals that they are *not* burdensome or improper. The Court

545297.01

The Honorable Jeremy Fogel
February 18, 2011
Page 7

should therefore compel production of all PNS-requested documents and compel responses to all of PNS's written discovery requests.

### III. CONCLUSION

For the foregoing reasons, PNS respectfully requests that the Court compel production of all PNS-requested documents and compel responses to PNS's written discovery requests.

Respectfully submitted,

KEKER & VAN NEST LLP

Ajay S. Krishnan

ASK/rwt

545297.01