1   SEAN K. KENNEDY (SBN 145632)
    Federal Public Defender
2   MARK R. DROZDOWSKI (SBN 166669)
    MARGO A. ROCCONI (SBN 156805)
3   ELIZABETH RICHARDSON-ROYER
    (SBN 257691)
4   Deputy Federal Public Defenders
    321 East 2nd Street
5   Los Angeles, California 90012-4202
    Telephone: (213) 894-5063
6   Facsimile: (213) 894-0081
    Email: Mark_Drozdowski@fd.org
7
8   *Attorneys for Intervenor*
    ROBERT GREEN FAIRBANK
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                  SAN JOSE DIVISION

13  MICHAEL ANGELO MORALES,      )  CASE NO. 3:06-cv-219-RS
    et al.,                      )  CASE NO. 3:06-cv-926-RS
14                               )
              Plaintiffs,        )  DEATH PENALTY CASE
15                               )
        v.                       )  **NOTICE OF MOTION AND
16                               )  MOTION TO INTERVENE BY
    MATTHEW CATE, Secretary of the )  ROBERT FAIRBANK; NOTICE OF
17  California Department of      )  MOTION AND MOTION TO STAY
    Corrections and Rehabilitations, )  EXECUTION; MEMORANDUM OF
18  et al.,                      )  POINTS AND AUTHORITIES;
                                 )  DECLARATION OF MARK R.
19            Defendants.        )  DROZDOWSKI IN SUPPORT
                                 )  THEREOF**
20                               )
                                 )  DATE:  To Be Determined
21                               )  TIME:  To be Determined
                                 )  PLACE:  Courtroom 3
22  _____ )

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . .  2

I.   Issues To Be Decided. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.  Summary of Relevant Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III. Fairbank's Motion to Intervene Should Be Granted. . . . . . . . . . . . . . . . .  9

    A.  Introduction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

    B.  Fairbank's Motion to Intervene Is Timely. . . . . . . . . . . . . . . . . . .  10

    C.  This Court Must Grant Intervention To Fairbank As Of Right. . . . . . .  12

        1.  Fairbank's Interests In This Matter Are Identical To
           Those of Morales, Brown, Sims, and Fields . . . . . . . . . . . . . . .  12

        2.  Without Intervention, Fairbank Is Practically Impaired
           and Impeded from Protecting His Fifth, Eighth, and
           Fourteenth Amendment Interests in Avoiding
           Execution by an Unconstitutional and Arbitrary Procedure. . . .  12

    D.  The Standards for Permissive Intervention Are Met. . . . . . . . . . . . . .  13

        1.  This Court Has Independent Grounds for Jurisdiction. . . . . . . .  14

        2.  Fairbank's Claims Have Common Questions of Law
           or Fact with Those of the Main Action. . . . . . . . . . . . . . . . . . .  14

IV.  Fairbank's Motion to Stay His Execution Should Be Granted. . . . . . . . . . .  15

    A.  Fairbank is Likely to Succeed on the Merits. . . . . . . . . . . . . . . . . . .  17

    B.  Fairbank Will Suffer Irreparable Harm. . . . . . . . . . . . . . . . . . . . . . .  18

    C.  The Equities are in Fairbank's Favor and Granting the Stay
        Furthers The Public's Interest in Orderly Review. . . . . . . . . . . . . . . .  19

V.   Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

*Barefoot v. Estelle*,
   463 U.S. 880 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Beardslee v. Woodford*,
   395 F.3d 1064 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Beaty v. Food & Drug Admin.*,
   --- F. Supp. 2d ---, 2012 WL 1021048 (D.D.C. 2012) . . . . . . . . . . . . . . . . . 7

*Citizens for Balanced Use v. Mont. Wilderness Association*,
   647 F.3d 893 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fairbank v. Ayers*,
   __ U.S. __, 132 S. Ct. 1757 (2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Georgia v. Ashcroft*,
   539 U.S. 461 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hill v. W. Electric Co., Inc.*,
   672 F.2d 381 (4th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*League of United Latin America Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Martinez v. City of Oxnard*,
   229 F.R.D. 159 (C.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Martinez-Villareal v. Stewart*,
   118 F.3d 625 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Morales v. Cate*,
   623 F.3d 828 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Morales v. Hickman*,
   415 F. Supp. 2d 1037 (N.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16

*Morales v. Tilton*,
   465 F. Supp. 2d 972 (N.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16

*Northwest Forest Resource Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*United States v. Oregon*,
   745 F.2d 550 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Oregon*,
   839 F.2d 635 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Winter v. Natural Resource Defense Council*,
   555 U.S. 7 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATE CASES**

*Morales v. Cal. Department of Correction & Rehabilitation,*
    85 Cal. Rptr. 3d 724 (Cal. Ct. App. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**DOCKETED CASES**

*Cate v. United States District Court (Morales & Brown),*
    Case No. 10-72977. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Brown*
    Case No. CR18104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*People v. Fairbank,*
    Case No. SC-016-55. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sims v. Cal. Dep't of Corr. & Rehab*
    No. CIV 1004019 (Cal. Super. Ct. Marin Cnty. Feb. 21, 2012) . . . . . . . . . . . 8

**FEDERAL STATUTES**

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. §1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 14

Fed. R. Civ. P. 24.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**STATE STATUTES**

Cal. Code Regs. tit. 15, § 3349. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5, 6

1    PLEASE TAKE NOTICE that Robert Green Fairbank, Jr. hereby moves the

2   Court, under Federal Rule of Civil Procedure 24, for an order granting him leave to

3   intervene in the above-captioned matter.  Fairbank's claims share with the main

4   action common questions of law or fact.

5    Fairbank further moves the Court for an order staying his execution and all

6   preparations relating thereto.  There is a strong likelihood the present matter will

7   succeed on the merits, the relative harm to the parties weighs in favor of Fairbank,

8   and Fairbank has not delayed unnecessarily in bringing this motion for a stay.

9    The motions are based on Plaintiffs' Fourth Amended Complaint for Equitable

10   and Injunctive Relief Pursuant to 42 U.S.C. §1983, this Notice, this Memorandum of

11   Points and Authorities, the Declaration of Mark R. Drozdowski and attached exhibits,

12   and the proposed order, along with all exhibits and papers filed in this action and any

13   evidence received at the hearing.

14

15                                             Respectfully submitted,

16                                             SEAN K. KENNEDY
                                               Federal Public Defender
17                                             MARK R. DROZDOWSKI
                                               MARGO A. ROCCONI
18                                             ELIZABETH H. RICHARDSON-ROYER
                                               Deputy Federal Public Defenders
19

20

21   DATED: August 23, 2012              By: */s/ Mark. R. Drozdowski*
22                                             MARK R. DROZDOWSKI
                                               Deputy Federal Public Defender
23

24                                             Attorneys for Intervenor
                                               ROBERT FAIRBANK
25

26

27

28

ROBERT FAIRBANK'S MOTION TO INTERVENE AND FOR A STAY OF EXECUTION
Case Nos.: 3:06-cv-219-RS; 3:06-cv-926-RS
                                             1

## MEMORANDUM OF POINTS AND AUTHORITIES

Robert Green Fairbank, Jr. seeks to intervene in this action pursuant to Rule 24(b) of the Federal Rules of Civil Procedure because he "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Alternatively, he seeks to intervene under Federal Rule of Civil Procedure 24(a)(2).  Fairbank further seeks temporary, preliminary, and permanent injunctive relief to enjoin the Defendants, their officers, agents, servants, and employees, and all persons acting in concert with them from preparing to set or setting Fairbank's execution date or executing him by lethal injection using the lethal injection regulations promulgated as California Code of Regulations, Title 15, § 3349 et seq., or any similar practices or protocol.

### I.   Issues To Be Decided

1.   Whether Fairbank may intervene as a plaintiff in this litigation pursuant to Rule 24(b) of the Federal Rules of Civil Procedure permissibly or as a matter of right.

2.   Whether Fairbank should be granted a stay of execution on the same basis and to the same extent as Plaintiffs Morales, Brown, Fields, and Sims, including but not limited to a stay of any preparations for the setting of an execution date for Fairbank.

### II.   Summary of Relevant Facts

Fairbank is a condemned inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR).  He is held at San Quentin State Prison, San Quentin, California, 94974.  A San Mateo County jury reached a verdict of death in the penalty phase of Fairbank's trial on April 17, 1989, and the Superior Court for the County of San Mateo issued a commitment-judgment of death on September 5, 1989. Fairbank's direct appeals and petition for writ of habeas corpus in state court were unsuccessful, and the Ninth Circuit upheld the denial of Fairbank's federal habeas petition.  On March 19, 2012, the United States Supreme Court denied Fairbank's

1  petition for writ of certiorari.  *See Fairbank v. Ayers*, __ U.S. __, 132 S. Ct. 1757

2  (2012).  *Fairbank currently does not have a stay of execution in any court.*

3      On July 6, 2012, the San Mateo County District Attorney filed a motion in San

4  Mateo County Superior Court seeking to compel the CDCR to execute Fairbank by a

5  one-drug lethal injection or show cause why such execution cannot be performed.

6  (Declaration of Mark R. Drozdowski ("Drozdowski Decl.") ¶ 5, Ex. A, Commitment

7  and Judgment of Death, Notice of Motion and Motion for Order of Execution Using

8  Single Drug Method and Order to Show Cause ("Motion for Order of Execution"),

9  *People v. Fairbank*, Case No. SC-016-55, San Mateo Super. Ct.)  A hearing on the

10  District Attorney's Motion for Order of Execution has been scheduled for September

11  14, 2012.  (Drozdowski Decl. ¶ 6.)

12      On December 15, 2006, this Court issued an order finding that the

13  "implementation of California's lethal-injection protocol lacks both reliability and

14  transparency."  *Morales v. Tilton*, 465 F. Supp. 2d 972, 981 (N.D. Cal. 2006).  The

15  Court further determined that California's actions and failures to act with respect to

16  the implementation of its lethal-injection protocol have resulted in an intolerable risk

17  of a Constitutional violation.  *Id.*  To remedy this situation, California would have to

18  undergo a "meaningful" review of its processes, which "must be undertaken with an

19  openness to the idea of making significant improvements in the 'infrastructure' of

20  executions."  *Id.* at 983.

21      Thereafter, former Governor Arnold Schwarzenegger announced via a press

22  release on December 18, 2006 that he was "committed to doing whatever it takes to

23  ensure that the lethal injection process is constitutional."  (Dkt. 291 (Ex. A).)

24  Schwarzenegger added that his "administration [would] take immediate action to

25  resolve [the] court['s] concerns."  (*Id.*)

26      Then-Governor Schwarzenegger and the CDCR issued a revised Operational

27  Procedure 770 (2007 Lethal Injection Protocol) on May 15, 2007.  On November 29,

28  2007, the Marin County Superior Court declared invalid and enjoined the

1   enforcement of California's 2007 Lethal Injection Protocol.  *Morales v. Cal. Dep't of*

2   *Corr. & Rehab.*, No. CV 061436 (Super. Ct. Marin Cnty., Cal. Nov. 29, 2007), *aff'd*,

3   *Morales v. Cal. Dep't of Corr. & Rehab.*, 85 Cal. Rptr. 3d 724, 741 (Cal. Ct. App.

4   2008).

5        On July 30, 2010, the California Office of Administrative Law (OAL)

6   promulgated regulations of the Lethal Injection Protocol (2010 Lethal Injection

7   Protocol), effective August 29, 2010.  Cal. Code Regs. tit. 15, § 3349.  With the

8   exception of a few additional deficiencies, the 2010 Lethal Injection Protocol is

9   substantially identical to the 2007 Lethal Injection Protocol.

10       On August 30, 2010, the day after the 2010 Lethal Injection Protocol took

11  effect, the Riverside County Superior Court issued an execution warrant for Albert

12  Brown.  *People v. Brown*, No. CR18104 (Super. Ct. Riverside Cnty., Cal. Aug. 30,

13  2010).

14       After litigation involving five different courts over a six-week period, the Court

15  of Appeals for the Ninth Circuit directed this Court to reconsider its previous denial

16  of Brown's motion to stay his execution (Dkt. 420), and this Court then issued a stay

17  (Dkt. 424).  "[O]f particular importance" to the Ninth Circuit was the fact that

18  Brown's claims were "virtually identical" to the claims that Morales had brought –

19  claims that were already pending before this Court.  (Dkt. 420, at 8.)

20       On September 28, 2010, this Court found that the Lethal Injection Protocol  "as

21  implemented in practice through and including the date of the evidentiary hearing in

22  the 2006 *Morales* litigation created a 'demonstrated risk of severe pain.'"  (Dkt. 424

23  at 4.)  The Court also found, based on its limited opportunity to compare the 2007

24  Lethal Injection Protocol and the 2010 Lethal Injection Protocol, that "there is a

25  significant dispute" that there exists a meaningful difference between the two

26  protocols other than the physical facility in which executions are to take place.  (*Id.* at

27  5.)  This Court further indicated that it "intend[ed] to undertake . . . review . . . as

28

1   quickly as is reasonably possible" of the claims raised by Morales and Brown.  (*Id.* at
2   8.)

3       On October 8, 2010, Morales and Brown filed a Fourth Amended Complaint
4   for Equitable and Injunctive Relief Pursuant to 42 U.S.C. § 1983 in this matter.
5   (Drozdowski Decl. ¶ 7, Ex. B, Fourth Amended Complaint (Dkt. 428).)  On October
6   25, 2010, Defendants chose to move to dismiss the Fourth Amended Complaint rather
7   than respond to discovery requests.  (Dkt. 430.)  The motion to dismiss was heard on
8   December 2, 2010 and denied by this Court on December 10, 2010.  (Dkt. 461.)

9       On November 16, 2010, in response to an inquiry by the Court and after the
10  Court expressed concerns that the setting of future executions across California
11  would result in disorderly litigation such as occurred with Albert Brown, Defendants'
12  counsel, the chief law enforcement officer of the State of California, assured the
13  Court that no execution dates would be set in California until the litigation of this
14  matter was concluded.  (Drozdowski Decl. ¶ 8, Ex. C, 11/16/10 RT at 3-9.)[1]  In a
15  discussion with respect to whether other death row inmates who have exhausted their
16  appeals but who are not plaintiffs to this action were protected by this promise,

17

18

19       [1]  Defendants' counsel had previously filed a written statement on November
20  10, 2010, specifying the following:

21       Defendants address Plaintiffs' request that any stay address the possibility of
         execution dates being sought during the course of a stay. Under California law,
22       the named Defendants in this matter are not legally responsible for setting
         execution dates.  Rather, an execution date is set by a superior court following
23       a request and appropriate showing by a district attorney.  Nevertheless, the
         Office of the Attorney General, in its role as counsel for the People of the State
24       of California and apart from its representation of the Defendants here, does
         coordinate the setting of execution dates and exercises a supervisory role over
25       the district attorneys.  The Attorney General, in his capacity as counsel for the
         People and because of this pending litigation, can represent that he will not
26       advise the district attorneys to request execution dates until the earlier of either:
         (1) thirty days after the conclusion of any further evidentiary hearing in this
27       present action, or (2) a judgment is entered by this Court in this matter.

28  (Dkt. 446 at 4.)

ROBERT FAIRBANK'S MOTION TO INTERVENE AND FOR A STAY OF EXECUTION
Case Nos.: 3:06-cv-219-RS; 3:06-cv-926-RS

1  Defendants' counsel affirmed that such interested parties could rely on these

2  assurances. (*Id.* at 9-10.)

3      At a March 4, 2011 hearing, and in response to a stipulated intervention sought

4  by David Raley (Dkt. 511),[2] this Court reiterated that there is "an agreement which

5  has been made by the state in this case that they will not attempt to execute anyone

6  until after this case is concluded at the district court level and I think that's an

7  agreement that can be relied upon by anyone who is an interested party."

8  (Drozdowski Decl. ¶ 9, Ex. D, 3/4/2011 RT at 60-61.)

9      On November 22, 2010, Defendants filed a notice informing the Court and the

10  parties, pursuant to this Court's order of October 5, 2010, that the CDCR had ordered

11  521 grams of sodium thiopental that would expire in 2014. (Dkt. 455.) Defendants

12  thereafter filed another notice stating that the shipment had been delayed and

13  Defendants finally received 514.5 grams of sodium thiopental on January 20, 2011.

14  (Dkt. 474.) Defendants secured an execution team on or about October 17, 2011.

15  (Dkt. 531.)

16      On December 29, 2011, Plaintiffs Fields and Sims moved to intervene and for

17  stays of executions. (Dkt. 467.) Their motions were granted. (Dkt. 473.)

18      On December 19, 2011, the Marin County Superior Court ordered that the

19  execution protocol, Cal. Code Regs. tit. 15, §§ 3349 et seq., was improperly enacted

20  under California's Administrative Procedures Act (APA). A judgment with an

21  injunction was entered on February 21, 2012, permanently enjoining the CDCR "from

22  carrying out the execution of any condemned inmate by lethal injection unless and

23  until new regulations governing lethal injection executions are promulgated in

24  compliance with the Administrative Procedures Act." (Drozdowski Decl. ¶ 10, Ex.

25  E, Marin County Sup. Ct. Order.) CDCR stated that it would be reviewing the

26

27

28      [2] Raley's stipulated intervention remains pending before the Court.

ROBERT FAIRBANK'S MOTION TO INTERVENE AND FOR A STAY OF EXECUTION
Case Nos.: 3:06-cv-219-RS; 3:06-cv-926-RS

1    possibility of a single-drug execution protocol during the appeal.  (Drozdowski Decl.

2    ¶ 11, Ex. F, Notice of Appeal, at 2.)

3           On March 27, 2012, in a case brought by Fairbank and other plaintiffs, the

4    United States District Court for the District of Columbia declared that the Food and

5    Drug Administration (FDA) had acted improperly in permitting the importation of

6    thiopental for the purposes of executions, and it ordered the FDA to retrieve all

7    imported thiopental.  *Beaty v. Food & Drug Admin.*, --- F. Supp. 2d ---, 2012 WL

8    1021048, at *8 (D.D.C. 2012).[3]  Pursuant to the district court's order, the FDA asked

9    the CDCR in a letter dated April 6, 2012 to send any foreign-manufactured thiopental

10   in its possession to the FDA.  (Drozdowski Decl. ¶¶ 12-14, Exs. H-J, correspondence

11   between the FDA and the CDCR.)  The CDCR has not returned the thiopental to the

12   FDA, and the FDA and Department of Health and Human Services are appealing the

13   decision in the U.S. Court of Appeals for the District of Columbia Circuit.

14   (Drozdowski Decl. ¶ 15, Ex. K, Notice of Appeal filed May 25, 2012.)

15          On May 1, 2012, the District Attorney for the County of Los Angeles (L.A.

16   County District Attorney) moved the Los Angeles County Superior Court for an order

17   requiring the CDCR to develop a single-drug execution protocol without APA

18   approval and to set execution dates for Mitchell Sims and Tiequon Cox under a one-

19   drug method.  (Drozdowski Decl. ¶ 16, Ex. L, L.A. County District Attorney's

20   Motion.)  The L.A. County District Attorney, who personally signed the motion,

21   failed to inform the Superior Court of this Court's stay of execution for Plaintiff

22   Sims, the March 4, 2011 proceedings in this Court, the Marin County Superior

23   Court's permanent injunction, or the CDCR's appeal of the judgment in that case.

24          On May 16, 2012, Cox moved to intervene in this litigation and requested that

25   this Court issue a stay of execution.  (Dkt. 535.)  His motion is pending.  In response,

26   on May 24, 2012, the L.A. County District Attorney also moved to intervene, seeking

27

28          [3]  Fairbank filed suit in *Beaty* on February 2, 2011, more than a year before his
      federal habeas case became final.  (*See* Drozdowski Decl. ¶ 2, Ex. G at 6.)

ROBERT FAIRBANK'S MOTION TO INTERVENE AND FOR A STAY OF EXECUTION
Case Nos.: 3:06-cv-219-RS; 3:06-cv-926-RS

1   to prevent intervention by Cox and to clarify the meaning of this Court's stay of

2   execution with respect to Sims.  (Dkt. 542.)  Plaintiffs opposed the L.A. District

3   Attorney's motion to intervene (Dkt. 546), while Defendants filed a response

4   "defer[ring] to the Court's discretion concerning whether the District Attorney may

5   intervene" (Dkt. 544).

6        On August 10, 2012, this Court adopted the parties' joint proposed schedule,

7   vacating the stipulated schedule and ordering that "[t]he parties shall submit a new

8   proposed schedule within thirty days after (1) viable lethal-injection regulations are in

9   place or (2) the Marin Superior Court's decision invalidating the regulations, *Sims v.*

10  *Cal. Dep't of Corr. & Rehab*, No. CIV 1004019 (Cal. Super. Ct. Marin Cnty. Feb. 21,

11  2012), is overturned on appellate review, whichever occurs first."  (Dkt. 554.)  In

12  response to the L.A. County District Attorney's motion to intervene, the Court also

13  ordered that, "[u]ntil this Court rules on the Motion or otherwise orders, the Los

14  Angeles District Attorney's Office shall lodge forthwith copies of documents and

15  transcripts from April 2012 forward in the two state-court cases."  (Dkt. 553.)

16       Fairbank's counsel sought a stipulation to intervene and for a stay of execution

17  for Fairbank that was identical to that which Defendants stipulated to and submitted

18  to this Court for Raley.  (*See* Dkt. 511.)  Defendants' counsel declined to so stipulate

19  at this time.  (Drozdowski Decl. ¶ 18.)

20       On August 16, 2012, Fairbank's counsel sent a letter to Attorney General

21  Kamala D. Harris, requesting that she direct the San Mateo County District Attorney

22  to (1) withdraw his Motion for Execution and (2) comply with her office's

23  representation to this Court that no execution dates would be set while this litigation

24  is pending.  (Drozdowski Decl. ¶ 17, Ex. M.)  Counsel requested a response by

25  August 22, 2012, and stated that if the Motion for Execution was not withdrawn by

26  then Fairbank would have no choice but to seek to intervene and request a stay of

27  execution in this action.  (*Id*.)  To date, Fairbank's counsel have received no response.

28  (Drozdowski Decl. ¶ 17.)

1    Fairbank is not required to exhaust administrative remedies before bringing this

2  claim because resolution of the grievance seeking modification of the regulations is

3  not possible through the CDCR administrative process and exhaustion is futile. *See*

4  *Beardslee v. Woodford*, 395 F.3d 1064, 1069 n.5 (9th Cir. 2005). Nevertheless,

5  Fairbank submitted his inmate appeal for administrative remedy on June 28, 2012, in

6  light of the L.A. County District Attorney's filings, even before the San Mateo

7  County District Attorney brought his Motion against him. (Drozdowski Decl. ¶ 4, Ex.

8  N at 1-5.) By an Inmate Appeal Assignment Notice dated July 20, 2012, Fairbank

9  was informed that his administrative appeal had been sent for a second-level review.

10 ((Drozdowski Decl. ¶ 4, Ex. O at 1.)

11    By this motion to intervene, Fairbank also seeks to preclude any future

12 objection by Defendants that Fairbank is not entitled to intervene or to a stay of

13 execution due to "inexcusable delay." Although Defendants did not raise this

14 objection to Brown's motion for intervention and for a stay of execution in this Court,

15 Defendants did untimely raise it in their later-withdrawn Petition for Writ of

16 Mandamus to the Ninth Circuit Court of Appeal in *Cate v. United States District*

17 *Court (Morales & Brown)*, Case No. 10-72977.

18 **III.  Fairbank's Motion to Intervene Should Be Granted**

19      **A.    Introduction**

20    Morales and Brown's Fourth Amended Complaint for Equitable and Injunctive

21 Relief is incorporated herein by reference. (*See* Drozdowski Decl. ¶ 7, Ex. B, Fourth

22 Amended Complaint.) Fairbank joins in the Fourth Amended Complaint in all its

23 particulars as it currently is set forth.

24    A federal court must permit intervention as of right by anyone who files a

25 timely motion and who "claims an interest relating to the . . . transaction that is the

26 subject of the action, and is so situated that disposing of the action may as a practical

27 matter impair or impede the movant's ability to protect its interest, unless existing

28 parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Alternatively, "a

ROBERT FAIRBANK'S MOTION TO INTERVENE AND FOR A STAY OF EXECUTION
Case Nos.: 3:06-cv-219-RS; 3:06-cv-926-RS

1  court may grant permissive intervention where the applicant for intervention shows

2  (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the

3  applicant's claim or defense, and the main action, have a question of law or a

4  question of fact in common." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839

5  (9th Cir. 1996); *see also* Fed. R. Civ. P. 24(b).

6      Here, Fairbank satisfies the standards for intervention as of right as well as for

7  permissive intervention.

8          **B.      Fairbank's Motion to Intervene Is Timely**

9      Fairbank's motion to intervene is timely under the standards applicable to

10  intervention as of right and to permissive intervention.  In determining whether a

11  motion to intervene is timely, courts consider three factors:  "the stage of the

12  proceedings, the prejudice to existing parties, and the length of and reason for the

13  delay." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir.

14  1997); *see also* Fed. R. Civ. P. 24(b)(3).  All three factors weigh in favor of granting

15  Fairbank's motion to intervene.

16      First, this matter is still in its initial stages of review, as mandated by numerous

17  court orders.  On August 10, 2012, the Court adopted the parties' request that the

18  scheduling order be vacated and that a new scheduling order not be proposed until

19  thirty days after either viable lethal-injection regulations are in place or the Marin

20  Superior Court's decision invalidating the regulations is overturned on appeal.  (Dkt.

21  554.)  Discovery, too, remains stayed.  (Dkt. 534.)  Furthermore, the motions to

22  intervene of two other inmates, Tiequon Cox and Dave Raley, are already pending

23  before the Court.  (Dkts. 511. 535.)  Given the stage of this litigation, there will be no

24  additional delay to existing parties as a result of Fairbank's intervention.  *See*

25  *Martinez v. City of Oxnard*, 229 F.R.D. 159, 163 (C.D. Cal. 2005) (permitting

26  intervention while discovery was ongoing).   Existing parties will not otherwise be

27  prejudiced by Fairbank's intervention, because Fairbank does not seek to "relitigate

28  matters which have previously been litigated," raise any claims other than those

1   raised by existing Plaintiffs, or assert any claims against them. *United States v.*
2   *Oregon*, 745 F.2d 550, 553 (9th Cir. 1984) (holding that the state of Idaho could
3   intervene in litigation concerning fishing on the Columbia River when "Idaho has
4   disclaimed any intent to relitigate matters which have previously been litigated, to
5   raise any claims unrelated to the Tribes' treaty fishing rights, or to assert any claims
6   against the other states").

7        Furthermore, as explained further in detail below, Fairbank joins the Fourth
8   Amended Complaint in all its particulars, and Fairbank's counsel intends to work
9   cooperatively with counsel for Morales, Brown, Sims, and Fields in developing any
10  further briefing rather than filing separate briefing before this Court. Counsel for
11  Plaintiff Morales do not oppose Fairbank's intervention. (Drozdowski Decl. ¶ 18.)
12  This intended cooperation with existing Plaintiffs further prevents any prejudice to
13  the existing parties.

14       Finally, Fairbank has not delayed in bringing his claims. The State of
15  California's execution protocol went into effect on August 29, 2010 and was declared
16  invalid on February 21, 2012. (*See* Drozdowski Decl., Ex. E.) During that time,
17  Fairbank was appealing his habeas claims, a process that ended only with the United
18  States Supreme Court's denial of Fairbank's petition for certiorari on March 19, 2012.
19  *See Fairbank v. Ayers*, __ U.S. __, 132 S. Ct. 1757 (2012). More than one year
20  before his federal habeas action concluded, Fairbank challenged California's lethal
21  injection regime by seeking injunctive relief as a party in the FDA lawsuit filed in the
22  District of Columbia, and he acted to exhaust any administrative remedies even
23  before the San Mateo District Attorney filed its Motion against him. *See supra* at 9.

24       Furthermore, the San Mateo District Attorney filed his Motion for Order of
25  Execution on July 6, 2012; Fairbank's counsel received their service copy on July 9.
26  Fairbank tried to resolve the Motion for Execution by asking Attorney General
27  Kamala Harris to direct that the motion to be dismissed, and asked for a response by
28  August 22, 2012 (yesterday). Receiving no response from the Attorney General,

ROBERT FAIRBANK'S MOTION TO INTERVENE AND FOR A STAY OF EXECUTION
Case Nos.: 3:06-cv-219-RS; 3:06-cv-926-RS

1   Fairbank now promptly seeks intervention, prior to the setting of any execution date,

2   in order to avoid putting this Court in the position in which it was placed in

3   September 2010.

**C.   This Court Must Grant Intervention To Fairbank As Of Right**

5   As set forth above, a federal court must permit intervention as of right by

6   anyone who files a timely motion and "claims an interest relating to the . . .

7   transaction that is the subject of the action, and is so situated that disposing of the

8   action may as a practical matter impair or impede the movant's ability to protect its

9   interest, unless existing parties adequately represent that interest."   Fed. R. Civ. P.

10  24(a)(2).

**1.   Fairbank's Interests In This Matter Are Identical To Those of Morales, Brown, Sims, and Fields**

13  Fairbank joins in the Fourth Amended Complaint filed on behalf of Morales

14  and Brown on October 8, 2010.  All questions of law and fact related to Fairbank's

15  claims are identical to those in the Fourth Amended Complaint.

**2.   Without Intervention, Fairbank Is Practically Impaired and Impeded from Protecting His Fifth, Eighth, and Fourteenth Amendment Interests in Avoiding Execution by an Unconstitutional and Arbitrary Procedure**

20  Intervention as of right must be granted where, as here, the disposition of the

21  action would put the movant at a practical disadvantage in protecting its interest.

22  *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (intervention as of right is

23  proper when factual determinations in lawsuit challenging conditions of state mental

24  health facility would have persuasive stare decisis effect in subsequent litigation by

25  residents of facility).  Intervention must also be granted when the existing parties do

26  not adequately represent the movant's interests.  *Citizens for Balanced Use v. Mont.*

27  *Wilderness Ass'n*, 647 F.3d 893, 900-01 (9th Cir. 2011); *see also* Fed. R. Civ. P.

28  24(a)(2).

1    Here, although Fairbank shares identical interests in the legal claims
2    propounded by Morales, Brown, Fields, and Sims, his specific interest in avoiding
3    execution by an unconstitutional protocol – a protocol involving a demonstrated risk
4    of severe pain – remains inadequately represented by the existing plaintiffs.  If
5    Fairbank is not permitted to intervene in this action, an execution date could be set for
6    him and carried out pursuant to the current, flawed lethal injection protocol.  Federal
7    Rule of Civil Procedure 24(b) permits this Court to grant a motion for intervention to
8    avoid such an unconstitutional state action.  *Hill v. W. Elec. Co., Inc.*, 672 F.2d 381,
9    390-92 (4th Cir. 1982) (permitting intervention where the interests of the unnamed
10   class members would no longer be protected by the named class representatives).

11   Unless Fairbank is permitted to intervene in this case, the State of California
12   may well succeed in setting an execution date and may execute him while this lawsuit
13   is pending.  The likelihood that the State of California will take such an action is
14   demonstrated by similar actions it has undertaken in the past.  *See Georgia v.*
15   *Ashcroft*, 539 U.S. 461, 477 (2003) (intervention properly granted to private parties in
16   state's action seeking judicial clearance of a legislative redistricting plan under the
17   Voting Rights Act when private parties identified interests not adequately represented
18   by existing parties).  Despite the fact that this lawsuit was pending in August and
19   September 2010, the State of California sought to set an execution date for Fields,
20   and did set an execution date and nearly accomplished the execution of Brown,
21   condemned prisoners who at the time were not parties to this lawsuit.

22       **D.      The Standards for Permissive Intervention Are Met**

23   "[A] court may grant permissive intervention where the applicant for
24   intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely;
25   and (3) the applicant's claim or defense, and the main action, have a question of law
26   or a question of fact in common."  *Glickman*, 82 F.3d at 839; *see also* Fed. R. Civ. P.
27   24(b).

28

ROBERT FAIRBANK'S MOTION TO INTERVENE AND FOR A STAY OF EXECUTION
Case Nos.: 3:06-cv-219-RS; 3:06-cv-926-RS

1          **1.     This Court Has Independent Grounds for Jurisdiction**

2          Fairbank's claims arise under the Eighth and Fourteenth Amendments to the

3    United States Constitution and 42 U.S.C. § 1983.  This Court has independent

4    grounds for jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28

5    U.S.C. § 1343 (civil rights).

6          **2.     Fairbank's Claims Have Common Questions of Law or Fact**

7                   **with Those of the Main Action**

8          Fairbank joins the Plaintiffs in the Fourth Amended Complaint.  Fairbank's

9    Claims and those set forth in the Fourth Amended Complaint share the following

10   common questions of law and fact:

11        •     Whether the lethal injection regulations violate the Eighth and

12              Fourteenth Amendments to the United States Constitution by creating a

13              substantial risk that condemned inmates will experience severe pain and

14              suffering during executions.  (Drozdowski Decl. ¶ 7, Ex. B, Fourth

15              Amended Complaint ¶¶ 22-23.)

16        •     Whether the procedure for the remote administration of chemical

17              substances, the absence of standardized procedures for administration of

18              the chemicals, the lack of adequate training, screening and qualifications

19              of the personnel on the execution team, and the combination and

20              amounts of the chemicals used in executions create a grave, substantial

21              and demonstrated risk that condemned prisoners will be conscious

22              during the execution process and, as a result, experience an

23              excruciatingly painful and protracted death.  (*Id.* ¶¶ 24-25, 27-31, 33-40.)

24        •     Whether the lethal injection regulations fail to require the minimum

25              expertise of the execution team personnel necessary to ensure their

26              proper performance.  (*Id.* ¶¶ 26, 32.)

27        •     Whether Defendants have deliberately chosen to conduct executions in a

28              manner that is not constitutionally compliant by selecting chemicals that

ROBERT FAIRBANK'S MOTION TO INTERVENE AND FOR A STAY OF EXECUTION
Case Nos.: 3:06-cv-219-RS; 3:06-cv-926-RS

cause excruciating pain and therefore carry a substantial risk of serious harm to a condemned inmate and by failing to take precautions to ensure that the personnel involved in the execution process possess the training, experience, and expertise necessary to administer the chemicals properly. (*Id.* ¶ 120.)

•   Whether Defendants have deliberately chosen to conduct executions by a combination of chemicals and a procedure that carries a substantial risk of serious harm when a feasible, readily implemented alternative method of execution is available.  (*Id.* ¶¶ 5, 105(f), 106-109.)

•   Whether the Lethal Injection Protocol provides "specific guidelines for the administration of the three separate chemicals."  (*Id.* ¶ 113.)

•   Whether the Protocol contains adequate guidelines to assure that the inmate is "deeply anesthetized prior to injecting the second two drugs, or establish procedures for determining when an additional dose of sodium pentothal should be administered."  (*Id.* ¶ 116.)

•   Whether Fairbank, like Morales, Brown, Fields, and Sims, is entitled to injunctive relief.  (*Id.* ¶ 7.)

## IV.   <u>Fairbank's Motion to Stay His Execution Should Be Granted</u>

This Court should stay Fairbank's execution and all preparations relating thereto by extending to him the exact stay already in place for Morales, Brown, Sims, and Fields, which secures the orderly review in this Court that was ordered by the Ninth Circuit Court of Appeals.  The Court has not ruled on Raley's stipulated request to intervene and for a stay after it received assurances from Defendants' counsel that executions would not resume until this litigation is completed.  Those assurances have now been shown to be insufficient as to Fairbank to bind other state actors who may refuse to respect the agreements executed, as well as representations made to this Court, by the California Attorney General's Office.

1    A plaintiff seeking a preliminary injunction must establish: (1) that he is likely

2   to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence

3   of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an

4   injunction is in the public interest.  *Winter v. Natural Res. Defense Council*, 555 U.S.

5   7, 21 (2008).  Under *Barefoot v. Estelle*, 463 U.S. 880 (1983), Fairbank is entitled to a

6   stay of execution if he demonstrates "substantial grounds upon which relief might be

7   granted."  *Id.* at 895.  This standard is satisfied when the movant demonstrates that his

8   "argument warrants further review" which cannot be fully and fairly accomplished in

9   the time remaining before the execution.  *See Martinez-Villareal v. Stewart*, 118 F.3d

10  625, 626-27 (9th Cir. 1997).  Fairbank meets these standards no less than Brown,

11  Fields, and Sims did.

12    The course of the litigation here demonstrates that review has been delayed by

13  Defendants' difficulties in securing an execution team, litigation brought by

14  Defendants to prohibit discovery, state court actions, and two state court injunctions.

15  Without valid lethal injection regulations in place, and at least until completion of

16  discovery, the substantive review mandated by the Ninth Circuit remand and this

17  Court's order in response cannot yet take place.

18    On February 22, 2006, a stay of execution in favor of Morales went into effect

19  to allow the Court to "hold an evidentiary hearing on the merits of Plaintiff's claims."

20  *Morales v. Hickman*, 415 F. Supp. 2d 1037, 1048 (N.D. Cal. 2006); *see also Morales*

21  *v. Tilton*, 465 F. Supp. 2d 972, 977 (N.D. Cal. 2006).  While the review was

22  temporarily stayed during pendency of state administrative regulatory litigation (Dkt.

23  370), that litigation was completed in August 2010.  Pursuant to the remand order that

24  the Ninth Circuit issued on September 28, 2010, this Court ordered its substantive

25  review shortly thereafter.  The review was delayed, however, by Defendants' attempts

26  to dismiss the complaint and obtain a protective order, by ongoing discovery

27

28

1  disputes,[4] and by a year-long wait for the appointment of an execution team.

2      With the discovery issues in this case unresolved, the Marin County Superior

3  Court granted the plaintiffs' motion for summary judgment on December 19, 2011,

4  declaring the lethal injection regulations invalid.  Judgment became final, with an

5  injunction, on February 21, 2012.  The CDCR has now appealed from this judgment.

6  The Notice of Appeal notes that the CDCR will commence a review of the viability of

7  changing its procedure to a single drug protocol.  (Drozdowski Decl. ¶ 11, Ex. F,

8  Notice of Appeal, at 2.)

9      **A.    Fairbank is Likely to Succeed on the Merits**

10     Fairbank's request for an injunction is likely to succeed on the merits.  In its

11 Memorandum of Intended Decision, this Court already has found that the

12 demonstrable unreliability of the State's execution protocol, and Defendants' failure

13 to correct it, violate the Eighth Amendment.  It made that order explicit in response to

14 the Brown execution effort after remand from the Ninth Circuit.  (Dkt. 424.)

15     Fairbank sits now in a position similar to that occupied by Brown upon remand

16 from the Ninth Circuit.  Brown was facing execution under a procedure that was out

17 of compliance with state law.  That procedure has now been declared invalid and

18 _____

19     [4]  Discovery disputes have been ongoing in this case since October 15, 2010,
   when Plaintiffs first served Defendants with interrogatories and requests for
20 documents relating to Defendants' efforts to adopt and implement the new lethal
   injection regulations which became effective on August 28, 2010.  (Defendants
21 supposedly employed the new regulations even earlier than the published effective
   date and were employing them through September 29, 2010 during Defendants'
22 unsuccessful attempt to execute plaintiff Albert Brown on September 30, 2010.)
   Defendants responded to the discovery requests with a motion for a protective order
23 (Dkt. 436), which induced Plaintiffs to file a motion to compel answers, documents,
   and information (Dkt. 452).
24
       On March 11, 2011, the Court ordered "Defendants to produce the requested
25 documents and information and to answer the interrogatories."  (Dkt. 513.)
   Defendants, however, have yet to fully comply with this order.  In April 2012, given
26 uncertainties regarding how the Marin County Superior Court litigation would impact
   the present action, the Court stayed discovery to prevent the parties from engaging in
27 discovery that would turn out to be wasteful or unnecessary.  (Dkt. 534.)  On July 16,
   2012, the parties filed a joint statement requesting that discovery continue to be
28 stayed until a viable lethal injection regulation is in place or until the Marin County's
   injunction is overturned on appellate review, whichever occurs first.  (Dkt. 552.)

enjoined, and the CDCR has been ordered to issue one that does comply with the APA.  Nonetheless, the San Mateo County District Attorney has requested that a criminal court order the CDCR to bypass this process and execute Fairbank.

There is proof that Defendant CDCR substantially deviated from its procedure in order to accelerate the execution of Brown.  (*See generally* Exhibits to Dkt. 423.)[5] If an execution date is set for Fairbank in the near future, it is likely that Defendants will deviate from their ad hoc procedure once again in order to execute Fairbank.[6] The regulations suffer the deficiencies noted above and within the Complaint.

## B.    Fairbank Will Suffer Irreparable Harm

Fairbank faces execution pursuant to the same – or worse – Lethal Injection Protocol that already has required constitutional review by this Court sufficient to grant stays of execution for Morales, Brown, Sims, and Fields.  Nothing has changed in this regard, and without a stay, Fairbank faces the real possibility of cruel and unusual capital punishment.  In fact, Fairbank faces a possibly more inhumane execution because the San Mateo County District Attorney has asked the state criminal court to cobble together a procedure of unknown viability that will not have benefitted from the thorough and necessary review that this Court ordered in 2006, that the state courts have required be undertaken in accordance with the state APA, and that the Governor has requested be done anew in the Notice of Appeal.

---

[5]  As noted during the Brown litigation, the few documents produced indicated numerous deficiencies, including the complete lack of training in the mixing of the chemicals.  Defendants have never produced numerous training documents required to be maintained by the regulations such as chain of custody and sign in sheets, and have not produced any additional training materials since January of 2011.

[6]  Defendants possess thiopental which was illegally imported and must be returned to the Food and Drug Administration (FDA).  According to the San Mateo County District Attorney, Defendants do not have any of the second lethal injection drug, pancuronium bromide.  (Drozdowski Decl. ¶ 5, Ex. A, Motion for Order of Execution, at 22.)

ROBERT FAIRBANK'S MOTION TO INTERVENE AND FOR A STAY OF EXECUTION
Case Nos.: 3:06-cv-219-RS; 3:06-cv-926-RS

**C.    The Equities are in Fairbank's Favor and Granting the Stay Furthers The Public's Interest in Orderly Review**

As discussed above, Fairbank brings this request for a stay promptly after the United States Supreme Court denied his petition for certiorari and promptly after the San Mateo District Attorney filed the Motion for Order of Execution specifically aimed at Fairbank.  There has been no delay.

This Court granted intervention and a stay of execution for Sims and Fields, stating in relevant part:

> Both Sims and Fields are similarly situated to Morales and Brown in that they are condemned prisoners *whose executions are not otherwise stayed* and whose claims in their complaint in intervention are virtually identical to those asserted by Morales and Brown.  Accordingly, Sims and Fields are entitled to intervene and, like Morales and Brown, to have their executions stayed until the present litigation is concluded.

(Dkt. 473 at 2 (emphasis added).)  Fairbank also currently has no stay of execution in any court.

Furthermore, Fairbank requests that this stay be entered shortly in order to prevent the State of California from seeking to execute him before this Court has the opportunity to conduct an orderly review of any proposed protocol.  In 2006, this Court stated that a thorough review of the process of executions was necessary and strongly suggested that the Governor take the lead in conducting this review.  In 2010, the Ninth Circuit and this Court both ruled that the review process also requires independent and orderly judicial review.  *See Morales v. Cate*, 623 F.3d 828, 829 (9th Cir. 2010) ("Timing is everything and the district court should take the time necessary to address the State's newly revised protocol in accord with Supreme Court authority.").  State courts have ruled twice that the review of such protocol requires compliance with the state APA.

1  The California Attorney General has expressed twice in this Court that

2  executions will not be set until the Court's review is completed. This assurance is

3  meaningless to Fairbank, however, as the San Mateo District Attorney is currently

4  seeking an execution date for Fairbank and the Attorney General has not granted

5  Fairbank's request to direct the district attorney to dismiss his Motion for Execution.

6  Individual district attorneys should not be permitted to circumvent the process of

7  review that this Court has determined must be conducted in order to comport with

8  state law and the Constitution. A stay of execution here will prevent such

9  circumvention. There is no equity that favors the type of "fire drill" approach to

10 litigation that the Court saw in February 2006 and again in September 2010.

11 **V.  Conclusion**

12  For the foregoing reasons, Fairbank respectfully requests that this Court grant

13 both his motion to intervene and his motion to stay his execution and all preparations

14 relating thereto.

15                                         Respectfully submitted,

16                                         SEAN K. KENNEDY
                                           Federal Public Defender
17                                         MARK R. DROZDOWSKI
                                           MARGO A. ROCCONI
18                                         ELIZABETH RICHARDSON-ROYER
                                           Deputy Federal Public Defenders

19

20 DATED: August 23, 2012          By */s/ Mark R. Drozdowski*
21                                         MARK R. DROZDOWSKI
                                           Deputy Federal Public Defender
22
                                           Attorneys for Robert Fairbank
23

24

25

26

27

28

ROBERT FAIRBANK'S MOTION TO INTERVENE AND FOR A STAY OF EXECUTION
Case Nos.: 3:06-cv-219-RS; 3:06-cv-926-RS