NORMAN C. HILE (STATE BAR NO. 57299)
nhile@orrick.com
KATIE C. DEWITT (STATE BAR NO. 244673)
kdewitt@orrick.com
LEO MONIZ (STATE BAR NO. 285571)
lmoniz@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, California  95814-4497
Telephone:     916-447-9200
Facsimile:     916-329-4900

Attorneys for Intervenor
KEVIN COOPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL ANGELO MORALES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MATTHEW CATE,[1]  Secretary of the California Department of Corrections and Rehabilitation, et al.,<br><br>Defendants. | Case No      3:06-cv-219-RS<br>Case No.     3:06-cv-926-RS<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE AND TO STAY EXECUTION BY KEVIN COOPER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         7/25/2013<br>Time:        1:30 p.m.<br>Dept:        3<br>Judge:       Seeborg<br>Trial Date:  None Set<br>Date Action Filed:  1/5/2006 |

---

[1]  Matthew Cate resigned on November 11, 2012.  Jeffrey A. Beard was appointed as Secretary on December 27, 2012.

## <u>TABLE OF CONTENTS</u>

**Page(s)**

NOTICE OF MOTION AND MOTION TO INTERVENE AND TO
STAY EXECUTION BY KEVIN COOPER .................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO INTERVENE AND TO STAY EXECUTION
BY KEVIN COOPER ............................................................................................... 4

I.      ISSUES TO BE DECIDED ............................................................................ 4

II.     SUMMARY OF RELEVANT FACTS ........................................................... 4

III.    ARGUMENT ................................................................................................. 12

        A.      Mr. Cooper's Motion To Intervene Should Be Granted ..................... 12

                1.      Mr. Cooper's Motion To Intervene Is Timely ......................... 13

                        a.      An Analysis Of The Stage Of The Proceedings Favors
                                Mr. Cooper's Intervention Request................................. 13

                        b.      Mr. Cooper's Intervention Will Not Prejudice The Existing
                                Parties ............................................................................. 13

                        c.      Mr. Cooper Did Not Unreasonably Delay In Bringing His
                                Intervention Motion ........................................................ 14

                2.      This Court Must Grant Intervention To Mr. Cooper As Of Right ........... 16

                        a.      Mr. Cooper's Interests In This Matter Are Identical To
                                Those Of Plaintiffs Morales, Brown, Sims, Fields, Raley,
                                Cox, And Fairbank .......................................................... 16

                        b.      Without Intervention, Mr. Cooper Is Practically Impaired
                                And Impeded From Protecting His Fifth, Eighth, And
                                Fourteenth Amendment Interests In Avoiding Execution By
                                An Unconstitutional And Arbitrary Procedure ................. 17

                3.      Mr. Cooper Meets The Standards For Permissive Intervention ........... 18

                        a.      This Court Has Independent Grounds For Jurisdiction ........... 18

                        b.      Mr. Cooper's Motion Is Timely ...................................... 18

                        c.      Mr. Cooper's Claims Have Common Questions Of Law Or
                                Fact With Those Of The Main Action ............................. 18

        B.      Mr. Cooper's Motion To Stay His Execution Should Be Granted ..................... 20

                1.      Mr. Cooper Is Likely To Succeed On The Merits ................... 20

                2.      Absent A Stay Of Execution, Mr. Cooper Will Suffer Irreparable
                        Harm ......................................................................................... 21

                3.      The Equities Are In Mr. Cooper's Favor And Granting The Stay
                        Furthers The Public's Interest In Orderly Review ................... 21

IV.     CONCLUSION ............................................................................................. 22

OHSUSA:752635794.5

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Beaty v. Food & Drug Admin.*,
   853 F. Supp. 2d 30 (D.D.C. 2012) ........................................................................ 9

*Cate v. United States District Court (Morales & Brown)*,
   Case No. 10-72977 ................................................................................................ 12

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ............................................................................... 17

*Cooper v. Brown*,
   565 F.3d 581 (9th Cir. 2009) ................................................................................. 5

*Hill v. W. Elec. Co., Inc.*,
   672 F.2d 381 (4th Cir. 1982) ............................................................................... 19

*League of United Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ............................................................................. 13

*Martinez v. City of Oxnard*,
   229 F.R.D. 159 (C.D. Cal. 2005) ......................................................................... 13

*Morales v. Cate*,
   623 F.3d 828 (9th Cir. 2010) ............................................................................... 22

*Morales v. Tilton*,
   465 F. Supp. 2d 972 (N.D. Cal. 2006) ................................................................. 6

*Nw. Forest Res. Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996) ........................................................................... 12, 18

*United States v. Oregon*,
   745 F.2d 550 (9th Cir. 1984) ............................................................................... 13

*United States v. Oregon*,
   839 F.2d 635 (9th Cir. 1988) ............................................................................... 17

*Winter v. Natural Res. Defense Council*,
   555 U.S. 7 (2008) ................................................................................................. 20

## STATE CASES

*Morales v. Cal. Dep't of Corr. & Rehab.*,
   No. CV 061436 (Super. Ct. Marin Cnty., Cal. Nov. 29, 2007), *aff'd, Morales v. Cal.*
   *Dep't of Corr. & Rehab.*, 85 Cal. Rptr. 3d 724 (Cal. Ct. App. 2008) ...................... 6

OHSUSA:752635794.5

# TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*People v. Brown*,
No. CR18104 (Super. Ct. Riverside Cnty., Cal. Aug. 30, 2010) .............................................. 7

## FEDERAL STATUTES, RULES, REGULATIONS

28 U.S.C.

§ 1331 ................................................................................................................ 18

§ 1343 ................................................................................................................ 18

42 U.S.C.

§ 1983 ........................................................................................................ 2, 7, 18

Fed. R. Civ. P.

24 ......................................................................................................................... 2

24(a)(2) ................................................................................................ 4, 12, 16, 17

24(b) ...................................................................................................... 12, 18, 19, 20

24(b)(1)(B) .......................................................................................................... 4

24(b)(3) ............................................................................................................. 13

## STATE STATUTES, RULES, REGULATIONS

Cal. Code Regs.

tit.15, § 3349 ............................................................................................... 4, 6, 14

tit. 15, §§ 3349 *et seq*. .......................................................................................... 9

1    TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on May 9, 2013, at 1:30 p.m., or as soon thereafter as

3    counsel may be heard, before the Honorable Richard Seeborg in Courtroom 3 of the United States

4    District Court for the Northern District of California, located at 450 Golden Gate Avenue, San

5    Francisco, California, Intervenor Kevin Cooper ("Mr. Cooper") will and hereby does move this

6    Court, under Federal Rule of Civil Procedure 24, for an order granting him leave to intervene in

7    the present matter.  Because he is a condemned prisoner on death row at San Quentin who has

8    exhausted his available appeals, Mr. Cooper claims an interest relating to the transaction that is

9    the subject of the action.  Similar to intervenors Mitchell Carlton Sims, Stevie Lamar Fields,

10   David A. Raley, Tiequon A. Cox, and Robert Green Fairbank, Jr., Mr. Cooper is so situated that

11   disposing of the action may as a practical matter impair or impede his ability to protect that

12   interest.  Furthermore, Mr. Cooper's interests and claims share with the main action common

13   questions of law or fact.

14   Mr. Cooper also moves the Court for an order staying his execution and all preparations

15   relating thereto.  There is a strong likelihood that the present matter will succeed on the merits,

16   the relative harm to the parties weighs in favor of Mr. Cooper, the equities weigh in Mr. Cooper's

17   favor, and granting the stay will further the public's interest in orderly review.

18   Mr. Cooper brings these motions pursuant to the United States Constitution, and all other

19   applicable statutes, case law and local rules.  The motions are based on Plaintiff Morales' and

20   Brown's Fourth Amended Complaint for Equitable and Injunctive Relief Pursuant to 42 U.S.C.

21   § 1983, this Notice, this Memorandum of Points and Authorities, the Declaration of Norman C.

22   Hile and attached exhibits, the Request for Judicial Notice and attached exhibits, the Complaint in

23   Intervention filed in conjunction with this motion, and the Proposed Order, along with all exhibits

24   and papers filed in this action and any evidence received at the hearing.

25   / / /

26   / / /

27   / / /

28   / / /

- 2 -

KEVIN COOPER'S NOT. MOT.& MOT. TO INTERVENE
& TO STAY EXECUTION; MEMORANDUM P'S & A'S
3:06-cv-219-RS; 3:06-cv-926-RS

1    Dated:  April 5, 2013                Respectfully submitted,

2                                         NORMAN C. HILE
                                          KATIE C. DEWITT
3                                         LEO MONIZ
                                          Orrick, Herrington & Sutcliffe LLP
4

5                                         By: /s/ Norman C. Hile
6                                              NORMAN C. HILE
                                             Attorneys for Intervenor
7                                             KEVIN COOPER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### MEMORANDUM OF POINTS AND AUTHORITIES

Kevin Cooper ("Mr. Cooper"), a condemned inmate on San Quentin's death row who has exhausted his current appeals, seeks to intervene in this action pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, because he "claims an interest relating to the . . . transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede" his ability to protect that interest.  Fed. R. Civ. P. 24(a)(2). Alternatively, Mr. Cooper seeks to intervene pursuant to Rule 24(b) of the Federal Rules of Civil Procedure, because he "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).

Mr. Cooper further seeks temporary, preliminary, and permanent injunctive relief to enjoin the Defendants, their officers, agents, servants, and employees, and all persons acting in concert with them, from preparing to set or setting Mr. Cooper's execution date or executing him by lethal injection using the lethal injection regulations promulgated as California Code of Regulations, Title 15, § 3349 and following, or any similar practices or protocol.

### I.    ISSUES TO BE DECIDED

1.    Whether Mr. Cooper, like other condemned prisoners who have recently been granted leave to intervene in this action, may intervene as a plaintiff pursuant to Rule 24 of the Federal Rules of Civil Procedure, as a matter of right or permissively.

2.    Whether Mr. Cooper should be granted a stay of execution on the same basis and to the same extent[2] as Plaintiffs Michael Angelo Morales, Albert Greenwood Brown, Mitchell Carlton Sims, Stevie Lamar Fields, David A. Raley, Tiequon A. Cox, and Robert Green Fairbank, Jr. ("Plaintiffs"), including, but not limited to, a stay of any preparations for the setting of an execution date for Mr. Cooper.

### II.    SUMMARY OF RELEVANT FACTS

Mr. Cooper is a condemned inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") as a result of a sentence of death recommended by a jury on March 1, 1985 and imposed by the San Diego Superior Court on May 15, 1985.

---

[2] Mr. Cooper seeks the stay as described by the Court as applying to all Plaintiffs in its November 21, 2012 order.

KEVIN COOPER'S NOT. MOT.& MOT. TO INTERVENE
& TO STAY EXECUTION; MEMORANDUM P'S & A'S
3:06-CV-219-RS; 3:06-CV-926-RS

OHSUSA:752635794.5

1  (Declaration of Norman C. Hile ("Hile Decl.") ¶ 2.)  He is held on death row at San Quentin State

2  Prison, San Quentin, California, 94974.  (*Id.*)

3      Mr. Cooper has filed numerous appeals with both the state and federal courts concerning

4  his capital conviction.  (Hile Decl. ¶ 3.)  His direct appeals and petitions for writ of habeas corpus

5  in state court were unsuccessful.  (*Id.*)  Likewise, Mr. Cooper's federal habeas corpus petitions

6  have also failed.  (*Id.*)  Mr. Cooper's last successive federal habeas petition was filed on April 1,

7  2004.  The United States District Court for the Southern District of California denied Mr.

8  Cooper's petition for writ of habeas corpus and reaffirmed the capital case judgment on May 27,

9  2005.  (*Id.*)  The Ninth Circuit Court of Appeals affirmed the district court's denial of

10  Mr. Cooper's habeas petition on December 4, 2007 and denied Mr. Cooper's petition for

11  rehearing and petition for rehearing en banc on May 11, 2009.[3]  (*Id.*)  In response, Mr. Cooper

12  filed a petition for writ of certiorari with the Supreme Court of the United States, which was

13  denied on November 30, 2009.  (*Id.*)  Therefore, Mr. Cooper has exhausted all of his state and

14  federal appeals barring any new factual developments that would allow Mr. Cooper to seek

15  another successive federal habeas petition.  (*Id.*)

16      Mr. Cooper's stance as a late stage death row inmate is evidenced by the notice received

17  from the California Governor's Office on August 4, 2010, warning that the San Diego County

18  Superior Court would "soon schedule a date for Mr. Cooper's execution" and requesting

19  notification of plans for a renewed application for clemency.  (Hile Decl. Ex. A.)  Mr. Cooper

20  filed a renewed request for clemency with then-Governor Arnold Schwarzenegger in December

21  of 2010, who passed the request to the incoming administration of Governor Edmund G. Brown,

22  Jr.  (Hile Decl. ¶ 4.)  Mr. Cooper then requested a stay of consideration to allow compilation of

23  further materials for Governor Brown, the process of which is still ongoing.  (*Id.*)  There are no

---

[3]  Dissenting from the Ninth Circuit's denial of rehearing en banc, Judge William Fletcher declared, "[t]he State of California may be about to execute an innocent man."  *Cooper v. Brown*, 565 F.3d 581, 581 (9th Cir. 2009) (Fletcher, J., dissenting from denial of reh'g en banc, joined by Pregerson, Reinhardt, Paez, and Rawlinson, JJ.).  Eleven Ninth Circuit judges dissented in various ways from the denial of rehearing en banc.  *See id.*; *id.* at 635 (Wardlaw, J., dissenting from denial of reh'g en banc, joined by Pregerson, Reinhardt, Thomas, and Berzon, JJ.); *id.* (Fisher, J., dissenting from denial of reh'g en banc, joined by Kozinski, C.J., and Pregerson, Graber, and Berzon, JJ.).

1    other actions currently pending in any court attacking Mr. Cooper's judgment and death sentence,

2    and Mr. Cooper currently does not have a stay of his execution from any court.  (*Id.*)

3          On December 15, 2006, this Court issued an order finding that the "implementation of

4    California's lethal-injection protocol lacks both reliability and transparency."  *Morales v. Tilton*,

5    465 F. Supp. 2d 972, 981 (N.D. Cal. 2006).  The Court further determined that California's

6    actions and failures to act with respect to the implementation of its lethal-injection protocol have

7    resulted in an intolerable risk of a Constitutional violation.  *Id.*  To remedy this situation,

8    California would have to undergo a "meaningful" review of its processes, which "must be

9    undertaken with an openness to the idea of making significant improvements in the

10   'infrastructure' of executions." *Id.* at 983.

11         Thereafter, former Governor Arnold Schwarzenegger announced via a press release on

12   December 18, 2006 that he was "committed to doing whatever it takes to ensure that the lethal

13   injection process is constitutional."  (ECF No. 291 Ex. A, at 1.)  Mr. Schwarzenegger added that

14   his "administration [would] take immediate action to resolve [the] court['s] concerns."  (*Id.*)

15         Then-Governor Schwarzenegger and the CDCR issued a revised Operational Procedure

16   770 ("2007 Lethal Injection Protocol") on May 15, 2007.  On November 29, 2007, the Marin

17   County Superior Court declared invalid and enjoined the enforcement of California's 2007 Lethal

18   Injection Protocol.  *Morales v. Cal. Dep't of Corr. & Rehab.*, No. CV 061436 (Super. Ct. Marin

19   Cnty., Cal. Nov. 29, 2007), *aff'd*, *Morales v. Cal. Dep't of Corr. & Rehab.*, 85 Cal. Rptr. 3d 724,

20   741 (Cal. Ct. App. 2008).

21         On July 30, 2010, the California Office of Administrative Law ("OAL") promulgated

22   regulations of the Lethal Injection Protocol ("2010 Lethal Injection Protocol"), effective

23   August 29, 2010.  Cal. Code Regs. tit. 15, § 3349.  With the exception of a few additional

24   deficiencies, the 2010 Lethal Injection Protocol is substantially identical to the 2007 Lethal

25   Injection Protocol.  The issuance of these new regulations was what triggered notice to

26   Mr. Cooper from the Governor's Office on August 4, 2010 referenced above.  (Hile Decl. ¶ 4.)

27   / / /

28   / / /

1        On August 30, 2010, the day after the 2010 Lethal Injection Protocol took effect, the

2    Riverside County Superior Court issued an execution warrant for Albert Brown.  *People v.*

3    *Brown*, No. CR18104 (Super. Ct. Riverside Cnty., Cal. Aug. 30, 2010).

4        After litigation involving five different courts over a six-week period, the Ninth Circuit

5    directed this Court to reconsider its previous denial of Mr. Brown's motion to stay his execution

6    (ECF No. 420), and this Court then issued a stay (ECF No. 424).  "Of particular importance" to

7    the Ninth Circuit was the fact that Mr. Brown's claims were "virtually identical" to the claims

8    that Plaintiff Morales had brought – claims that were already pending before this Court.  (ECF

9    No. 420, at 8.)

10        On September 28, 2010, this Court found that the Lethal Injection Protocol "as

11    implemented in practice through and including the date of the evidentiary hearing in the 2006

12    *Morales* litigation created a 'demonstrated risk of severe pain.'"  (ECF No. 424, at 4.)  Based on

13    its limited opportunity to compare the 2007 Lethal Injection Protocol and the 2010 Lethal

14    Injection Protocol, the Court also found "a significant dispute" as to whether there was a

15    meaningful difference between the two protocols other than as to the physical facility in which

16    executions are to take place.  (*Id.* at 5.)  This Court further indicated that it "intend[ed] to

17    undertake . . . review . . . as quickly as is reasonably possible" of the claims raised by Mr.

18    Morales and Mr. Brown.  (*Id.* at 8.)

19        On October 8, 2010, Mr. Morales and Mr. Brown filed a Fourth Amended Complaint for

20    Equitable and Injunctive Relief ("Fourth Amended Complaint") pursuant to 42 U.S.C. § 1983 in

21    this matter.  (ECF No. 428.)  On October 25, 2010, Defendants moved to dismiss the Fourth

22    Amended Complaint.  (ECF No. 430.)  The Court denied the motion to dismiss on December 10,

23    2010.  (ECF No. 461.)

24        On November 16, 2010, in response to an inquiry by the Court and after the Court

25    expressed concerns that the setting of future executions across California would result in

26    disorderly litigation such as occurred with Albert Brown, Defendants' counsel, the chief law

27    enforcement officer of the State of California, assured the Court that no execution dates would be

28    / / /

set in California until the litigation of this matter was concluded.  (ECF No. 556 Ex. C, at 3-10.)[4]
In a discussion with respect to whether other death row inmates who have exhausted their appeals
but who are not plaintiffs to this action were protected by this promise, Defendants' counsel
affirmed that such interested parties could rely on these assurances.  (*Id.* at 9-10.)

At a March 4, 2011 hearing, and in response to a stipulated intervention sought by David
Raley (ECF No. 511), this Court reiterated that there is "an agreement which has been made by
the state in this case that they will not attempt to execute anyone until after this case is concluded
at the district court level.  And I think that's an agreement that can be relied upon by anyone who
is an interested party."  (ECF No. 556 Ex. D, at 60-61.)

On November 22, 2010, Defendants filed a notice informing the Court and the parties,
pursuant to this Court's order of October 5, 2010, that the CDCR had ordered 521 grams of
sodium thiopental that would expire in 2014.  (ECF No. 455.)  Defendants thereafter filed another
notice stating that the shipment had been delayed, and Defendants finally received the sodium
thiopental on January 20, 2011.  (ECF No. 474.)  Defendants secured an execution team on or
about October 17, 2011.  (ECF No. 531.)

In response to this illicit importation, several death row inmates brought an action in
United States District Court for the District of Columbia challenging the Food and Drug
Administrations' ("FDA") non-regulation of the importation of sodium thiopental described
above.  (Hile Decl. ¶ 5.)  Mr. Cooper eventually joined this case as a plaintiff, and on March 27,
2012, the United States District Court for the District of Columbia declared that the Food and

---

[4]  Defendants' counsel had previously filed a written statement on November 10, 2010, specifying
the following:

Defendants address Plaintiffs' request that any stay address the possibility of execution dates
being sought during the course of a stay. Under California law, the named Defendants in this
matter are not legally responsible for setting execution dates. Rather, an execution date is set by
a superior court following a request and appropriate showing by a district attorney.
Nevertheless, the Office of the Attorney General, in its role as counsel for the People of the
State of California and apart from its representation of the Defendants here, does coordinate the
setting of execution dates and exercises a supervisory role over the district attorneys. The
Attorney General, in his capacity as counsel for the People and because of this pending
litigation, can represent that he will not advise the district attorneys to request execution dates
until the earlier of either: (1) thirty days after the conclusion of any further evidentiary hearing
in this present action, or (2) a judgment is entered by this Court in this matter.

(ECF No. 446, at 4.)

1   Drug Administration ("FDA") had acted improperly in permitting the importation of thiopental

2   for the purposes of executions, and it ordered the FDA to retrieve all imported thiopental. *See*

3   *Beaty v. Food & Drug Admin.*, 853 F. Supp. 2d 30, 43 (D.D.C. 2012).  Pursuant to the district

4   court's order, the FDA asked the CDCR in a letter dated April 6, 2012 to send any foreign-

5   manufactured thiopental in its possession to the FDA.  (ECF No. 557 Ex. J.)  To Mr. Cooper's

6   knowledge, the CDCR has not returned the thiopental to the FDA, and the FDA and Department

7   of Health and Human Services are appealing the decision in the United States Court of Appeals

8   for the District of Columbia Circuit.  (*See* ECF No. 558 Ex. K.)

9        In early 2011, Mr. Cooper filed a motion to intervene in litigation brought by Albert Sims

10   in Marin County Superior Court challenging California's execution protocol, Cal. Code Regs.

11   tit. 15, §§ 3349 *et seq*.  (Hile Decl. ¶ 6.)  The Marin County Superior Court granted Mr. Cooper's

12   motion to intervene on July 29, 2011.  (*Id.*)  On December 19, 2011, the Marin County Superior

13   Court held that the CDCR's execution protocol was improperly enacted under California's

14   Administrative Procedures Act ("APA").  (*Id.*)  The Superior Court entered a judgment with an

15   injunction on February 21, 2012, permanently enjoining the CDCR "from carrying out the

16   execution of any condemned inmate by lethal injection unless and until new regulations

17   governing lethal injection executions are promulgated in compliance with the Administrative

18   Procedures Act."  (Hile Decl. Ex. C.)  The CDCR appealed that judgment and in papers filed with

19   the 1st Appellate District stated that it would be reviewing the possibility of a single-drug

20   execution protocol during the appeal.  (Hile Decl. Ex. D, at 2.)

21        On December 29, 2010, Plaintiffs Sims and Fields moved to intervene and for stays of

22   executions in the instant action.  (ECF No. 467.)  The Court found that "Sims and Fields are

23   similarly situated to Morales and Brown in that they are condemned prisoners whose executions

24   are not otherwise stayed and whose claims in their complaint in intervention are virtually

25   identical to those asserted by Morales and Brown."  (ECF No. 473, at 1-2.)  The Court

26   accordingly granted their motions to intervene on January 19, 2011.  (*Id.* at 2.)

27        On March 4, 2011, a stipulation allowing the intervention and stay of execution in the

28   instant action for Plaintiff Raley was filed with this Court.  (ECF No. 511.)

1   On May 1, 2012, the District Attorney for the County of Los Angeles ("L.A. County

2   District Attorney") moved the Los Angeles County Superior Court for an order requiring the

3   CDCR to develop a single-drug execution protocol without APA approval and to set execution

4   dates for Mitchell Sims and Tiequon Cox under a one-drug method, notwithstanding this Court's

5   prior stay as to Mr. Sims. (ECF No. 559 Ex. L.)

6   On May 16, 2012, Mr. Cox moved to intervene in the instant litigation and requested that

7   this Court stay his execution. (ECF No. 535.)

8   On July 6, 2012, the San Mateo County District Attorney filed a motion in San Mateo

9   County Superior Court seeking to compel the CDCR to execute Plaintiff Fairbank by a one-drug

10   lethal injection or show cause why such execution cannot be performed.[5] (ECF No. 556 Ex. A.)

11   On August 23, 2012, Mr. Fairbank moved to intervene and sought a stay of execution in

12   the instant action. (ECF No. 555.) Defendants opposed Mr. Fairbank's motion. (ECF No. 561.)

13   On August 10, 2012, this Court adopted the parties' joint proposed schedule, vacating the

14   stipulated schedule and ordering that "[t]he parties shall submit a new proposed schedule within

15   thirty days after (1) viable lethal-injection regulations are in place or (2) the Marin Superior

16   Court's decision invalidating the regulations, *Sims v. Cal. Dep't of Corr. & Rehab*, No.

17   CIV 1004019 (Cal. Super. Ct. Marin Cnty. Feb. 21, 2012), is overturned on appellate review,

18   whichever occurs first." (ECF No. 554.)

19   On November 6, 2012, the voters of California rejected Proposition 34, a ballot initiative

20   that would have repealed the death penalty in California and replaced it with life without the

21   possibility of parole. (*See* Cooper's RJN, Ex. B [California Secretary of State Debra Bowen,

22   *Statement of Vote Summary Pages* 13 (2012), *available at*

23   http://www.sos.ca.gov/elections/sov/2012-general/06-sov-summary.pdf].)

24   On November 21, 2012, this Court issued an order approving the stipulation to intervene

25   and for a stay by Plaintiff Raley, and granting the motions of Plaintiffs Cox, and Fairbank to

26   ─────────────
[5]   The San Mateo County Superior Court denied the motion on November 19, 2012. (*See*

27   Cooper's Request for Judicial Notice ("Cooper's RJN"), Ex. A [Howard Mintz, *San Mateo judge refuses to set execution date for condemned killer*, MercuryNews.com (Nov. 19, 2012,

28   12:39 p.m.), http://www.mercurynews.com/crime-courts/ci_22026806/san-mateo-judge-refuses-set-execution-date-condemned].)

KEVIN COOPER'S NOT. MOT.& MOT. TO INTERVENE
& TO STAY EXECUTION; MEMORANDUM P'S & A'S
3:06-CV-219-RS; 3:06-CV-926-RS

1    intervene in this action and staying their executions.  (ECF No. 563.)  With respect to Mr. Raley,

2    the Court noted that it had deferred ruling on his stipulated intervention because judicial action

3    "appeared unnecessary in light of Defendants' representations that they would not schedule

4    executions until the Court has had the opportunity to conduct an evidentiary hearing and to

5    review an operative revised lethal-injection regulation." (*Id.* at 4.)  However, recognizing that

6    county district attorneys are not bound by Defendants' representations and could seek orders

7    allowing them to conduct executions, the Court deemed it appropriate to act on the pending

8    motions.  (*See id.*)  The Court concluded that Mr. Raley, Mr. Cox, and Mr. Fairbank were, "for

9    purposes of the present litigation, identically situated" to Plaintiffs Morales, Brown, Sims, and

10   Fields, and therefore granted their motions to intervene and stayed their executions.  (*Id.*)

11          In its ruling, the Court observed that although Defendants had stipulated to Mr. Raley's

12   intervention and stay of execution, Defendants nevertheless opposed the motions of the

13   "identically situated" Mr. Cox and Mr. Fairbank.  (*Id.*)  The Court was unimpressed by

14   Defendants' assertions that Mr. Cox and Mr. Fairbank were adequately represented by the

15   existing Plaintiffs and that their motions were premature, noting that "Defendants could have

16   made these arguments in connection with Sims, Fields, and Raley, and there is no explanation for

17   Defendants' shift to this seemingly inconsistent position." (*Id.* at 5.)  Furthermore, in light of "the

18   course of the present litigation—particularly in regards to Brown nearly being executed," the

19   Court concluded that Defendants' position was "wrong on the merits."  (*Id.*)

20          Following the Court's ruling and given the failure of Proposition 34 and the reactivation

21   of this case, Mr. Cooper decided it was necessary for him to seek intervention in the instant

22   action.  (Hile Decl. ¶ 8.)  Thereafter, counsel for Mr. Cooper sought a stipulation from counsel for

23   Defendants in this case to intervene and for a stay of execution identical to that which Defendants

24   stipulated to and submitted to this Court for Mr. Raley.  (Hile Decl. ¶ 8; *see* ECF No. 511.)  On

25   December 11, 2012, Deputy Attorney General Michael J. Quinn notified Mr. Cooper's counsel

26   that Defendants refused to so stipulate.  (Hile Decl. ¶ 8.)

27          Since nothing now prevents the San Bernardino County District Attorney from seeking a

28   date of execution for Mr. Cooper, as the L.A. County District Attorney has done with respect to

KEVIN COOPER'S NOT. MOT.& MOT. TO INTERVENE
& TO STAY EXECUTION; MEMORANDUM P'S & A'S
3:06-CV-219-RS; 3:06-CV-926-RS

1    Plaintiffs Sims and Cox, and as the San Mateo County District Attorney has done with respect to

2    Plaintiff Fairbank, Mr. Cooper seeks permission to intervene in this case and a stay of execution.

3    Mr. Cooper is intimately aware of the importance of obtaining this relief, as he came within hours

4    of execution on February 10, 2004, before the Ninth Circuit Court of Appeals, acting en banc,

5    granting his relief for an emergency stay.  (Hile Decl. ¶ 11.)  By this motion, Mr. Cooper also

6    seeks to preclude any future objection by Defendants that Mr. Cooper is not entitled to intervene

7    or to a stay of execution due to "inexcusable delay."[6]

8    **III.    ARGUMENT**

9           **A.    Mr. Cooper's Motion To Intervene Should Be Granted.**

10          Plaintiffs Morales and Brown's Fourth Amended Complaint for Equitable and Injunctive

11   Relief is incorporated herein by reference.  (*See* Hile Decl. Ex. E.)  Mr. Cooper joins in the Fourth

12   Amended Complaint in all its particulars as it currently is set forth.

13          A federal court must permit intervention as of right by anyone who files a timely motion

14   and who "claims an interest relating to the . . . transaction that is the subject of the action, and is

15   so situated that disposing of the action may as a practical matter impair or impede the movant's

16   ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R.

17   Civ. P. 24(a)(2).  Alternatively, "a court may grant permissive intervention where the applicant

18   for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and

19   (3) the applicant's claim or defense, and the main action, have a question of law or a question of

20   fact in common."  *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996); *see*

21   *also* Fed. R. Civ. P. 24(b).

22          Here, Mr. Cooper satisfies the standards both for intervention as of right and for

23   permissive intervention.

24   / / /

25   / / /

26

27   [6] Although Defendants did not raise this objection to Mr. Brown's motion for intervention and
     for a stay of execution in this Court, Defendants did untimely raise it in their later-withdrawn
28   Petition for Writ of Mandamus to the Ninth Circuit in *Cate v. United States District Court*
     *(Morales & Brown)*, Case No. 10-72977.

KEVIN COOPER'S NOT. MOT.& MOT. TO INTERVENE
& TO STAY EXECUTION; MEMORANDUM P'S & A'S
3:06-CV-219-RS; 3:06-CV-926-RS

1

**1.**      **Mr. Cooper's Motion To Intervene Is Timely.**

Mr. Cooper's motion to intervene is timely under the standards applicable to intervention as of right and to permissive intervention.  In determining whether a motion to intervene is timely, courts consider three factors: "the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay."  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997); *see also* Fed. R. Civ. P. 24(b)(3). All three factors weigh in favor of granting Mr. Cooper's motion to intervene.

**a.**      **An Analysis Of The Stage Of The Proceedings Favors Mr. Cooper's Intervention Request.**

First, despite the passage of time since the origination of this action, this matter is still in its initial stages of review, as evidenced by numerous court orders.  For example, on August 10, 2012, the Court adopted the parties' request that the then-current scheduling order be vacated and that a new scheduling order not be proposed until thirty days after either viable lethal-injection regulations are in place or the Marin County Superior Court's decision invalidating the regulations is overturned on appeal.  (ECF No. 554.)  Discovery, too, remains stayed.  (ECF No. 534.)  Moreover, the propriety of allowing intervention at this procedural junction is further demonstrated by the Court's recent grant of the motions to intervene of three other inmates, David A. Raley, Tiequon A. Cox, and Robert Green Fairbank, Jr.  (ECF No. 563.)  Given the stage of this litigation, there will be no additional delay to existing parties as a result of Mr. Cooper's intervention. *See Martinez v. City of Oxnard*, 229 F.R.D. 159, 163 (C.D. Cal. 2005) (permitting intervention while discovery was ongoing).

**b.**      **Mr. Cooper's Intervention Will Not Prejudice The Existing Parties.**

Further, allowing Mr. Cooper's intervention at this time is appropriate as the existing parties will not otherwise be prejudiced by Mr. Cooper's intervention, because Mr. Cooper does not seek to "relitigate matters which have previously been litigated," raise any claims other than those raised by existing Plaintiffs, or assert any claims against them. *United States v. Oregon*, 745 F.2d 550, 553 (9th Cir. 1984) (holding that the state of Idaho could intervene in litigation

- 13 -

OHSUSA:752635794.5

1  concerning fishing on the Columbia River when "Idaho has disclaimed any intent to relitigate

2  matters which have previously been litigated, to raise any claims unrelated to the Tribes' treaty

3  fishing rights, or to assert any claims against the other states"). Moreover, Mr. Cooper's claims

4  are identical in all material aspects to those claims already asserted in the Fourth Amended

5  Complaint, and Mr. Cooper intends to work cooperatively with counsel for the existing Plaintiffs

6  in prosecuting the instant action.  (Hile Decl. ¶¶ 9-10.)  This intended cooperation with existing

7  Plaintiffs further prevents any prejudice to the existing parties.

8               **c.      Mr. Cooper Did Not Unreasonably Delay In Bringing His
               Intervention Motion.**

9

10        Finally, Mr. Cooper has not unreasonably delayed in bringing his motion to intervene.  On

11 the contrary, a brief review of Mr. Cooper's litigation history makes clear that, far from sitting on

12 his rights, Mr. Cooper has been actively engaging in litigation to protect those rights.  As such,

13 Mr. Cooper's motion to intervene in the instant action once it was determined that the California

14 public would not invalidate the death penalty under Proposition 34 and that intervention in the

15 case would be possible due to the reactivation of the case pursuant to the Court's November 21,

16 2012 order, is timely.

17        First, the State of California's current execution protocol that is the subject of the instant

18 litigation did not become effective until August 29, 2010.  Cal. Code Regs. tit. 15, § 3349.  In

19 response, Mr. Cooper subsequently intervened in a state case in Marin County Superior Court

20 challenging the execution protocol under the state Administrative Procedures Act.  (Hile Decl.

21 ¶ 6.)  This Court has recognized that the validity of the promulgation of the execution protocol is

22 a prerequisite to its evaluation of the constitutionality of the implementation of that protocol, such

23 that Mr. Cooper should not be penalized for first pursuing the Administrative Procedures Act

24 litigation.  (*See* ECF No. 554.)  The Marin County Superior Court declared the state's failure to

25 comply with the Administrative Procedure Act in promulgating its execution protocol on

26 February 21, 2012, a judgment which the Attorney General is in the process of appealing.  (*See*

27 Hile Decl. Exs. C, D.)

28 / / /

1    Mr. Cooper has also sought to challenge the legality and efficacy of the sodium thiopental

2    imported by the CDCR in a lawsuit against the FDA filed in the District of Columbia.  (Hile Decl.

3    ¶ 5.)  This lawsuit, likewise, resulted in a grant of summary judgment for those challenging the

4    illicit importation, a decision that is undergoing the appellate process in the D.C. Circuit.  (ECF

5    No. 558 Ex. K.)

6    Moreover, Mr. Cooper should not be punished for his reliance on Defendants'

7    representations that the Attorney General would not advise district attorneys to request execution

8    dates until the earlier of thirty days after any evidentiary hearing in this matter had concluded or a

9    judgment had been entered by the Court.  (ECF No. 446 at 4; *see also* ECF No. 556 Ex. C, at 3-

10   10.)  Defendants' counsel in the past gave verbal assurances that no execution dates would be set

11   in California until this litigation was concluded and specifically affirmed that other death row

12   inmates who have exhausted their appeals, but who are not plaintiffs to this action, could rely on

13   these assurances.  (ECF No. 556 Ex. C, at 3-10.)  The propriety of relying on these assurances has

14   been recognized by this Court.  (*See* ECF No. 556 Ex. D, at 60-61 [the Court noting in response

15   to the stipulation to intervene by Mr. Raley that there was "an agreement which has been made by

16   the state in this case that they will not attempt to execute anyone until after this case is concluded

17   at the district court level and I think that's an agreement that can be relied upon by anyone who is

18   an interested party."].)

19   Therefore, although Mr. Cox, Mr. Fairbank, and Mr. Raley all filed prior papers to

20   intervene, the Court deferred ruling on these motions as unnecessary, until the immediacy of the

21   need to rule on the motions became apparent as evidenced in the Court's November 21, 2012

22   order.  (*See* ECF No. 563.)  Moreover, prior to the failure of Proposition 34, it was not clear that

23   the Court would ever need to rule on the proposed interventions and/or reactivate the litigation, as

24   passage of Proposition 34 would have mooted the underlying litigation.  (*See* Cooper's RJN Ex. B

25   [California Secretary of State Debra Bowen, *Statement of Vote Summary Pages* 13 (2012),

26   *available at* http://www.sos.ca.gov/elections/sov/2012-general/06-sov-summary.pdf].)

27   However, as this Court recognized in its recent order, "Defendants' representations do not

28   provide a sufficient basis for the Court to continue to defer action," since county district attorneys

1   are not bound by these statements and may seek to conduct executions of condemned inmates

2   who are not parties to this litigation and thus lack stays of execution.  (*See* ECF No. 563, at 4.)

3   Accordingly, Mr. Cooper now promptly seeks intervention, prior to the setting of any execution

4   date, in order to avoid putting this Court in the position in which it was placed by Mr. Brown's

5   scheduled execution in 2010.

6               **2.        This Court Must Grant Intervention To Mr. Cooper As Of Right.**

7               As set forth above, a federal court must permit intervention as of right by anyone who

8   files a timely motion and "claims an interest relating to the . . . transaction that is the subject of

9   the action, and is so situated that disposing of the action may as a practical matter impair or

10  impede the movant's ability to protect its interest, unless existing parties adequately represent that

11  interest."  Fed. R. Civ. P. 24(a)(2).

12              a.      **Mr. Cooper's Interests In This Matter Are Identical To Those
                        Of Plaintiffs Morales, Brown, Sims, Fields, Raley, Cox, And
13                      Fairbank.**

14              Mr. Cooper joins in the Fourth Amended Complaint filed on behalf of Mr. Morales and

15  Mr. Brown on October 8, 2010 and notes that all questions of law and fact related to Mr.

16  Cooper's claims are identical in all material aspects to those in the Fourth Amended Complaint.

17  Like Morales, Brown, Sims, Fields, Raley, Cox, and Fairbank, Mr. Cooper is a late stage inmate

18  sentenced to death who has exhausted all his appeals.  Further, like Morales, Brown, Sims, Fields,

19  Raley, Cox, and Fairbank, Mr. Cooper is at risk of being subjected to the unconstitutional

20  application of the execution protocols as described within the Fourth Amended Complaint and

21  Mr. Cooper's Complaint in Intervention.  Therefore, Mr. Cooper's interests in the instant

22  litigation are identical in all material aspects to those of Plaintiffs Morales, Brown, Sims, Fields,

23  Raley, Cox, and Fairbank, such that Mr. Cooper is properly subject to intervention as a matter of

24  right.

25  / / /

26  / / /

27  / / /

28  / / /

OHSUSA:752635794.5

1

**b.** **Without Intervention, Mr. Cooper Is Practically Impaired And Impeded From Protecting His Fifth, Eighth, And Fourteenth Amendment Interests In Avoiding Execution By An Unconstitutional And Arbitrary Procedure.**

2

3

4      Mr. Cooper must be allowed to intervene in order to protect his interests.  Intervention as

5    of right must be granted where, as here, the disposition of the action would put the movant at a

6    practical disadvantage in protecting the movant's interest.  *See United States v. Oregon*, 839 F.2d

7    635, 638 (9th Cir. 1988) (intervention as of right is proper when factual determinations in lawsuit

8    challenging conditions of state mental health facility would have persuasive *stare decisis* effect in

9    subsequent litigation by residents of facility); *Citizens for Balanced Use v. Mont. Wilderness*

10    *Ass'n*, 647 F.3d 893, 900-01 (9th Cir. 2011) (intervention mandated when the existing parties do

11    not adequately represent the movant's interests); *see also* Fed. R. Civ. P. 24(a)(2).

12      Here, although Mr. Cooper shares identical interests in the legal claims propounded by

13    Plaintiffs Morales, Brown, Sims, Fields, Raley, Cox, and Fairbank, his specific interest in

14    avoiding execution by an unconstitutional protocol – a protocol involving a demonstrated risk of

15    severe pain – remains inadequately represented by the existing plaintiffs.  *See Citizens for*

16    *Balanced Use*, 647 F.3d at 900-01; Fed. R. Civ. P. 24(a)(2).  As is clear from the treatment of the

17    various Plaintiffs already admitted to this action, Mr. Cooper must be allowed to intervene in

18    order to assure that his individual challenge to the lethal injection regulations will be heard and

19    that he individually will not be subjected to the unconstitutional application of the challenged

20    regulations.  (*See* ECF No. 563, at 5:7-9.)

21      Unless Mr. Cooper is permitted to intervene, the State of California may well set an

22    execution date and may execute him while this lawsuit is pending.  The likelihood that the State

23    of California will take such an action is demonstrated by similar actions it has undertaken in the

24    past with regard to Mr. Brown, Mr. Fairbanks, and Mr. Cox, all of whom were subject to attempts

25    to execute them prior to this Court's order allowing their intervention and staying their individual

26    executions.  Therefore, Mr. Cooper has demonstrated that he meets the requirements for

27    intervention as a matter of right and this Court should grant his request accordingly.

28    / / /

**3.**      **Mr. Cooper Meets The Standards For Permissive Intervention.**

"[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Glickman*, 82 F.3d at 839; *see also* Fed. R. Civ. P. 24(b).

**a.**      **This Court Has Independent Grounds For Jurisdiction.**

Mr. Cooper's claims arise under the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.  This Court has independent grounds for jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

**b.**      **Mr. Cooper's Motion Is Timely.**

As explained above, Mr. Cooper's motion to intervene is timely.

**c.**      **Mr. Cooper's Claims Have Common Questions Of Law Or Fact With Those Of The Main Action.**

Mr. Cooper's claims and those of Plaintiffs in the Fourth Amended Complaint have the requisite common questions of law and/or fact needed for this Court to properly grant permissive intervention.  In fact,  Mr. Cooper's Claims and those set forth in the Fourth Amended Complaint are identical in all material aspects and share the following common questions of law and fact:

- Whether the lethal injection regulations violate the Eighth and Fourteenth Amendments to the United States Constitution by creating a substantial risk that condemned inmates will experience severe pain and suffering during executions. (Hile Decl. Ex. E [Fourth Amended Complaint], at ¶¶ 22-23.)

- Whether the procedure for the remote administration of chemical substances, the absence of standardized procedures for administration of the chemicals, the lack of adequate training, screening and qualifications of the personnel on the execution team, and the combination and amounts of the chemicals used in executions create a grave, substantial and demonstrated risk that condemned prisoners will be conscious during the execution process and, as a result, experience an excruciatingly painful and protracted death.  (*Id.* at ¶¶ 24-25, 27-31, 33-40.)

- Whether the lethal injection regulations fail to require the minimum expertise of the execution team personnel necessary to ensure their proper performance. (*Id.* at ¶¶ 26, 32.)

- Whether Defendants have deliberately chosen to conduct executions in a manner that is not constitutionally compliant by selecting chemicals that cause excruciating pain and therefore carry a substantial risk of serious harm to a condemned inmate and by failing to take precautions to ensure that the personnel involved in the execution process possess the training, experience, and expertise necessary to administer the chemicals properly. (*Id.* at ¶ 120.)

- Whether Defendants have deliberately chosen to conduct executions by a combination of chemicals and a procedure that carries a substantial risk of serious harm when a feasible, readily implemented alternative method of execution is available. (*Id.* at ¶¶ 5, 105(f), 106-109.)

- Whether the Lethal Injection Protocol provides "specific guidelines for the administration of the three separate chemicals." (*Id.* at ¶ 113.)

- Whether the Protocol contains adequate guidelines to ensure that the inmate is "deeply anesthetized prior to injecting the second two drugs, or establish procedures for determining if or when an additional dose of sodium pentothal should be administered." (*Id.* at ¶ 116.)

- Whether Mr. Cooper, like Plaintiffs Morales, Brown, Sims, Fields, Raley, Cox, and Fairbank, is entitled to injunctive relief. (*Id.* at ¶ 7.)

If Mr. Cooper is not permitted to intervene in this action, an execution date could be set for him and carried out pursuant to the current, flawed lethal injection protocol. Federal Rule of Civil Procedure 24(b) permits this Court to grant a motion for intervention to avoid such an unconstitutional state action. *See Hill v. W. Elec. Co., Inc.*, 672 F.2d 381, 390-92 (4th Cir. 1982) (permitting intervention where the interests of the unnamed class members would no longer be protected by the named class representatives). Therefore, having demonstrated compliance with

/ / /

OHSUSA:752635794.5

1    the rule 24(b) requirements for permissive intervention, it is appropriate for this Court to grant

2    Mr. Cooper's request for permissive intervention.

3            **B.      Mr. Cooper's Motion To Stay His Execution Should Be Granted.**

4            This Court should stay Mr. Cooper's execution and all preparations relating thereto by

5    extending to him the exact stay already in place for Plaintiffs Morales, Brown, Sims, Fields,

6    Raley, Cox, and Fairbank as evidenced by the Court's November 21, 2012 Order.  Such a stay

7    will secure the orderly review in this Court that was ordered by the Ninth Circuit Court of

8    Appeals and will ensure that other state actors not bound by the representations made to the Court

9    by the California Attorney General's Office cannot seek Mr. Cooper's execution prior to the

10   completion of this litigation.

11           A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed

12   on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief;

13   (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest.

14   *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 21 (2008).  Mr. Cooper meets these

15   standards to the same extent that Plaintiffs Morales, Brown, Sims, Fields, Raley, Cox, and

16   Fairbank did.

17           **1.      Mr. Cooper Is Likely To Succeed On The Merits.**

18           Mr. Cooper's request for injunctive relief is likely to succeed on the merits.  In its Order

19   staying Mr. Brown's execution after remand from the Ninth Circuit, this Court noted that the

20   State's prior execution protocol created a "demonstrated risk of severe pain."  (*See* ECF No. 424,

21   at 4, 9.)  Further, the Court found that the arguments of existing Plaintiffs as to Defendants'

22   revised protocol presented "substantial questions of fact as to whether at least some of the

23   deficiencies of O.P. 770 have been addressed *in actual practice*."  (*Id.* at 7.)

24           Much like the attempt to execute Plaintiff Brown, which substantially deviated from

25   compliance with state law (*see generally* Exhibits to ECF No. 423.),[7] Mr. Cooper faces the risk

26   _____

[7] As noted during the Brown litigation, the few documents produced indicated numerous
deficiencies, including the complete lack of training in the mixing of the chemicals.  Defendants

27   have never produced numerous training documents required to be maintained by the
regulations, such as chain of custody and sign in sheets, and have not produced any additional

28   training materials since January of 2011.

KEVIN COOPER'S NOT. MOT.& MOT. TO INTERVENE
& TO STAY EXECUTION; MEMORANDUM P'S & A'S
3:06-CV-219-RS; 3:06-CV-926-RS

OHSUSA:752635794.5

1   that the CDCR will again deviate from their ad hoc procedure in order to execute Mr. Cooper.

2   The regulations suffer the deficiencies noted above and in the Complaint.  Further, Mr. Cooper's

3   claims are identical in all material aspects to the claims of Plaintiffs Morales, Brown, Sims,

4   Fields, Raley, Cox, and Fairbanks, who have already been granted stays of execution.  Therefore,

5   it is appropriate that this Court determine that Mr. Cooper has adequately shown that he is likely

6   to succeed on the merits.

### 2.      **Absent A Stay Of Execution, Mr. Cooper Will Suffer Irreparable Harm.**

9       Mr. Cooper faces execution pursuant to the same – or worse – Lethal Injection Protocol

10  that already has required constitutional review by this Court sufficient to grant stays of execution

11  for Plaintiffs Morales, Brown, Sims, Fields, Raley, Cox, and Fairbank.  Nothing has changed in

12  this regard, and without a stay, Mr. Cooper faces the real possibility of cruel and unusual capital

13  punishment.

### 3.      **The Equities Are In Mr. Cooper's Favor And Granting The Stay Furthers The Public's Interest In Orderly Review.**

16      As discussed above, Mr. Cooper brings this request for a stay promptly after this Court

17  determined that Defendants' representations that an execution would not be sought were

18  insufficient in light of the actions of county district attorneys in seeking to execute Mr. Sims,

19  Mr. Cox, and Mr. Fairbank.

20      This Court granted intervention and a stay of execution for Plaintiffs Sims and Fields,

21  stating in relevant part:

> Both Sims and Fields are similarly situated to Morales and Brown
> in that they are condemned prisoners *whose executions are not
> otherwise stayed* and whose claims in their complaint in
> intervention are virtually identical to those asserted by Morales and
> Brown.  Accordingly, Sims and Fields are entitled to intervene and,
> like Morales and Brown, to have their executions stayed until the
> present litigation is concluded.

26  (ECF No. 473 at 1-2 (emphasis added).)  Like the other Plaintiffs already admitted to the instant

27  action, Mr. Cooper also currently has no stay of execution in any court.

28

1    Furthermore, Mr. Cooper requests that this stay be entered shortly in order to prevent the

2  State of California from seeking to execute him before this Court has the opportunity to conduct

3  an orderly review of any proposed protocol.  In 2006, this Court stated that a thorough review of

4  the process of executions was necessary and strongly suggested that the Governor take the lead in

5  conducting this review.  In 2010, the Ninth Circuit and this Court both ruled that the review

6  process also requires independent and orderly judicial review. *See Morales v. Cate*, 623 F.3d 828,

7  829 (9th Cir. 2010) ("Timing is everything and the district court should take the time necessary to

8  address the State's newly revised protocol in accord with Supreme Court authority.").  State

9  courts have ruled twice that the review of such protocol requires compliance with the state APA.

10    The California Attorney General has expressed twice in this Court that executions will not

11  be set until the Court's review is completed.  However, as this Court has determined, these

12  assurances are meaningless in light of the actions of individual district attorneys who are not

13  parties to these actions and not bound by Defendants' representations.  (*See* ECF No. 563 at 4.)

14  Individual district attorneys should not be permitted to circumvent the process of review that this

15  Court has determined must be conducted in order to comport with state law and the Constitution.

16  A stay of execution here will prevent such circumvention.  There is no equity that favors the type

17  of "fire drill" approach to litigation that the Court saw in February 2006 and again in September

18  2010 during attempts to execute individuals who clearly have an interest in the outcome of the

19  instant litigation.

20  **IV.**    <u>**CONCLUSION**</u>

21    For the foregoing reasons, Mr. Cooper respectfully requests that this Court grant his

22  motion to intervene and his motion to stay his execution and all preparations relating thereto.

23

24

25

26

27

28

KEVIN COOPER'S NOT. MOT.& MOT. TO INTERVENE
& TO STAY EXECUTION; MEMORANDUM P'S & A'S
3:06-CV-219-RS; 3:06-CV-926-RS

OHSUSA:752635794.5

1   Dated:  April 5, 2013                              Respectfully submitted,

2                                                      NORMAN C. HILE
                                                       KATIE C. DEWITT
3                                                      LEO MONIZ
                                                       Orrick, Herrington & Sutcliffe LLP
4

5
                                                       By:/s/ Norman C. Hile
6                                                      ———————————————
                                                            NORMAN C. HILE
7                                                         Attorneys for Intervenor
                                                             KEVIN COOPER
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28