1   XAVIER BECERRA
    Attorney General of California
2   JAY M. GOLDMAN
    Supervising Deputy Attorney General
3   MICHAEL J. QUINN
    Deputy Attorney General
4   JOANNA B. HOOD
    Deputy Attorney General
5   R. LAWRENCE BRAGG
    Supervising Deputy Attorney General
6   State Bar No. 119194
     1300 I Street, Suite 125
7    P.O. Box 944255
     Sacramento, CA 94244-2550
8    Telephone:  (916) 210-7334
     Fax:  (916) 324-5205
9    E-mail:  Lawrence.Bragg@doj.ca.gov
    *Attorneys for Defendants Kernan, Brown, and Davis*

10

11                IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

| | |
|---|---|
| 14 | Case No. C 06-0219 RS |
| 15   **MICHAEL ANGELO MORALES, et al.,** | Case No. C 18-2146 RS |
| 16                              Plaintiffs, | **DEFENDANTS' OPPOSITION TO** |
| 17              **v.** | **VISCIOTTI'S MOTION TO INTERVENE AND FOR STAY OF EXECUTION** |
| 18 | Date:          None Set |
| 19   **SCOTT KERNAN, Secretary of the** | Judge:         The Honorable Richard G. Seeborg |
|      **California Department of Corrections** | Trial Date:    Not Set |
| 20   **and Rehabilitation, et al.,** | Action Filed:  1/5/2006 |
| 21                              Defendants. | |

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

SUMMARY OF RELEVANT ALLEGATIONS AND FACTS ....................................................1

ARGUMENT ....................................................................................................................3

    I.   THE MOTION TO INTERVENE MUST BE DENIED BECAUSE VISCIOTTI DOES
        NOT MEET RULE 24'S REQUIREMENTS FOR INTERVENTION AND HE FAILED
        TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES. .........................................3

        A.  The Fourth Amended Complaint Does Not State a Claim for Relief. ..........................3

             i.   Legal Standard for a Method-of-Execution Claim. ................................4

             ii.  Visciotti's Motion Must be Denied Because He Does Not Plead
                 Specific Facts Alleging the New Protocol or Its Implementation
                 Will Create a Substantial Risk of Severe Pain. ....................................5

             iii.  Visciotti Fails to Plead a Feasible, Readily Implemented
                 Alternative. ..............................................................................6

        B.  The 2006 Memorandum of Intended Decision Is Not Determinative. .........................7

        C.  Visciotti Admits That He Did Not Exhaust His Administrative
            Remedy. ..............................................................................................8

    II.  VISCIOTTI IS NOT ENTITLED TO A STAY OF EXECUTION. ......................................10

        A.  The Standards for a Stay of Execution. ....................................................10

        B.  Visciotti Is Not Likely to Succeed on the Merits. ........................................11

        C.  Visciotti Lacks Evidence That He Will Suffer Irreparable Harm. .............................12

        D.  The Balance of Equities Weighs Against Visciotti. ........................................13

        E.  An Injunction Is Not in the Public Interest. ..............................................13

    III.  A STAY OF PREPARATIONS RELATING TO EXECUTIONS IS OVERBROAD. ....................13

CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

**Page**

Cases

*Arthur v. Commissioner, Alabama Department of Corrections*
840 F.3d 1268 (11th Cir. 2016) ................................................................................4

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ..............................................................................................5, 6

*Baze v. Rees*
553 U.S. 35 (2009) ........................................................................................... *passim*

*Beardslee v. Woodford*
395 F.3d 1064 (9th Cir. 2005) ................................................................................9

*Beaty v. Brewer*
649 F.3d 1071 (9th Cir. 2011) ..............................................................................11

*Beaty v. Brewer*
791 F. Supp. 2d 678 (D. Ariz. 2011) ....................................................................11

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ..............................................................................................5, 6

*Brewer v. Landrigan*
562 U.S. 996 (2010) .....................................................................................4, 11, 13

*Brooks v. Warden*
810 F.3d 812 (11th Cir. 2016) ................................................................................5

*California ex rel Lockyer v. United States*
450 F.3d 436 (9th Cir. 2006) ..................................................................................3

*Clemons v. Crawford*
585 F.3d 1119(8th Cir. 2009) ...............................................................................12

*Cooey v. Strickland*
589 F.3d 210 (6th Cir. 2009) ................................................................................12

*Cooper v. Rimmer*
379 F.3d 1029 (9th Cir. 2004) ................................................................................6

*Creech v. Reinke*
2012 WL 1995085 (D. Idaho, June 4, 2012) ..........................................................8

ii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Cuviello v. City of Oakland*
No. C-06-cv-5517 MHP (EMC), 2009 U.S. Dist. LEXIS 26067
(N.D. Cal. Mar. 19, 2009) .......................................................................................13

*Dickens v. Brewer*
631 F.3d 1139 (9th Cir. 2011).................................................................8, 10, 11, 12, 13

*Dunn v. McNabb*
138 S. Ct. 369 (2017) ........................................................................................10, 11

*Emmett v. Johnson*
532 F.3d 291 (4th Cir. 2008)......................................................................................13

*Ford v. Johnson*
362 F.3d 395 (7th Cir. 2004).......................................................................................9

*Gissendanger v. Comm'r, Georgia Dept. of Corr.*
803 F.3d 565 (11th Cir. 2015)..................................................................................5, 7

*Glossip v. Gross*
576 U.S. 135 S. Ct. 2726 (2015) ........................................................... *passim*

*Harbison v. Little*
571 F.3d 531 (6th Cir. 2009)......................................................................................12

*Hill v. McDonough*
547 U.S. 573 (2016) ...................................................................................................10

*Jackson v. Danberg*
594 F.3d 210 (3rd Cir. 2010) ....................................................................................12

*Landrigan v. Brewer*
625 F.3d 1132 (9th Cir. 2010)....................................................................................11

*Lopez v. Brewer*
680 F.3d 1068 (9th Cir. 2012)...............................................................................10, 11

*McKinney v. Carey*
311 F.3d 1198 (9th Cir. 2002).....................................................................................9

*Morales v. Cate*
2010 U.S. Dist. LEXIS 101376 (N.D. Cal., September 24, 2010) .............................6

*Nooner v. Norris*
594 F.3d 592 (8th Cir. 2010)......................................................................................12

iii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Raby v. Livingston*
   600 F.3d 552 (5th Cir. 2010).................................................................12

*Rhodes v. Robinson*
   621 F.3d 1002 (9th Cir. 2010)................................................................9

*S.C. Johnson & Son, Inc. v. Clorox Co.*
   241 F.3d 232 (2d Cir. 2001)..............................................................13-14

*Towery v. Brewer*
   672 F.3d 650 (9th Cir. 2012)............................................................11, 13

*Turner v. Safely*
   482 U.S. 78 (1987)...............................................................................14

*Vaden v. Summerhill*
   449 F.3d 1047 (9th Cir. 2006)................................................................9

*West v. Brewer*
   652 F.3d 1060 (9th Cir. 2011)..............................................................11

*Whitaker v. Livingston*
   732 F.3d 465 (5th Cir. 2013)................................................................11

*Williams v. Kelley*
   854 F.3d 998 (8th Cir. 2017)................................................................11

*Wood v. Collier*
   836 F.3d 534 (5th Cir. 2016)..................................................................5

*Woodford v. Ngo*
   548 U.S. 81 (2006)................................................................................8

**STATUTES**

18 United States Code, § 3626(a)(1)(A) ......................................................14

42 United States Code, § 1983................................................................8, 9

42 United States Code, § 1997e.............................................................8, 9

California Penal Code, § 1227 .................................................................2

California Penal Code, § 3604.1(a)............................................................2

Defendants' Opposition to Motion to Intervene and For Stay of Execution (C 06-0219 RS)

## TABLE OF AUTHORITIES
### (continued)

**Page**

CONSTITUTIONAL PROVISIONS

U.S. Constitutional Amendment VIII ...................................................................... *passim*

COURT RULES

Federal Rule of Civil Procedure 12(b)(6) ...................................................................3, 5

Federal Rule of Civil Procedure 24.............................................................................1, 3

Federal Rule of Civil Procedure 65(d) ..........................................................................13

REGULATIONS

California Code of Regulations Title 15, § 3084.1(a).......................................................9

California Code of Regulations Title 15, § 3084.9(c)(3) .................................................9

Defendants' Opposition to Motion to Intervene and For Stay of Execution (C 06-0219 RS)

1

**INTRODUCTION**

2       Visciotti's request for intervention and a stay of execution should be denied on any of the

3  following grounds: (1) the motion does not comply with the requirements of Federal Rule of Civil

4  Procedure 24; (2) Visciotti has not met the pleading  burdens required of condemned inmate-

5  plaintiffs by the United States Supreme Court in *Glossip v. Gross*, 576 U.S. 135 S.Ct. 2726

6  (2015) and *Baze v. Rees*, 553 U.S. 35 (2009); (3) Visciotti has not exhausted his administrative

7  remedy; and (4) Visciotti has not satisfied the evidentiary burden required to obtain a stay of

8  execution.

9       The State of California has adopted a one-drug Lethal Injection protocol that is currently

10  effective, leaving no question as to the state's method for carrying out an execution by lethal

11  injection.  Movant John Visciotti seeks to intervene in this action to obtain a stay of his execution,

12  but he fails to satisfy the requirements for intervention under Federal Rule of Civil Procedure 24

13  by failing to allege a constitutional defect in the current one-drug execution protocol that was

14  adopted on March 1, 2018, by the California Department of Corrections and Rehabilitation.

15  Visciotti fails to allege that the current one-drug protocol, which calls for the use of one of two

16  barbiturates, including thiopental, poses an imminent risk of serious harm and needless

17  suffering—an understandable omission as this Court has previously found that a one-drug

18  protocol using thiopental "is painless." (ECF No. 424 at 9, fn. 7.)  Visciotti also fails to allege a

19  known and readily available alternative to the execution protocol or execution method.

20  Visciotti's silence with regard to a readily available, feasible alternative means that, as a matter of

21  law, his motion to intervene must be denied.  Visciotti's reliance on this Court's 2006 tentative

22  decision or other prior orders cannot substitute for evidence or satisfy the requirements to state a

23  colorable claim for relief under *Baze* and *Glossip*.  Those earlier orders were predicated on the

24  prior, now defunct, three-drug protocol and do not identify specific alternatives to the current

25  execution protocol or its implementation.

26

**SUMMARY OF RELEVANT ALLEGATIONS AND FACTS**

27       Visciotti seeks to join the operative Fourth Amended Complaint (FAC).  (ECF No. 643 at

28  3; ECF No. 428.)  The 2010 FAC challenges a three-drug execution procedure that was

1

1  invalidated by a state court on non-constitutional grounds in February 2012.  (Marin County

2  Superior Court Order, Request for Judicial Notice (RJN), Ex. A; Order; ECF No. 563 at 5:16.)

3  On March 1, 2018, a new one-drug protocol went into effect.  (ECF No. 635.) The orders

4  allowing other Plaintiffs to intervene and granting them stays of execution were issued prior to

5  that date.  (ECF Nos. 424, 473, 563, 581, 586, 606, 620, and 631.)

6      Rather than submit a proposed complaint in intervention, Visciotti relies entirely on the

7  FAC.  However, Plaintiffs have conceded that they lack sufficient facts to state a claim, by

8  admitting that it is "only after discovery" that they may identify "specific flaws" in the new

9  March 2018 execution protocol or its implementation.  (ECF No. 639 at 9.)  And Visciotti has not

10  cited to any facts or submitted evidence to support his request to intervene.  (ECF No. 642 at 12.)

11  Visciotti does not mention any alternatives.  (*Id.* at 16.)  Further, Visciotti admits that he has not

12  exhausted his administrative remedy. (*Id. at* 11.)

13      The common questions of law and fact Visciotti alleges he shares with the Plaintiffs are all

14  conclusory and factually devoid allegations, including a claim that the 2010 former lethal

15  injection protocol violates the Constitution.  (*Id.* at 16.)

16      Visciotti did not submit any evidence with his motion to support his assertion that he will

17  suffer irreparable harm absent a stay of execution.  Instead, he speculates that he could be

18  subjected to an execution procedure with "the same" defects he asserts were identified by this

19  Court with regard to the now-defunct three-drug protocol.  (ECF No. 642 at 17.)  "[O]r worse,"

20  writes Visciotti, he will be executed "by a new protocol" that was not approved under

21  California's Administrative Procedure Act.  (*Id.*)  However, he does not explain why a purported

22  failure to comply with the Administrative Procedure Act (APA) has any bearing on an Eighth

23  Amendment method-of-execution claim.  Nor does Visciotti address the preemption from the

24  APA provided by Penal Code section 3604.1(a). And although Visciotti seeks a stay of execution,

25  he alleges there is substantial uncertainty as to whether Defendants or various District Attorneys

26  will even attempt to set an execution date for him. (*Id.* at 11.)[1]  Finally, Visciotti asserts that the

27      [1] As this Court has acknowledged, under California law only District Attorneys may move
    a Superior Court for an execution warrant.  (*See* ECF No. 446 at 4; ECF No. 563 at 4; Cal. Penal
28  Code section 1227.)

2

1    balance of the equities is satisfied simply because other inmates received stays of execution prior

2    to the time that the new March 2018 one-drug protocol went into effect.  (ECF No. 642 at 18.)

3            Visciotti contends that a stay of his execution is required to allow for a "proper" judicial

4    review.  (*Id.*)  But he does not explain how that "proper" judicial review can occur when his

5    motion and his pleading do not comply with the mandatory pleading and proof standards required

6    of a plaintiff by the United States Supreme Court in *Baze* and *Glossip*.  Instead, his motion is

7    devoid of any citation to these two determinative cases.  (*See* ECF No. 642.)

8                                          **ARGUMENT**

9    **I.    THE MOTION TO INTERVENE MUST BE DENIED BECAUSE VISCIOTTI DOES NOT
        MEET RULE 24'S REQUIREMENTS FOR INTERVENTION AND HE FAILED TO
10       EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES.**

11           Visciotti is entitled to intervention only if his interests are not adequately represented by the

12   parties to the action.  Fed R. Civ. P. 24(a); *California ex rel Lockyer v. United States,* 450 F.3d

13   436, 440 (9th Cir. 2006); Fed. R. Civ. P. 24(b).  Visciotti does not satisfy this standard.  The

14   current Plaintiffs are similarly situated condemned inmates who are challenging the same method

15   of execution that was invalidated half a decade ago.  Further, as detailed below, Visciotti has

16   failed to comply with Rule 24(c) because, rather than file his own complaint-in-intervention, he

17   chose to move to join the FAC, which does not state a claim against the March 2018 protocol in

18   effect or its implementation.  Also, he failed to exhaust his administrative remedies. Therefore, as

19   a matter of law, intervention must be denied.

20           **A.    The Fourth Amended Complaint Does Not State a Claim for Relief.**

21           Visciotti has not submitted facts or evidence to support his request to intervene and has not

22   submitted a new proposed complaint in intervention.  Under Federal Rule of Civil Procedure

23   24(c), a motion to intervene must be accompanied by a pleading which sets forth the claims and

24   defenses for which intervention is sought.  Rather than filing a separate pleading, Visciotti seeks

25   to join the FAC pending in this action, which was filed on October 8, 2010.  (ECF No. 643 at 3;

26   ECF No. 428.)  Since the FAC fails to state a claim for relief under Federal Rule of Civil

27   Procedure 12(b)(6), and the pleading burden required of plaintiffs in a method-of-execution by

28   / / /

                                                3

1   the United States Supreme Court in *Glossip v. Gross,* 135 S. Ct. at 2739 has not been met, the

2   Court must deny Visciotti's motion.

3             **i.**      **Legal Standard for a Method-of-Execution Claim.**

4           The Supreme Court has emphasized that "because it is settled that capital punishment is

5   constitutional, '[i]t necessarily follows that there must be a [constitutional] means of carrying it

6   out.'" *Glossip*, 135 S.Ct. at 2732-33 (quoting *Baze v. Rees*, 553 U.S. at 47).  To succeed on an

7   Eighth Amendment method-of-execution claim, a condemned inmate must first establish that a

8   method presents a risk that is "*sure or very likely* to cause serious illness and needless suffering,

9   and give rise to significantly *imminent* dangers." *Baze*, 553 U.S. at 50 (quotations omitted)

10  (emphasis in original).  "[T]here must be a substantial risk of serious harm, an objectively

11  intolerable risk of harm that prevents prison officials from pleading that they were subjectively

12  blameless for purposes of the Eighth Amendment." *Id.* (quotations omitted).  And speculation

13  cannot substitute for evidence that the use of a particular aspect of an execution method is "*sure*

14  *or very likely* to cause serious illness and needless suffering." *Brewer v. Landrigan*, 562 U.S. 996

15  (2010), quoting *Baze*, 553 U.S. at 50 (emphasis in original).

16          An inmate challenging a method of execution also "must identify an alternative that is

17  'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe

18  pain.'" *Glossip*, 135 S.Ct. at 2737 (quoting *Baze*, 553 U.S. at 52).  The inmate must do more than

19  "show a slightly or marginally safer alternative." *Id.* (quoting *Baze*, 553 U.S. at 51).  *Glossip's*

20  "known and available alternative" test in a method-of-execution claim under the Eighth

21  Amendment's prohibition of cruel and unusual punishment requires a prisoner to prove that: (1)

22  the State actually has access to an alternative; (2) the State is able to carry out the alternative

23  method of execution relatively easily and reasonably quickly; and (3) the requested alternative

24  would in fact significantly reduce a substantial risk of severe pain relative to the State's intended

25  method of execution. *Arthur v. Commissioner, Alabama Department of Corrections*, 840 F.3d

26  1268, 1300 (11th Cir. 2016), cert. denied, 137 S.Ct. 725 (2017).  A plaintiff must also comply

27  with *Glossip*'s standards for as-applied claims. *Id. at* 1299.

28  / / /

Significantly, a plaintiff such as Visciotti must satisfy these requirements at the pleadings stage. *See Glossip*, 135 S.Ct. at 2739 ("the Eighth Amendment requires a prisoner to ***plead and prove*** a known and available alternative") (emphasis added). And under a Rule 12(b)(6) *Twombly*-style plausibility analysis, it is not enough to plead a claim in skeletal form, with the intention of adding essential factual details at a later date.

Where a complaint fails to comply with the pleading requirements in *Glossip* and *Baze*, it is subject to dismissal. *See Wood v. Collier*, 836 F.3d 534, 541 (5th Cir. 2016); *Gissendanger v. Comm'r, Georgia Dept. of Corr.,* 803 F.3d 565, 568 (11th Cir. 2015); *Brooks v. Warden,* 810 F.3d 812, 818-19 (11th Cir. 2016). This is true even if the only defect in a complaint is a failure to plead an alternative.

### ii. Visciotti's Motion Must be Denied Because He Does Not Plead Specific Facts Alleging the New Protocol or Its Implementation Will Create a Substantial Risk of Severe Pain.

Because the FAC does not address the terms of the one-drug protocol or its implementation, Visciotti has not identified a substantial risk that he will be subjected to severe pain during an execution under the revised protocol. *Baze*, 553 U.S. at 40. Therefore, it cannot serve as a basis upon which Visciotti can intervene and state a claim. Further, since other Plaintiffs were allowed to intervene prior to March 1, 2018, when the new protocol went into effect, Visciotti's argument that he, too, should be allowed to intervene is not persuasive.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when a plaintiff pleads facts that "[allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Conclusory statements, not supported by actual factual allegations, need not be accepted. *See Iqbal*, 556 U.S. at 677-678.

/ / /

5

1    The Supreme Court has rejected the notion that discovery must be available to a plaintiff

2    who cannot allege sufficient factual matter to suggest plausibly an entitlement to relief.  *See*

3    *Twombly,* 550 U.S. at 556–57.  "Rule 8 marks a notable and generous departure from the hyper-

4    technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a

5    plaintiff armed with nothing more than conclusions."  *Iqbal,* 556 U.S. at 678–79.

6    Visciotti alleges only that there is a "substantial risk of an Eighth Amendment violation."

7    (ECF No. 642 at 17:7-8.)  But such broad, conclusory, and factually devoid assertions cannot

8    state a claim.  Further, to the extent Visciotti is referring to the 2006 Memorandum of Intended

9    Decision, he ignores that this tentative decision pertained to a protocol that no longer exists and

10   was decided under a legal standard that was superseded by Supreme Court precedent.  *See*, *e.g.*,

11   *Morales v. Cate*, 2010 U.S. Dist. LEXIS 101376, *10 (N.D. Cal., September 24, 2010) ("The

12   requirement [in *Baze*] that an inmate seeking stay of execution show 'a demonstrated risk of

13   severe pain' superseded the lesser showing ('an unnecessary risk of unconstitutional pain') that

14   had been articulated by the Ninth Circuit in *Cooper* [*v. Rimmer*], 379 F.3d at 1033 and that was

15   binding on this Court at the time that Morales filed the instant action in 2006 and until *Baze* was

16   decided.").  The 2006 Memorandum dealt with a long-defunct three-drug protocol and an old

17   execution facility that the Plaintiffs admit was replaced years ago.  (ECF No. 428 at 33.)  Since

18   the FAC Visciotti seeks to join in lieu of submitting his own complaint-in-intervention fails to

19   comply with the pleading requirements set forth in *Ashcroft*, *Baze*, and *Glossip*, Visciotti's

20   motion to intervene and for a stay of execution should be denied.

21   **iii.    Visciotti Fails to Plead a Feasible, Readily Implemented Alternative.**

22   A method-of-execution claim must be dismissed, and a motion to stay an execution must be

23   denied where, respectively, a plaintiff cannot plead or prove that an alternative to an aspect of an

24   execution protocol or its implementation exists, and that it is feasible, readily implemented, and

25   significantly reduces a substantial risk of severe pain.  *Glossip*, 135 S.Ct. at 2737; *Baze*, 553 U.S.

26   at 52.

27   Visciotti's speculation that the new one-drug protocol may not require an execution team to

28   have sufficient training and expertise (ECF No. 642 at 14:1-4) falls far short of what a plaintiff is

6

1    required to plead to state a method-of-execution claim.  *See Gissendanger v. Comm'r, Georgia*

2    *Dept. of Corr.,* 803 F.3d at 568-69 (citing *Glossip*).  Visciotti fails to present a feasible, readily

3    implemented alternative method of screening, hiring, or training an execution team. Since the

4    FAC Visciotti seeks to join and use as a substitute for a complaint-in-intervention fails to state a

5    claim for relief under *Glossip*, his motion must be denied.  Any other result would defy binding

6    Supreme Court precedent.

7         **B.    The 2006 Memorandum of Intended Decision Is Not Determinative.**

8         Visciotti's reliance on this Court's 2006 Memorandum of Intended Decision, does not

9    provide a basis for his motion or change the fact that he seeks to join a complaint that fails to state

10   a claim.  This tentative decision never resulted in a judgment.  Further, the Memorandum

11   provides an insufficient basis to state a claim because, among other reasons, it lacks findings of

12   any alternatives to the March 2018 protocol or its implementation.  (ECF No. 290.)  It also does

13   not identify a substantial risk that the March 2018 protocol or its implementation will create a

14   substantial risk of causing severe pain during an execution.  (*Id.*)  And the Memorandum was

15   issued before the more stringent *Baze* and *Glossip* standards were issued by the United States

16   Supreme Court.

17        In addition, Visciotti's contention that Defendants have failed to correct the deficiencies

18   noted in the Memorandum is incorrect. (Motion, ECF No. 642 at 17:7.)  These issues were

19   addressed in the protocol filed with the Secretary of State on March 1, 2018.  (ECF No. 635.)

20   This protocol specifies administration of one barbiturate drug (ECF No. 635 at 16-17) in

21   compliance with the Court's 2006 recommendation.  (ECF No. 290 at 16:23-17:2.)  Therefore,

22   this protocol eliminates concerns involving the injection of pancuronium bromide and potassium

23   chloride without adequate anesthesia through the use of sodium thiopental. (*See* ECF No. 424 at

24   4:9-23.)

25        Further, this single-drug protocol addresses alleged deficiencies concerning the selection

26   and training of execution team members by requiring members of the Infusion Sub-Team to have

27   experience in setting intravenous lines in appropriate veins within the preceding twelve months

28   and to have at least one member who is a physician, physician assistant, pharmacist, registered

7

1   nurse, emergency medical technician, paramedic, or medic. (ECF No. 635 at 10-11.)  Team

2   members are required to engage in monthly training for at least eight hours, and to engage in

3   training for the three consecutive calendar days immediately preceding an execution.  (*Id.* at 12.)

4   Infusion Sub-Team members are required to engage in specific training concerning the

5   preparation of the lethal injection chemicals, the level and rate of infusion of that chemical, and

6   the labeling, color coding, and sequencing of syringes used in the lethal injection process.  (*Id.* at

7   13.)  Executions will be accurately documented by the Record Keeping Sub-Team members and

8   those documents will be permanently retained as part of a Master Execution File.  (*Id.* at 32-34.)

9   In addition to the regulatory changes, a new execution facility was constructed.  (ECF No. 428 at

10   33.)

11         The 2006 Memorandum cannot by definition be determinative as to whether the revised

12   2018 protocol complies with the Eighth Amendment.  *See Dickens v. Brewer,* 631 F.3d 1139,

13   1146 (9th Cir. 2011) (inmate must raise issues of fact that he will be improperly anesthetized

14   despite safeguards in the protocol, including those added through amendment).  The issues raised

15   in the Memorandum concern a protocol and its implementation that was abandoned over a decade

16   ago, and therefore misplaced reliance on it does not establish that Visciotti has stated a claim, or

17   is likely to succeed on the merits, or is entitled to a stay of execution.

18         **C.    Visciotti Admits That He Did Not Exhaust His Administrative Remedy.**

19         Visciotti also fails to state a claim for relief because he admits he did not exhaust his

20   administrative remedy.  (ECF No. 642 at 11:2-4.)

21         Visciotti incorrectly contends that he is not required to exhaust available administrative

22   remedies.  The Prison Litigation Reform Act of 1995 (PLRA), amended 42 U.S.C. § 1997e,

23   requires exhaustion of administrative remedies under all circumstances in § 1983 actions brought

24   by prisoners.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  The PLRA's exhaustion requirement

25   applies to civil rights lawsuits challenging the validity of an execution procedure.  *Creech v.*

26   *Reinke*, 2012 WL 1995085, * 8-9 (D. Idaho, June 4, 2012).  A prisoner-litigant must exhaust the

27   California Department of Corrections and Rehabilitation's administrative grievance process

28   / / /

8

1  through a third level of review before bringing suit.  *See* Cal. Code Regs. tit. 15, § 3084.1(a);

2  *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002).

3       *Beardslee v. Woodford,* 395 F.3d 1064 (9th Cir. 2005), cited by Visciotti, does not support

4  his contention that he is exempt from the PLRA's exhaustion requirement.  The inmate in that

5  case waited until his execution was scheduled before filing an action under 42 U.S.C. § 1983

6  challenging an execution protocol.  Noting that "whether or not exceptions would exist for

7  circumstances such as these is an unsettled question," the court excused the inmate's failure to

8  exhaust.  *Beardslee v. Woodford,* 395 F.3d at 1069 n.5.  *Beardslee* does not hold that the

9  exhaustion requirement is inapplicable to condemned inmates in all circumstances.  Because there

10  is no evidence that an execution warrant was issued for Visciotti, the decision in *Beardslee* is

11  factually distinguishable from the present action.

12       Further, Visciotti's acknowledgement that he submitted an administrative appeal, but has

13  not completed the grievance procedure, is tantamount to an admission that compliance with this

14  procedure is required. Visciotti submitted an administrative appeal on March 22, 2018, which was

15  rejected for failure to comply with the criteria set forth in Title 15 of the California Code of

16  Regulations, with instructions on how he could correct this failure.  (Carlton Decl., Ex. A at 2:18-

17  26; Appeal, Ex. A to Decl.; Rejection, Ex. B to Decl.)  Although Visciotti has recently

18  resubmitted a corrected grievance, insufficient time has passed for this appeal to be considered

19  through the final level of review before his motion was filed.  (Carlton Decl., Ex. A at 3:1-8.) *See*

20  Cal. Code Regs tit. 15, section 3084.9(c)(3).

21       The PLRA at 42 U. S. C. section 1997e(a) "requires exhaustion *before* the filing of a

22  complaint . . . ."  *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (emphasis added).  It is

23  mandatory that a plaintiff-inmate fully exhaust before filing a lawsuit, and dismissal is

24  appropriate for "a suit that begins too soon, even if the plaintiff exhausts his administrative

25  remedies while the litigation is pending."  *Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir.

26  2006) (quoting *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004)); *see also Rhodes v. Robinson*,

27  621 F.3d 1002, 1005 (9th Cir. 2010) (a prisoner "must exhaust his administrative remedies for the

28  claims contained within his complaint before that complaint is tendered to the district court").

9

1   Since Visciotti has not fully exhausted his administrative remedy, he cannot state a claim for

2   relief and this motion should be denied.  And since he has stated that it is uncertain whether a

3   District Attorney will seek an execution warrant for him (ECF No. 642 at 11), he cannot claim

4   that he lacks the time required to complete the grievance process.

5   **II.    VISCIOTTI IS NOT ENTITLED TO A STAY OF EXECUTION.**

6         **A.    The Standards for a Stay of Execution.**

7         "[I]nmates seeking time to challenge the manner in which the State plans to execute them

8   must satisfy all of the requirements for a stay, including a showing of a significant possibility of

9   success on the merits." *Dunn v. McNabb*, 138 S. Ct. 369 (2017), quoting *Hill v. McDonough,* 547

10  U.S. 573, 584 (2016).

11        The law does not allow for a stay of execution where, as is the case here, the moving party

12  has not stated a claim, and has not submitted any evidence in support of such an injunctive order.

13  Binding Supreme Court case law requires a movant to meet specific pleading requirements, and

14  to also submit evidence that prove specific criteria for a stay of execution.  *Baze v. Rees,* 553 U.S.

15  at 61.  Merely asking for a stay on the basis that other condemned inmates have received one does

16  not satisfy those requirements. And the previous stays Visciotti refers to in his motion were

17  issued without any findings that the inmates were likely to prevail on the merits, that the inmates

18  would suffer irreparable harm in the absence of a stay, or that the stays were in the public interest.

19  Also, they were issued before the new March 2018 protocol went into effect.

20        To obtain an injunctive order such as a stay, a condemned inmate must demonstrate that (1)

21  he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm without

22  preliminary relief; (3) the balance of equities tips in his favor; and (4) the injunction is in the

23  public interest.  *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).  A stay of execution is an

24  equitable remedy, and equity must be sensitive to the State's strong interest in enforcing its

25  judgments without undue interference from the federal courts.  *Hill v. McDonough*, 547 U.S. at

26  584.  The burden of proof is on the inmate.  *See Dickens v. Brewer,* 631 F.3d at 1146 (inmate

27  must raise issues of fact that he will be improperly anesthetized despite safeguards in the

28  / / /

1   protocol, including those added through amendment); *see also Williams v. Kelley,* 854 F.3d 998

2   (8th Cir. 2017); *Whitaker v. Livingston*, 732 F.3d 465 (5th Cir. 2013).

3          In addition, an inmate challenging an execution protocol or its implementation is not

4   entitled to a stay of execution unless: (1) the inmate establishes that a state's lethal injection

5   protocol or its implementation creates a demonstrated risk of severe pain; and (2) establishes that

6   the risk is substantial when compared to the known and available alternatives identified by the

7   inmate-plaintiff.  *Baze v. Rees,* 553 U.S. at 61.  As this Court has observed, the decision in *Baze*

8   creates a significantly higher standard for obtaining a stay of execution in a case challenging

9   lethal injection protocols.  (ECF No. 424 at 3:23-25.)  Where a condemned inmate-plaintiff does

10  not submit evidence that establishes he has met the *Baze* standards for a stay, stays of execution

11  are denied.[2]  *See Landrigan v. Brewer,* 625 F.3d 1132 (9th Cir. 2010), *reversed by Brewer v.*

12  *Landrigan*, 562 U.S. 996 (2010) (vacating stay when there was no evidence in the record

13  suggesting that execution drugs at issue that were obtained from foreign sources were unsafe).

14  The Supreme Court has recently reiterated that a district court must make these findings when it

15  grants a stay of execution.  *See Dunn v. McNabb*, 138 S.Ct. 369.

16          **B.    Visciotti Is Not Likely to Succeed on the Merits.**

17          Visciotti cannot show that he is likely to succeed on the merits because, as previously

18  argued: (1) the FAC fails to identify a known and available alternative that entails a lesser risk of

19  pain as required by *Glossip*; (2) Visciotti has not submitted any evidence in support of his motion

20  for a stay of execution; (3) Visciotti states he has not completed efforts to exhaust administrative

21  remedies; (4) Visciotti has not identified and proven that an aspect of an execution procedure in

22  effect will cause substantial pain; and (5) Visciotti has not, as required by *Glossip*, identified an

23  alternative to as aspect of an execution protocol, and has not proven that an alternative is known,

24  / / /

25  

26          [2] Courts in the Ninth Circuit have repeatedly denied requests for a stay of execution for
    failure to meet the *Baze* criteria.  *See West v. Brewer*, 652 F.3d 1060, 1061 (9th Cir. 2011);

27  *Dickens v. Brewer*, 631 F.3d at 1147-50; *Towery v. Brewer*, 672 F.3d 650, 658-59 (9th Cir. 2012);
    *Villegas-Lopez v. Brewer,* 680 F.3d 1068, 1071 (9th Cir. 2012); *Beaty v. Brewer,* 791 F. Supp. 2d

28  678, 682-83 (D. Ariz. 2011), *aff'd Beaty v. Brewer,* 649 F.3d 1071 (9th Cir. 2011).

11

1    readily available and would cause substantially less pain in comparison to a provision of the

2    state's protocol.

3          And as is also detailed above, Visciotti improperly relies upon this Court's 2006

4    Memorandum of Intended Decision (ECF No. 290) to establish that he is likely to succeed on the

5    merits.  (ECF No. 642 at 17.)  The Memorandum is not binding, does not review the correct

6    protocol or its implementation, was issued when a different standard for method-of-execution

7    challenges applied, and lacks the findings required by *Baze* and *Glossip* to support a stay of

8    execution.  Indeed, the Memorandum does not specify any alternatives to the 2006 protocol it

9    considered. Therefore, under current controlling case law, it could not support a stay of execution

10   even if the old 2006 protocol was still in effect.

11         **C.     Visciotti Lacks Evidence That He Will Suffer Irreparable Harm.**

12         As noted above, Visciotti adopts the FAC, which pertains to a three-drug protocol, and fails

13   to address the new one-drug protocol or its implementation.  (ECF No. 643 at 3:1-3; ECF No.

14   428.)  Since the FAC does not address the one-drug protocol, Visciotti cannot identify an aspect

15   of this protocol that is sure or very likely to cause him to suffer substantial pain.  *Baze*, 553 U.S.

16   at 40.  As a result, he has failed to show he will suffer irreparable harm without preliminary relief.

17         Past problems in conducting executions are not conclusive as to whether the protocol will

18   be carried out improperly in the future.  *See Nooner v. Norris,* 594 F.3d 592, 602 (8th Cir. 2010)

19   (prior botched executions did not raise a genuine issue of fact when the revised protocol

20   contained safeguards to prevent a recurrence), cited with approval in *Dickens v. Brewer,* 631 F.3d

21   at 1147.  Similar results occurred in *Raby v. Livingston,* 600 F.3d 552, 558-61 (5th Cir. 2010)

22   (evidence of prior problems with inserting IVs and monitoring), *Jackson v. Danberg,* 594 F.3d

23   210, 212-13, 220 (3rd Cir. 2010) (evidence that the wrong amounts of chemicals were

24   administered and that personnel did not check equipment and attend training), *Cooey v.

25   Strickland*, 589 F.3d 210, 217-18 (6th Cir. 2009) (evidence of prior problems inserting the IV),

26   *Clemons v. Crawford,* 585 F.3d 1119, 1125, 1128 (8th Cir. 2009) (past employment of

27   incompetent medical team personnel), *Harbison v. Little,* 571 F.3d 531, 537, 539 (6th Cir. 2009)

28   (evidence of hiring personnel with drug and mental health problems, and insufficient training),

1   and *Emmett v. Johnson,* 532 F.3d 291, 298 (4th Cir. 2008) (evidence of inadequate doses of

2   sodium thiopental and problems with IV lines).  All of these decisions were cited with approval

3   by the Ninth Circuit decision in *Dickens,* 631 F.3d at 1147.

4       There is no legal support for Visciotti's view that he will suffer irreparable harm absent a

5   stay.  Conclusory statements that a court has not conducted a detailed review of a new protocol or

6   its implementation, or that a protocol was adopted without complying with the California

7   Administrative Procedure Act, are factually and legally insufficient.

8       **D.     The Balance of Equities Weighs Against Visciotti.**

9       Visciotti has not shown that the balance of equities tips in favor of a stay.  While he

10  undoubtedly has an interest in being executed in a constitutional manner, Visciotti has failed to

11  produce any evidence that the current one-drug protocol violates the Eighth Amendment under

12  the standards set forth in *Baze* and *Glossip*. Therefore, the balance of equities weighs in favor of

13  the strong public interest in carrying out criminal judgments.  *See Towery v. Brewer,* 672 F.3d

14  650, 657 (9th Cir. 2012).

15      **E.     An Injunction Is Not in the Public Interest.**

16      The United States Supreme Court has sent a clear, concise message that, absent actual

17  evidence showing something more than speculative harm, the law does not permit a federal

18  district court to enjoin an execution.  *Brewer v. Landrigan*, 562 U.S. 996, 997 (2010).  Visciotti's

19  request is devoid of evidence and is based entirely upon conclusory and unspecified speculative

20  assertions.  Therefore, when considering the strong public interest in carrying out criminal

21  judgments, a stay of execution is not in the public interest.  *See Towery v. Brewer,* 672 F.3d at

22  661.

23  **III.   A STAY OF PREPARATIONS RELATING TO EXECUTIONS IS OVERBROAD.**

24      The requested stay extends to "all preparations relating" to the execution of Visciotti.  (ECF

25  No. 621 at 19:2-3.)  However, under Federal Rule of Civil Procedure 65(d), any injunction or

26  restraining order must state its terms specifically and describe in reasonable detail the act or acts

27  restrained.  *See Cuviello v. City of Oakland,* No. C-06-cv-5517 MHP (EMC), 2009 U.S. Dist.

28  LEXIS 26067 *9 (N.D. Cal. Mar. 19, 2009) (citing *S.C. Johnson & Son, Inc. v. Clorox Co.,* 241

13

1   F.3d 232, 240-41 (2d Cir. 2001)).  The PLRA imposes even more stringent limits and requires

2   that any prospective relief ordered be "narrowly drawn, extend no further than necessary to

3   correct the violation of the Federal right, and [be] the least intrusive means necessary to correct

4   the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A).  And principles of federalism and

5   separation of powers greatly restrain a federal court's intrusion into a state's administration of its

6   own policies, particularly prison operations.  *See Turner v. Safely,* 482 U.S. 78, 84-85 (1987).

7       Like Visciotti's request for a stay of execution, Visciotti has not satisfied the requirements

8   to obtain an injunction barring preparations for an execution.  Visciotti is unlikely to succeed on

9   the merits because there is no authority supporting the proposition that preparing for an execution

10  violates the Eighth Amendment.  Since no execution warrants have been issued and no executions

11  are scheduled, and Visciotti states that it is unknown whether such warrants will be sought by a

12  District Attorney, he cannot show that he faces an imminent execution.  Also, preparing to

13  conduct executions furthers the public interest in enforcing judgments, and therefore the equities

14  weigh in favor of Defendants.  And since a bar on preparations for executions would prevent an

15  execution from occurring, and thus is in effect itself a stay of execution, this injunctive term

16  should also be denied because the FAC, and Visciotti's lack of evidence, do not meet the

17  requirements of *Baze* and *Glossip*.

18  / / /

19  / / /

20  / / /

21

22

23

24

25

26

27

28

1

**CONCLUSION**

2       The law does not allow for a district court to, in effect, impose a moratorium on capital

3   punishment through stays of execution that do not comply with Supreme Court precedent and is

4   based on an execution protocol that is no longer in existence, and grant wide-ranging discovery to

5   go on a fishing expedition for colorable claims.  But that is what the Plaintiffs in this matter, and

6   now movant Visciotti, is asking this Court to do. Therefore, for the reasons set forth above, this

7   Court should deny Visciotti's motion to intervene, and separately deny his motion for a stay of

8   execution.

9   Dated:  May 1, 2018                                Respectfully Submitted,

10                                                     XAVIER BECERRA
                                                       Attorney General of California
11                                                     JAY M. GOLDMAN
                                                       Supervising Deputy Attorney General
12                                                     MICHAEL J. QUINN
                                                       Deputy Attorney General
13                                                     JOANNA B. HOOD
                                                       Deputy Attorney General
14
                                                       */s/ R. Lawrence Bragg*
15
                                                       R. LAWRENCE BRAGG
16                                                     Supervising Deputy Attorney General
                                                       *Attorneys for Defendants Kernan, Brown,*
17                                                     *and Davis*

18

19

20

21

22

23

24

25

26

27   SF2007200210
     33378509.docm
28

15

# EXHIBIT A

1 | XAVIER BECERRA, State Bar No. 118517
Attorney General of California
2 | JAY M. GOLDMAN, State Bar No. 168141
Supervising Deputy Attorney General
3 | MICHAEL J. QUINN
Deputy Attorney General
4 | JOANNA B. HOOD
Deputy Attorney General
5 | R. LAWRENCE BRAGG, State Bar No. 119194
Supervising Deputy Attorney General
6 | 1300 I Street, Suite 125
P.O. Box 944255
7 | Sacramento, CA 94244-2550
Telephone: (916) 210-7334
8 | Fax: (916) 324-5205
E-mail: Lawrence.Bragg@doj.ca.gov
9 | *Attorneys for Defendants Brown,
Kernan, and Davis*

10

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

13 | SAN FRANCISCO DIVISION

14

15

**MICHAEL ANGELO MORALES, et al.,** | C 06-0219 RS

16

Plaintiffs. | C 18-2146 RS

17

v. | **DECLARATION OF JEFFREY**
**CARLTON IN OPPOSITION TO**
18 | **VISCIOTTI'S MOTION TO**
**INTERVENE AND FOR STAY OF**
19 | **SCOTT KERNAN, Secretary of the** | **EXECUTION**
**California Department of Corrections and**
20 | **Rehabilitation, et al.,**

Judge:       The Honorable Richard G.
21 | Defendants. |                Seeborg
Trial Date:   Not Set
22 |                Action Filed:  January 5, 2006

23

I, Jeffrey Carlton, declare:

24

1.      I am a Correctional Counselor II (Acting) employed by the California Department of

25

Corrections and Rehabilitation (CDCR) as the Appeals Coordinator at San Quentin State Prison

26

(SQSP).

27

28

1

1    2.    The Appeals Coordinator's office receives and processes all First and Second Level

2    non-healthcare inmate Form CDCR 602 grievances. Healthcare appeals are received and

3    reviewed by the Healthcare Appeals Coordinator's office. Non-healthcare inmate grievances are

4    processed at the Third Level of Review by the CDCR Inmate Appeals Office.

5    3.    As an inmate Appeals Coordinator, I coordinate the processing of inmate appeals and

6    the maintenance of records concerning inmate appeals at SQSP. I am a custodian of records

7    concerning inmate appeals at SQSP.

8    4.    CDCR's inmate appeals process provided in title 15 of the California Code of

9    Regulations, sections 3084-3084.9, is available to inmates at SQSP. Copies of title 15 of the

10   California Code of Regulations are available to inmates upon request.

11   5.    Administrative appeals submitted by a prisoner are assigned log numbers. If an

12   inmate's appeal does not comply with regulations, that appeal is cancelled or rejected by the

13   Appeals Coordinator. Rejected appeals are returned to the inmate with a Form CDCR 695, which

14   is used to explain how to remedy the deficiency so it comports with CDCR's appeal regulations.

15   6.    I am familiar with the record-keeping system for inmate appeals at the institutional

16   level, and am able to verify the status of an inmate's First and Second Level appeals submitted at

17   SQSP.

18   7.    On March 28, 2018, my office received CDCR Form 602 Inmate/Parolee Appeal Log

19   Number SQ-A-18-01092 submitted by inmate John Visciotti (C-75300) (appeal), and a true and

20   correct copy is attached as Exhibit A. Based on the complexity of the issue being appealed, it was

21   determined that this could not be answered at the First Level of Review, and the appeal was by-

22   passed at the First Level of Review.

23   8.    This appeal was rejected at the Second Level of Review on March 28, 2018, under

24   California Code of Regulations, title 15, section 3084, et seq., and the specific reasons for the

25   rejection are stated on the notice provided to Visciotti, dated March 28, 2018. A true and correct

26   copy of this notice is attached as Exhibit B.

27   9.    Visciotti re-submitted the appeal, and my office received this resubmission on April

28   18, 2018.

2

1      10.   After re-submission, the appeal was accepted for Second Level Review on April 18,

2  2018. Under California Code of Regulations title 15, section 3084.8(c)(2), the Second Level

3  Response is not due to be completed until May 31, 2018. To date, the Second Level Response to

4  the appeal has not been completed.

5      11.   In the event that Visciotti is not satisfied with the Second Level Response, he must

6  submit the appeal to the Third Level of Review by the CDCR Inmate Appeals Office under

7  California Code of Regulations title 15, section 3084.1(b) in order to exhaust his administrative

8  remedy concerning the issues raised in the appeal.

9      I declare under penalty of perjury that the foregoing is true and correct.

10     Dated this **30** day of April, 2018, at San Quentin, California.

Jeffrey Carlton

17  SF2007200210
33368075.docx

3

# EXHIBIT A

**FEDERAL PUBLIC DEFENDER**
CENTRAL DISTRICT OF CALIFORNIA
321 EAST 2nd STREET
LOS ANGELES, CALIFORNIA 90012-4202
213-894-2854
213-894-0081 FAX

**HILARY POTASHNER**
*Federal Public Defender*
**CHRISTOPHER W. DYBWAD**
*Chief Deputy*

**AMY M. KARLIN**
*Directing Attorney*
*Santa Ana Office*
**JEFFREY A. AARON**
*Directing Attorney*
*Riverside Office*

Direct Dial: (213) 894-7520

March 23, 2018

**VIA REGISTERED MAIL**

Appeals Coordinator
San Quentin State Prison
San Quentin, CA 94974

      Re:    Inmate Appeal (602) by John L. Visciotti, CDCR # C-75300

Dear Sir or Madam:

      Enclosed please find an Inmate Appeal (602) signed by John L. Visciotti
(CDCR # C-75300) on March 22, 2018.

                         Sincerely,

                         Mark. R. Drozdowski
                         Deputy Federal Public Defender

Enclosure

MAR 2 8 2018

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | | |
| | FOR STAFF USE ONLY | | |

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.       WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): Visciotti, John | CDC Number: C-75300 | Unit/Cell Number: 4-EB-107 | Assignment: None |
|---|---|---|---|

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):

Lethal Injection ("LI") Regulations ("regs") Violate State and Federal Law

A. Explain your issue (if you need more space, use Section A of the CDCR 602-A): The execution regs will

result in a substantial, objectively intolerable risk of severe pain, and violate CA and US constitution

(amends. 1, 5, 6, 8, 14), federal and CA laws and regulations, and CA APA. LI chemicals will be

acquired, dispensed, and administered in violation of state and federal laws and regulations.

B. Action requested (If you need more space, use Section B of the CDCR 602-A): Emergency handling of this

appeal under 3084.9(a)(1)(A)&(B) is required to permit full review prior to setting appellant's date

for execution. Regs must be revised to eliminate the violations of state and federal law described

provide proper and adequate medical care, comply with due process.

**Supporting Documents: Refer to CCR 3084.3.**
☐ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

MAR 28 2018

☒ No, I have not attached any supporting documents. Reason : The docs in support are too many: see

letter from ACLU, and comments from ACLU, HCRC, Federal Defender, Johns Hopkins,

Larry Sasich, Berkeley Death Penalty clinic, Craig Stevens, David Waisel, Dave Senior,

Pub. Def., Cal. Appellate Project, Regs. All in CDCR comment file.

Inmate/Parolee Signature: _____ Date Submitted: 3-22-18

☐ By placing my initials in this box, I waive my right to receive an interview.

SAN QUENTIN APPEALS
MAR 28 2018
ONLY
USE
STAFF

**C. First Level - Staff Use Only**

This appeal has been:
☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter) Date: _____
☐ Accepted at the First Level of Review.

Staff – Check One: Is CDCR 602-A Attached? ☐ Yes ☐ No

Assigned to: _____ Title: _____ Date Assigned: _____ Date Due: _____

First Level Responder: Complete a First Level response. Include interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: _____ Interview Location: _____

Your appeal issue is:  ☐ Granted   ☐ Granted in Part   ☐ Denied   ☐ Other: _____

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: _____ (Print Name) Title: _____ Signature: _____ Date completed: _____

Reviewer: _____ (Print Name) Title: _____ Signature: _____

Date received by AC: _____

| | AC Use Only Date mailed/delivered to appellant ___ / ___ / ___ |
|---|---|

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | | |
| | **FOR STAFF USE ONLY** | | |

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.     WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): Visciotti, John | CDC Number: C-75300 | Unit/Cell Number: 4-EB-107 | Assignment: None |
|---|---|---|---|

**A. Continuation of CDCR 602, Section A only (Explain your issue) :** The chemicals are untested for quality, improperly mixed, and the dosages provided are untested, without justification, and unrelated to appellant's conditions. Regs provide for unguided selection and administration of chemicals by non-medical personnel; acquisition of chemicals from unknown source; compounding without document-ation, oversight, testing or reliability, all in violation of state & fed. laws and regulations. Regs do not ensure selection of or require qualified medical personnel with adequate skills and training to secure and maintain a proper IV placement, administer drugs, evaluate consciousness, & monitor breathing and heart function. Regs require remote administration, don't require an anesthesiologist to oversee, monitor and take sufficient actions to ensure a proper execution, and do not ensure adequate monitoring, in violation of state law & fed. court order.  They permit improper, unguided IV access procedures, infusion rates, and backup procedures. The LI execution facility is physically inadequate (e.g., visibility issues, remote administration, lack of monitoring equipment). The back-up procedure is medically inappropriate and will be carried out by untrained and unqual-ified persons. The regs provide for lethal gas ("LG") executions but provide no information about which LG will be used, the dose thereof, and the method of administration.  Regs do not provide adequate guidance for cancellation of the execution mid-process. They do not ensure that the execution process will be consistently performed.  They remove the Warden from duty to supervise. They deny appellant access to counsel, spiritual advisors, family members, and the courts. Regs violate due process, freedom from cruel and unusual punishment, the right to know.

Inmate/Parolee Signature: _John L. Visciotti_   Date Submitted: 3-22-18

**B. Continuation of CDCR 602, Section B only (Action requested):** _____

Inmate/Parolee Signature: _____   Date Submitted: _____

# EXHIBIT B

State of California
**CDC FORM 695**
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the SECOND Level

*Wednesday, March 28, 2018*

*VISCIOTTI, C75300*
*A EB 410700IL*

LEGAL, Policy & Procedure, 03/28/2018
Log Number: SQ-A-18-01092
**(Note: <u>Log numbers are assigned to all appeals for tracking purposes. Your appeal is subject to cancellation for failure to correct noted deficiencies.</u>)**

The enclosed documents are being returned to you for the following reasons:

*Your appeal is rejected based on the following California Code of Regulations, Title 15, criteria.*

*Pursuant to the CCR Title 15, Section 3084.6(b)(2). You have failed to demonstrate a material adverse effect upon your welfare. Material adverse effect means a harm or injury that is measurable or demonstrable, or the reasonable likelihood of such harm or injury. In either case, the harm or injury must be due to any policy, decision, action, condition, or omission by the department or its staff.*

*Pursuant to the CCR, Title 15, Section 3084.6(b)(6) Your appeal makes a general allegation, but fails to state facts or specify an act or decision consistent with the allegation.*

*Pursuant to the CCR, Section 3084.6(b)(7).The appeal is missing the necessary supporting documents as established in 3084.3.*

*Pursuant to California Code of Regulations (CCR) Title 15, Section 3084.5(b)(2), this appeal does not meet the criteria to be processed as an emergency (within 5 working days) because it does not meet the requirements as defined in CCR Title 15, Section 3084.9(a).*

*In your appeal you allege that "The chemicals are untested for quality, improperly mixed, and the dosages provided are untested, without justification, and unrelated to appellant's conditions. Regs provide for unguided selection and administration of chemicals by nonmedical personnel; acquisition of chemicals from unknown source; compounding without documentation, oversight, testing or reliability, all in violation of state & fed. laws and regulations. Regs do not ensure selection of or require qualified medical personnel with adequate skills and training to secure and maintain a proper*

NOTE:  If you are required to respond/explain to this CDCR Form 695, use <u>only</u> the lines provided below.

_____

_____

_____

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).  Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.
 **NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

State of California
**CDC FORM 695**
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

*IV placement, administer drugs, evaluate consciousness, & monitor breathing and heart function. Regs require remote administration, don't require an anesthesiologist to oversee, monitor and take sufficient actions to ensure a proper execution, and do not ensure adequate monitoring, in violation of state law & fed. court order. They permit improper, unguided IV access procedures, infusion rates, and backup procedures. The LI execution facility is physically inadequate (e.g., visibility issues, remote administration, lack of monitoring equipment). The back-up procedure is medically inappropriate and will be carried out by untrained and unqualified persons. The regs provide for lethal gas ("LG") executions but provide no information about which LG will be used, the dose thereof, and the method of administration regs do not provide adequate guidance for cancellation of the execution mid-process. They do not ensure that the execution process will be consistently performed. They remove the Warden from duty to supervise. They deny appellant access to counsel, spiritual advisors, family members, and the courts. Regs violate due process freedom from cruel and unusual punishment the right to know."*

*In your appeal you reference a number of general allegations (see paragraph above) for your conclusions that the current execution regulations violate the law and you state "[t]he execution regs will result in substantial, objectively intolerable risk of severe pain" and "LI chemicals will be acquired, dispensed, and administered in violation of state and federal laws and regulations". However, you fail to specify how the general issues you allege create an objectively intolerable risk of pain such that it will have a material adverse effect upon your welfare.*

*You are requesting the regulation be revised; however, you fail to identify the specific action requested, and/or any alternative to the issues you have identified. This is demonstrated by your failure to attach supporting documents as required by CCR Title 15, Section 3084.3.*

*If you wish to resubmit the appeal, you need to explain how each of the allegations you make (listed above) will create an objectively intolerable risk of pain (as stated by you in your appeal) and a material adverse effect upon your welfare. You also need to explain specifically how you would like the language of the regulations to be revised to address your allegations.*

*Upon providing the required information you may resubmit the appeal for further processing consideration.*

☐   M. Cisneros, AGPA
☒   J. Carlton, CCII (A)
☐   A. Andres, CCII
Appeals Coordinator
SQ

**NOTE:** If you are required to respond/explain to this CDCR Form 695, use <u>only</u> the lines provided below.

_____

_____

_____

_____

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

**NOTE THIS CDCR 695 IS A PERMANENT APPEAL ATTACHMENT AND IS NOT TO BE REMOVED**

1

## CERTIFICATE OF SERVICE

2 Case Name: **Michael Angelo Morales v. Scott Kernan, et al.**      No.    **C 06-0219 RS**

3 I hereby certify that on **May 1, 2018**, I electronically filed the following documents with the
Clerk of the Court by using the CM/ECF system:

4

5 ● **DEFENDANTS' OPPOSITION TO VISCIOTTI'S MOTION TO INTERVENE
AND FOR STAY OF EXECUTION**

6

7 I certify that all participants in the case are registered CM/ECF users and that service will be
accomplished by the CM/ECF system.

8

9 I declare under penalty of perjury under the laws of the State of California the foregoing is true
and correct and that this declaration was executed on **May 1, 2018**, at Sacramento, California.

10

11 _____       _____
            D. Jones                            **/s/ D. Jones**
12            Declarant                            Signature

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27 SF2007200210
33378596.docx

28

16

Defendants' Opposition to Motion to Intervene and For Stay of Execution  (C 06-0219 RS)