1  XAVIER BECERRA
   Attorney General of California
2  JAY M. GOLDMAN
   Supervising Deputy Attorney General
3  MICHAEL J. QUINN
   Deputy Attorney General
4  JOANNA B. HOOD
   Deputy Attorney General
5  R. LAWRENCE BRAGG
   Supervising Deputy Attorney General
6  State Bar No. 119194
     1300 I Street, Suite 125
7    P.O. Box 944255
     Sacramento, CA 94244-2550
8    Telephone: (916) 210-7334
     Fax: (916) 324-5205
9    E-mail: Lawrence.Bragg@doj.ca.gov
   *Attorneys for Defendants Kernan, Brown, and Davis*

10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15  **MICHAEL ANGELO MORALES,**

16                              Plaintiff,

17      v.

18

19  **SCOTT KERNAN, Secretary of the**
    **California Department of Corrections**
20  **and Rehabilitation, et al.,**

21                              Defendants.

22

|  |  |
|---|---|
| Case No. C 06-0219 RS | |
| Case No. C 18-2146 RS | |
| **REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO MOTION TO INTERVENE AND MOTION TO STAY EXECUTION** | |
| Date: | Not Set |
| Judge: | The Honorable Richard G. Seeborg |
| Trial Date: | Not Set |
| Action Filed: | January 5, 2006 |

23        Under Federal Rule of Evidence 201(b)(2), Defendants Brown, Kernan and Davis request

24  that the Court take judicial notice of the following:

25        1.    Marin County Superior Court Order, dated February 21, 2012, attached as **Exhibit A**.

26  / / /

27  / / /

28  / / /

                                    1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE**

A request for judicial notice of state court pleadings and state court filings is proper.

*Terenkian v. Republic of Iran,* 694 F.3d 1122, 1137 n. 8 (9th Cir. 2013); *see also Reyn's Pasta Bella*, *LLC v. Visa USA,* 442 F.3d 741, 746 n. 6 (9th Cir. 2006).

Dated:  May 1, 2018

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
JAY M. GOLDMAN
Supervising Deputy Attorney General
MICHAEL J. QUINN
Deputy Attorney General
JOANNA B. HOOD
Deputy Attorney General

*/s/ R. Lawrence Bragg*

R. LAWRENCE BRAGG
Supervising Deputy Attorney General
*Attorneys for Defendants Kernan, Brown, and Davis*

SF2007200210
33369290.docx

2

# EXHIBIT A

ARNOLD & PORTER LLP
KENNETH G. HAUSMAN (No. 57252)
kenneth.hausman@aporter.com
SARA J. EISENBERG (No. 269303)
sara.eisenberg@aporter.com
ELIZABETH WANG (No. 261145)
elizabeth.wang@aporter.com
JAIME M. HULING DELAYE (No. 270784)
jaime.hulingdelaye@aporter.com
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4024
Telephone:     +1 415.434.1600
Facsimile:     +1 415.677.6262

Attorneys for Plaintiff
MITCHELL SIMS

FILED

FEB 21 2012

KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: E. Turner, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MARIN

UNLIMITED JURISDICTION

| | |
|---|---|
| MITCHELL SIMS,<br><br>        Plaintiff,<br><br>   v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>        Defendants.<br><br>ALBERT GREENWOOD BROWN, JR. and KEVIN COOPER,<br><br>Plaintiffs-in-Intervention. | No. CIV1004019<br><br>Action Filed: August 2, 2010<br><br>[PROPOSED] FINAL JUDGMENT AS TO PLAINTIFF MITCHELL SIMS<br><br>Dep't:     E<br>Judge:   Hon. Faye D'Opal |

1    Plaintiffs' motion for summary judgment came on for hearing by this Court on December 16,

2  2011, at 8:30 a.m. Sara Eisenberg and Jaime Huling Delaye appeared on behalf of Plaintiff Mitchell

3  Sims. Sara Cohbra specially appeared on behalf of Plaintiff-in-intervention Albert Greenwood

4  Brown. Cameron Desmond appeared on behalf of Plaintiff-in-intervention Kevin Cooper. Deputy

5  Attorneys General Jay M. Goldman, Michael Quinn and Marisa Kirchenbauer appeared on behalf of

6  Defendants California Department of Corrections and Rehabilitation and Matthew Cate.

7    After considering the moving, opposing and reply papers, the file in this matter, and the

8  arguments presented at the December 16, 2011 hearing, and good cause appearing therefor, the

9  Court GRANTED summary adjudication on Plaintiffs' second cause of action for declaratory relief

10  to invalidate Defendant California Department of Corrections and Rehabilitation's lethal injection

11  protocol (Cal. Code Regs., tit. 15, §§3349-3349.4.6, "Administration of the Death Penalty"), and

12  DENIED summary adjudication on Plaintiffs' first cause of action. Subsequently, Plaintiff Mitchell

13  Sims filed a request for dismissal of his first cause of action, and the dismissal of Sims' first cause

14  of action was entered by the Court on January 26, 2012.

15    **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is entered

16  in favor of Plaintiff Mitchell Sims and against Defendants California Department of Corrections and

17  Rehabilitation and Matthew Cate as follows:

18    1.    Defendants substantially failed to comply with the requirements of California's

19  Administrative Procedure Act ("APA") when the lethal injection protocol (Cal. Code Regs., tit. 15,

20  §§ 3349-3349.4.6, "Administration of the Death Penalty") was enacted, in violation of Government

21  Code Section 11350(a), as is more fully set forth in the Court's December 19, 2011 Final Ruling,

22  attached hereto as Exhibit A and incorporated into this judgment as if set forth in full.

DECLARATORY RELIEF

24    2.    The lethal injection protocol (Cal. Code Regs., tit. 15, §§ 3349-3349.4.6,

25  "Administration of the Death Penalty") is invalid for substantial failure to comply with the

26  requirements of the APA.

INJUNCTION

28    3.    Defendant California Department of Corrections and Rehabilitation is permanently

-1-

[PROPOSED] FINAL JUDGMENT

1    enjoined from carrying out the execution of any condemned inmate by lethal injection unless and

2    until new regulations governing lethal injection executions are promulgated in compliance with the

3    Administrative Procedure Act.

4          4.   Defendant California Department of Corrections and Rehabilitation is permanently

5    enjoined from carrying out the execution of any condemned inmate by lethal gas unless and until

6    regulations governing execution by lethal gas are drafted and approved following successful

7    completion of the APA review and public comment process, as set forth at page 14, line 26 through

8    page 15, line 3 of the Court's Final Ruling, attached hereto as Exhibit A.

9          5.   Defendant California Department of Corrections and Rehabilitation is permanently

10    enjoined from carrying out the execution of any female inmate unless and until regulations

11    governing the execution of female inmates are drafted and approved following successful

12    completion of the APA review and public comment process, as set forth at page 14, line 26 through

13    page 15, line 3 of the Court's Final Ruling, attached hereto as Exhibit A.

14

15    DATED: ___2 - 2 1_____, 2012.

16                              HONORABLE FAYE D'OPAL

17                              JUDGE OF THE SUPERIOR COURT

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] FINAL JUDGMENT

# EXHIBIT A

FILED

DEC 1 9 2011

KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: J. Charifa, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MARIN

MITCHELL SIMS,

    Plaintiffs,

vs.

CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION,
et.al.,

    Defendants.

_____

ALBERT GREENWOOD BROWN, JR. and
KEVIN COOPER,

    Plaintiffs-in-Intervention.

CIV 1004019

FINAL RULING RE PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

After Issuance of the court's tentative ruling regarding Plaintiffs' motion for summary

judgment, argument requested by defendants was heard on December 16, 2011.  Attorneys

Sara J. Eisenberg and Jaime Huling-Delaye appearing on behalf of Plaintiff Mitchell Sims,

attorney Sara Cohbra on behalf of Intervenor Albert Brown, and attorney Cameron Desmond on

behalf of Intervenor Kevin Cooper.  Attorneys Jay Goldman, Michael Quinn and Marisa

Kirchenbauer appeared on behalf of Defendant California Department of Corrections and

Rehabilitation, et al.   Following respective arguments by attorney Goldman and attorney

Eisenberg, the Court finds no new evidence or other grounds on which to base a change in its

tentative ruling, the core of which establishes that Plaintiffs met their burden to prove that the

identified defects within the entire regulatory scheme, collectively, if not singly, constitute a

substantial failure by the Department to comply with the procedures mandated by the

Administrative Procedures Act, resulting in invalidation of the lethal Injection administration

and protocol.  The court adopts its tentative ruling, as briefly modified, as the Final Ruling.

## RULING

Plaintiffs' motion for summary judgment (Code Civ. Proc. § 437c(p)(1)), on their

Declaratory Relief action to invalidate Defendant California Department of Corrections and

Rehabilitation's three-drug lethal injection protocol (Cal. Code Regs., tit. 15, §§ 3349-3349.4.6,

"Administration of the Death Penalty" (hereafter Regs., § _____), is granted as follows:

A. For the reasons discussed below, the court finds the undisputed evidence supports

Plaintiffs' second cause of action alleging Defendant substantially failed to comply with the

mandatory procedural requirements of the Administration Procedures Act (APA) when it

adopted these regulations, in violation of Govt. Code § 11350(a).

1.

The Initial Statement of Reasons (ISOR) and the Final Statement of Reasons (FSOR) each

substantially failed to comply with the APA requirements by not considering and describing

alternative methods to the three-drug protocol; by failing to provide a sufficient rationale for

rejecting these alternatives; and by failing to explain, with supporting documentation, why a

one-drug alternative would not be as effective or better than the adopted three-drug

procedure, in violation of § 11346.2(b)(3)(A) and § 11346.9(a)(4). "If an agency adopts a

regulation without complying with the APA requirements it is deemed an 'underground

regulation' (Cal. Code Regs., tit. 1, § 250) and is invalid. [Citation.]." (*Naturist Action Committee*

*v. California State Dept. of Parks & Recreation* (2009) 175 Cal.App.4th 1244, 1250.)

In the ISOR, which statement was repeated verbatim in the FSOR, the Department described

the purpose and rationale of the three-drug procedure and its decision to reject alternatives to

the three-chemical protocol it was proposing, in its effort to comply with Govt. Code §

11346.2(b)(1):

> In light of the Memorandum of Intended Decision, and as directed by the
> Governor, the CDCR reviewed all aspects of the lethal injection process and its
> implementation. <u>As an integral part of the review, the CDCR considered
> alternatives to the existing three-chemical process, including a one-chemical
> process. Additionally, in developing this proposed regulation, the CDCR was
> guided by the United States Supreme Court's decision in *Baze v. Rees* (2008) 553
> U.S. 35</u>, which held that the State of Kentucky's lethal injection process, and the
> administration of the three-chemicals, did not constitute cruel and unusual
> punishment under the Eighth Amendment. CDCR also reviewed all available
> lethal injection processes from other states and the Federal Bureau of Prisons,
> and reviewed the transcripts and exhibits in the *Morales v. Tilton* case. Based on
> the information considered, the CDCR revised the lethal injection process as set
> forth in this proposed regulation. (Ex. 6, p. 2; Ex. 7, p. 2 emphasis added.)

The rationale for adoption of the three-drug procedure, as underlined, <u>is false</u>.

Defendant concedes that the decision to adopt the three-drug protocol was decided in May

2007, <u>before</u> the decision in the U.S. Supreme Court case of *Baze v. Rees* (2008) 553 U.S. 35,

3

upholding Kentucky's similar three-drug lethal injection protocol from an Eighth Am. challenge.

(Undisputed Fact No. 8-10)

In its opposition, the Department admits:

> The ISOR and FSOR **inaccurately stated** that CDCR's decision to adopt the three-drug lethal-injection method found in the regulations and to reject the one-drug alternative preferred by Plaintiffs, was primarily based on the United States Supreme Court's decision in *Baze v. Rees* (2008) 553 U.S. 35. (Oppo. p. 20, n. 6 ¶ 4.)

The CDCR also concedes:

> The decision to use the three-drug procedure was made in May 2007 by Governor Schwarzenegger. (Undisputed Fact No. 9) Thereafter, in 2008, the Supreme Court upheld the constitutionality of a three-drug method, and refused to determine the constitutionality of a one-drug method, in *Baze v. Rees*. Subsequently, the decision to use the three-drug procedure was **not** revisited by Governor Schwarzenegger in the course of drafting the lethal injection regulations. (Undisputed Fact No. 10, Ex. 9, p. 4)

Additionally, the Undisputed Evidence shows the ISOR did not provide any description of the "one-chemical process". (Undisputed Fact No. 2) The ISOR did not identify or describe any alternatives to the "one-chemical process." (Undisputed Fact No. 3); nor did Defendant provide any reasons for rejecting any alternative to the three-chemical process that were purportedly considered. (Undisputed Fact No. 4)

The FSOR states, in conclusory language, the same reason for selecting the three-drug procedure as described in the ISOR, *ante*. It is also undisputed the FSOR states, without elaboration: "The Department has determined that no alternative considered would be more

effective in carrying out the purpose of this action or would be as effective and less

burdensome to affected persons." (Undisputed Fact No. 5, Ex. 7 p. 9).

Also, nowhere in the FSOR is there any *description* of the alternative(s) the CDCR considered; or

any discussion "*with supporting information*" explaining why the one-drug method would not

be: 1 – more effective in carrying out the purpose of the regulation than the three-drug

procedure; or 2 – would be as effective and less burdensome to the condemned inmate, all in

violation of § 11346.9(a) (4).

The failure to discuss the one-drug method is a particularly significant omission, since use of a

barbiturate-only protocol was raised by at least one commenter (Ex. 13, p. 48, no. 13); several

commenters make the identical assertion that use of pancuronium bromide is unnecessary,

dangerous, and creates a risk of excruciating pain.  (Ex. 13, p. 48, no. 12; p. 50, no. 18, 19; p. 51,

no. 20);  the CDCR stated in its responses to the court's inquiry in the federal action *Morales v.*

*Cate, et al.*, a single-drug formula consisting of five grams of sodium thiopental is sufficient to

bring about the death of a condemned inmate. (Undisputed Fact No. 12);  and CDCR's own

expert John McAuliffe testified that after conducting substantial research for his review of OP

770, he recommended to top CDCR officials to adopt the single-drug formula. (Undisputed Fact

No. 13.)

The Department's attempt to fix any omission through its brief statement in the Addendum to

the FSOR, that it selected the three-drug method in reliance on the decision in *Baze v. Rees*

(2008) 553 U.S. 35, is unavailing.   As conceded by the Department, *Baze v. Rees* was not the

reason it chose the three chemical method, nor was it the reason for rejecting the one drug

method, since Governor Schwarzenegger chose the three chemical method in 2007 <u>before</u> the

Supreme Court decision was issued and there was never any discussion of an alternative method by the Governor at that time.

Also, the Addendum fails to describe any alternative, and does not describe Defendant's reasons for rejecting an alternative "<u>with supporting information</u> that no alternative considered by the agency would be more effective in carrying out the purpose for which the regulation is proposed or would be as effective and less burdensome to affected private persons than the adopted regulation." (Govt. Code §11346.9(a) (4).)

Importantly, inclusion of this information only in the Addendum to the FSOR, even if adequate, does not promote "meaningful public participation" (*Pulaski v. Occupational Safety & Health Stds. Board.* (1999) 75 Cal.App.4th 1315, 1327-1328), as the public had no opportunity to comment before the corrections were submitted to OAL.

These defects infect the entire regulatory scheme, and the lethal injection administration and protocol, as a whole, is declared to be invalid.

2.

The ISOR fails to describe the purpose and/or the rationale for the agency's determination why certain regulations to be implemented five days prior to the execution, were reasonably necessary. (Govt. Code § 11346.2; Regs., tit. 1, § 10 (b).)   The ISOR does not explain why it is necessary for unit staff to monitor the inmate and to complete documentation *every fifteen minutes* starting five days before execution (§ 3349.3.4(a)(2)); why *all* personal property must be removed from the inmate's cell (§ 3349.3.4(b)(3)); or why inmates must be bound with waist restraints during visits. (§ 3349.3.4(c) (3).)  The ISOR merely summarizes the different

procedures required five days prior to the execution, without explaining why the specific

provisions are necessary and/or how a specific provision fills that need.  (Undisputed Fact No.

20) (ISOR Ex. 6, p. 16)

Likewise, Regs., tit. 15, § 3349.4.5, which discusses the chemicals to be used in the lethal

injection and the administration of these chemicals, summarizes the procedure but does not

contain information explaining the rationale for the agency's determination that the three-drug

protocol is "reasonably necessary to carry out the purpose for which it is proposed." (Govt.

Code § 11346.2(b).)  This regulation itself refers to the *Baze v. Rees* decision, but as noted

above, this decision was not the basis upon which the Department decided to adopt the three-

drug protocol.

Defendant's attempt to cure this deficiency in its Addendum to the FSOR comes too late in the

rulemaking process.    Accordingly, these individual regulations are deemed invalid.

Additional regulations Plaintiffs have cited in Appx. B to the memorandum of points and

authorities (p. 12, n. 4), are not properly before the court as that document exceeds the page

limit approved by the court.

   3.

The undisputed evidence establishes the FSOR did not summarize and/or respond to two dozen

or so public comments, in violation of Govt. Code § 11346.9(a) (3). (Undisputed Fact No. 22-30)

It is also undisputed that in all, the Department received over 29,400 comments in writing and

from the public hearings.  (Defendant's Undisputed Fact No. 2)

1  "Substantial compliance, as the phrase is used in the decisions, means *actual* compliance in

2  respect to the substance essential to every reasonable objective of the statute. Where there is

3  compliance as to all matters of substance, technical deviations are not to be given the stature

4  of noncompliance.  Substance prevails over form." (*Pulaksi, supra*, 75 Cal.App.4th at p. 1328.)

5

6  Despite the large number of public comments properly addressed by the Department, the

7  failure to summarize or respond to these comments is not a "technical defect."  Defendant

8  does not assert that the crux of any of these comments was addressed in other responses.  The

9

10  purpose of the APA – "to advance meaningful public participation in the adoption of

11  administrative regulations by state agencies", is met by giving "interested parties an

12  opportunity to present statements and arguments at the time and place specified in the notice

13  and calls upon the agency to consider all relevant matter presented to it." (*Voss v. Superior*

14  *Court* (1996) 46 Cal.App.4th 900, 908-909.)

15

16  By not summarizing and responding to these comments, the Department did not give substance

17

18  to the central APA requirement that all interested persons be afforded a meaningful chance to

19  have their objections heard and to inform the rulemaker's decision; i.e., to allow agencies "to

20  learn from the suggestions of outsiders and [] benefit from that advice." (*San Diego Nursery Co.*

21

22  *v. Agricultural Labor Relations Board* (1979) 100 Cal.App.3d 128, 142-143.)   Additionally, the

23  undisputed evidence establishes that some of the Department's responses to comments are

24  incomplete, incorrect, or inadequate.  (Undisputed Fact No. 31-36)

25

26  For example, about 15 commenters submitted comments objecting to the use of the second

27  drug, pancuronium bromide (the paralytic), on *various medical and humanitarian* grounds.

28  (Undisputed Fact No. 31)  Despite the different grounds, the Department answered with the

identical response to each comment summary: "The United States Supreme Court in *Baze v. Rees* (2008) 553 U.S. 35 upheld the use of the three chemicals, including pancuronium bromide, identified in these regulations.  Accommodation: None." (Undisputed Fact No. 32)     This broad, conclusory response is not a sufficient answer to explain why the Department initially selected, and continues to endorse the use of the second drug – pancuronium bromide, in light of the specific medical and humanitarian concerns raised in these comments.  The inadequacy of the response is especially troubling when considering the Department's admission that the three-drug protocol was originally adopted without regard to the decision in *Baze v. Rees* (2008) 553 U.S. 35, and with no consideration of an alternative, one-drug protocol at that time; nor since that time has the Department described any alternative or explained why any alternatives would not be equally or more effective than the method with pancuronium bromide.

On this record, the court finds the FSOR substantially failed to comply with this requirement, invalidating the adoption of these regulations.

4.

It is undisputed that Defendant did not mail a Notice of the Proposed Action to three  civil rights groups prior to the close of the initial public comment period (January 20, 2009), and seven condemned inmates, all of whom had requested notice, in violation of Govt. Code § 11346.4 (a)(1). (Undisputed Fact No. 38-41)  It is also undisputed that the three organizations and these inmates submitted comments during the initial comment period, ending January 20, 2009. (Undisputed Fact No. 38-41).

As to the population of inmates generally, Defendant presented evidence it posted the Notice of Proposed Regulations throughout the departments and cell blocks in San Quentin, and at other penal institutions in the State. (Undisputed Fact No. 41)  Plaintiffs have presented evidence that this may have been inadequate, as only the top sheet of these regulations was visible through the glass cases. (Reply p. 10, Delaye decl. Ex. A)  However, Govt. Code § 11346.4(f) provides: "The failure to mail notice to any person as provided in this section shall not invalidate any action taken by a state agency pursuant to this article."  In light of the statute, and the fact the comments of these organizations and persons were prepared and submitted to the Department, a triable issue exists whether Defendant's violation of the APA is sufficient to invalidate the regulations.  Summary judgment is not granted on this ground.

5.

The undisputed evidence establishes Defendant did not make the complete rulemaking file available for public review as of the date the Notice of the Proposed Action was published, in violation of Govt. Code § 11347.3(a).

The Department did not make the rulemaking file available for public inspection until June 11, 2009, six weeks after the publication of the notice of proposed action on May 1st, and less than three weeks before the end of the public comment period on June 30, 2009. (Undisputed Fact No. 45)

This violation is a substantial failure to comply with the APA, which defect undermined meaningful public participation in the rulemaking process.

Contrary to Mr. Goldman's argument, this court finds no support in the legislative purpose behind the APA to require Plaintiffs to show prejudice from Defendant's significant delay in making the rulemaking record available for public review.

6.

The rulemaking file itself was incomplete, in violation Govt. Code § 11347.3(b). It is undisputed the rulemaking file did not contain several documents upon which the Department stated it relied in drafting these regulations: the San Quentin Operational Procedure, OP 770, on which much of the proposed regulations were based; the transcripts, Judge Fogel's Statement of Intended Decision, and the experts reports or declarations admitted as exhibits in the *Morales v. Tilton* case; the lethal-injection process for the Federal Bureau of Prisons; responses by 15 states to the survey sent out by the CDCR and upon which it considered in drafting the revision to OP 770. (Oppo. p. 12, Undisputed Fact No. 50-63)

In light of this defect, the court finds the Department substantially failed to comply with this requirement of the APA.

7.

Some of the regulations do not comply with the "Clarity" standard under the APA, which is defined as "written or displayed so that the meaning of the regulations will be understood by those persons directly affected by them." (Govt. Code § 11349(c); Regs., tit. 1, § 16.)

Regs. § 3349.3.2.(a)(1), which discusses the Warden's review of information bearing on the inmate's sanity, conflicts with the agency's description of the effect of this regulation in the Addendum to the FSOR. (See Ex. 8, p. 11)

1   The explanation that information about the inmate's sanity can be received <u>at any time prior</u> to

2   the execution, conflicts with the language of the regulation which limits information from the

3   inmate's attorney to <u>7 days prior to the execution</u>, at the latest. This creates an ambiguity in

4   violation of the APA and this individual regulation is invalid. (Regs., tit. 1, § 16(a)(2).)

5   Conversely, the court finds <u>no</u> conflict between the regulation distinguishing the places a state-

6   employed chaplain and an non-state employed "Spiritual Advisor" may communicate with the

7   inmate (Regs. § 3349.3.4(e)), and the Department's explanation of the effect of this regulation

8   in its responses to comments. (Ex. 50, pp. 61-63)

9

10

11   The use of the term "reputable citizen" in Regs. § 3349.2.3, which provision restricts the

12   number of witnesses in the viewing area, may have more than one meaning and is ambiguous

13   in violation of Cal. Code Regs., tit. 1, § 16 (a)(1).   It is undisputed that this term is no where

14   defined in the regulations or in Pen. Code § 3605(a). It is also undisputed the term "citizen" can

15   mean the citizen of the United States or the citizen of a foreign country, or any non-

16

17   governmental employee.  (Undisputed Fact No. 67)  This term is archaic and ambiguous, and is

18   invalid. The Department should include a definition of this term along with the other

19   definitions currently found in Regs. § 3349.1.1.

20

21   Plaintiffs have attached Appendix C, which contains other putative examples of ambiguous

22   terms. These additional arguments are not properly before the court as they exceed the

23   expanded 35-page limit approved by the court.

24

25   8.

26

27   Plaintiffs' claim that certain regulations fail to meet the "Consistency" standard of the APA

28

12

defined as "being in harmony with, and not in conflict with or contradictory to, existing

statutes, court decisions, or other provisions of law." (Govt. Code § 11349(d)), is rejected.

Plaintiffs have no standing to argue that the treatment of female condemned inmates under

Regs. § 3349.3.6(e) violates the Equal Protection Clauses of the state and federal constitutions,

claiming the operation of that provision denies female inmates, who have to be transferred 150

miles from the Central California Women's Facility to San Quentin, some the same rights as

male condemned inmates housed at San Quentin, e.g., 24-hour telephone access to their

counsel (§ 3349.3.4(d),(4)(C); access to spiritual advisors (§§ 3349.3.4(e); 3349.4.2(b)(1)); and

priority visiting privileges. (§ 3349.3(i)(1).)

The all-male plaintiffs do not have standing to raise the Equal Protection challenges on behalf of

condemned female inmates, because they do not claim to suffer the disparate treatment they

hypothesize. (See *Neil S. v. Mary L.* (2011) 199 Cal.App.4th 240, 255.) "One who seeks to raise

a constitutional question must show that his rights are affected injuriously by the law which he

attacks and that he is actually aggrieved by its operation. [Citations.]" (*People v. Superior Court*

(2002) 104 Cal.App.4th 915, 932, internal quotations and citations omitted; 7 Witkin, Summ.

Cal. Law (10th ed. 2005) Const. Law, §76, pp. 168-169.)

Also, there is no merit to Plaintiffs' claim that Regs. § 3349.1.2(a)(4)(B), "Recruitment and

Selection Process", conflicts with the order by the Federal District Court in the 2005 decision of

*Plata v. Schwarzenegger,* where the Judge appointed a Receiver to take control over positions

"related to the delivery of medical health care" at CDCR: "The Receiver shall have the duty to

control, oversee, supervise, and direct all administrative, personnel, financial, accounting,

1  contractual, legal, and other operational functions of the medical delivery component of the

2  CDCR." (Request to Take Judicial Notice, Ex. D, p. 4, Undisputed Fact No. 72)  Plaintiffs present

3  no evidence that the District Court's order was at all concerned with the execution protocols at

4
5  San Quentin.  Also, execution is not tantamount to the delivery of medical services. (See

6  *Morales v Tilton* (N.D. Cal. 2006) 465 F.Supp. 2d 972, 983 ["Because an execution is not a

7  medical procedure, and its purpose is not to keep the inmate alive but rather to end the

8  inmate's life, . . ."].)

9

10  9.

11
12  There is no merit to Plaintiffs' next contention that the regulations substantially fail to comply

13  with the APA because the regulation incorporates documents by reference, without subjecting

14  those documents to the APA review process, in violation of Cal. Code Regs., tit. 1, § 20.  In

15  responses to comments about the procedures for execution by lethal gas and the execution of

16  condemned female inmates, the Department indicated these areas would be the subjects of

17
18  separate documents and/or regulations.  (Undisputed Fact No. 75-76)

19
20  At the time of approval of the subject regulations, neither referenced document existed, nor

21  are these documents referred to in the language of the regulations.   On this record, there is

22  insufficient evidence to show the regulations under review attempted to incorporate by

23
24  reference these proposed documents within the meaning of the law, and therefore the

25  regulations do not violate this requirement of the APA.

26  That said, unless and until these prospective, separate documents/regulations have been

27
28  drafted and approved following successful completion of the APA review and public comment

14

process, the Department has no authority under Regs., tit. 15, §§ 3349-3349.4.6, to carry out the execution of condemned inmates by lethal gas, or to execute any condemned female inmate.

10.

The Department has failed to include a fiscal impact assessment of the administration of execution by lethal injection as proposed by these regulations, in violation of Govt. Code § 11346.5(a).   There is uncontradicted evidence that there will likely be increased costs from hiring and/or training of additional members for the lethal injection sub-teams; plus overtime compensation for the supporting staff; as well as the additional costs of the three drug method vs. the one-drug method; and also the reimbursement by the CDCR for extra state and local law enforcement personnel to handle security matters, crowd control, and traffic closures prior to and on the night of the execution.  (Undisputed Fact No. 78-80)   Former San Quentin Warden Jeanne Woodford stated in a public comment, that past executions by lethal injection have cost between $70,000.00 and $200,000.00 each.  (Undisputed Fact No. 79)    It is no excuse, as Defendant argues, that either fiscal estimates or supporting documents were not required because "the costs and fiscal impacts of lethal-injection executions are caused by the fact that the Penal Code, not a regulation, mandates this type of execution."  (Oppo. p. 13:20-21)

The APA gives the public a right to know and to comment on the fiscal impact of implementing a regulation adopted pursuant to a state statute, if for no other reason than to recommend more efficient or less costly methods of accomplishing the statutory purpose.  The Department

was required to prepare the fiscal estimate as prescribed by the Department of Finance.  Its

failure to do so was substantial noncompliance with the procedural requirements of the APA.

B.  Separately, the court <u>denies</u> Plaintiffs' motion for summary judgment on their

first cause of action, which alleges there is no substantial evidence in the rulemaking file to

show the use of the second drug – pancuronium bromide and/or the third drug – potassium

chloride are "reasonably necessary" to effectuate the purpose for which the regulations are

proposed, as required by Govt. Code §§ 11342.2, and 11350(b) (1). (Complaint ¶s 30-41)

Since this is Plaintiffs' motion for summary judgment, Plaintiffs have the burden to show there

is no substantial evidence in the rulemaking file, *when considered in its entirety*, to support the

agency's determination the three-drug injection protocol is reasonably necessary to effectuate

the purpose of the statute. (Govt. Code §§ 11349(a) [defining "Necessity"], 11350(b) (1);

*Desmond v. County of Contra Costa* (1993) 21 Cal.App.4th 330, 336-337.)

For our purposes, "substantial evidence" is defined as whether, based on the entire record,

there is evidence which is reasonable in nature, credible, and of solid value, contradicted or

uncontradicted, which will support the agency's determination. (*Desmond, supra*, 21

Cal.App.4th at p. 336.)

It is undisputed the rulemaking file contains documents favorable to Defendant; e.g., that

caution against acceptance of using thiopental alone to guarantee a lethal effect. (Undisputed

Fact No. 85, Ex. 55); or confirms the experience in other states that proper application of the

same three-drug method will result in a rapid death of the inmate without undue pain or

suffering. (Undisputed Fact No. 86, Ex. 56, p. 931)

16

In fact, one of the articles relied upon by Plaintiffs (Undisputed Fact No. 90) indicates that it

might not be possible to administer enough thiopental by itself, to guarantee a lethal effect.

(Undisputed Fact No. 90, Ex. 58, pp. 2, 12)

On this record, the court finds that a triable issue of fact exists over whether the rulemaking file

contains substantial evidence to support Defendant's determination that the three-drug

protocol is reasonably necessary to implement the statutory mandate to provide for a lethal

injection alternative. The motion for summary judgment on this ground is denied.

Plaintiffs also argue <u>in a footnote</u> that the rulemaking file does not contain substantial evidence

to support the CDCR's determination of necessity of several other regulations. (MPA p. 34, n.

20.)    It is improper to briefly raise these issues in a footnote and expect the court to conduct

a substantial evidence review. Plaintiffs have provided no citation to the law, to the record, or

any analysis of the law to the facts. By attempting to raise these additional issues in a footnote,

Plaintiffs are violating the intent and spirit of the court's order allowing them to file an

oversized brief.   These issues are not properly before the court, and the court refuses to

address these issues at this time.

Plaintiffs' Request to Take Judicial Notice of documents filed in separate federal actions, is

granted. ( Ev. Code § 452(d).)  Defendant's objections to these requests are Overruled.

Defendant's evidentiary objections Nos. 1-3 are all Overruled.

    Plaintiffs' shall submit a Judgment in this matter.

Dated:  December 19, 2011

Judge Faye D'Opal

17

STATE OF CALIFORNIA )
COUNTY OF MARIN      )

MITCHELL SIMS VS. CALIFORNIA DEPARTMENT OF CORRECTIONS AND
REHABILITATION
ACTION NO.: *CIV 1004019*
(PROOF OF SERVICE BY MAIL – 1013A, 2015.5 C.C.P.)

I AM AN EMPLOYEE OF THE SUPERIOR COURT OF MARIN; I AM OVER THE
AGE OF EIGHTEEN YEARS AND NOT A PARTY TO THE WITHIN ABOVE-
ENTITLED ACTION; MY BUSINESS ADDRESS IS CIVIC CENTER, HALL OF
JUSTICE, SAN RAFAEL, CA 94903.  ON December 19, 2011 I SERVED THE
WITHIN
*FINAL RULING RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*  IN
SAID ACTION TO ALL INTERESTED PARTIES, BY PLACING A TRUE COPY
THEREOF ENCLOSED IN A SEALED ENVELOPE WITH POSTAGE THEREON
FULLY PREPAID, IN THE UNITED STATES POST OFFICE MAIL BOX AT SAN
RAFAEL, CA ADDRESSED AS FOLLOWS:

| | |
|---|---|
| *SARA EISENBERG*<br>*HOWARD RICE NEMEROVSKI CANADY*<br>*FALK &RABKIN, A PROFESSIONAL*<br>*CORPORATION*<br>*THREE EMBARCADERO CENTER,*<br>*7TH FLOOR*<br>*SAN FRANCISCO, CA 94111* | *JAY GOLDMAN*<br>*DEPUTY ATTORNEY GENERAL*<br>*455 GOLDEN GATE AVENUE, STE. 11000*<br>*SAN FRANCISCO, CA 94102* |
| *JAN NORMAN*<br>*1000 WILSHIRE BLVD. #600*<br>*LOS ANGELES, CA 90017* | *NORMAN HILE*<br>*400 CAPITOL MALL*<br>*SUITE 300*<br>*SACRAMENTO, CA 95814* |

*I CERTIFY (OR DECLARE), UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE*
*STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.*

DATE:  12·19·11

1

**CERTIFICATE OF SERVICE**

2

Case Name:   **Michael Angelo Morales v. Scott Kernan, et al.**        No.    **C 06-0219 RS**

3

I hereby certify that on **May 1, 2018**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

4

5

•      **REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO MOTION TO INTERVENE AND MOTION TO STAY EXECUTION**

6

7

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

8

9

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **May 1, 2018**, at Sacramento, California.

10

11

| D. Jones | */s/ D. Jones* |
|:---:|:---:|
| Declarant | Signature |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

SF2007200210
33378596.docx

28

1