XAVIER BECERRA
Attorney General of California
JAY M. GOLDMAN
Supervising Deputy Attorney General
MICHAEL J. QUINN
Deputy Attorney General
JOANNA B. HOOD
Deputy Attorney General
R. LAWRENCE BRAGG
Supervising Deputy Attorney General
State Bar No. 119194
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7334
 Fax: (916) 324-5205
 E-mail: Lawrence.Bragg@doj.ca.gov
*Attorneys for Defendants Kernan, Brown, and Davis*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **MICHAEL ANGELO MORALES, et al.,** <br><br> Plaintiffs, <br><br> v. <br><br> **SCOTT KERNAN, Secretary of the California Department of Corrections and Rehabilitation, et al.,** <br><br> Defendants. | Case No. C 06-0219 RS <br><br> Case No. C 06-926 RS <br><br> Case No. C 18-2146 RS <br><br> **JOINT STATEMENT OF PARTIES RE: LITIGATION SCHEDULE** <br><br> Judge: The Honorable Richard G. Seeborg <br> Trial Date: Not Set <br> Action Filed: January 5, 2006 |

In compliance with this Court's Order (ECF No. 640), the parties met and conferred, and submit this Joint Statement of Parties Re: Litigation Schedule.

**I.   POSITION OF PARTIES ON THE IMPACT OF PENDING LITIGATION ON THE PROPOSED LITIGATION SCHEDULE.**

   **A.   Plaintiffs' Position:**

There are two pending state cases that challenge Defendants' execution protocol:

1

(1) *Sims, Morales v. CDCR*, Alameda County Superior Court, Case No. 16838951.  The parties are litigating whether Defendant CDCR is permitted or authorized to issue an execution protocol as delegated by the legislature consistent with the California constitution.  The matter currently is pending in the California Court of Appeal, First Appellate District, Case No. A151732.  The parties' briefing on appeal is complete.  The reply brief was filed on March 8, 2018.  If Plaintiffs succeed, Defendants' proposed execution protocol will be null and void; and

(2) *Masters, Witness to Innocence v. CDCR*, Marin County Superior Court, Case No. 1800580.  Plaintiffs filed this action on February 16, 2018 seeking declaratory and injunctive relief for Defendant CDCR's failure to comply with California's Administrative Procedures Act ("APA") in promulgating its execution protocol.  Defendant demurred.  On May 30, 2018, the court overruled the demurrer.  The case is proceeding to a merits determination.

During the parties' meet-and-confer to prepare this report, all counsel concurred that: (1) if an injunction is issued in *Masters/Witness to Innocence* case, it will impact any litigation schedule commenced in the present case; and (2) if relief is granted on appeal in the *Sims/Morales* case, it will impact any litigation schedule commenced in the present case.

Moreover, if Plaintiffs in either state case succeed on the merits, all time, effort, and resources expended by this Court and the parties with regard to any litigation commenced here, will be wasted.  Thus far, Defendants have been unsuccessful in defending every state case challenging their execution protocol that has been filed since 2006.  There is no reason why the Court should do anything other than continue the status conference until these matters are resolved.

At least three times, the Court has begun its review, expended enormous resources, and then had to continue matters in light of state court rulings adverse to Defendants.  After the Court's Memorandum of Intended Decision on December 15, 2006 (Doc. 290), Defendants

published a revised lethal injection procedure on May 15, 2007 (Doc. 317). Extensive discovery and resulting litigation ensued. *See, e.g.,* Doc. 328 (outlining discovery disputes and delays); Doc. 342 (Motion to Compel); Doc. 385 (Defendant's Motion for Protective Order outlining discovery proceedings). As that litigation was proceeding, Plaintiff advised the Court that there was an APA challenge in the Marin County Superior Court that could affect the ability to proceed. Doc. 335 at 2:26 to 3:2. Plaintiff then requested proceedings be stayed as a result of that challenge being successful and summary judgment granted, which Defendants initially opposed, but agreed to stay further discovery. Doc. 368. The Court then continued its discovery schedule pending a series of status conferences on the Marin County matter. Docs. 370, 375, 378.

After being unsuccessful on appeal in state court, Defendants issued the third version of lethal injection procedures and brought those before this Court on August 6, 2010. Doc. 381. At that time, the new regulations already were the subject of a further challenge in Marin County Superior Court for non-compliance with the APA. *Id*. The Court then began its third process of review. Doc. 385 (setting status conference). By then, Defendants already had set an execution date for Plaintiff Albert Brown. Doc. 388. This resulted in a flurry of litigation that eventually was resolved on the eve of the execution date. Docs. 390-424.

Proceedings began anew after Defendants published a fourth execution procedure. Doc. 425. A Fourth Amended Complaint then was filed by Plaintiffs. Doc. 428. This generated a motion to dismiss, protective orders, a motion to strike, and motions to compel discovery. Docs. 430-516. While litigation over discovery was proceeding, a ruling adverse to Defendants was issued in the second Marin County Superior Court action, which resulted in proceedings here being stayed again. Docs. 535, 552, 554.

Defendants have now published their fifth procedure since this litigation began.

The pending state court actions, if successful, will again invalidate Defendants' procedure. If the stay is lifted here, and a state court determination is again issued adverse to Defendants, this Court and the parties will have engaged in a fourth failed effort to proceed. While it is true that the state litigation in the past did not stay proceedings in this Court until judgment was granted there, it also is true that this resulted in a large expenditure of time and resources that was entirely, in the end, for naught.

Defendants express concern about the pace of state court litigation, but much of that pace is determined by Defendants. For instance, they recently chose to demur in *Masters* rather than simply answer and defend the matter on the merits. Plaintiffs do not fault Defendants for their state court strategies. But they should not be heard then to complain here about the inevitable consequences of those strategies.

This Court correctly has stayed the proceedings here because the parties stipulated to a stay after repeated rulings adverse to Defendant CDCR made review of an illegal protocol under the Eighth Amendment a futile, wasteful, and merely advisory undertaking. Nothing has changed in this regard, and this case should remain stayed until the final resolution of the foregoing state cases occurs, or until there is a merits determination in the Marin County Superior Court for further consideration of the stay by this Court at that time.

**B.    Defendants' Position:**

Defendants oppose a further stay of the above action pending the resolution of the state court cases, *Sims v. CDCR, et al.,* Alameda County Superior Court No. RG16838951, and *Masters, et al. v. Kernan, et al.,* Marin County Superior Court No. CIV 1800580. Neither of the state court cases involve a method-of-execution challenge under the Eighth Amendment. In *Sims v. CDCR, et al.,* Alameda County Superior Court No. RG16838951, plaintiffs alleged that the California Constitution did not allow the state legislature to delegate to CDCR the authority to

develop execution procedures.  The defendants prevailed in the trial court, the matter is fully briefed on appeal and awaiting oral argument.  Meanwhile, the voters passed Proposition 66 in November 2016, which among other things, exempted execution procedures from the regulatory rulemaking process formerly required by California's Administrative Procedure Act (APA).  APA issues were the source of the prior state court cases recounted by Plaintiffs above.  The *Masters* litigation involves a flawed challenge to the scope of the APA exemption adopted by the voters.  And, since the *Masters* plaintiffs acknowledge that the portions of the protocol pertaining to the injection of lethal chemicals are exempt from the APA, a judgment in favor of those plaintiffs will not render the protocol null and void.

Defendants note that the *Morales* litigation continued during the pendency of the *Sims v. CDCR, et al.,* Marin County Superior Court No. CIV1004019 action concerning the Administrative Procedure Act until a final judgment and permanent injunction issued.  Injunctive relief has not been issued in either of the above-described pending state court actions.[1]  , Continuing to stay the *Morales* case until all related litigation has concluded may simply encourage the filing of additional lawsuits raising ancillary issues which will unreasonably delay the resolution of the *Morales* action.

Plaintiffs informed Defendants that, in their view, this case should remain stayed until all trial court action, and final appeals, are completed in the *Sims* and *Masters* cases.  Defendants have consistently disagreed with this point of view.  *Masters* was recently filed on February 16, 2018.  A resolution of *Masters* through every level of appeal could possibly take years.  The defendants prevailed in the *Sims* case filed in Alameda County and an appeal is fully briefed in that matter, but a date for oral argument has not been set by the California Court of Appeal.  Therefore, it could take another six months to a year to fully resolve that case.  Adoption of

---

[1] The *Sims* injunction was vacated on March 28, 2018.

Plaintiffs' position, if the current stays of execution remain in place, could have the effect of imposing an unwarranted moratorium on the application of the death penalty for at least the next several years.

## II.   OTHER BARRIERS TO THE IMPLEMENTATION OF THE LETHAL INJECTION PROTOCOL

### A.   Plaintiffs' Position:

During the parties' meet and confer to prepare this report, Defendants acknowledged they are without an execution team, have not trained the team, do not possess execution drugs or all necessary execution equipment, and have not undertaken any other execution-related activities other than drafting a written protocol. Plaintiffs' challenges and the review ordered by this Court and the Ninth Circuit after finding an "as applied" Eighth Amendment violation cannot proceed under these circumstances. Defendants' attempt to conduct a "paper only" review of their new written protocol is not what is contemplated by the Memorandum of Intended Decision, and subsequent order finding a constitutional as-applied violation (Doc. 424 at 4), a question already addressed by this Court.  Doc. 513.  Defendants must complete the execution process preparations and procedures (e.g., team selection, identification, and training; execution drug selection and acquisition; execution equipment and facility selection, requisition, and preparation, etc.) and disclose these threshold matters to Plaintiffs to: (1) provide "reliability and transparency" in the process that has been called for by this Court (*Morales v. Tilton*, 465 F. Supp. 2d 972, 981 (N.D. Cal. 2006)); and (2) allow Plaintiffs to review the matters and determine whether further amendments to the complaint are required, and whether better alternatives to the execution processes are available.  In the past, there has been consensus that formation of the team,

undertaking training, and securing the chemicals required that the proceedings here be continued or extended.  Doc. 517.[2]

### B.    Defendants' Position:

Barriers to implementation of the new protocol are irrelevant for purposes of determining whether there is at present an Eighth Amendment violation.  If, as Plaintiffs allege, this entire case is about alleged flaws in the implementation of an execution protocol, and that protocol has never been implemented, then the case is not ripe for review, Plaintiffs lack a claim, and the matter must be dismissed.  If the case is about the new protocol on its face, which is contrary to what Plaintiffs' have asserted, then the case can proceed on that basis only.

There are no state or federal court orders in effect prohibiting or limiting lethal injection executions in California, except for the orders issued by this Court.   Defendants are without an execution team, have not trained a team, do not possess execution drugs or all necessary execution equipment, and have not undertaken any other execution-related activities other than drafting a written protocol, because there is a court order that stays not only the executions but also bars preparations for executions. (ECF Nos. 424 at 9:13-24, 473 at 2:17-19, 563 at 6:6-10, 581 at 4:15-19, 586 at 4:22-5:2, 606 at 4:7-10, 620 at 5:8-9, 631 at 5:19-21, and 655 at 5:14-16.) These orders were sought by Plaintiffs and granted by this Court despite Defendants' opposition to the same.   Plaintiffs have not requested that this Court dissolve the orders.

## III.   STATUS OF THE PLEADINGS.

### A.    Plaintiffs' Position:

Defendants contend that Plaintiffs do not intend to seek leave to file a fifth amended complaint.  That is not correct.  Plaintiffs have requested that Defendants first comply with the

---

[2] Plaintiffs note that Defendants have in the past proceeded with stays in place.  *See* Doc. 424 at 9 (issuing stay), Docs. 426 (procuring execution drugs), 455, 474, 492 (team).

outstanding Court order regarding their discovery responses and complete the creation of an execution process and allow Plaintiffs to undertake review of that process. This will allow Plaintiffs to make an informed determination whether amendments to the current complaint are required, and what those should be.

Defendants claim that Plaintiffs must amend the complaint before they comply with this Court's outstanding discovery orders to allow Defendants to move to dismiss an amended complaint drafted in the blind. Defendants rely on Supreme Court cases evaluating the question of discovery and motions to dismiss in the context of initial complaints. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Those cases are inapposite here. This matter has proceeded to a finding of a constitutional violation, and the question now is whether the violation has been sufficiently remedied. As the factual record now stands, Defendants have been found in violation of the Eighth Amendment for a wide range of problematic activities and there is no record that defendants have remedied those problems.

According to Defendants' representations, Defendants' execution preparations to date have been limited to the creation of the written protocol. Since the creation of OP 770 and the commencement of this action, Defendants always have had a written protocol. But, as Defendants agree, making an execution humane "'is up to the people that carry it out. You can't legislate it or write it down.'" Amended Joint Pre-Hearing Conference Statement, Undisputed Facts, ¶263, Doc. 278.

Understanding that fundamental premise, and that Defendants' actions, procedures, and behavior in implementing written protocols since December 15, 2006 and any changes made thereto are critically important, this Court has issued a specific discovery order that requires Defendants to respond to Plaintiff's interrogatories and document requests. Doc. 513. Defendants have not complied with the order. Defendants must fully comply with this Court's

order to allow Plaintiffs to review the information and documents produced in context with the new execution protocol and evaluate, in part, whether amendments to the complaint may be required.

### B. Defendants' Position:

Plaintiffs have informed Defendants through the meet and confer process that they do not intend to seek leave to file a fifth amended complaint once the stay is lifted and litigation resumes in this case.

The operative Fourth Amended Complaint (FAC, ECF No. 428) filed in 2010 fails to state a claim for relief because it does not comply with the pleading requirements for an Eighth Amendment method-of-execution case set forth in *Glossip v. Gross*, 135 S.Ct. 2726 (2015) and *Baze v. Rees*, 553 U.S. 35 (2009). One example of the failure to state a claim is the lack of facts in the FAC stating alleged alternatives to the March 1, 2018, execution protocol now in effect or its implementation.[3] Therefore, Defendants will file a motion for judgment on the pleadings concerning the FAC.

Defendants oppose Plaintiffs' position that compliance with prior discovery requests and orders are necessary *before* Plaintiffs can determine whether they have a basis to state a claim in a fifth amended complaint. The United States Supreme Court has held that discovery is not available to a party that fails to state a claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 678–79. Should Plaintiffs consider filing a fifth amended complaint, Defendants have

---

[3] The 2006 Memorandum of Intended Decision also lacks any findings as to alternatives to the implementation of the long-defunct protocol that was at issue 12 years ago.

offered to review a copy and consider stipulating to the filing of this pleading to the extent that it complies with *Glossip*, *Baze*, *Ashcroft*, and *Twombly*.

Plaintiffs explicitly assert that Supreme Court precedent in *Twombly* and *Iqbal* should not apply to them, and, by calling for this case to be adjudicated in light of the 2006 Memorandum of Intended Decision (ECF No. 290), also reject the pleading standards for method-of-execution claims in *Baze v. Rees*, 553 U.S. 35 (2008) and *Glossip v. Gross*, 135 S. Ct. 2726 (2015).

No legal authority is cited by Plaintiffs that supports this unique view that they are free to ignore the pleading requirements under controlling Supreme Court precedent, and no such authority exists. Further, Plaintiffs' description of the status of this matter is incorrect. There is no prior judgment in this case, nor is this matter in a remedial phase. Indeed, Defendants note that since the Court issued a *tentative* decision in 2006 on a claim raised by the sole plaintiff at that time, Michael Morales, has twice filed amended complaints. (ECF Nos. 323 and 428.) Thereafter, numerous individual additional plaintiffs joined this matter as intervenors.

In light of Plaintiffs' stated views, Defendants request that this Court explicitly state that the above-cited Supreme Court precedent, as well as the scope of discovery mandated by Federal Rule of Civil Procedure 26, must apply. In adjudicating the motion for judgment on the pleadings referenced above, This Court should instruct Plaintiffs that they must meet the pleading and burden of proof standards mandated by the Supreme Court in *Glossip*, *Baze*, *Ashcroft*, and *Twombly*, and the scope of discovery and case schedule should reflect this binding authority. Additionally, discovery should not commence until these issues have been addressed and the pleadings are closed.

## IV.   STATUS OF PRIOR DISCOVERY REQUESTS AND ORDERS.

### A.   Plaintiffs' Position:

During the parties' meet-and-confer for this submission, Plaintiffs' counsel agreed to

identify by letter to Defendants' counsel within 30 days the discovery issues that remain outstanding and require responses by Defendants pursuant to this Court's orders.

**B.     Defendants' Position:**

Defendants were in the process of complying with prior discovery requests and orders when the parties stipulated to stay this action on August 10, 2012. (ECF No. 554.)  Significant changes in circumstances have occurred during the subsequent six years, including the disbandment of the prior execution team, the issuance of U.S. Supreme Court holdings regarding pleadings standards in *Glossip v. Gross*, 135 S.Ct. 2726 (2015), and the issuance of a new one-drug execution protocol on March 1, 2018. (ECF No. 635.)  It has been years since there were any preparations for executions because of the lack of an execution protocol and this Court's orders barring such preparations.  (ECF Nos. 424 at 9:13-24, 473 at 2:17-19, 563 at 6:6-10, 581 at 4:15-19, 586 at 4:22-5:2, 606 at 4:7-10, 620 at 5:8-9, 631 at 5:19-21, and 655 at 5:14-16.)  In light of these developments, Defendants contend that many of the prior discovery requests do not seek information that is relevant to the claims and defenses asserted in this case, or proportional to the needs of the case as required by Federal Rule of Civil Procedure 26(b)(1). A motion for reconsideration of prior discovery orders is appropriate in light of these changed circumstances. *See Smith v. Massachusetts* (2005) 543 U.S. 462, 475 (a district court has inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment).  Examples of prior discovery requests which are no longer relevant include personnel files of members of the execution team that was disbanded years ago, training records concerning that team, and documents concerning the development of the old protocol that was invalidated six years ago.

As part of the meet-and-confer process in anticipation of the filing of a motion for modification, Plaintiffs agreed to provide Defendants, by June 18, 2018, with an itemization of prior discovery requests they consider to be outstanding.

## V. LITIGATION SCHEDULE.

### A. Plaintiffs' Position:

Defendants' counsel has provided Plaintiffs' counsel with a proposed litigation schedule. The schedule is a general template for certain litigation matters to take place, with a hearing date contemplated upon completion. Plaintiffs' counsel contemplates that such a schedule can be agreed to upon a further meet and confer with Defendants' counsel predicated upon the proposed template with certain modifications[4], but only after:

1. Defendants comply with this Court's discovery orders, or seek and obtain whatever relief they contemplate;

2. Defendants seek and obtain whatever relief they contemplate is required from this Court's intervention and stay of execution orders; and

3. Defendants complete the execution protocol and procedures, including but not limited to identifying an execution team, conducting whatever training or practices may be required, completing and/or setting-up of the execution facilities for review, drug procurement, and all other matters required to conduct an execution, and advise Plaintiffs and this Court that these undertakings have occurred.

After completion of items 1-3 above, and the setting of a further status conference, Plaintiffs contemplate the following schedule, subject to additional adjustment depending on the status of 3 above:

1. *Pending Discovery Orders*: Defendants have 60 days to respond to Plaintiffs' pending discovery requests, unless the deadline is modified by stipulation of the parties;

---

[4] Plaintiffs' counsel submits that the template lacks consideration and inclusion of scheduling time periods for discovery rules under the Federal Rules of Civil Procedure, this Court's Orders, the Court's Local Rules, and this Court's Standing Orders for Pre-trial Conferences and bench trials.

2. *Amended Complaint*: may be filed 60 days after the completion of 1;

3. *Fact Discovery Cut-off*: 270 days after the pleadings are closed, or as stipulated to by the parties. (Discovery in 2006 took seven months to complete, with fact depositions being taken during the hearing, and it took eleven months in 2011-2012. There were multiple motions to compel and for protective orders, and resulting revisions to the scheduling. Discovery should not be bifurcated as Defendants propose because it is impossible to litigate alternatives without identifying flaws that have not been remedied);

4. *Disclosure of Expert Witnesses and Reports*: 60 days after fact discovery is closed, the parties will identify expert information as required by Rule 26(a)(2), and present their experts for depositions within 60 days thereafter, or as stipulated to by the parties;

5. *Disclosure of Expert Rebuttal Witnesses*: 30 days after disclosure of expert witnesses and reports, the parties will identify rebuttal expert information as required by Rule 26(a)(2), and present their rebuttal experts for depositions within 60 days thereafter, or as stipulated to by the parties;

6. *Expert Witness Discovery Cut-off*: 60 days after rebuttal expert disclosures, or as stipulated to by the parties;

7. *Joint Status Reports*: To be filed by the parties every 90 days;

8. *Pre-evidentiary Hearing Conference*: To be set by the Court upon review of the parties' joint status conference reports. The parties will comply with the Court's standing order regarding preparation and submission of a Joint Pretrial Statement and Order, to be filed 10 days prior to the conference. Plaintiffs request 60 days after expert discovery is closed to prepare Joint Pretrial Statement and Order; and

9. *Evidentiary hearing*: To be set not less than 420 days after the pleadings are closed. The parties will comply with the Court's Bench Trial Standing Order in preparation for a

pre-evidentiary hearing conference. An evidentiary hearing will be calendared by the Court at the conference based upon the parties' completion of the foregoing.

### B. Defendants' Position:

Defendants proposed to Plaintiffs, and request from this Court, that once the pleadings are closed, either through the filing of an answer, or the denial of a motion challenging the pleadings, the following litigation schedule should ensue:

i. *Completion of fact discovery*: 150 days after the pleadings are closed and the scope of discovery is determined. The initial 75 days of discovery would be bifurcated, and limited to discovery as to Plaintiffs' alternatives to flaws to in the March 1, 2018, protocol or its implementation, and whether such alternatives are known, feasible, and readily available;

ii. *Disclosure of expert witnesses and reports*: 60 days after fact discovery is closed;

iii. *Disclosure of expert rebuttal witnesses*: 30 days after disclosure of expert witnesses and reports;

iv. *Completion of expert witness discovery*: 30 days after disclosure of expert rebuttal witnesses;

v. *Motion for Summary Judgment*-no later than 30 days after the completion of expert discovery;

vi. *Disclosure of witnesses and documents to be used at evidentiary hearing, preparation of motions in limine and trial briefs*: 20 days prior to hearing; and

vii. *Evidentiary hearing*: 420 days after the pleadings are closed.

///

///

| | | |
|---|---|---|
| 1 | Dated: June 11, 2018 | Respectfully submitted, |

XAVIER BECERRA
Attorney General of California
JAY M. GOLDMAN
Supervising Deputy Attorney General
MICHAEL J. QUINN
Deputy Attorney General
JOANNA B. HOOD
Deputy Attorney General


_____/s/*_____
R. LAWRENCE BRAGG
Supervising Deputy Attorney General
*Attorneys for Defendants Kernan, Brown, and Davis*

DATED: June 11, 2018          By:  ____/s/_____
                                    David A. Senior
                                    Sara M. Cohbra
                                    Ann K. Tria
                                    McBREEN &SENIOR

                                    Richard P. Steinken
                                    JENNER & BLOCK

                                    John R. Grele
                                    LAW OFFICE OF JOHN R. GRELE
                                    Attorneys for Plaintiffs[5]

DATED: June 11, 2018          By:  ____/s/*_____
                                    Susan Elizabeth Garvey
                                    HABEAS CORPUS RESOURCE CENTER
                                    Attorneys for Plaintiff Sims

DATED: June 11, 2018          By:  ____/s/*_____
                                    HILARY POTASHNER
                                    Federal Public Defender
                                    MARGO ANN ROCCONI
                                    Deputy Federal Public Defender
                                    Attorneys for Plaintiffs

---

[5] Plaintiff Royal Kenneth Hayes is now deceased.

JOINT STATEMENT OF PARTIES RE: LITIGATION SCHEDULE   (C 06-0219 RS)

1  DATED: June 11, 2018          By:      /s/*
                                       Norman C. Hile
2                                      Orrick Herrington & Sutcliffe LLP
                                       Attorneys for Plaintiff Cooper

**GENERAL ORDER 45 ATTESTATION**

Per General Order 45, Section X.B. I hereby attest that the concurrence in the filing of this document has been obtained from all signatories.

DATED: June 11, 2018                      /s/
                                       ANN K. TRIA