1
2
3
4                        UNITED STATES DISTRICT COURT
5                      NORTHERN DISTRICT OF CALIFORNIA
6
7   MICHAEL ANGELO MORALES, et al.,          Case No.  06-cv-0219 RS
                                                       06-cv-0926 RS
            Plaintiffs,
8                                            DEATH PENALTY CASE
         v.
9                                            ORDER DENYING MOTIONS TO
10  SCOTT KERNAN, Secretary of the           INTERVENE AND DENYING REQUEST
    California Department of Corrections and  FOR JUDICIAL NOTICE
    Rehabilitation, et. al.,
11                                           Re: Doc. No. 660, 663, 671
            Defendants.
12
13
14                              INTRODUCTION
15        The District Attorneys from San Bernardino, San Mateo, and Riverside Counties seek to
16  intervene in the pending action, arguing that the current defendants do not adequately represent the
17  would-be intervenors' interests.  The would-be intervenors also seek a lift of the stays of execution
18  issued for each plaintiff, or in the alternative, specifically for plaintiffs Kevin Cooper, Albert
19  Greenwood Brown, Ronald Lee Deere, Robert Fairbank, Jr., and Anthony John Sully.  Plaintiffs
20  and defendants oppose intervention and plaintiffs oppose a lift of the stays of execution.  Plaintiff
21  Kevin Cooper filed a separate opposition, to which he attached a request for judicial notice of
22  approximately eighty pages of media articles and government web site pages regarding the recent
23  San Bernardino County election in which voters elected a new district attorney.
24        The motions are appropriate for decision without oral argument, as permitted by Civil
25  Local Rule 7-1(b) and Federal Rule of Civil Procedure 78.  *See also Lake at Las Vegas Investors*
26  *Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir.1991) (court's consideration
27  of moving and opposition papers is deemed adequate substitute for formal hearing), *cert. denied*,
28  503 U.S. 920 (1992).  For the following reasons, all three motions are denied.

United States District Court
Northern District of California

# BACKGROUND

When condemned prisoner Michael Angelo Morales initiated this litigation, the prior assigned district judge conditionally denied his request to stay his execution.  *Morales v. Hickman*, 415 F. Supp. 2d 1037 (N.D. Cal. 2006).  Defendants did not execute Morales as scheduled, and a stay of execution issued pursuant to a conditional order.  Discovery and an evidentiary hearing followed, after which an order issued concluding that the lethal-injection protocol, as implemented, violated the Eighth Amendment.  *Morales v. Tilton*, 465 F. Supp. 2d 972 (N.D. Cal. 2006).  The Court then acceded to a joint request by Morales and defendants to stay the present litigation until related state-court and administrative processes were completed.

Following certain state proceedings, defendants scheduled Albert Greenwood Brown's execution.  Brown moved to intervene and for a stay of execution.  Recognizing that "Brown's federal claims are virtually identical to those asserted by . . . Morales," (Doc. No. 401 at 1), Brown was permitted to intervene, but his stay application was conditionally denied.  Brown appealed to the Court of Appeals for the Ninth Circuit.  *Morales v. Cate*, 623 F.3d 828, 829 (9th Cir. 2010).  On remand, pursuant to guidance from the Ninth Circuit, this Court stayed Brown's execution.  In the years following, an additional twenty-two plaintiffs sought and obtained intervention.

In November 2016, California voters passed Proposition 66 ("Prop 66").  One of the major functions of Prop 66 was to exempt certain portions of the lethal injection protocol from the state's Administrative Procedures Act ("APA").  Defendants' failure to comply with the APA had been the subject of prior state litigation that resulted in the stay entered in this case.  The State of California finalized and filed defendants' new lethal injection protocol on March 1, 2018.  *See* Doc. No. 635.  On March 12, plaintiffs filed an update on pending state challenges to the lethal injection protocol.  On March 28, the Marin County Superior Court lifted its injunction of defendants' protocol and defendants filed a proposed litigation schedule two days later.  Plaintiffs opposed defendants' proposed schedule and the parties were ordered to meet and confer on a litigation schedule.  On June 11, the parties submitted a joint case statement and a case management conference was scheduled for October 15.

United States District Court
Northern District of California

Prior to the scheduled case management conference, the District Attorneys office from San Bernardino County filed a motion to intervene as a defendant. Nine days later, the District Attorneys Offices from San Mateo and Riverside Counties filed a substantively identical motion.

## DISCUSSION

The District Attorneys offices from San Bernardino, San Mateo, and Riverside Counties seek intervention as a matter of right or, in the alternative, permissive intervention. Additionally, the would-be intervenors seek an order vacating the stays of execution either for all prisoners or for the prisoners whose convictions occurred in their counties and for whom they intend to seek death warrants. Alternatively, they seek a statement confirming that the stays of execution expired ninety days after entry pursuant to the Prison Litigation Reform Act, 18 U.S.C. section 3626(a)(2). Finally, in the event the above requests for relief are not granted, they ask for an order that would enjoin only the use of the three-drug protocol that was found previously to meet the requirements for a stay pursuant to *Baze v. Rees*, 553 U.S. 35 (2008).

### I. Intervention

Intervention is a procedure by which a nonparty can gain party status without the consent of the original parties. *United States ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 933 (2009) ("Intervention is the requisite method for a nonparty to become a party to a lawsuit." (citation omitted). There are two types of intervention: (1) intervention of right, and (2) permissive intervention. *See* Fed. R. Civ. P. 24(a)-(b).

The District Attorneys argue they have the right to intervene pursuant to Federal Rule of Civil Procedure ("FRCP") 24(a)(2). In the alternative, they seek permissive intervention under FRCP 24(b)(2). Plaintiffs oppose this motion, insisting the District Attorneys are not entitled to intervene either as a matter of right or permissively because their motion is untimely, they fail to present a significantly protectable interest, and the defendants sufficiently represent their interests in this matter. Defendants oppose intervention because they argue they can adequately represent would-be intervenors' interests.

//
//
//

3

United States District Court
Northern District of California

### a. Intervention as a Matter of Right

Intervention exists as a matter of right when a federal statute confers the right to intervene or the applicant has a legally protected interest that may be impaired by disposition of the pending action and existing parties do not adequately represent that interest. Fed. R. Civ. P. 24(a). A court must permit an applicant to intervene as a matter of right when: "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Chamness v. Bowen*, 722 F.3d 1110, 1121 (9th Cir. 2013) (citation and internal quotation omitted). "Each of these four requirements must be satisfied to support a right to intervene. While FRCP 24 traditionally receives liberal construction in favor of applicants for intervention, it is incumbent on the party seeking to intervene to show that all the requirements for intervention have been met." *Id.* (internal citation, quotation, and alterations omitted). Failure to satisfy any one of the requirements is fatal to the application. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

Plaintiffs argue that the motions are untimely and that they come at a late stage in the litigation. Defendants agree with would-be intervenors that the motions are timely in light of changed circumstances. In light of the recent developments in this protracted controversy, the motions to intervene are timely. Therefore, only the remaining factors need be addressed.

### 1. "Significantly protectable" interest

To determine whether an applicant has a "significantly protectable" interest necessary for intervention, the Court must consider (a) whether the interest is protectable under some law, and (b) whether there is a relationship between the legally protected interest and the claims at issue. *Wilderness Soc. v. United States Forest Service*, 630 F.3d 1173, 1179 (9th Cir.2011). A would-be intervenor will generally demonstrate it "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir.2006). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." *United States v. Union Elec. Co.*,

4

64 F.3d 1152, 1162 (8th Cir.1995) (cited in *United States v. Aerojet General Corp.*, 606 F.3d 1142, 1150 (9th Cir.2010)).  When "the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the 'interest' test." *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1494 (9th Cir.1995) abrogated by *Wilderness Soc.*, *supra*, 630 F.3d 1173.

Would-be intervenors argue that their duties as district attorneys in enforcing the judgment obtained in capital convictions constitutes a "significantly protectable" interest.  San Bernardino County District Attorney's Motion to Intervene ("Mot. to Intervene I") at 15, Riverside and San Mateo Counties District Attorneys' Motion to Intervene ("Mot. to Intervene II") at 18.  Would-be intervenors say that they are tasked with vindicating the "interests of the state and victims," that the District Attorneys and not the Attorney General "hold the interest in the judgment in the final stage of a capital case," and that the stays of execution entered in this case prevent them from fulfilling their duties.  Mot. to Intervene I at 15; Mot. to Intervene II at 18.  The San Bernardino County District Attorney makes a stronger declaration in his reply claiming that the interest in Plaintiff Kevin Cooper's death judgment is ascribable only to the District Attorney.  Reply at 1.

Plaintiffs argue that would-be intervenors do not have a protectable interest "under some law" because California law prohibits district attorneys from engaging in civil litigation absent express statutory authority.  Opp. at 8.  Even if would-be intervenors were permitted to enter the suit, plaintiffs argue, the enforcement of a capital judgment is not related sufficiently to the method of execution to warrant intervention as a matter of right.  *Id.* at 9.  Defendants do not address this factor.

The United States Supreme Court repeatedly has addressed the importance of a "State's significant interest in enforcing its criminal judgments."  *Nelson v. Campbell*, 541 U.S. at 637, 650 (2004).  *See also In re Blodgett*, 502 U.S. 236, 239 (1992) ("None of the reasons offered in response dispels our concern that the State of Washington has sustained severe prejudice by the $2^{1/2}$-year stay of execution.  The stay has prevented Washington from exercising its sovereign power to enforce criminal law . . . ."); *Gomez v. United States Dist. Court for Northern Dist. of Cal.*, 503 U.S. 653, 654 (1992) ("Equity must take into consideration the State's strong interest in proceeding with its judgment . . . ."); *McCleskey v. Zant*, 499 U.S. 467, 491 (1991) ("Our federal

1  system recognizes the independent power of a State to articulate societal norms through criminal

2  law; but the power of a State to pass laws means little if the State cannot enforce them."); *Engle v.*

3  *Isaac*, 456 U.S. 107, 128 ("The States possess primary authority for defining and enforcing the

4  criminal law. . . .  Federal intrusions into state criminal trials frustrate both the States' sovereign

5  power to punish offenders and their good-faith attempts to honor constitutional rights.").  There is

6  no doubt that the interest is "protectable under some law."  *Wilderness Soc.*, 630 F.3d at 1179.

7  Would-be intervenors, however, have failed to show that the State's interest belongs to them or

8  that their role in filing for a death warrant rises above a ministerial action in service to the State's

9  interest.

10        The United States Supreme Court determined based on California law that the Attorney

11  General is the "highest non-judicial legal officer of California, and is particularly charged with the

12  duty of supervising administration of the criminal laws."  *Phyle v. Duffy*, 334 U.S. 431, 441

13  (1948).  The California Constitution provides that the Attorney General shall "see that the laws of

14  the State are uniformly and adequately enforced."  Cal. Const. Art. V, § 13.  To that end, the

15  Attorney General maintains "direct supervision over every district attorney" and whenever

16  deemed necessary by the Attorney General or, "when directed to do so by the Governor," that

17  officer may step in and assist district attorneys in the discharge of their duties or "take full charge

18  of any investigation or prosecution of violations of law of which the superior court has

19  jurisdiction."  Cal. Gov't Code § 12550.  While, as noted by would-be intervenors, the Attorney

20  General has not been named as a party to this lawsuit, his supervisor, the Governor has been.  *See*

21  Cal. Const. Art. V, § 1 ("The supreme executive power of this State is vested in the Governor.

22  The Governor shall see that the law is faithfully executed."); Cal. Const. Art. V, § 13 ("*Subject to*

23  *the powers of the Governor*, the Attorney General shall be the chief law officer of the State."

24  (emphasis added)).  The "State's interest," therefore, lies with the highest officials in the State's

25  executive branch.

26        The state law provision on which would-be intervenors rely to support their interest in the

27  final stage of a capital judgment does not contradict this interpretation, as it explicitly does not

28  designate would-be intervenors exclusively.  It also invests the trial court with the same interest.

    California Penal Code section 1227(a) provides that "the court in which the conviction was had

shall, on application of the district attorney, *or may upon its own motion*, make and cause to be entered an order specifying a period of 10 days during which the judgment shall be executed" (emphasis added).

The District Attorneys play a vital role in assisting the State in enforcing its criminal law, but that role is a subsidiary one.  They act as representatives of the State when initiating a prosecution, *Weiner v. County of San Diego*, 210 F.3d 1025, 1031 (2000).  However, they are not State officers for all purposes.  *Id.*  Given the subordinate and mixed nature of their roles, the District Attorneys cannot be the sole or primary holders of the State's interest in seeing a criminal sentence implemented.

The District Attorneys' arguments that they are the sole representatives of victims also fail. They rely on *Blake v. Pallen*, 554 F.2d 947 (9th Cir. 1977), for the proposition that an official has a sufficient "interest in adjudications that will directly affect his own duties and powers under state laws."  Mot. to Intervene I at 13, Mot. to Intervene II at 16, both citing *Blake*, 554 F.2d at 953. *Blake*, however, holds that the "public interest" is not enough to warrant intervention as a matter of right.

In *Blake*, the California Commissioner of Corporations sought intervention in a class-action suit alleging "causes of action grounded on Federal Securities Law violations and three pendent counts based on California State Securities and Civil Fraud Laws."  554 F.2d at 950.  The Commissioner alleged a right to intervention on the grounds that the court may interpret federal securities law in a way that impacted California securities law, the action in which he sought to intervene contained three claims based on state securities law, California statutes authorized him in his official capacity to seek economic redress for securities fraud violations, and the court should allow government intervention to "represent the public interest."  *Id.* at 952-953.  The Ninth Circuit ultimately upheld the district court's determination that the commissioner was not entitled to intervention as a matter of right, finding that California and federal securities law schemes were separate autonomous systems; the commissioner did not have an interest in every case arising under securities laws; and the commissioner had other means by which he could vindicate consumers' rights.  *Id.*  The court specifically noted that "it would be impractical to base

a finding of sufficient interest for purposes of establishing intervention of right solely on public interest grounds." *Id.* at 953.

Under the California Constitution, the State's interest in enforcing its own laws lies with the Governor, which is then delegated to the Attorney General, and through the Attorney General, down to county District Attorneys. Would-be intervenors have failed to substantiate their assertion that the interest is theirs alone. That basis by itself, therefore, warrants denial of intervention. *Perry*, 587 F.3d at 950.

### 2. Adequacy of Representation by Current Defendants

Would-be intervenors also have failed to show that the current defendants do not adequately represent their interests. "Where the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies." *Perry*, 587 F.3d at 951 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir.2003)). As noted above, both the Governor, who is a current defendant, and the would-be intervenors share an interest in the resolution of criminal sentences, though the current defendant possesses the greater interest.

Moreover, the would-be intervenors' primary objection is to the current defendants' failure to seek reconsideration or interlocutory appeals for orders that rejected defendants' arguments. Mot. to Intervene I at 17, Mot. to Intervene II at 20. As defendants note, "mere [ ] differences in [litigation] strategy . . . are not enough to justify intervention as a matter of right." *Perry*, 587 F.3d at 954, *quoting United States v. City of Los Angeles*, 288 F.3d 391, 402–403 (9th Cir. 2002). The would-be intervenors do suggest that current defendants have not made all arguments available; however, they concede that defendants have raised arguments about the stays of execution pursuant to the Prison Litigation Reform Act and have made arguments that the complaint is both moot and fails to meet current pleading standards under the most recent Supreme Court cases addressing the issue.[1] Mot. to Intervene I at 17, Mot. to Intervene II at 19.

---

[1] In his reply, the San Bernardino County District Attorney argues that current defendants failed to make any arguments that the stays of execution have expired pursuant to the PLRA. Reply at 6. As part of the adequacy of representation evaluation, a court must consider the extent to which the interest of the current parties to the suit are such that those parties will make all of the would-be intervenors' arguments and the extent to which said parties are willing and able to make such arguments. *Arakaki*, 324 F.3d at 1086. However, the most important factor to evaluate is the nature of the would-be intervenor's interest as compared to the existing parties' interests, which is discussed in great detail below. The Court finds that the current defendants have made nearly

1   Because a dispute about trial tactics is an insufficient basis on which to support a finding

2   that the current defendants cannot adequately represent the interests of the would-be intervenors

3   and because the law presumes that the current defendant provides adequate representation, the

4   District Attorneys also have not met their burden under this prong of the evaluation.

5        **b.   Permissive Intervention**

6        If a would-be intervenor cannot show a right to intervene, under FRCP 24(b), a court may

7   also permit anyone to intervene who "has a claim or defense that shares with the main action a

8   common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Unlike intervention as of right,

9   permissive intervention focuses on possible prejudice to the original parties to the litigation, not

10  the intervenor. *Donnelly v. Glickman*, 159 F.3d 405, 411 (9th Cir. 1998). Thus, "in exercising its

11  discretion, the court is to consider 'whether the intervention will unduly delay or prejudice the

12  adjudication of the rights of the original parties.'" *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d

13  1094, 1128 n.10 (9th Cir. 2002), abrogated on other grounds by *Wilderness Soc. v. U.S. Forest

14  Serv.*, 630 F.3d 1173 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24(b)(2)). "[P]ermissive

15  intervention 'requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a

16  common question of law and fact between the movant's claim or defense and the main action.'"

17  *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (quoting

18  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). "Even if an applicant

19  satisfies those threshold requirements, the district court has discretion to deny permissive

20  intervention." *Donnelly*, 159 F.3d at 412. In ruling on a motion to intervene, the Court must

21  accept as true the nonconclusory allegations of the motion and proposed pleading. *Sw. Ctr. for

22  Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).

23       Allowing the District Attorneys to intervene in this case would exacerbate the delay about

24  which they complain. The would-be intervenors noted their disagreement with defendants'

25  litigation tactics, believing instead that defendants should have pursued motions for

26  reconsideration or interlocutory appeals, which could delay matters up to several months.

27  every argument the would-be intervenors raise. Current defendants repeatedly have argued
against the stays under multiple legal theories. This difference between would-be intervenors'
28  position and the arguments made by current defendants amounts to trial strategy. There is no
reason the would-be intervenors could not have raised this issue in an *amicus curiae* brief.

United States District Court
Northern District of California

Moreover, California has fifty-eight counties.  Should permissive intervention be granted here, the prospect arises that an additional fifty-five District Attorney offices would seek to intervene.  Requiring the plaintiffs and primary defendants to confer with so many intervenors, each of whom is under the supervision of one current defendant, and whose interest is marginal to the subject matter of the complaint would be unwieldy and prejudicial.  That is to say nothing of the detrimental impact of litigating such complex and wide-reaching issues on a plaintiff-by-plaintiff basis, as counties seek to lift the stays of the execution for plaintiffs for whom they seek a death warrant.

Finally, as this Court has noted before, this case focuses solely on the method and implementation of the death penalty.  It does not concern whether California should maintain capital punishment or the wisdom of the death penalty in the first instance.  (Doc. No. 424 at 8.) The District Attorneys have no involvement in the drafting or implementation of any method-of-execution protocol and are not entitled to an unconstitutional resolution of any case that their office prosecuted.  As such, they have failed to show "a common question of law and fact between the movant's claim or defense and the main action."  *Freedom from Religion Found., Inc.*, 644 F.3d at 843.  Accordingly, permissive intervention is denied.

**II.  Stays of Execution**

Because the District Attorneys have been denied intervention, they lack standing to challenge the orders previously issued in this case.   Accordingly, their arguments regarding the expiration or lifting of the stays of execution will not be addressed.

**III.   Plaintiff Cooper's Request for Judicial Notice**

Plaintiff Kevin Cooper filed a separate opposition to the San Bernardino County District Attorney's motion to intervene to "provide the Court [with] pertinent additional information concerning DA Ramos' motive to seek to intervene . . . ."  Cooper Opp. at 1.  Cooper's opposition focuses on the fact that that District Attorney Ramos was voted out of office in June by San Bernardino County voters.  Cooper attached to his opposition a request for judicial notice of eight exhibits totaling approximately eighty pages of news articles and government web site documents concerning the recent San Bernardino County election.

1    While in the right circumstances a court may take judicial notice of both publicly available

2  media articles, *Ritter v. Hughes Aircraft, Co.*, 58 F.3d 454, 458-59, and government web site

3  documents, *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010), it is not

4  appropriate to do so in this instance.  Whatever motivation District Attorney Ramos may have in

5  filing a motion to intervene is irrelevant to the legal standard that must be considered in

6  determining whether to grant his motion.  Accordingly, the request for judicial notice is denied.

7                                    **CONCLUSION**

8    For the foregoing reasons, both of the motions to intervene and Plaintiff Cooper's request

9  for judicial notice are denied.  The scheduled hearing date of August 9, 2018, shall be taken off

10  calendar.

11

12    **IT IS SO ORDERED.**

13

14  Dated:  July 18, 2018

15                                    RICHARD SEEBORG
                                      United States District Judge