1 | XAVIER BECERRA
Attorney General of California
2 | JAY M. GOLDMAN
Supervising Deputy Attorney General
3 | MICHAEL J. QUINN
Deputy Attorney General
4 | JOANNA B. HOOD
Deputy Attorney General
5 | R. LAWRENCE BRAGG
Supervising Deputy Attorney General
6 | State Bar No. 119194
 1300 I Street, Suite 125
7 | P.O. Box 944255
 Sacramento, CA 94244-2550
8 | Telephone: (916) 210-7334
 Fax: (916) 324-5205
9 | E-mail: Lawrence.Bragg@doj.ca.gov
*Attorneys for Defendants Diaz, Brown, and Davis*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **MICHAEL ANGELO MORALES, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**RALPH DIAZ, Acting Secretary of the California Department of Corrections and Rehabilitation, et al.,**<br><br>Defendants. | Case No. C 06-0219 RS<br>Case No. C 06-926 RS<br><br>**JOINT STATEMENT OF PARTIES RE: LITIGATION SCHEDULE**<br><br>Judge: The Honorable Richard G. Seeborg<br>Trial Date: Not Set<br>Action Filed: January 5, 2006 |

In compliance with this Court's Order (ECF No. 640), the parties met and conferred, and submit this Joint Statement of Parties Re: Litigation Schedule.

## I. POSITION OF PARTIES ON THE IMPACT OF PENDING LITIGATION ON THE PROPOSED LITIGATION SCHEDULE.

### A. Plaintiffs' Position:

Three California County District Attorney's recently moved the Court to intervene in this case. Docs. 660, 663. This Court denied these motions. Doc. 676. Intervenors filed a notice of appeal regarding this Court's order. Doc. 677. The U.S. Court of Appeals for the Ninth Circuit has set a briefing schedule. The parties' answering briefs are due on December 24, 2018, and Appellant's optional reply brief is due 21 days after service of the answering brief.

The stay of this litigation should not be vacated by this Court until there is certainty of the identity of all parties in the litigation. Two appealing Intervenors have yet to even identify their intended capacity in this litigation, and have yet to present a proposed pleading. Moreover, the quantum of counsel involved in this undertaking is substantial. This is not an isolated appeal by a couple of District Attorneys, but a state-wide, coordinated effort. The San Bernardino County District Attorney's Office contends that it has "enlisted" numerous "consultants" in pursuing intervention in this case, including "likeminded prosecutors at other California District Attorneys' Offices, . . . other elected district attorneys, some of their deputies, and attorney consultants at two other criminal justice entities." Letter from Mark Vos, Deputy District Attorney, San Bernardino County District Attorneys' Office to David A. Senior, dated July 25, 2018, Ex. A. In doing so, this representative group discusses "strategy, tactics, and procedures concerning [the] motion to intervene," is jointly involved in developing "strategy, tactics, and procedures," and are "strictly within this prosecutorial consulting 'family,' so to speak." *Id.*

If these parties/counsel ultimately are allowed to appear in this case, the parties can then timely commence their participation in the case in accordance with the litigation schedule proposed earlier by Defendants (*see* Doc. 658 at 14), and now acquiesced to by Plaintiffs (*infra*, Plaintiffs §4), which Plaintiffs propose starts once the appeal is concluded. If the current stay is lifted before the intervention issue is final, all litigation conducted in the interim will be disrupted

by any possible later appearance of the appealing Intervenors and their like-minded consultants and participants.

There also are two pending state cases that challenge Defendants' execution protocol:

(1) *Sims, Morales v. CDCR*, Alameda County Superior Court, Case No. 16838951. The parties are litigating whether Defendant CDCR is permitted or authorized to issue an execution protocol as delegated by the legislature consistent with the California constitution. The matter currently is pending in the California Court of Appeal, First Appellate District, Case No. A151732. The parties' briefing on appeal is complete. The reply brief was filed on March 8, 2018. If Plaintiffs succeed, Defendants' proposed execution protocol will be null and void; and

(2) *Masters, Witness to Innocence v. CDCR*, Marin County Superior Court, Case No. 1800580. Plaintiffs filed this action on February 16, 2018 seeking declaratory and injunctive relief for Defendant CDCR's failure to comply with California's Administrative Procedures Act ("APA") in promulgating its execution protocol. Defendant demurred. On May 30, 2018, the court overruled the demurrer. The case is proceeding to a merits determination.

During the parties' meet-and-confer to prepare this report, all counsel concurred that: (1) if an injunction is issued in *Masters/Witness to Innocence* case, it will impact any litigation schedule commenced in the present case; and (2) if relief is granted on appeal in the *Sims/Morales* case, it will impact any litigation schedule commenced in the present case.

Moreover, if Plaintiffs in either state case succeed on the merits, all time, effort, and resources expended by this Court and the parties with regard to any litigation activity commenced here in the meantime, will be wasted. Thus far, Defendants have been unsuccessful in defending every state case challenging their execution protocol that has been filed since 2006. Given that track record, there is no good reason why the Court should not continue the status conference until these matters are resolved.

At least three times, the Court has begun its review, expended enormous resources, and then had to continue the proceedings due to state court rulings adverse to Defendants. After the Court's Memorandum of Intended Decision on December 15, 2006 (Doc. 290), Defendants published a revised lethal injection procedure on May 15, 2007 (Doc. 317). Extensive discovery

and resulting litigation ensued. *See, e.g.,* Doc. 328 (outlining discovery disputes and delays); Doc. 342 (Motion to Compel); Doc. 385 (Defendant's Motion for Protective Order outlining discovery proceedings). As that litigation was proceeding, Plaintiff advised the Court that there was an APA challenge in the Marin County Superior Court that could affect the ability to proceed. Doc. 335 at 2:26 to 3:2. Plaintiff then requested that proceedings be stayed as a result of that challenge being successful and summary judgment granted, which Defendants initially opposed, but ultimately agreed to stay further discovery. Doc. 368. The Court then continued its discovery schedule pending a series of status conferences on the Marin County matter. Docs. 370, 375, 378.

After being unsuccessful on appeal in state court, Defendants issued the third version of lethal injection procedures and brought those before this Court on August 6, 2010. Doc. 381. At that time, the new regulations already were the subject of a further challenge in Marin County Superior Court for non-compliance with the APA. *Id.* The Court then began its third process of review. Doc. 385 (setting status conference). By then, Defendants already had set an execution date for Plaintiff Albert Brown. Doc. 388. This resulted in a flurry of litigation that eventually was resolved on the eve of the execution date. Docs. 390-424.

Proceedings began anew after Defendants published a fourth execution procedure. Doc. 425. A Fourth Amended Complaint then was filed by Plaintiffs. Doc. 428. This generated a motion to dismiss, protective orders, a motion to strike, and motions to compel discovery. Docs. 430-516. While litigation over discovery was proceeding, a ruling adverse to Defendants was issued in the second Marin County Superior Court action, which resulted in proceedings here being stayed again. Docs. 535, 552, 554.

Defendants have now published their fifth procedure since this litigation began.

The pending state court actions, if successful, will again invalidate Defendants' procedure. If the stay here is lifted, and a state court determination is again issued adverse to Defendants, this Court and the parties will have engaged in a fourth failed effort to proceed. While it is true that the state litigation in the past did not stay proceedings in this Court until judgment was granted

1  there, it also is true that this resulted in a large expenditure of time and resources that in the end
2  was entirely for naught.

3  Defendants express concern about the pace of state court litigation, but that pace has been
4  delayed by Defendants.  For instance, they recently chose to demur in *Masters* rather than simply
5  answer and defend the matter on the merits.    Defendants then requested and received a discovery
6  extension, only to then assert blanket objections without producing responsive documents.
7  Defendants generate discovery disputes necessitating motion practice.  These actions result in
8  delays, time for briefing, hearings, judicial intervention, and litigation schedule extensions.
9  Indeed, Defendants recently stipulated to vacating the previously set discovery cutoff of October
10 1, 2018.

11 Plaintiffs do not fault Defendants for their state court strategies.  But they should not be
12 heard then to complain here about the inevitable consequences of those strategies.  Nor should
13 this Court vacate the stay to move forward here before the *bona fides* of the protocol under state
14 law are examined in the state court cases.  *Sims v. CDCR* is fully briefed and awaiting argument
15 in the First District Court of Appeal.  Defendants in the *Masters* case have expressed the view
16 that the case is entitled to preference in trial setting, and indicated their intent to move to bifurcate
17 the case and set the matter for trial.  The parties' and judicial resources would be most efficiently
18 allocated by awaiting clarity from the state courts on the lawfulness of the current protocol.

19 This Court correctly has stayed the proceedings here because the parties stipulated to a stay
20 after repeated rulings adverse to Defendant CDCR made review of an illegal protocol under the
21 Eighth Amendment a futile, wasteful, and merely advisory undertaking.  Nothing has changed in
22 this regard, and this case should remain stayed until the final resolution of the foregoing state
23 cases occurs, or until there is a merits determination in the Marin County Superior Court for
24 further consideration of the stay by this Court at that time.

25 **B.    Defendants' Position:**
26 Defendants oppose a further stay of this action pending the resolution of the appeals filed
27 by the District Attorneys from San Bernardino, San Mateo, and Riverside Counties. The
28 resolution of these appeals could take several years, resulting in further delay in the resolution of

this action. Further, these District Attorneys have argued only that they should be allowed to intervene in order to pursue lifting of the stays of execution issued to Plaintiffs-Intervenors because they are void as a matter of law, without indicating that they need to conduct any discovery prior to filing such a motion. (Motion, ECF No. 660 at 24:14-25:5.) Consequently, these District Attorneys will not be prejudiced if the case proceeds before this appeal is resolved.

Defendants also oppose a further stay of the above action pending the resolution of the state court cases, *Sims v. CDCR, et al.,* Alameda County Superior Court No. RG16838951, and *Masters, et al. v. Kernan, et al.,* Marin County Superior Court No. CIV 1800580.  Neither of the state court cases involve a method-of-execution challenge under the Eighth Amendment.  In *Sims v. CDCR, et al.,* Alameda County Superior Court No. RG16838951, plaintiffs alleged that the California Constitution did not allow the state legislature to delegate to CDCR the authority to develop execution procedures.  The defendants prevailed in the trial court, the matter is fully briefed on appeal and awaiting oral argument.  Meanwhile, the voters passed Proposition 66 in November 2016, which among other things, exempted execution procedures from the regulatory rulemaking process formerly required by California's Administrative Procedure Act (APA).  APA issues were the source of the prior state court cases recounted by Plaintiffs above.  The *Masters* litigation involves a flawed challenge to the scope of the APA exemption adopted by the voters.  And, since the *Masters* plaintiffs acknowledge that the portions of the protocol pertaining to the injection of lethal chemicals are exempt from the APA, a judgment in favor of those plaintiffs will not render the protocol null and void.

Defendants note that the *Morales* litigation continued during the pendency of the *Sims v. CDCR, et al.,* Marin County Superior Court No. CIV1004019 action concerning the Administrative Procedure Act until a final judgment and permanent injunction issued.  Injunctive relief has not been issued in either of the above-described pending state court actions.[1]  Continuing to stay the *Morales* case until all related litigation has concluded may simply

---

[1] The *Sims* injunction was vacated on March 28, 2018.

1  encourage the filing of additional lawsuits raising ancillary issues which will unreasonably delay
2  the resolution of the *Morales* action.

3      Plaintiffs informed Defendants that, in their view, this case should remain stayed until all
4  trial court action, and final appeals, are completed in the *Sims* and *Masters* cases. Defendants
5  have consistently disagreed with this point of view. *Masters* was filed on February 16, 2018. A
6  resolution of *Masters* through every level of appeal could possibly take years. The defendants
7  prevailed in the *Sims* case filed in Alameda County and an appeal is fully briefed in that matter,
8  but a date for oral argument has not been set by the California Court of Appeal. Therefore, it
9  could take another six months to a year to fully resolve that case. Adoption of Plaintiffs' position,
10 if the current stays of execution remain in place, could have the effect of imposing an
11 unwarranted moratorium on the application of the death penalty for at least the next several years.

12     Plaintiffs' reference to the discovery issues raised in *Masters* is inapposite, because while
13 Plaintiffs state that Defendants are slowing the pace of litigation, any delay is really attributable
14 to the Plaintiffs. The *Masters P*laintiffs seek voluminous discovery concerning the drafting and
15 approval of the current protocol which is not relevant to the legal issue asserted as to whether the
16 entire protocol is exempt from the California Administrative Procedure Act. (APA), requiring the
17 Defendants to seek a protective order. Further, Defendants have demonstrated that, given the
18 amount of electronic discovery sought, it would take approximately ten months to gather, review,
19 and produce the requested documents. Consequently, any delay in the resolution of *Masters* is not
20 attributable to the Defendants and is not a reason to stay this case.

21 **II.   OTHER BARRIERS TO THE IMPLEMENTATION OF THE LETHAL
22        INJECTION PROTOCOL**

23     **A.   Plaintiffs' Position:**

24     Defendants have advised that they are at the beginning of the process, and have not
25 undertaken any efforts other than drafting a written protocol. This Court already has made clear
26 (Doc. 513) that a "paper only" review of a new written protocol advocated by Defendants is not
27 what is contemplated by the Memorandum of Intended Decision, and subsequent order finding a
28 constitutional as-applied violation (Doc. 424 at 4). Defendants must disclose all threshold

execution matters to Plaintiffs to: (1) provide "reliability and transparency" in the process that has been called for by this Court (*Morales v. Tilton*, 465 F. Supp. 2d 972, 981 (N.D. Cal. 2006)); and (2) allow Plaintiffs to review the matters, determine whether further amendments to the complaint are required, whether better alternatives to the execution processes are available, and whether Defendants' execution procedures, facilities, staffing, management, and personnel selection and training are constitutionally viable.

### B. Defendants' Position:

Since the operative pleading in this case remains about the execution protocol that was in effect in 2010 when the Fourth Amended Complaint was filed, Plaintiffs' claims are moot. *Dennis v. Davis*, 2018 WL 1609644, * No. 98-cv-21027-JF, 2018 WL 3956307 at * 8 (N.D. Cal. Aug. 17, 2018) (challenge to prior lethal injection protocol "is moot, given California's recent adoption of a new lethal injection protocol"), notice of appeal filed Sept. 18, 2018, Ninth Cir. No. 18-99008.

If the case is about the new protocol on its face, which is contrary to what Plaintiffs' have asserted, then the case can proceed on that basis only. Barriers to implementation of the new protocol are irrelevant for purposes of determining whether there is at present an Eighth Amendment violation. If, as Plaintiffs allege, this entire case is about alleged flaws in the implementation of an execution protocol, and that protocol has never been implemented, then the case is not ripe for review, Plaintiffs lack a claim, and the matter must be dismissed.

There are no state or federal court orders in effect prohibiting or limiting lethal injection executions in California, except for the orders issued by this Court. Defendants are without an execution team, have not trained a team, do not possess execution drugs or all necessary execution equipment, and have not undertaken any other execution-related activities other than drafting a written protocol, because there is a court order that stays not only the executions but also bars preparations for executions. (ECF Nos. 424 at 9:13-24, 473 at 2:17-19, 563 at 6:6-10, 581 at 4:15-19, 586 at 4:22-5:2, 606 at 4:7-10, 620 at 5:8-9, 631 at 5:19-21, and 655 at 5:14-16.) These orders were sought by Plaintiffs and granted by this Court despite Defendants' opposition to the same. Plaintiffs have not requested that this Court dissolve the orders.

## III. STATUS OF THE PLEADINGS.

### A. Plaintiffs' Position:

Defendants contend that Plaintiffs do not intend to seek leave to file a fifth amended complaint. That is not correct. Plaintiffs have requested that Defendants first comply with the outstanding Court order regarding their discovery responses and allow Plaintiffs to review their process. This will allow Plaintiffs to make an informed determination what amendments to the current complaint are required.

Defendants seek to lift the stay as to these proceedings, but to stay all discovery so that they may re-litigate whether the Fourth Amended Complaint is well pled – a complaint that the Court already has approved (Doc. 430 – noting compliance with, *inter alia*, *Twombly*, *Iqbal*, *Baze*), or a new complaint, without permitting any review of the reasons for and effect of their new procedures. This Court repeatedly has noted the importance of the development of the factual record in order to properly vet Defendants' execution practices under the Eighth Amendment. *See, e.g.*, Doc. 424 ("three points do bear repeating. *First*, 'it is fair to say that there is no case involving an Eighth Amendment challenge to a lethal-injection protocol in which the factual record is as developed as the record here.' ([Doc. 401] at 7, *quoted in* Doc. No. 420 at 6.")). In many respects, Defendants' new execution protocol is more of the same. However, it also raises new questions that requires continuing discovery.[2]

Defendants further claim that Plaintiffs must amend the complaint before they comply with this Court's outstanding discovery orders to allow Defendants to move to dismiss an amended complaint drafted in the blind. Defendants again rely on Supreme Court cases evaluating the question of discovery and motions to dismiss in the context of initial complaints. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

---

[2] As a threshold matter, Plaintiffs note that the new protocol has removed doctor logs from the procedure, thereby preventing medical monitoring; contains an untested level of drugs being applied as to which the Office of Administrative Law found was "unexplained"; exempts contracted team members from personnel file reviews; contains an uncertain provenance of the drugs being used; and, contains a backup procedure for access that is anatomically incorrect. Discovery regarding the protocol as a whole, as well as these particulars, will shed light on whether Defendants have corrected the unconstitutional deficiencies in their execution practices, or simply have made a previously nontransparent and defective process even more opaque.

Those cases are inapposite here. This matter has proceeded to a finding of a constitutional violation, and the question now is whether the violation has been sufficiently remedied. As the factual record now stands, Defendants have been found in violation of the Eighth Amendment for a wide range of problematic activities and there is no record that defendants have remedied those problems. This Court has explicitly found those violations met the standard under *Baze* (Doc. 424), a finding Defendants ignore.

According to Defendants' representations, Defendants' execution preparations to date have been limited to the creation of the written protocol. Since the creation of OP 770 and the commencement of this action, Defendants always have had a written protocol. But, as Defendants agree, making an execution humane "'is up to the people that carry it out. You can't legislate it or write it down.'" Amended Joint Pre-Hearing Conference Statement, Undisputed Facts, ¶263, Doc. 278.

Understanding that fundamental premise, and that Defendants' actions, procedures, and behavior in implementing written protocols since December 15, 2006 and any changes made thereto are critically important, this Court has issued a specific discovery order that requires Defendants to respond to Plaintiff's interrogatories and document requests. Doc. 513. These requests pertain to questions about the new procedure as well. Defendants have not complied with the order. Defendants must fully comply with this Court's order to allow Plaintiffs to review the information and documents produced in context with the new execution protocol and evaluate, in part, whether amendments to the complaint may be required.

**B.   Defendants' Position:**

Plaintiffs have informed Defendants through the meet and confer process that they do not intend to seek leave to file a fifth amended complaint once the stay is lifted and litigation resumes in this case.

The operative Fourth Amended Complaint (FAC, ECF No. 428) filed in 2010 fails to state a claim for relief because it does not comply with the pleading requirements for an Eighth Amendment method-of-execution case set forth in *Glossip v. Gross*, 135 S.Ct. 2726 (2015) and *Baze v. Rees*, 553 U.S. 35 (2009). One example of the failure to state a claim is the lack of facts

in the FAC stating alleged alternatives to the March 1, 2018, execution protocol now in effect or its implementation.[3] Therefore, Defendants will file a motion for judgment on the pleadings concerning the FAC.[4]

Defendants oppose Plaintiffs' position that compliance with prior discovery requests and orders are necessary *before* Plaintiffs can determine whether they have a basis to state a claim in a fifth amended complaint. The United States Supreme Court has held that discovery is not available to a party that fails to state a claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 678–79. Should Plaintiffs consider filing a fifth amended complaint, Defendants have offered to review a copy and consider stipulating to the filing of this pleading to the extent that it complies with *Glossip*, *Baze*, *Ashcroft*, and *Twombly*.

Plaintiffs explicitly assert that Supreme Court precedent in *Twombly* and *Iqbal* should not apply to them, and, by calling for this case to be adjudicated in light of the 2006 Memorandum of Intended Decision (ECF No. 290), also reject the pleading standards for method-of-execution claims in *Baze v. Rees*, 553 U.S. 35 (2008) and *Glossip v. Gross*, 135 S. Ct. 2726 (2015).

Plaintiffs cite no legal authority to support their unique view that they are free to ignore the pleading requirements under controlling Supreme Court precedent, and no such authority exists. Further, Plaintiffs' description of the status of this matter is incorrect. There is no prior judgment in this case, nor is this matter in a remedial phase. Indeed, Defendants note that since the Court

---

[3] The 2006 Memorandum of Intended Decision also lacks any findings as to alternatives to the implementation of the long-defunct protocol that was at issue 12 years ago.

[4] Plaintiffs' new footnote two provides strong support for Defendants' position that Plaintiffs have not pled a claim in accordance with the requirements of *Glossip*, and why, as a preliminary matter, discovery should be stayed while motions for judgment on the pleadings or to dismiss are adjudicated. Plaintiffs list a series of new matters regarding the new Execution Protocol that went into effect in 2018, and announce they intend to pursue discovery on those matters. But nowhere in the operative Fourth Amended Complaint, filed in 2010, do they mention these issues, let alone plead, as required by the Supreme Court, that each of these issues will create a substantial risk of causing severe pain during an execution when compared to a known, readily available, and specifically pled alternative.

issued a *tentative* decision in 2006 on a claim raised by the sole plaintiff at that time, Michael Morales, he has twice filed amended complaints. (ECF Nos. 323 and 428.) Thereafter, numerous individual additional plaintiffs joined this matter as intervenors.

As a result, Plaintiffs ask this Court to ignore United States Supreme Court precedent regarding the standards and burden of proof for an Eighth Amendment method-of-execution claim. Additionally, by asserting they require months of discovery to attempt to search for the foundation of a potential claim, Plaintiffs are asking this Court to ignore Supreme Court requirements barring litigation where a party has failed to allege facts sufficient to state a claim.

Granting Plaintiffs' demand for ongoing discovery against Defendants to allow Plaintiffs to search for information that, perhaps, they can one day fashion into a good faith basis for a claim, requires this Court to disregard the requirements of Rule 26(b)(1) of the Federal Rules of Civil Procedure. Rule 26, as amended in 2015, provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"[5] "Deciding whether proposed discovery is "relevant' to the plaintiff's claims of course requires some investigation into the substance of those claims." *Goes International, AB, v. Dodur Ltd., et al.*, No. 14-cv-05666-LB, 2016 WL 427369 at * 2 (N.D. Cal. Feb. 4, 2016). Because Plaintiffs' operative complaint fails to state a cause of action pursuant to the pleading standards in *Glossip* and *Baze,* there is no way to determine what discovery is "relevant" as that term is used in Rule 26.

In light of Plaintiffs' stated views, Defendants request that this Court explicitly state that the above-cited Supreme Court precedent, as well as the scope of discovery mandated by Federal Rule of Civil Procedure 26, must apply. In adjudicating the motion for judgment on the pleadings referenced above, this Court should instruct Plaintiffs that they must meet the pleading and burden of proof standards mandated by the Supreme Court in *Glossip*, *Baze*, *Ashcroft*, and *Twombly*, and the scope of discovery and case schedule should reflect this binding authority and

---

[5] "[I]t is well established that a court generally applies the law in effect at the time of its decision, and that if the law changes,...the...court applies the new rule." *Lambert v. Blodgett*, 393 F.3d 943, 973 n. 21 (9th Cir. 2004) (citing *Thorpe v. Durham Hous. Auth.*, 393 U.S. 268, 281 (1969)).

the requirements of Rule 26.  Additionally, discovery should not commence until these issues have been addressed, the pleadings are closed, and prior discovery orders are modified accordingly.

## IV. STATUS OF PRIOR DISCOVERY REQUESTS AND ORDERS.

### A. Plaintiffs' Position:

During the parties' meet-and-confer for this submission, and pursuant to the request of counsel for Defendants, Plaintiffs' counsel agreed to identify by letter to Defendants' counsel the discovery issues that remain outstanding and require responses by Defendants pursuant to this Court's orders.  By letter dated July 11, 2018, Plaintiffs' counsel has done so.

### B. Defendants' Position:

Defendants were in the process of complying with prior discovery requests and orders when the parties stipulated to stay this action on August 10, 2012. (ECF No. 554.)  Significant changes in circumstances have occurred during the subsequent six years, including the disbandment of the prior execution team, the issuance of U.S. Supreme Court holdings regarding pleadings standards in *Glossip v. Gross*, 135 S.Ct. 2726 (2015), a change in the rule governing the scope of discovery, and the issuance of a new one-drug execution protocol effective March 1, 2018. (ECF No. 635.)  It has been years since there were any preparations for executions because of the lack of an execution protocol and this Court's orders barring such preparations.  (ECF Nos. 424 at 9:13-24, 473 at 2:17-19, 563 at 6:6-10, 581 at 4:15-19, 586 at 4:22-5:2, 606 at 4:7-10, 620 at 5:8-9, 631 at 5:19-21, and 655 at 5:14-16.)  In light of these developments, many of the prior discovery requests do not seek information that is relevant to the claims and defenses asserted in this case, or proportional to the needs of the case as required by Federal Rule of Civil Procedure 26(b)(1).  A motion for reconsideration of prior discovery orders is appropriate in light of these changed circumstances.  *See Smith v. Massachusetts* (2005) 543 U.S. 462, 475 (a district court has inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment).  Examples of prior discovery requests which are no longer relevant include personnel files of members of the execution team that was disbanded years ago, training records concerning that team, and documents concerning the development of the old protocol that was invalidated six years ago.

## V. LITIGATION SCHEDULE.

### A. Plaintiffs' Position:

Defendants' counsel has provided Plaintiffs' counsel with a proposed litigation schedule. The schedule is a general template for certain litigation matters to take place, with a hearing date contemplated upon completion. Upon the further conference of counsel as directed by this Court, Plaintiffs' counsel generally is agreeable to Defendants' earlier proposed schedule, however, Plaintiffs have included matters required under the Federal Rules of Civil Procedure, this Court's Local Rules, and Standing Orders for non-jury trials, as follows:

1. *Amended Complaint*: may be filed 120 days after the stay is vacated;

2. *Fact Discovery Cut-off*: 270 days after the pleadings are closed, or as stipulated to by the parties. (Discovery in 2006 took seven months to complete, with fact depositions being taken during the hearing, and it took eleven months in 2011-2012. There were multiple motions to compel and for protective orders, and resulting revisions to the scheduling. Discovery should not be bifurcated as Defendants propose because it is impossible to litigate alternatives without identifying flaws that have not been remedied);

3. *Disclosure of Expert Witnesses and Reports*: 60 days after fact discovery is closed, the parties will identify expert information as required by Rule 26(a)(2), and present their experts for depositions within 60 days thereafter, or as stipulated to by the parties;

4. *Disclosure of Expert Rebuttal Witnesses*: 30 days after disclosure of expert witnesses and reports, the parties will identify rebuttal expert information as required by Rule 26(a)(2), and present their rebuttal experts for depositions within 60 days thereafter, or as stipulated to by the parties;

5. **Expert Witness Discovery Cut-off:** 60 days after rebuttal expert disclosures, or as stipulated to by the parties;

6. **Joint Status Reports:** To be filed by the parties every 90 days;

7. *Pre-evidentiary Hearing Conference*: To be set by the Court upon review of the parties' joint status conference reports. The parties will comply with the Court's standing order regarding preparation and submission of a Joint Pretrial Statement and Order, to be filed 10

days prior to the conference. Plaintiffs request 60 days after expert discovery is closed to prepare Joint Pretrial Statement and Order; and

8. *Evidentiary hearing*: To be set not less than 420 days after the pleadings are closed. The parties will comply with the Court's Bench Trial Standing Order in preparation for a pre-evidentiary hearing conference. An evidentiary hearing will be calendared by the Court at the conference based upon the parties' completion of the foregoing.

**B.     Defendants' Position:**

Defendants proposed, and request this Court order the following while discovery remains stayed:

> i.   Plaintiffs have 30 days to file a Fifth Amended Complaint or file and serve a notice with this Court that they do not intend to amend the Fourth Amended Complaint;
>
> ii.   Defendants will have 30 days thereafter to file and serve a motion to dismiss a Fifth Amended Complaint, a motion for judgment on the pleadings as to the Fourth Amended Complaint, or file a notice that they do not intend to move to dismiss a Fifth   Amended Complaint, if one is filed; and
>
> iii.   Defendants will have 30 days after the pleadings are closed to file a motion to modify or dissolve any prior discovery orders in this matter and enforcement of prior discovery orders is stayed pending resolution of the motion(s).

Once the pleadings are closed, either through the filing of an answer, or the denial of a motion challenging the pleadings, and any motions as to existing discovery orders are resolved, the following litigation schedule should ensue:

> i.   *Completion of fact discovery*: 150 days after the pleadings are closed and the scope of discovery is determined. The initial 75 days of discovery would be bifurcated, and limited to discovery as to Plaintiffs' alternatives to flaws to in the March 1, 2018, protocol or its implementation, and whether such alternatives are known, feasible, and readily available;
>
> ii.   *Disclosure of expert witnesses and reports*: 60 days after fact discovery is closed;
>
> iii.   *Disclosure of expert rebuttal witnesses*: 30 days after disclosure of expert witnesses and reports;
>
> iv.   *Completion of expert witness discovery*: 30 days after disclosure of expert rebuttal witnesses;

v. *Motion for Summary Judgment*-no later than 30 days after the completion of expert discovery;

vi. *Disclosure of witnesses and documents to be used at evidentiary hearing, preparation of motions in limine and trial briefs*: 20 days prior to hearing; and

vii. *Evidentiary hearing*: 420 days after the pleadings are closed.

Dated: October 11, 2018    Respectfully submitted,

XAVIER BECERRA
Attorney General of California
JAY M. GOLDMAN
Supervising Deputy Attorney General
MICHAEL J. QUINN
Deputy Attorney General
JOANNA B. HOOD
Deputy Attorney General

*/s/ R. Lawrence Bragg*
R. LAWRENCE BRAGG
Supervising Deputy Attorney General
*Attorneys for Defendants Diaz, Brown, and Davis*

Dated: October 11, 2018    By: */s/ Dave Senior*
David A. Senior
Sara M. Cohbra
Ann K. Tria
McBREEN &SENIOR

|   |   |
|---|---|
|   | Richard P. Steinken<br>JENNER & BLOCK |
|   | John R. Grele<br>LAW OFFICE OF JOHN R. GRELE<br>Attorneys for Plaintiffs |
| Dated: October 11, 2018 | By: */s/ Susan Elizabeth Garvey*<br>Susan Elizabeth Garvey<br>HABEAS CORPUS RESOURCE CENTER<br>Attorneys for Plaintiff Sims |
| Dated: October 11, 2018 | By: */s/ Hilary Potashner*<br>HILARY POTASHNER<br>Federal Public Defender<br>MARGO ANN ROCCONI<br>Deputy Federal Public Defender<br>Attorneys for Plaintiffs |
| Dated: October 11, 2018 | By: */s/ Norman C. Hile*<br>Norman C. Hile<br>Orrick Herrington & Sutcliffe LLP<br>Attorneys for Plaintiff Cooper |

**GENERAL ORDER 45 ATTESTATION**

Per General Order 45, Section X.B. I hereby attest that the concurrence in the filing of this document has been obtained from all signatories.

Dated: October 11, 2018          /s/   R. Lawrence Bragg
                                 R. LAWRENCE BRAGG

SF2007200210

16

JOINT STATEMENT OF PARTIES RE: LITIGATION SCHEDULE   (C 06-0219 RS)

# CERTIFICATE OF SERVICE

Case Name:   *Michael Angelo Morales v. Scott Kernan, et al.*

No. **C 06-0219 RS**
   **C 06-926 RS**

I hereby certify that on <u>October 11, 2018</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**JOINT STATEMENT OF PARTIES RE: LITIGATION SCHEDULE with Attachment**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>October 11, 2018</u>, at San Francisco, California.

|  |  |
|---|---|
| G. Garcia | */s/ G. Garcia* |
| Declarant | Signature |

SF2007200210
42062839.docx